1
2
3
4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    JANE ROE, et al.,                          Case No. 24-cv-01562-JST

8                    Plaintiffs,

9           v.                                  **ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANT'S
10   CITY AND COUNTY OF SAN                      MOTION TO DISMISS**
     FRANCISCO,
11                                              Re: ECF No. 35
                    Defendant.
12

13          Before the Court is the City and County of San Francisco's ("the City") motion to dismiss.

14   ECF No. 35.  The Court will grant the motion in part and deny it in part.

15   **I.      BACKGROUND**

16          Plaintiffs are residents and businesses in the Tenderloin neighborhood in San Francisco.

17   ECF No. 1 ¶ 6.  Plaintiffs allege that the City treats the Tenderloin as a "containment zone" for

18   narcotics activities.  *Id.*  Specifically, Plaintiffs contend that "for years the City has allowed

19   individuals to openly buy and use narcotics in the Tenderloin, and to remain, under the obvious

20   influence of drugs, on the sidewalks and public spaces of the neighborhood." *Id.* ¶ 8.  "Addicts

21   living on the Tenderloin's streets foreseeably support their habit by stealing (*e.g.*, shoplifting, car

22   break-ins, burglaries, robberies) and hawking the stolen merchandise on the sidewalks." *Id.* ¶ 11.

23   And "as their disease progresses, their mental and physical health declines, resulting in them

24   acting erratically, ignoring serious medical problems (*e.g.*, open sores at injection sites),

25   rummaging through trash, discarding garbage on the sidewalk around them, going partially

26   clothed, and defecating in public." *Id.*  As a result, Plaintiffs allege "the City-owned public

27   walkways and spaces in the Tenderloin are dangerous, unsanitary and no longer open and

28   accessible to plaintiffs and other members of the public." *Id.* ¶ 19.

*United States District Court*
*Northern District of California*

1    On March 14, 2024, Plaintiffs filed this action against the City for (1) violation of Title II

2  of the Americans with Disabilities Act ("ADA"); (2) violation of Section 504 of the Rehabilitation

3  Act; (3) violation of California's Disabled Persons Act ("DPA"); (4) public nuisance; (5) private

4  nuisance; (6) violation of due process under the United States Constitution; (7) violation of the

5  equal protection clause under the United States Constitution; (8) a state-created danger due

6  process claim under the United States Constitution; (9) negligence; and (10) deprivation of the

7  guarantee of safety and the pursuit of happiness under the California Constitution, Article 1,

8  Section 1.  ECF No. 1.  The City now moves to dismiss all of Plaintiffs' claims.[1]  ECF No. 35.

9  **II.    JURISDICTION**

10    The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

11  **III.    LEGAL STANDARD**

12    **A.    Rule 12(b)(1)**

13    A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the Court.

14  *See* Fed. R. Civ. P. 12(b)(1).  If a plaintiff lacks Article III standing to bring a suit, the federal

15  court lacks subject matter jurisdiction, and the suit must be dismissed under Rule 12(b)(1).

16  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "A Rule 12(b)(1) jurisdictional

17  attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations

18  contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast,

19  in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would

20  otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

21  Cir. 2004) (citation omitted).  In resolving a facial attack, the court assumes that the allegations are

22  true and draws all reasonable inferences in the plaintiff's favor.  *Wolfe v. Strankman*, 392 F.3d

---

[1] Both the City and Plaintiffs filed requests for judicial notice of various documents.  ECF Nos. 36, 42; ECF 40 at 8 n.1.  The Court denies both requests, which seek improperly to expand the information the Court considers on this motion to dismiss – either by supplementing or disputing the allegations of the complaint.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts.").

United States District Court
Northern District of California

358, 362 (9th Cir. 2004) (citations omitted).  A court addressing a facial attack must confine its inquiry to the allegations in the complaint.  *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

### B.    Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

## IV.    DISCUSSION

### A.    Article III Standing

To invoke the jurisdiction of a federal court, Plaintiffs must demonstrate standing, which consists of the "irreducible constitutional minimum" of (1) an injury in fact; (2) caused by the defendant; that is (3) redressable by a court order.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  "The principle of Article III standing is 'built on a single basic idea—the idea of separation of powers.'"  *United States v. Texas*, 599 U.S. 670, 675 (2023) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)).  "By ensuring that a plaintiff has standing to sue, federal courts

3

'prevent the judicial process from being used to usurp the powers of the political branches.'" *Id.*
at 676 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).  The Supreme Court has
"stressed that the alleged injury must be legally and judicially cognizable" which "requires, among
other things, that the dispute is traditionally thought to be capable of resolution through the
judicial process—in other words, that the asserted injury is traditionally redressable in federal
court." *Id.* at 676 (internal quotation marks and citations omitted).

### 1.     Constitutional Claims

Plaintiffs' federal constitutional claims are premised on the City's failure to enforce its
drug and anti-encampment laws in the Tenderloin, which they allege makes the Tenderloin
"dangerous, unsanitary and no longer open and accessible to plaintiffs and other members of the
public."  ECF No. 1 ¶ 19.  Plaintiffs dispute this characterization of their claims, contending they
have alleged affirmative conduct on the part of the City.  ECF No. 40 at 22.  However, a review of
the complaint reveals their claims are premised on the City's "de facto" policy of non-enforcement
in the Tenderloin and the affirmative acts of non-parties.  *See, e.g.,* ECF No. 1 ¶ 8 ("While
plaintiffs are currently unaware of any writing that formally codifies the City's containment zone
policy, it is undisputable that for years the City has known that drug dealers brazenly sell narcotics
on the streets and sidewalks in the Tenderloin … [and] has allowed individuals to openly buy and
use narcotics in the Tenderloin, and to remain under the obvious influenced of drugs, on the
sidewalks and public spaces of the neighborhood."); ¶ 45 ("The City knows that this organization
and other groups hand out fentanyl kits and encourage illegal drug use in public spaces in the
Tenderloin. The City would not tolerate such arrogant and reckless conduct in other
neighborhoods …"); ¶ 109 ("The City, by abdicating its duties under the law to ensure safe and
secure living conditions in the Tenderloin…"); ¶ 112 ("The City by enforcing laws in some areas
and declining to enforce those laws in the Tenderloin …").[2]  Plaintiffs essentially want this Court

---

[2] Plaintiffs' complaint does nod briefly in the direction of pleading affirmative conduct by the City
when it states, "The City itself previously opened a 'wellness hub' in the neighborhood that, in
fact, operated as a 'supervised' narcotics consumption site in violation of state and federal law."
ECF No. 1 ¶ 79.  But the source cited in the footnote to that sentence actually concerns the City's
*closure* of a safe injection site in December 2022, not the establishment of such a site.

United States District Court
Northern District of California

to order the City to alter its enforcement policies surrounding drug use and encampments in the Tenderloin.  But as the Supreme Court recently reiterated "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution."  *Texas*, 599 U.S. at 674 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).  This is because "when the Executive Branch elects *not* to arrest or prosecute, it does not exercise coercive power over an individual's liberty or property, and thus does not infringe upon interests that courts often are called upon to protect."  *Id.* at 678.

Moreover, such suits conflict with Article II, which grants the Executive Branch the "authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'"  *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021)).  In addition, "the Executive Branch must balance many factors when devising arrest and prosecution policies" due to "inevitable resource constraints and regularly changing public-safety and public-welfare needs" which "in turn leaves courts without meaningful standards for assessing those policies."  *Id.* at 680.  Thus, the "Court has consistently recognized that federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions."  *Id.*

Accordingly, Plaintiffs lack standing to bring their constitutional claims.  *See id.* at 681 ("If the Court green-lighted this suit, we could anticipate complaints in future years about alleged Executive Branch under-enforcement of any similarly worded laws—whether they be drug laws, gun laws, obstruction of justice laws, or the like.  We decline to start the Federal Judiciary down that uncharted path."); *see also Railroad 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 974 (E.D. Cal. 2022) ("[P]laintiff challenges the City's failure to enforce its laws against homeless individuals living near plaintiff's property, and apparently seeks an injunction compelling the City to do so.  As explained, however, plaintiff lacks standing to sue the City for failing to enforce the

---

"Advocates, SF supervisors Push Back on Tenderloin Safe Injection Site Closure," CBS News Bay Area (Dec. 13, 2022 6:43 p.m.), https://perma.cc/XQ49-XPGX (originally cited as https://www.cbsnews.com/sanfrancisco/news/tenderloin-center-safe-injection-site-closure-advocates-sf-supervisors-push-back-mayor-breed-sfdph/).

1   law against others because it has no judicially cognizable interest in such enforcement.").

2                    **2.    Discrimination Claims**

3           Standing "often turns on the nature and source of the claim asserted."  *Warth v. Seldin*, 422

4   U.S. 490, 500 (1975).  "The actual or threatened injury required by Art. III may exist solely by

5   virtue of 'statutes creating legal rights, the invasion of which creates standing.'"  *Id.* (quoting

6   *Linda R.S.*, 410 U.S. at 617 n.3).  Under the ADA and Rehabilitation Act, disabled persons have a

7   legal right to be free from discrimination.  *See Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d

8   939, 947 (9th Cir. 2011).  If a disabled person is discriminated against within the meaning of the

9   acts, that discrimination constitutes an injury-in-fact.  *Id.*  "In the ADA context, a plaintiff may

10  establish injury in fact to pursue injunctive relief through evidence that the plaintiff encountered

11  an access barrier and either intends to return or is deterred from returning to the facility."  *Kirola*

12  *v. City and Cnty. of S.F.*, 860 F.3d 1164, 1174 (9th Cir. 2017).

13          The City, relying on *Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011),

14  argues Plaintiffs have failed to adequately allege an injury-in-fact to have standing for their ADA

15  and Section 504 claims.  ECF No. 35 at 25.  In *Chapman*, the plaintiff, who required use of a

16  motorized wheelchair when traveling in public, sued retailer Pier I Imports alleging that some of

17  the store's architectural features denied him full and equal enjoyment of the premises in violation

18  of the ADA.  631 F.3d at 943.  The Ninth Circuit found that Chapman had failed to sufficiently

19  allege Article III standing because although he alleged he was "'physically disabled,' and that he

20  'visited the Store' and 'encountered architectural barriers that denied him full and equal access,'

21  he never alleg[ed] what those barriers were and how his disability was affected by them so as to

22  deny him the 'full and equal' access that would satisfy the injury-in-fact requirement (*i.e.*, that he

23  personally suffered discrimination under the ADA on account of his disability)."  *Id.* at 954.

24  "Instead, Chapman attached to his complaint an 'Accessibility Survey,' which listed barriers

25  known to him that he claim[ed] 'denied him access to the Store, *or* which he [sought] to remove

26  on behalf of others under related state statutes.'"  *Id.*  The Court noted that "[t]he Accessibility

27  Survey simply 'identified' alleged ADA and CBC violations without connecting the alleged

28  violations to Chapman's disability, or indicating whether or not he encountered any one of them in

such a way as to impair his full and equal enjoyment of the Store." *Id.*

Here Susan Roe alleges she is disabled and depends on a walker to ambulate.  ECF No. 1 ¶ 38.  Similarly, Mary Roe alleges she has pulmonary and spinal conditions that make it difficult for her to walk.  *Id.* ¶ 40.  Mary and Susan allege that "[e]ncampments and bulky items such as duffle bags, shopping carts and disassembled bicycles, obstruct the sidewalks" in the Tenderloin making them inaccessible to Mary, Susan, and other disabled residents and visitors.  *Id.* ¶¶ 40, 43, 85.  Unlike in *Chapman*, Mary and Susan identify specific barriers they have encountered, such as encampments and other bulky items obstructing sidewalks.  This is sufficient to allege standing.  *See LA Alliance for Human Rights v. Cnty. of Los Angeles*, 14 F.4th 947, 959 (9th Cir. 2021) (finding wheelchair users who could not traverse sidewalks because of homeless encampments had standing).

### B.   Whether Plaintiffs Have Stated A Claim

#### 1.   Disability Discrimination Claims

The City also contends Plaintiffs have failed to state a claim for disability discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Title II emphasizes 'program access' meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons."  *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014).

> To state a claim of disability discrimination under Title II, a plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam).  "Similarly, under

United States District Court
Northern District of California

7

Section 504 of the Rehabilitation Act a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (quoting 29 U.S.C. § 794). Courts analyze ADA and Section 504 claims together. *See Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) ("We examine cases construing claims under the ADA, as well as section 504 of the Rehabilitation Act, because there is no significant difference in the analysis of rights and obligations created by the two acts."). Public sidewalks are a service, program, or activity of the City within the meaning of Title II and Section 504. *Barden v. City of Sacramento*, 292 F.3d 1073, 1074 (9th Cir. 2002).

The City, relying on *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173 (9th Cir. 2021), contends that Plaintiffs have failed to plausibly allege a claim under Title II or Section 504. ECF No. 35 at 25–27. In *Whitaker*, the plaintiff, who used a wheelchair for mobility, alleged that he "visited a Tesla dealership . . . and encountered inaccessible service counters that denied him full and equal access to the Tesla dealership." 985 F.3d at 1174–75. The Ninth Circuit found these allegations did little more than recite the elements of an ADA claim and fell "short of putting Tesla on notice of how the counters prevented Whitaker from full and equal access to the Tesla facility" and thus failed to state a claim. *Id.* at 1177. Specifically, the Court noted "[t]he complaint failed to answer basic questions" such as "Were the service counters too low? Or too high? Were they positioned in an area that was inaccessible for another reason?" *Id.* Without such factual detail, "the district court and Tesla were left in the dark about how the service counters denied Whitaker from full and equal enjoyment of the premises." *Id.*

The City argues Plaintiffs' allegations here are likewise insufficient. ECF No. 35 at 25–27. The Court disagrees. Plaintiffs here allege that the "sidewalks and public spaces" in their neighborhood are impassable and inaccessible to them due to "[e]ncampments and bulky items, such as duffle bags, shopping carts, and disassembled bicycles." ECF No. 1 ¶ 39. Unlike, in *Whitaker*, these allegations put the City on notice of how the barriers prevent Plaintiffs from full and equal access—encampments and other items obstruct their path such that those with walkers

8

and other mobility issues are unable to utilize the sidewalks. *See Hood v. City of Sacramento*, No. 2:23-cv-00232-KJM-CKD, 2023 WL 6541870, at *6 (E.D. Cal. Oct. 6, 2023) (finding allegations that plaintiffs were disabled and encampments and debris blocked sidewalk access which prevented access to locations within the City were sufficient to state a Title II claim).

The City also argues Plaintiffs have failed to adequately allege that the program in question received federal financial assistance as required to state a Section 504 claim. ECF No. 35 at 27; *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) ("To state a claim under the Rehabilitation Act, a plaintiff must allege … the program receives federal financial assistance."). While Plaintiff alleges that the "City is a recipient of federal financial assistance and therefore subject to Section 504", ECF No. 1 ¶ 92, the City contends that "Mary and Susan must allege that the specific City department that has jurisdiction over the alleged conduct in the Complaint received federal financial assistance that requires compliance with Section 504." ECF No. 35 at 27. Although the City is correct that "[t]he term 'program or activity' in section 504 … only covers all the activities of the department or the agency receiving federal funds", *Lovell v. Chandler*, 303 F.3d 1039, 1051 (9th Cir. 2002), at this stage, Plaintiffs' allegation that the City receives federal funds is sufficient. *See Moore v. Greyhound Bus Lines, Inc.*, No. 15-cv-1186-CAB (MDD), 2015 WL 13660330, at * 3 (S.D. Cal. Nov. 9, 2015) ("[T]he vast majority of courts faced with the issue of whether an entity receives federal financial assistance within the meaning of civil rights laws have concluded that the resolution of the issue requires inquiry into factual matters outside the complaint and accordingly, is a matter better suited for resolution after both sides have conducted discovery on the issue.").

Accordingly, the Court finds that Plaintiffs have adequately alleged a claim under Title II of the ADA and Section 504 of the Rehabilitation Act.[3]

---

[3] The City also argues that to the extent Mary and Susan's claims are based on a failure to provide a reasonable accommodation theory, they should be dismissed because Plaintiffs fail to allege they requested a reasonable modification. ECF No. 35 at 27; ECF No. 41 at 14; *see Payan v. Los Angeles Comm. College District*, 11 F.4th 729, 738 (9th Cir. 2021) ("A disability discrimination claim may be based on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation."). The Court agrees that Plaintiffs have failed to allege a claim under a failure to accommodate theory. *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016). The City also contends that Mary and Susan

9

### 2.    California Constitutional Claim

Plaintiffs bring a claim under Article 1, Section 1 of the California Constitution which provides that: "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness and privacy." Cal. Const. art. 1, § 1.

Plaintiffs allege the acts of the City have burdened their "rights to enjoy and defend their life and liberty; to acquire, possess, and protect their property; and to pursue and obtain safety, happiness, and privacy." ECF No. 1 ¶ 126.  Specifically, Plaintiffs claim the City's alleged de facto policy of allowing drug dealers to sell narcotics and use drugs on the streets violates their rights under Article I, Section I.[4]  However, as the City points out, Article I, Section 1 does not impose any "affirmative duty on the part of the state to take particular steps to guarantee the enjoyment of safety or happiness by all citizens." *Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 n.6 (1990).  Rather, "[t]he constitutional mandate is simply that the government is *prohibited* from *violating*" individual rights but does not "impose[] a *mandatory duty* on public entities to protect a citizen's" rights.  *Id.* at 1238 (emphasis in original).  Here, Plaintiffs seek to impose a mandatory duty on the City—enforcement of drug and anti-encampment laws in the Tenderloin.  Article I, Section I imposes no such duty.  Accordingly, this claim is dismissed with leave to amend.

### C.    Immunity

The City argues it is immune from liability from Plaintiffs' negligence claim under California Government Code Section 815 and Plaintiffs' remaining state law claims under Section 818.2, because they are premised on the City's failure to enforce laws.  Section 815 provides that "[a] public entity is not liable for an injury whether such injury arises out of an act or omission of

---

have failed to allege their claims fall within the statute of limitations because they don't allege dates for any of the alleged violations. ECF No. 35 at 28.  But because Plaintiffs seek redress from an ongoing violation, their claims are not time-barred.  *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) ("When such a plaintiff seeks injunctive relief against an ongoing violation, he or she is not barred from seeking relief … by the statute of limitations").
[4] Plaintiffs again dispute this characterization, but as explained above, a review of the complaint reveals their claims are premised on the City's de facto policy of non-enforcement in the Tenderloin and the affirmative acts of non-parties.

United States District Court
Northern District of California

the public entity or a public employee or any other person." Cal. Govt. Code § 815.  Thus, "section 815 abolishe[d] common law tort liability for public entities." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 899 (2008).  And under Section 818.2 "[a] public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." Cal. Govt. Code § 818.2.

Plaintiffs point to Government Code Section 814 which states that "[n]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." Cal. Govt. Code § 814.  Because Plaintiffs only seek equitable relief, they argue these immunity provisions are inapplicable.  ECF No. 40 at 27.  The City, however, relying on *Schooler v. State of California*, 85 Cal. App. 4th 1004 (2000), contends it is still immune since the injunctive relief Plaintiffs seek "would require [the City] to expend funds or impose legal or financial burdens on [the City]."  ECF No. 41 at 18.

In *Schooler*, the plaintiff brought suit against the State for the loss of use and diminished value of his property caused by the erosion of a state-owned bluff.  85 Cal. App. at 1007.  He argued that with respect to the injunctive relief he requested, any governmental immunity would be inapplicable under Section 814.  *Id.*  The Court disagreed, noting that "with respect to 'relief other than money or damages,' the type of relief covered cannot circumvent the underlying policies behind the governmental tort liability for money damages; any 'relief' allowed under section 814 cannot create duties that immunity provisions guard against."  *Id.* at 1014.  It noted that "[t]he example of equitable relief provided by the Legislative Committee comment is the enjoinment of an unconstitutional statute" which "would not create legal and financial burdens" on the State.  *Id.*  "In contrast, the injunctive relief [plaintiff] seeks requires the State to provide physical support for the bluff along with other measures to prevent pedestrian activity.  These types of actions impose financial burdens on the State that [the Tort Claims Act] guards against." *Id.*  Accordingly, the State was entitled to immunity on plaintiff's claims.[5]  *Id.* at 1014–15.

Here, the injunctive relief Plaintiffs seek would require the City to enforce its drug and

---

[5] Because the Court finds dismissal appropriate on these grounds, it does not address the City's remaining immunity arguments.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   anti-encampment laws to a greater extent than it now does.  As in *Schooler*, this would create legal

2   and financial burdens on the City that the Tort Claims Act guards against.  *See also Madani v.*

3   *Cnty. of Santa Clara*, No. 16-CV-07026-LHK, 2017 WL 2954643, at \*14 (N.D. Cal. July 11,

4   2017) ("Thus, even if a remedy is classified as equitable, if a claim would 'create legal and

5   financial burdens that necessarily accompany [the alleged] duty,' then a public entity has

6   immunity under § 815.").

7        Accordingly, the City is entitled immunity on Plaintiffs' remaining state law claims and

8   they are dismissed with leave to amend.

9                                       **CONCLUSION**

10       For the foregoing reasons, the Court grants the City's motion to dismiss the third through

11  tenth cause of action, with leave to amend.  The Court denies the City's motion to dismiss claims

12  one and two.  Plaintiffs may file an amended complaint within 21 days solely to correct the

13  deficiencies identified in this order.  If no amended complaint is filed by that date, the claims

14  dismissed in this order will be dismissed with prejudice.[6]

15       **IT IS SO ORDERED.**

16  Dated:  July 19, 2024

17  _____

18                            JON S. TIGAR
                     United States District Judge

---

[6] The City also requests the Court stay discovery until the pleadings are settled.  ECF No. 35 at 36.
The Court denies this request, without prejudice, as premature.

12