LAW OFFICES OF
**WALKUP, MELODIA, KELLY & SCHOENBERGER**
A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

MICHAEL A. KELLY (Ca. State Bar #71460)
mkelly@walkuplawoffice.com
RICHARD H. SCHOENBERGER (Ca. State Bar #122190)
rschoenberger@walkuplawoffice.com
MATTHEW D. DAVIS (Ca. State Bar #141986)
mdavis@walkuplawoffice.com
ASHCON MINOIEFAR (Ca. State Bar #347583)
aminoiefar@walkuplawoffice.com

SHANIN SPECTER, (Pennsylvania State Bar No. 40928)
 shanin.specter@klinespecter.com
 (Pro Hac Vice Application Pending)
ALEX VAN DYKE (Ca. State Bar No. 340379)
 Alex.VanDyke@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile:  (215) 772-1359

**ATTORNEYS FOR ALL PLAINTIFFS**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,<br><br>                    Plaintiffs,<br><br>        v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>                    Defendant. | Case No. 4:24-cv-01562-JST<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF**<br><br>**ASSIGNED FOR ALL PURPOSES TO THE HONORABLE JON S. TIGAR, COURTROOM 6** |

# I. INTRODUCTION

1.      The Tenderloin neighborhood lies in the heart of San Francisco, bounded on the north by Geary Street, the east by Mason Street, the south by Market Street, and the west by Polk Street.

2.      The Tenderloin has been a downtown residential community since shortly after the California Gold Rush in 1849. It was among the first districts in San Francisco to be integrated, and to this day remains culturally, racially, and ethnically diverse.

3.      Many families call the Tenderloin their home. Over 3,000 children live there, more per capita than almost any other district in San Francisco.

4.      Living in the Tenderloin is affordable compared to other San Francisco neighborhoods. Many residents work in the service industry and earn low, hourly wages. Many are disabled or are senior citizens who must get by on fixed incomes.

5.      The Tenderloin has been a place where entrepreneurs with little capital, from the hardworking owner of a sandwich shop to the operator of a boutique hotel, can start a business.

6.      Plaintiffs are residents of and stakeholders in the Tenderloin. Today, they and others who live, go to school, work or run a business in that district face an existential crisis caused by defendant City and County of San Francisco's treatment of their neighborhood as a "containment zone" for narcotic activities. For years, the policy of the City has been to corral and confine illegal drug dealing and usage, and the associated injurious behaviors, to the Tenderloin. The City tries to keep such crimes and nuisances out of other San Francisco neighborhoods by "containing" them

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

in the Tenderloin.

7.      Over the past six or so years, fentanyl and other potent, highly addictive, and deadly synthetic opiates have come to dominate the narcotics market in the Tenderloin.[1] Fentanyl's "effects include extreme happiness, drowsiness, nausea, confusion, constipation, sedation, tolerance, addiction, respiratory depression and arrest, unconsciousness, coma, and death…. People addicted to fentanyl who stop using it can have severe withdrawal symptoms that begin as early as a few hours after the drug was last taken. These symptoms include: muscle and bone pain; sleep problems; diarrhea and vomiting; cold flashes with goose bumps; uncontrollable leg movements; [and] severe cravings. These symptoms can be extremely uncomfortable…."[2] Fentanyl addicts engage in "compulsive drug seeking and use despite adverse consequences,"[3] such as refusing treatment, losing employment, alienating and breaking contact with family and friends, living on the streets, ignoring personal hygiene, and resorting to crime to support their habit.

8.      Today, the City actively and purposefully herds fentanyl users into the Tenderloin. Once in the Tenderloin, addicts quickly learn that the City and others will support them if they use fentanyl while living on that neighborhood's sidewalks, with some City-sponsored organizations going so far as to deliver drug paraphernalia

---

[1] https://www.sfchronicle.com/projects/san-francisco-drug-overdose-deaths/#:~:text=In%20recent%20years%2C%20that%20epidemic,to%20address%20the%20escalating%20epidemic.
[2] https://nida.nih.gov/publications/drugfacts/fentanyl
[3] https://nida.nih.gov/publications/drugs-brains-behavior-science-addiction/drug-misuse-addiction#:~:text=Addiction%20is%20defined%20as%20a,stress%2C%20and%20self%2Dcontrol.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

to their sidewalk encampments.

9.      Addicts living on the Tenderloin's sidewalks foreseeably support their habit by stealing (*e.g.*, shoplifting, car break-ins, burglaries, robberies) and hawking the stolen merchandise on the sidewalks. As their disease progresses, their mental and physical health declines, resulting in them acting erratically, ignoring serious medical problems, rummaging through trash, discarding garbage on the sidewalk around them, going partially clothed, and defecating in public.

10.     Drug dealers know that the City herds addicts to the Tenderloin and allows them to use drugs in public there. Dealers thus flock to the neighborhood and blatantly sell drugs to addicts living on the sidewalks. The City knows that the dealers in the Tenderloin belong to competing gangs, and that they use intimidation, threats and violence to protect their market.

11.     The City's acts and omissions have harmed and damaged each plaintiff as set forth below. However, they do not seek to recover money damages from the City in this lawsuit. Rather, they bring this action to stop the City from treating the Tenderloin as a containment zone. Plaintiffs sue to force the City to redress and correct the harms flowing from its active mistreatment of their neighborhood.

## II. THE CITY CONDUCT THAT HARMS PLAINTIFFS.

12.     There is no therapeutic benefit to, and nothing compassionate about, allowing those in the throes of addiction to live, ingest drugs and deteriorate on the Tenderloin's sidewalks. To the contrary, it is cruel to the addicts and their loved ones and families. It also renders the sidewalks and other public spaces in the neighborhood unsanitary, unsafe and inaccessible, causing great harm to plaintiffs.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

4

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

The City actively encourages addicts to live and use drugs on the Tenderloin's sidewalks. Examples of the City's affirmative conduct in this regard include:

**A.**    **The City directly and indirectly distributes drug paraphernalia to addicts that it allows to live on the sidewalks of the Tenderloin.**

13.    Plaintiffs are informed and believe, and on that basis allege, that the City directly and indirectly distributes drug paraphernalia to addicts who live in sidewalk tents and encampments in the Tenderloin.

14.    Plaintiffs are informed and believe, and on that basis allege, that the City's Department of Public Health and other City departments and agencies distribute and/or facilitate the distribution of drug paraphernalia, including fentanyl smoking kits, to addicts who opt to live on the Tenderloin's sidewalks, often using euphemisms like "harm reduction" or "personal autonomy" in documents and public statements to conceal and disguise the true nature of such activities.

15.    Plaintiffs are informed and believe, and on that basis allege, that the City pays millions to nonprofit entities and other organizations that the City knows to distribute drug paraphernalia to addicts that live on the Tenderloin's sidewalks.[4]

16.    The effects and consequences of the City's direct and indirect distribution of drug paraphernalia to addicts living the Tenderloin's sidewalks are foreseeable, devastating and lasting to plaintiffs, as described below.

**B.**    **The City actively supports addicts who refuse offers of shelter and instead live in Tenderloin sidewalk encampments.**

17.    The City's "Street Medicine team" provides "street-based" services to the homeless "who are currently rejecting shelter" and instead opt to live on the

[4] https://www.sfchronicle.com/bayarea/article/sf-fentanyl-foil-pipes-19563872.php

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

Tenderloin's sidewalk.

18.    The City's "Best Neighborhood Program" offers "street-based care" and distributes kits and outreach supplies to addicts who refuse offers of shelter and instead live on the Tenderloin's sidewalks.

19.    The City's "Night Navigator" program provides "on the spot" services, kits, supplies and resources to addicts who refuse offers of shelter and instead live on the Tenderloin's sidewalks.

20.    The City's "Joint Field Operations" supports individuals "experiencing homelessness or struggling with substance use disorders" who refuse offers of shelter and instead live in encampments on the Tenderloin's sidewalks.

21.    The City would never actively provide similar encouragement, support and services to addicts who refused offers of shelter and instead camped on the sidewalks of San Francisco's more affluent, less diverse neighborhoods.

**C.    The City opened and operated an illegal narcotics consumption site that drew addicts and dealers to the Tenderloin.**

22.    It is a crime under California law, punishable by up to one year in prison, to open or maintain a place for the purpose of unlawfully using any controlled substance such as fentanyl.[5] Similarly, federal law makes it a felony, punishable by imprisonment up to 20 years, to manage or control any place for the purpose of unlawfully using a controlled substance such as fentanyl.[6]

---

[5] California Health & Safety Code §§ 11365, 11366.

[6] 21 U.S.C. § 856. "The statute forbids opening and maintaining any place for visitors to come use drugs." *United States v. Safehouse*, 985 F.3d 225, 243 (3rd Cir. 2021) (declaring that a nonprofit that intentionally opens its facility to visitors it knows will use drugs there violates 21 U.S.C.A. § 856).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981−7210

23.     The City, on actual notice of these criminal statutes, nevertheless purchased 822 Geary Street, a building in the Tenderloin, in December 2021 with the intent of operating a narcotics consumption site there. However, because the City treats the Tenderloin as a containment zone, the City gave no notice to the residents and other stakeholders in the Tenderloin of its intent to operate an illegal narcotics consumption site in their neighborhood. The only notice that the City gave was this vague and uninformative web posting:



24.     It is unknown to plaintiffs whether the City still plans to open a narcotics consumption site at 822 Geary Street. However, the City did open such a site at Hyde and Market Streets, called the "Tenderloin Center", in January 2022. The City encouraged addicts to come to the Tenderloin Center to consume fentanyl and other narcotics, even though City officials had been explicitly advised, counseled and warned that such operations violated state and federal criminal statutes and exposed anyone involved with the operation of the center to a criminal penalty.

25.     Plaintiffs are informed and believe that the City instructed members of

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

7
1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

the San Francisco Police Department to drop off addicts at the Tenderloin Center.

26.     By opening and operating the Tenderloin Center, the City sent the clear and unmistakable message that addicts should come to the Tenderloin to consume narcotics.

27.     By opening and operating the Tenderloin Center, the City sent the message to drug dealers that they could sell fentanyl in the Tenderloin. Foreseeably, drug dealers flocked to the Tenderloin to sell fentanyl to the addicts who ingested the drug at the Tenderloin Center.

28.     By opening and operating the Tenderloin Center, the City flaunted the law and condoned the sale, purchase and consumption of narcotics in the Tenderloin. The harm and damage to plaintiffs was immediate, dramatic and lasting. Narcotics sales and use surged. The City shut down the Tenderloin Center in December 2022, but the harmful aftereffects of its operations continue to this day because many of the addicts and dealers who were drawn to the Tenderloin by the City's operation of the Tenderloin Center remain in the neighborhood.

**D.     The City indirectly supported another narcotics consumption site in the Tenderloin.**

29.     On August 31, 2023, "activists" made a public show of setting up tents on Willow Street in the Tenderloin and inviting addicts to come there to collect drug paraphernalia and ingest fentanyl. The images below show what took place:

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210



Source: https://sfstandard.com/2023/08/31/san-francisco-activists-pop-up-safe-drug-use-site/



Source: https://www.sfchronicle.com/opinion/article/san-francisco-tenderloin-drug-prevention-site-18314454.php



Source: https://www.sfchronicle.com/opinion/article/san-francisco-tenderloin-drug-prevention-site-18314454.php

30.     As one news site reported, "At the renegade safe-consumption site, [the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

reporter] witnessed several people using drugs under the tent while many others lined up to obtain fresh materials to consume their drugs with."[7]

31.    The illegal narcotics ingestion site on Willow Street operated only a few hundred feet from the Tenderloin Community Elementary School. Seniors and low-income families with young children live nearby. The site operated in the middle of restaurants and shops in the "Little Saigon" subdistrict of the Tenderloin. These businesses were already struggling to stay open in the face of deplorable conditions caused by the City's treatment of area as a containment zone.[8]

32.    Plaintiffs are informed and believe, and on that basis allege, that City officials had advance notice of the plan to operate the Willow Street site and they supported it. A news report quoted a member of the San Francisco Board of Supervisors as praising those who ran the site.[9] Plaintiffs are informed and believe, and on that basis allege, that employees of a nonprofit that receives hundreds of millions of dollars in funding from the City helped set up and operate the site.[10]

**E.    The City, with no notice, has opened numerous "centers" in the Tenderloin that attract addicts and dealers to the neighborhood.**

33.    The City gave no notice to the Tenderloin's residents and stakeholders of its plan to encourage addicts to consume illegal narcotics at 822 Geary Street and the Tenderloin Center. Similarly, the City and City-funded organizations, with no

---

[7] https://sfstandard.com/2023/08/31/san-francisco-activists-pop-up-safe-drug-use-site/
[8] https://sfstandard.com/2024/01/22/san-francisco-little-saigon-homeless-center/
[9] https://abc7news.com/overdose-awareness-day-2023-san-francisco-tenderloin-safe-injection-sites-pop-up-site/13723380/
[10] See https://www.sfchronicle.com/opinion/article/san-francisco-tenderloin-drug-prevention-site-18314454.php; https://www.sfchronicle.com/bayarea/article/nonprofit-ceo-contract-pay-18667516.php

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

advance publicity or local input, have opened numerous "wellness," "service" and "support" centers in the Tenderloin under the guise of compassion for substance abusers. These centers foreseeably attract even more addicts, and the drug dealers who follow their customers. By contrast, earlier this year the City publicly announced a plan to open a "sober housing" project near Chinatown, but quickly scrapped that plan because of public opposition.[11]

**F.    After actively herding addicts and dealers to the Tenderloin, the City does not enforce the laws that they foreseeably break.**

34.    After herding addicts and dealers into the neighborhood, the City does not enforce narcotics laws that they foreseeably violate and other crimes that they foreseeably commit. Thus, large crowds gather on Tenderloin sidewalks and freely sell, buy, and use illegal narcotics, fight, commit thefts, and hawk stolen goods.[12] The image below shows a McAllister Street sidewalk shortly after midnight.

///

///

///

_____

[11] https://www.sfchronicle.com/bayarea/article/sf-breed-drug-crisis-chinatown-sober-living-18678670.php

[12] See https://sfstandard.com/2024/03/07/san-francisco-kids-selling-drugs-stolen-goods/ The City recently decided to enforce the laws that prohibit illegal street vending in the Mission neighborhood. The City has not done the same in the Tenderloin. Foreseeably, illegal street vending increased in the Tenderloin after the City's crackdown in the Mission.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1
2
3
4
5
6
7
8
9
10



11      35.     The City has allowed what is seen above to become the rule, not the
12
13 exception, in the Tenderloin. It is inconceivable that the City would tolerate such
14 late-night turmoil in Pacific Heights, the Inner Sunset, Alamo Square, Bernal
15 Heights, or Telegraph Hill.

16      36.     Foreseeably, the City's containment zone policy has led to violence in
17 the public spaces of the Tenderloin. There have been drug-related murders, stabbings
18 and gun battles on the streets and sidewalks.
19

20      37.     In sum, the City-owned sidewalks in the Tenderloin are dangerous,
21 unsanitary and no longer open and accessible to plaintiffs. The consequences of the
22 containment zone policy to plaintiffs have been devastating. It has deprived the two
23 disabled plaintiffs in this suit of the full and equal use of the Tenderloin's sidewalks
24 and public spaces. It is both a public and a private nuisance to all plaintiffs. These
25 state-created dangers violate all of plaintiffs' due process rights.
26

27                          **III. JURISDICTION AND VENUE**

28      38.     Plaintiffs assert the claims herein pursuant to the Americans with

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

Disabilities Act, 42 U.S.C. §§ 12131 et seq. (the "ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq. ("Section 504"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, 2201 & 2202.

39.     This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as plaintiffs' federal claims.

40.     Plaintiffs only seek equitable and injunctive relief for their state law claims. Accordingly, plaintiffs need not submit a claim with any local public entity pursuant to the California Tort Claims Act, California Government Code §§ 810 *et seq*.

41.     The acts and omissions complained of herein occurred in the Northern District of California. Accordingly, pursuant to 28 U.S.C. § 1391, venue is proper in this Judicial District.

### IV. INTRADISTRICT ASSIGNMENT

42.     The events or omissions that give rise to the claims asserted herein occurred within the City and County of San Francisco, and the property that is the subject of this action is situated in the City and County of San Francisco.

### V. THE PARTIES

**A.     Plaintiff Jane Roe**

43.     Plaintiff Jane Roe is a pseudonym and not her real name.

44.     Jane Roe works full-time as a housekeeper. She is married. Her husband works full-time as a cook. Both are immigrants. Neither speaks much English. They have two daughters, ages 9 and 5. The family lives in an apartment on Ellis Street, between Hyde and Larkin, in the center of the Tenderloin. They share

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

13

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

the apartment with another family with young children.

45.     Jane Roe and her family live steps from the COVA Hotel, on the same block of Ellis Street between Hyde and Larkin. Before 2020, a private party operated the 95-unit COVA as a tourist hotel. The COVA catered to out-of-town guests who brought vibrancy and commerce to the Tenderloin.

46.     However, the City leased the COVA starting in 2020. The City now runs it as "non-congregate shelter."

47.     Anyone who comes to San Francisco and claims to be homeless is eligible to stay at the COVA. Those that the City selects and allows to live at the COVA get a private room with a private bathroom and two free meals a day. The City charges no rent or room-and-board. The City does not limit to how long they can stay. Some occupants have lived at the COVA, rent free, for several years.

48.     The City follows a so-called "housing first" approach with respect to the COVA, and allows its "tenants" to continue to live there, rent-free, even if they use and sell narcotics on or around the property, or engage in other harmful behavior in and around the property. Foreseeably, illegal narcotics use became rampant inside and around the COVA after the City took over operations. One citizen journalist reports that there have been at least 12 overdose deaths inside the COVA since the City began running the facility.

49.     As a result of the City's management of the COVA, the property has become a magnet for illegal and dangerous narcotics activities in the surrounding neighborhood, including directly in front of Jane Roe's apartment building. As the images below show, the public sidewalks in front of the COVA are blocked by

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

encampments of addicts, crowds of dangerous drug dealers and numerous hazards. The operation of the COVA exposes those that reside close by, like Jane Roe, to unreasonable danger and harm. The City know this, and yet recently extended its operations of the COVA for another seven months.

50.     As a consequence of the City's acts, open-air drug deals occur on the sidewalk in front of Jane Roe's apartment building. She describes the drug-dealing as happening "all day, every day." Those involved in narcotics sales block the entrance to her building. The image below shows a typical scene, including blatant drug transactions.



51.     When Jane Roe enters or leaves her apartment, she encounters drug dealers, users openly injecting or smoking narcotics, and people lying on the sidewalk who appear unconscious or dead. On one occasion, she cleared garbage from the steps of her apartment building and got stuck by a used syringe.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

52.     On one occasion, a person in front of Jane Roe's building threatened to cut her throat. On other occasions, people threatened her with knives and hammers.

53.     People gathered in front of the family's apartment building sometimes start smokey bonfires, using things like old tires, trash, or discarded furniture as fuel. One of Jane Roe's daughters has severe asthma and cannot tolerate smoke. Jane Roe has politely asked people in front of the building not to burn things for the sake of her daughter's health. They responded by threatening to kill her. The City does nothing to stop the sidewalk fires.

54.     Encampments and bulky items block the sidewalk in front of Jane Roe's apartment. Habitants of the encampments keep unleashed dogs that bark and growl at Jane Roe and her family when they pass. Displays of stolen goods for sale block the sidewalk. Trash and biohazards, such as used syringes and feces, litter the area. She and her husband and daughters must step into the busy street to bypass these hazards, dangers and obstacles.

55.     The images below depict typical conditions that Jane Doe and her family encounter when they go outside. The sidewalk directly in front of the COVA, mere steps from their home, is visible is several of the images.

///

///

///

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210





56.    Jane Roe rarely sees uniformed members of the San Francisco Police

Department on foot patrol in the neighborhood. When she has seen SFPD officers, she has asked for help with the people who have taken over the sidewalks. In response, officers have told her that there is nothing they can do because, "the City gives them more protection than you."

57.     Every school day morning, Jane Roe escorts her daughters to the bus stop and then rides with them to their school. She does the same thing in reverse in the afternoon. She is terrified for her daughters' safety each time she makes the trip. Her girls can never be outside unless accompanied by her or her husband.

58.     When Jane Roe ventures out of her apartment, either alone or with family, she "is really scared because when I walk, I am always afraid something bad will happen to us." She and her husband are not high wage earners. She says, "I really wish my daughters could grow up in a better place, which does not have so much corruption, drugs, bad people. It is a frustration I have every day. We don't have enough money to move."

**B.    Plaintiff Susan Roe**

59.     Plaintiff Susan Roe is a pseudonym and not her real name. She lives in a residence on Eddy Street, between Jones and Leavenworth, in the Tenderloin. She is elderly. She is disabled and depends on a walker to ambulate.

60.     The sidewalks and public spaces in Susan Roe's neighborhood are impassable and inaccessible to her. Encampments and bulky items, such as duffle bags, shopping carts and disassembled bicycles, obstruct the sidewalks.

61.     Large crowds also block the sidewalks around Susan Roe's residence. People in these crowds openly smoke and inject drugs, scream and act erratically.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

19

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

She attends community events and receives services at a senior center on Turk Street. These events and services are important to her. However, she dreads going to the center because intimidating crowds block a corner where she must cross the street. She must also be on the lookout for and navigate around excrement, used syringes, vomit and garbage. These obstacles make it impossible for her to use the sidewalk. She instead walks in the busy street, which is dangerous.

## C.   Plaintiff Mary Roe

62.    Plaintiff Mary Roe is a pseudonym and not her real name. She is a native of San Francisco, a senior citizen and the mother of grown children. She works as a counselor. She has pulmonary and spinal conditions that make it difficult for her to walk. She lives in the Tenderloin, in an apartment on Turk Street, between Jones and Leavenworth. She laments, "My neighborhood has become disgusting and dangerous."

63.    Crowds of drug dealers and users block the sidewalks around Mary Roe's apartment building. Encampments, stolen goods for sale, carts, disassembled bicycles, and other bulky items also obstruct passage. When she ventures outside, she has no choice but to jaywalk, which is especially dangerous because her age and medical conditions make it difficult for her to avoid moving vehicles.

64.    Mary Roe sees people inject and smoke narcotics on the sidewalk. She must avoid people who scream and act erratically, or who are partially clothed or completely naked. She sees people defecate in public. The sidewalks around her home are littered with garbage, human waste, and used drug paraphernalia. There have been so many overdoses that she often wonders whether a person lying prostrate on

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

20
1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

the sidewalk is dead rather than merely passed out. In sum, whenever she ventures

outside, she is always afraid and frequently mortified.

65.     There is a storefront on Mary Roe's block occupied by an organization

that purports to provide a "community building program." People affiliated with that

organization hand out fentanyl drug kits, *e.g.*, packets with foil, tubes and smoking

devices, on the sidewalk in front of the storefront. Crowds gather when these

handouts occur. When the people finish distributing the kits, they retreat inside the

storefront, locking the doors behind them. Chaos then ensues. People ingest drugs,

become intoxicated and act erratically. Mary Roe has observed other citizens try to

discourage people from ingesting narcotics on the sidewalk, only to have people

affiliated with the organization come out of the storefront and intercede, proclaiming

that people have the right to use drugs in public. Plaintiffs are informed and believe,

and on that basis allege, that the City provides direct and indirect support to this

organization.

66.     Around the corner from Mary Roe's apartment, on the 200 block of

Leavenworth Street, are three markets that stay open all night. People gather in

front of these markets, especially after dark. They completely block the sidewalk

while selling, buying and using drugs and hawking stolen items. The same thing

happens near many other markets in the Tenderloin. The City would not tolerate

such nuisances around markets elsewhere, but because the City treats the

Tenderloin as a containment zone, the City does little to nothing in response.

**D.     Plaintiff John Roe**

67.     Plaintiff John Roe is a pseudonym and not his real name. He was born

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

in South America and has resided in the United States for over 15 years. He is in his late 50s. He is a behavioral health worker. About four years ago he and his husband purchased a home near the corner of Turk and Larkin Streets in the Tenderloin.

68.     The conditions around his home "logistically and emotionally" affect and drain John Doe. Drug deals happen around his residence at all hours. Dealers dress a specific way and obviously belong to gangs. They are intimidating. He sees people on the sidewalk inject drugs. People light fires in front of his home. He hears people in the throes of drug-induced psychotic episodes scream. The medical examiner's van recently blocked his driveway to pick up the corpse of someone who overdosed. The images below show what he regularly encounters in front of home:



LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981-7210







LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1
2
3
4
5
6
7
8
9
10
11
12



13    69.   John Roe sometimes hears gunshots. The drug-related violence leaves

14  him fearful and in despair. He sees biological hazards and garbage "everywhere" on

15  the sidewalks and streets. He recently encountered someone defecating in his

16  doorway. When he asked that person to leave, the man threatened him.

17

18    70.   John Roe cannot walk on the sidewalks around his home because drug

19  dealers and addicts gather and block passage. Encampments and stolen goods

20  displayed for sale also make the sidewalks impassable. He must step into the street

21  to bypass these dangers and obstacles.

22

23    71.   John Doe regularly reports the problems around his home to the City,

24  which rarely responds. Despite the constant open-air crime, John Roe seldom sees

25  members of the SFPD on foot patrol in his neighborhood.

26  **E.   Plaintiff Barbara Roe**

27

28    72.   Plaintiff Barbara Roe is a pseudonym and not her real name. In 2020,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

24

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

she and her husband purchased a condominium in a multi-unit building on McAllister Street in the Tenderloin.

73.     Large crowds gather in front of and around Barbara Roe's building every night. The typical after-dark crowd ranges from seventy to over one hundred people. Those in the crowd openly sell, inject and smoke drugs, and hawk stolen items.

74.     Barbara Roe finds it "difficult and scary" to navigate through the crowds around her residence. People under the influence block the door to her building. When she politely asks them to move so that she can pass, she fears that they will attack her. Recently, one of her neighbors was attacked and injured at the entrance to their building and had to go to the emergency room to receive stitches. There are bonfires on the sidewalk. The smoke sometimes triggers her building's fire alarm, forcing her and her neighbors to evacuate into the threatening crowd.

75.     Barbara Roe must step into the busy street to bypass the sidewalk obstacles near her building. The images below show typical nighttime conditions in front of her building and on nearby sidewalks.

*///*

*///*

*///*

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

25
1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

.





LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20



21
22

**F.   The Phoenix Hotel Plaintiffs**

23    76.    Plaintiff Phoenix Hotel SF, LLC is a California limited liability company

24  in good standing.

25    77.    A hotel has been in operation at 601 Eddy Street in the Tenderloin since

26  the 1960s. In 1987, an affiliate of plaintiff Phoenix Hotel SF, LLC acquired a

27  leasehold interest in the property, and renovated and converted it into the "Phoenix

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

27

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

Hotel." The Phoenix Hotel has since become a San Francisco landmark and an iconic institution in the Tenderloin. The entrance to the Phoenix Hotel is on Eddy Street. Larkin Street borders the eastern side of the hotel property.

78.    Beginning in 2011, plaintiff Phoenix Hotel SF, LLC took over the leasehold interest and operations of the Phoenix Hotel.

79.    Plaintiff Funky Fun, LLC is a California limited liability company in good standing. In 2011, it opened a restaurant and bar within the Phoenix Hotel commonly known as "Chambers Eat + Drink" or the Chambers restaurant.

80.    Plaintiffs Phoenix Hotel SF, LLC and Funky Fun, LLC are hereafter referred to in the collective as the "Phoenix Hotel Plaintiffs."

81.    The principals of the Phoenix Hotel Plaintiffs care deeply about the Tenderloin. Since taking over the hotel and restaurant, the Phoenix Hotel Plaintiffs have been committed to improving and promoting the neighborhood.

82.    From 1987 through 2019 at the hotel, and from 2011 through 2019 at the restaurant, business was vibrant. Operations brought many visitors to the Tenderloin and put the neighborhood in a favorable light. Guests of the hotel included famous musicians, artists and celebrities. People from all over the world dined at the Chambers restaurant and gave it rave reviews. The Phoenix Hotel Plaintiffs employed an average of about 50 people during this time, providing them with good jobs in the hospitality industry. The Phoenix Hotel Plaintiffs were proud of the employment, business, energy, goodwill and excitement that they brought to the Tenderloin.

83.    The pandemic of 2020 caused the restaurant to shut down completely

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

and the hotel to scale back operations. The Phoenix Hotel Plaintiffs, however, were determined to survive and continue operations in the Tenderloin when the pandemic passed. However, conditions around the Phoenix Hotel have changed and worsened considerably since 2019.

84.     Because the City treats the Tenderloin as a containment zone, people who appear to be gang members now openly sell fentanyl and other potent drugs around the Phoenix Hotel. People freely inject and smoke and ingest drugs on the sidewalks around the property.

85.     The Phoenix Hotel Plaintiffs must comply with the Americans with Disabilities Act and other laws that mandate that their facilities be open and accessible to those with disabilities, e.g., patrons who use a wheelchair. However, crowds of hostile people selling and using narcotics block passage of the sidewalks abutting the hotel. Encampments, garbage and biological hazards make it difficult or impossible for even able-bodied guests and patrons to navigate on the public walkways around the hotel. The images below depict typical conditions.

*///*

*///*

*///*

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO, CA  94108
(415)  981-7210







86.     The conditions around the Phoenix Hotel scare prospective hotel guests and restaurant patrons. Current business has plummeted as a result, down by about two-thirds compared to 2011 to 2019. Below are excerpts from recent emails and social media reviews:

"The neighborhood is sort of shocking & sad - I have traveled the world & spent significant time in SF many years ago - SF is like a war zone these days - The Tenderloin needs to be cleaned up - at least around the hotel so guests feel safe upon arrival & walking out of the hotel."

****

"I wanted to give you a little update as we've just spoken to the client and unfortunately they have decided that they won't be going ahead with Chambers [restaurant] on this occasion. They thought the venue was great but there were concerns raised by the leadership team about the safety of the surrounding area so unfortunately they've had to discount it as a dinner venue."

****

"It's truly just the surroundings that ruin it for the place. Other than that it was a great stay. Sadly the people loitering on the street - doing drugs & burning something were VERY off putting. I generally am comfortable with street people but this was extreme. I know you can't change the neighborhood but I am hesitant to write a review because of that."

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

31

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

\*\*\*\*

"Good: Hotel was beautiful clean and accommodating
Bad: Location was horrible, homeless everywhere, didn't
feel safe walking off the hotel parking lot."

\*\*\*\*

"Know it's a difficult situation but the homeless and drug
dealers on the street corner would probably dissuade me
from booking at the Phoenix again. Love the staff, vibe but
just don't feel safe walking out of the hotel."

\*\*\*\*

"This hotel is in a terrible neighborhood. Going out
anywhere was a challenge due to MANY drugged out
individuals carpeting the sidewalk along with thick litter.
I'm glad I survived."

87.     The average number of people employed by the Phoenix Hotel Plaintiffs
has dropped to about 20 because of the downturn in business. It is difficult for the
Phoenix Hotel Plaintiffs to retain existing employees and to hire new ones. When a
hotel employee recently asked a trespasser to leave the parking lot, the man struck
the employee on the head with an object. The restaurant has been unable to recruit a
qualified chef because the neighborhood conditions deter applicants.

88.     The lease for the Phoenix Hotel ends in September 2025. Had the
conditions in the Tenderloin in general and around the hotel in particular not
deteriorated, then the Phoenix Hotel Plaintiffs would have renewed the lease. They
want to continue to do business in the Tenderloin. They want to provide good jobs.
They want to continue to improve and promote the neighborhood. However, renewing
a lease is a long-term commitment that requires a reinvestment in the property and
a good-faith belief that customers will patronize the business in the future. The
current conditions around the hotel have caused the Phoenix Hotel Plaintiffs to
decline to renew the lease.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

32

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

### G.      The Best Western Plaintiff

89.      Plaintiff 2930 El Camino, LLC, a California limited liability company in good standing, has an ownership interest in real property located at 700 Eddy Street, on the northwest corner of Polk Stret, in the Tenderloin. The back of the property borders Willow Street. Plaintiff 2930 El Camino, LLC operates a short-term hotel at this location that is commonly known as the "Best Western Road Coach Inn." Plaintiff 2930 El Camino, LLC is hereafter referred to as the "Best Western Plaintiff."

90.      The City's containment zone policy has caused horrific conditions on the sidewalks and public spaces around the Best Western Road Coach Inn. Narcotic transactions happen around the hotel at all hours. Addicts live in unsanitary sidewalk encampments next to the hotel. Hotel staff regularly clean and hose down the sidewalks abutting the hotel, but they are quickly re-littered with excrement, used syringes and garbage. The image below show trespassers ingesting drugs in the parking lot of the hotel, which is open to the street.

*///*

*///*

*///*

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981-7210

91.     The Best Western Plaintiff must comply with the Americans with

Disabilities Act and other laws that mandate that its facilities be open and accessible

to those with disabilities, *e.g.*, patrons who use a wheelchair. However, the sidewalks

around the hotel are inaccessible to guests. The images below show typical conditions

on the Polk Street side of the hotel:

///

///

///

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





92.     Despite the efforts and hard work of hotel employees, the conditions on

the sidewalks mortify and scare guests. Here are some recent online reviews:

> "The staff is amazing & work really hard to make their guests comfortable. That being said; if your room is near the alley you get to listen to screaming all night and smell the outside toilet. Every morning the staff has to pressure wash the poo off the driveway and sidewalk. The smell doesn't go away. It's a great hotel. It would be amazing in another location and where guests felt safe."

> ****

> "Sirens every 20 minutes, homeless and drugs were on all

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

35
1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

1  streets surrounding the hotel. Trash on all the sidewalks,
   as well as people, sleeping and living there."

2

3                              ****

4  "Typical Best Western but the area is terrible. Lots of
   homeless, drugged people. Walking is not recommended."

5

6                              ****

   "There's a lot of noise from homeless people at night, hard
7  to sleep and unsafe to walk at night."

**H.    Defendant City and County of San Francisco**

8

9          93.    Defendant City and County of San Francisco is a municipal entity

10 existing under the laws of the State of California, with the capacity to sue and be

11 sued.

12                        **VI. CLAIMS FOR RELIEF**

13                     **FIRST CLAIM FOR RELIEF**
14       **Violation of Title II of the Americans with Disabilities Act**
                    **42 U.S.C. §§ 12131 et seq.**
15                **(Plaintiffs Mary Roe and Susan Roe)**

16         94.    Plaintiffs Mary Roe and Susan Roe re-allege and incorporate herein by

17 this reference each and every allegation set forth in Paragraphs 1 through 93 of this

18 Complaint as though set forth fully herein.

19

20         95.    The ADA provides that people with disabilities be afforded "the full and

21 equal enjoyment of the goods, services, facilities, privileges, advantages, or

22 accommodations of any place of public accommodation...."[13] Further, the ADA

23 ensures that transportation facilities are constructed to a set of standards that

24 ensures accessibility for the disabled. Sidewalks are the most common element of

25

26 transportation infrastructure, yet if they are not accessible, they pose great

27

28 _____
   [13] 42 U.S.C. § 12182(a).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

challenges and dangers to anyone in a wheelchair, dependent on a walker, or who has other mobility restrictions.

96.     Sidewalks are subject to the access requirements of Title II of the ADA and § 504 of the Rehabilitation Act.[14] Accordingly, sidewalk width requirements ensure that sidewalks are accessible for use by wheelchair-bound individuals.

97.     The minimum width for an ADA-compliant sidewalk is 36 inches.[15] "A public entity shall maintain an operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part."[16]

98.     Throughout the Tenderloin, the City fails to uphold its obligations to maintain clear and accessible sidewalks and public rights-of-way for its disabled residents and visitors, resulting in regular violations of the Americans with Disabilities Act. These ADA violations are obvious and known to the City both through its own inspections and various reports to the City of blocked sidewalks due to illegal sidewalk vending, crowds engaged in narcotics activities, encampments, piles of garbage, bicycle "chop shops," and similar obstructions. The City and its agents and employees have failed and continue to fail to provide reasonable accommodations for disabled persons using public sidewalks in the Tenderloin.

99.     The City is obligated to operate the "service, program, or activity" "so

---

[14] *Willits v. City of Los Angeles*, 925 F. Supp. 2d 1089, 1093 (C.D. Cal. 2013) ("Any public sidewalk over which the City of Los Angeles has responsibility to inspect and notify property owners of repair needs is a 'program, service, or activity' within the meaning of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.").

[15] 36 C.F.R. § 1191, app. D, § 403.5.1 ("the clear width of walking surfaces shall be 36 inches (915 mm) minimum").

[16] 28 C.F.R. § 35.133(a).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

that..., when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities."[17] Yet when "viewed in its entirety" public rights-of-way are not provided by the City to be "readily accessible to and useable" by individuals bound to wheelchairs and assistive walking devices.

100.    The discrimination and denial of access to the City's rights-of-way for persons with disabilities in the Tenderloin is the direct result of the City's policies and practices of tolerating: (a) crowds blocking sidewalks while selling, buying and ingesting narcotics; (b) widespread illegal sidewalk vending; (c) encampments; (d) garbage and biohazards accumulating on the sidewalks; and (d) activities such as the operation of a stolen bicycle chop shops that block the sidewalks. The City has failed to adopt or implement any adequate procedures for regularly inspecting and maintaining the pedestrian rights-of-way clear of these obstructions.

101.    As a direct and proximate result of the aforementioned acts, including but not limited to The City's deliberate indifference to the violation of plaintiffs Mary Roe's and Susan Roe's federally protected rights, and these plaintiffs have suffered pain, humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish. This deprives these plaintiffs' of their independence and prevents them from accessing the services and benefits of public establishments.

102.    Pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a(b), plaintiffs Mary Roe and Susan Roe are entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

///

---

[17] 28 C.F.R. § 35.150(a).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

**SECOND CLAIM FOR RELIEF**
**Violation of Section 504 of the Rehabilitation Act**
**29 U.S.C. §§ 794 *et seq.***
**(Plaintiffs Mary Roe and Susan Roe)**

103.    Plaintiffs Mary Roe and Susan Roe re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 93 of this Complaint as though set forth fully herein.

104.    Section 504 of the Rehabilitation Act of 1973 provides in relevant part:

> [N]o otherwise qualified individual with a disability …
> shall, solely by reason of his or her disability, be excluded
> from the participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity
> receiving Federal financial assistance….[18]

105.    Plaintiffs Mary Roe and Susan Roe are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City. The City is a recipient of federal financial assistance and therefore subject to Section 504. The City and its agents and employees have violated and continue to violate Section 504 of the Rehabilitation Act by excluding plaintiffs Mary Roe and Susan Roe from participation in, denying them the benefits of, and subjecting them to discrimination regarding the benefits and services involved in utilizing public rights-of-way based solely on their disability.

106.    Upon information and belief, said discrimination occurred with deliberate intent and/or reckless disregard of plaintiffs Mary Roe's and Susan Roe's rights. These plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing this action.

///

_____
[18] 29 U.S.C. § 794(a).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

**THIRD CLAIM FOR RELIEF**
**Violation of California Disabled Persons Act**
**California Civil Code §§ 54 *et seq.***
**(Plaintiffs Mary Roe and Susan Roe)**

107.    Plaintiffs Mary Roe and Susan Roe re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 93 of this Complaint as though set forth fully herein.

108.    California's Disabled Persons Act codifies requirements that ensure equal and full access to individuals with disabilities. That Act provides, in part:

> Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places.[19]

Further,

> Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices . . . and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.[20]

109.    Plaintiffs Mary Roe and Susan Roe seek injunctive relief and the cost of attorneys' fees in bringing this action.

**FOURTH CLAIM FOR RELIEF**
**Public Nuisance**
**California Civil Code §§ 3490 *et seq.***
**(All Plaintiffs)**

110.    All plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 93 of this Complaint as though set

---

[19] Cal. Civ. Code § 54(a).
[20] Cal. Civ. Code § 54.1(a)(1).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

40
1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

forth fully herein.

111.   California has defined nuisance as:

> Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of,… any public park, square, street, or highway, is a nuisance.[21]

112.   The nuisance statute "is an expression of the Legislature's public policy against public nuisances, and it is plainly aimed at protecting the public from the hazards created by public nuisances."[22] In addition to health and safety hazards, "[a] reduction in property values caused by activities on a neighboring piece of land, and an assault on the senses by noise, dust, and odors, are just the kinds of harm that common law suits to abate a nuisance are designed to redress."[23] A public nuisance is the substantial and unreasonable interference with a public right.[24]

113.   As described above, the City, by its failure to maintain the public property under its control and to enforce the laws requiring the same, is perpetuating and facilitating a public nuisance.

114.   All plaintiffs have experienced a substantial and unreasonable interference with the enjoyment of their property, whether that be an apartment, a home, or commercial property, and with their right of free passage and use; each has suffered and continues to be threatened with respect to his, her, or its health and welfare, by reason of the crowds blocking sidewalks and public spaces while engaged

---

[21] Cal. Civ. Code § 3479.
[22] *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 136 (2017).
[23] *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 505 (7th Cir. 1996).
[24] *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 938 (1996).

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

in illegal narcotic activities and other dangerous and injurious conduct, illegal street vending, the presence of encampments, trash, human waste, biohazards and other nuisances on the sidewalks and public spaces outside their homes and businesses.

115.    Each plaintiff has been damaged in his, her, or its own right, in a manner specially injurious to himself, herself, or itself. No plaintiff consented to the City's conduct.

116.    Plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing this action.

### FIFTH CLAIM FOR RELIEF
**Private Nuisance**
**California Civil Code §§ 3501 *et seq.***
**(All Plaintiffs)**

117.    All plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 93 of this Complaint as though set forth fully herein.

118.    Each plaintiff owns, leases, occupies, or otherwise controls all of a portion of the home or business identified. The City's actions and inactions have created conditions or permitted conditions to exist that are harmful to the health, are indecent and offensive to the senses, obstruct the free passage and use of public parks, squares, streets, highway, and sidewalks, permit unlawful sales and consumption of illicit narcotics, illegal street vending, and constitute a fire hazard, as described supra.

119.    The City's conduct has been and is intentional and unreasonable, or unintentional but negligent or reckless. Alternatively, the conditions permitted to exist were the result of abnormally dangerous activity that substantially interfered

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981–7210

42
1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

with each plaintiff's use or enjoyment of his, her, or its land that would reasonably annoy or disturb an ordinary person. No plaintiff consented to the City's conduct; each was harmed; the City's conduct was a substantial factor in causing the harm; and the seriousness of the harm outweighs any public benefit of such conduct.

120.    Plaintiffs seek no monetary damages hereunder and assert this cause of action for the purpose of obtaining equitable and injunctive relief only. Accordingly, the City is not entitled to any claim of immunity, pursuant to California Government Code § 814.

**SIXTH CLAIM FOR RELIEF**
**Violation of Due Process Clause, State-Created Danger Doctrine**
**42 U.S.C. § 1983; U.S. Const. Amend. XIV**
**(All Plaintiffs)**

121.    All plaintiffs re-allege and incorporate herein by this reference each and every allegation set forth in Paragraphs 1 through 93 of this Complaint as though set forth fully herein.

122.    By the acts and omissions described above, the City has affirmatively created or increased the risk that plaintiffs would be exposed to dangerous conditions, which placed plaintiffs specifically at risk, and plaintiffs, and each of them, have been harmed as a result.

123.    The City knew or should have known that its acts or omissions specifically endangered plaintiffs, and the City was deliberately indifferent thereto.

124.    Plaintiffs seek injunctive relief and the cost of attorneys' fees in bringing this action.

**VII. DEMAND FOR JUDGMENT**

WHEREFORE, plaintiffs pray for judgment against defendant and County of San Francisco, as follows:

1.    Injunctive/equitable relief in a manner to be determined by law,

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981-7210

including such relief as is necessary as to redress the harms caused by defendant's affirmative acts;

2.      An award of costs of suit, including attorneys' fees, as permitted by law; and

3.      Such other and further relief as this Court deems just and proper.

Dated: July 26, 2024                           WALKUP, MELODIA, KELLY & SCHOENBERGER

                                                              KLINE + SPECTER


By: _____
        MICHAEL A. KELLY
        RICHARD H. SCHOENBERGER
        MATTHEW D. DAVIS
        ASHCON MINOIEFAR

        SHANIN SPECTER
        ALEX VAN DYKE

        Attorneys for Plaintiffs

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

44
1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

**PROOF OF SERVICE**

**Jane Roe, et al. v. City and County of San Francisco, et al.**
**USDC–Northern California Case No. 4:24-cv-01562-JST**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the county where the mailing took place,  My business address is 650 California Street, 26th Floor, City and County of San Francisco, CA 94108-2615.

On the date set forth below, I caused to be served true copies of the following document(s) described as

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF**

to:

| | |
|---|---|
| Shanin Specter, Esq. (Admitted Pro Hac Vice) Alex Van Dyke, Esq. KLINE & SPECTER, P.C. 1525 Locust Street Philadelphia, PA 19102 | **Co-Counsel for Plaintiffs** Telephone: (215) 772-1000 shanin.specter@klinespecter.com alex.vandyke@klinespecter.com escalanteyleana@uclawsf.edu |
| David Chiu, Esq., City Attorney Yvonne R. Meré, Esq., Chief Deputy City Attorney Wayne Snodgrass, Esq., Deputy City Attorney Tara M. Steeley, Esq., Deputy City Attorney Thomas S. Lakritz, Esq., Deputy City Attorney John H. George, Esq., Deputy City Attorney Kaitlyn M. Murphy, Esq., Deputy City Attorney Deputy City Attorneys City Hall, Room 234 1 Dr. Carlton B. Goodlett Place San Francisco, CA  94102-4682 | **Counsel for City and County of San Francisco** Steeley Direct: (415) 554-4655 Lakritz Direct: (145) 554-4628 George Direct:  (415) 554-4223 Murphy Direct: (415) 554-6762 Facsimile: (415) 554-4699 Mere Direct:  (415) 554-4700 Mere Facsimile:  (415) 554-4757 Yvonne.Mere@sfcityatty.org tara.steeley@sfcityatty.org tom.lakritz@sfcityatty.org john.george@sfcityatty.org kaitlyn.murphy@sfcityatty.org anita.murdock@sfcityatty.org celena.sepulveda@sfcityatty.org sophia.garcia@sfcityatty.org winnie.fong@sfcityatty.org |

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

| | | |
|---|---|---|
| 1 | John K. Dipaolo, Esq. | **Counsel for Plaintiff College of the** |
| | General Counsel | **Law, San Francisco** |
| 2 | Secretary to the Board of Directors | (related case USDC-Northern California |
| | College of the Law, San Francisco | case #4:20-cv-03033-JST) |
| 3 | 200 McAllister Street | |
| | San Francisco, CA 94102 | Telephone: (415) 565-4787 |
| 4 | | Facsimile: (415) 565-4825 |
| | | dipaolojohn@uchastings.edu |
| 5 | | |
| 6 | Lauren Hansen, Esq. | **Counsel for Proposed Intervenors** |
| | Melissa A. Morris, Esq. | **Hospitality House; Coalition on** |
| 7 | Public Interest Law Project | **Homelessness; and Faithful Fools** |
| | 449 15th Street, Suite 301 | (related case USDC-Northern California |
| 8 | Oakland, CA 94612-06001 | case #4:20-cv-03033-JST) |
| 9 | | Office: (510) 891-9794 |
| | | Fax: (510) 891-9727 |
| 10 | | lhansen@pilpca.org |
| | | mmorris@pilpca.org |
| 11 | | |
| 12 | Lili V. Graham, Esq. | **Counsel for Proposed Intervenors** |
| | Tiffany L. Nocon, Esq. | **Hospitality House; Coalition on** |
| 13 | Disability Rights California | **Homelessness; and Faithful Fools** |
| | 350 S. Bixel Street Suite 290 | (related case USDC-Northern California |
| 14 | Los Angeles, CA 90017-1418 | case #4:20-cv-03033-JST) |
| 15 | | Office: (213) 213-8000 |
| | | Fax: (213) 213-8001 |
| 16 | | lili.graham@disabilityrightsca.org |
| | | tiffany.nocon@disabilityrightsca.org |
| 17 | | |
| 18 | Michael David Key, Esq. | **Counsel for Proposed Intervenors** |
| | Jessica Berger, Esq. | **Hospitality House; Coalition on** |
| 19 | Bay Area Legal Aid | **Homelessness; and Faithful Fools** |
| | 1454 43rd Avenue | (related case USDC-Northern California |
| 20 | San Francisco, CA 94122 | case #4:20-cv-03033-JST) |
| 21 | | Office: (415) 982-1300 |
| | | Fax: (415) 982-4243 |
| 22 | | mkeys@baylegal.org |
| | | jberger@baylegal.org |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2

1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST

1  William S. Freeman, Esq.            **Counsel for Amicus Curiae**
   John Thomas H. Do, Esq.             **(ACLU Foundation of Northern**
2  ACLU Foundation of Northern         **California)**
   California                          (related case USDC-Northern California
3  39 Drumm Street                     case #:20-cv-03033-JST)
   San Francisco, CA 94111
4                                      Office: (415) 621-2943
                                       wfreeman@aclunc.org
5                                      jdo@aclunc.org

6

7        **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the
   document(s) with the Clerk of the Court by using the CM/ECF system.  Participants
8  in the case who are registered CM/ECF users will be served by the CM/ECF system.
   Participants in the case who are not registered CM/ECF users will be served by mail
9  or by other means permitted by the court rules.

10       I declare under penalty of perjury under the laws of the United States of
   America that the foregoing is true and correct and that I am employed in the office of
11 a member of the bar of this Court at whose direction the service was made.

12       Executed on July 26, 2024, at San Francisco, California.

13

14       _____

15       Kirsten Benzien

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
& SCHOENBERGER
A PROFESSIONAL CORPORATION
650  CALIFORNIA  STREET
26TH  FLOOR
SAN  FRANCISCO,  CA  94108
(415)  981–7210

3
1st AMENDED COMPLAINT – CASE NO. 4:24-cv-01562-JST