DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WAYNE SNODGRASS, State Bar #148137
TARA M. STEELEY, State Bar #231775
THOMAS S. LAKRITZ, State Bar #161234
JOHN H. GEORGE, State Bar #292332
KAITLYN M. MURPHY, State Bar #293309
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4655 (Steeley)
               (145) 554-4628 (Lakritz)
               (415) 554-4223 (George)
               (415) 554-6762 (Murphy)
Facsimile:     (415) 554-4699
E-Mail:        tara.steeley@sfcityatty.org
               tom.lakritz@sfcityatty.org
               john.george@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,

Plaintiffs,

vs.

CITY AND COUNTY OF SAN FRANCISCO, a California public entity,

Defendant.

Case No. 4:24-cv-01562-JST

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF**

[Fed. R. Civ. P. 12(b)(6)]

Hearing Date:    October 10, 2024
Time:            2:00 p.m.
Place:           Courtroom 6 – 2nd Floor

Trial Date:      None set.

Defendant's Notice and Motion to Dismiss FAC
CASE NO. 4:24-cv-01562-JST

n:\govlit\li2024\240805\01778702.docx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(6) .....................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................2

INTRODUCTION ....................................................................................................................2

BACKGROUND ......................................................................................................................3

    I.      PLAINTIFFS' INITIAL COMPLAINT .................................................................3

    II.     PLAINTIFFS' FIRST AMENDED COMPLAINT .................................................4

ARGUMENT ...........................................................................................................................6

    I.      LEGAL STANDARD .............................................................................................6

        A.     Failure To State A Claim .............................................................................6

    II.     PLAINTIFFS' STATE-LAW CLAIMS FAIL AS A MATTER OF LAW ...........7

        A.     The City Is Immune From Liability For Plaintiffs' State-Law Claims
              (Third, Fourth, Fifth Causes of Action) ....................................................7

            1.      The City is immune pursuant to the Emergency Services Act ........8

            2.      The City is immune for any failure to enforce laws .....................9

            3.      The City is immune for discretionary decisions ...........................10

            4.      The City is immune for any decision or action it took during the
                 COVID-19 and Tenderloin health emergencies ...........................11

        B.     Plaintiffs' DPA Claim Fails As A Matter Of Law (Third Cause of
              Action) ......................................................................................................11

        C.     Plaintiffs' Public and Private Nuisance Claims Fail As A Matter Of Law
              (Fourth and Fifth Causes of Action) ..........................................................12

    III.    PLAINTIFFS' STATE-CREATED DANGER CLAIM FAILS AS A MATTER
        OF LAW ...............................................................................................................15

        A.     The FAC Seeks to State A State-Created Danger Claim Based on
              Omissions, Which Is Inappropriate As A Matter Of Law ........................16

        B.     The FAC Lacks Plausible Allegations of a Sufficiently Particularized
              Danger ......................................................................................................17

        C.     The FAC Lacks Plausible Allegations Demonstrating Causation .............19

        D.     The FAC Lacks Plausible Allegations Demonstrating Deliberate
              Indifference ..............................................................................................20

            1.      Plaintiffs' Claims Are Too Attenuated ..........................................20

            2.      The FAC Lacks Plausible Allegations Of A Sufficiently Serious
               Injury .............................................................................................21

IV.     DISMISSAL WITHOUT LEAVE TO AMEND IS APPROPRIATE ..................22

CONCLUSION....................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adetuyi v. City & Cnty. of San Francisco*
    63 F. Supp. 3d 1073 (N.D. Cal. 2014) ....................................................5

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..............................................................6, 21

*Baskin v. Hughes Realty, Inc.*
    25 Cal. App. 5th 184 (2018) ................................................12

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*
    520 U.S. 397 (1997) ..............................................................20, 21

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ..............................................................6

*Bracken v. Okura*
    869 F.3d 771 (9th Cir. 2017) ................................................21

*Caldwell v. Montoya*
    10 Cal. 4th 972 (1995) ..........................................................10, 11

*Cato v. United States*
    70 F.3d 1103 (9th Cir. 1995) ................................................22

*Chavez v. United States*
    683 F.3d 1102 (9th Cir. 2012) ..............................................6

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*
    710 F.3d 946 (9th Cir. 2013) ................................................6

*Citizens for Odor Nuisance Abatement v. City of San Diego*
    8 Cal. App. 5th 350 (2017) ..................................................14

*City of Los Angeles v. Super. Ct.*
    62 Cal. App. 5th 129 (2021) ................................................8

*Corgan v. Keema*
    765 Fed.App'x 228 (9th Cir. 2019) ......................................22

*Davis v. Washington State Department of Social and Health Services*
    773 Fed.App'x 367 (9th Cir. 2019) ......................................22

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*
    489 U.S. 189 (1989) ..............................................................15

*Esparza v. Cnty. of Los Angeles*
    224 Cal. App. 4th 452 (2014) ..............................................7

*Farmers Ins. Exchange v. State of California*
  175 Cal. App. 3d 494 (1985) ........................................................................8

*Giannuzzi v. State of California*
  17 Cal. App. 4th 462 (1993) ........................................................................8

*Greenwood v. City of L.A.*
  89 Cal. App. 5th 851 (2023) ......................................................................11

*Guzman v. Cnty. of Monterey*
  178 Cal. App. 4th 983 (2009) ....................................................................10

*Hall v. City of Portland*
  No. 22-35705, 2023 WL 5527854 (9th Cir. Aug. 28, 2023) ........................17, 18, 19

*Hastings College of Law et al. v. City and County of San Francisco*
  No. 4:20-cv-3033-JST (N.D. Cal. Apr. 18, 2024) ....................................5, 6

*Hernandez v. City of San Jose*
  897 F.3d 1125 (9th Cir. 2018) ..............................................................21, 22

*In re Firearm Cases*
  126 Cal. App. 4th 959 (2005) ....................................................12, 13, 14, 15

*In re Garabed Melkonian Tr.*
  235 Fed.App'x 404 (9th Cir. 2007) ............................................................23

*In re Gilead Scis. Sec. Litig.*
  536 F.3d 1049 (9th Cir. 2008) ......................................................................7

*In re Tracht Gut, LLC*
  836 F.3d 1146 (9th Cir. 2016) ....................................................................23

*J.P. by & through Villanueva v. Cnty. of Alameda*
  803 F.App'x 106 (9th Cir. 2020) ..............................................................22

*Johnson v. City of Seattle*
  474 F.3d 634 (9th Cir. 2007) ......................................................................19

*Kennedy v. City of Ridgefield*
  439 F.3d 1055 (9th Cir. 2006) ..............................................................16, 22

*Keyes v. Santa Clara Valley Water Dist.*
  128 Cal. App. 3d 882 (1982) ........................................................................8

*Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*
  24 Cal. App. 4th 1036 (1994) ..............................................................12, 13

*L.W. v. Grubbs*
  92 F.3d 894 (9th Cir. 1996) ........................................................................20

*Labadie v. State of California*
   208 Cal. App. 3d 1366 (1989) ......................................................................8

*Lamberth v. Clark Cnty. Sch. Dist.*
   698 Fed.App'x 387 (9th Cir. 2017) ............................................................16

*Madani v. Cnty. of Santa Clara*
   No. 16-CV-07026-LHK, 2017 WL 2954643 (N.D. Cal. July 11, 2017) ..........................7, 8, 11

*Marsh v. Edwards Theatres Cir., Inc.*
   64 Cal. App. 3d 881 (1976) ......................................................................12

*Martinez v. High*
   91 F.4th 1022 (9th Cir. 2024) ..................................................................22

*Martinez v. Pac. Bell*
   225 Cal. App. 3d 1557 (1990) ..............................................................14, 15

*Melton v. Boustred*
   183 Cal. App. 4th 521 (2010) ..................................................................13

*Munger v. City of Glasgow*
   272 F.3d 1082 (9th Cir. 2000) ................................................................22

*Murguia v. Langdon*
   61 F.4th 1096 (9th Cir. 2023) ................................................................22

*Nealy v. County of Orange*
   54 Cal. App. 5th 594 (2020) ....................................................................8

*Nicholson v. City of L.A.*
   935 F.3d 685 (9th Cir. 2019) ..................................................................22

*Nunn v. State of California*
   35 Cal.3d 616 (1984) ..........................................................................10

*Patel v. Kent Sch. Dist.*
   648 F.3d 965 (9th Cir. 2011) ............................................................16, 20, 21

*Penilla v. City of Huntington Park*
   115 F.3d 707 (9th Cir. 1997) ..................................................................22

*People v. ConAgra Grocery Prods. Co.*
   17 Cal. App. 5th 51 (2017) ....................................................................13

*Phommathep v. Cnty. of Tehama*
   No. 22-15132, 2023 WL 2400802 (9th Cir. Mar. 8, 2023) ................................16, 19

*Polanco v. Diaz*
   76 F.4th 918 (9th Cir. 2023) ..................................................................22

*Quigley v. Garden Valley Fire Prot. Dist.*
　7 Cal.5th 798 (2019) ...................................................................................7

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
　442 F.3d 741 (9th Cir. 2006) ......................................................................5

*Sandoval v. County of San Diego*
　985 F.3d 657 (9th Cir. 2021) ....................................................................22

*Schaeffer v. Gregory Vill. Partners, L.P.*
　105 F. Supp. 3d 951 (N.D. Cal. 2015 ........................................................14

*Schmier v. U.S. Court of Appeals for Ninth Circuit*
　279 F.3d 817 (9th Cir. 2002) ....................................................................23

*Schooler v. State of California*
　85 Cal. App. 4th 1004 (2000) .................................................................7, 8

*Sinclair v. City of Seattle*
　61 F.4th 674 (9th Cir. 2023) .......................................................16, 17, 18

*Solis v. Cnty. of Los Angeles*
　514 F.3d 946 (9th Cir. 2008) ....................................................................21

*Steinle v. City & Cnty. of San Francisco*
　230 F. Supp. 3d 994 (N.D. Cal. 2017) .................................................17, 19

*Steinle v. City & Cty. of San Francisco*
　919 F.3d 1154 (9th Cir. 2019) ..................................................................10

*Sutton v. Golden Gate Bridge, Highway & Transp. Dist.*
　68 Cal. App. 4th 1149 (1998) ...................................................................10

*Taylor by & through Davies v. Cnty. of Los Angeles*
　No. 20-56021, 2021 WL 4596583 (9th Cir. Oct. 6, 2021) .........................19

*Wood v. Ostrander*
　879 F.2d 583 (9th Cir. 1989) ....................................................................21

**Statutes**
Cal. Civ. Code
　§ 3493 .....................................................................................................12

Cal. Gov't Code
　§ 815.2(b) ................................................................................................10
　§ 818.2 ................................................................................................9, 10
　§ 820.2 .....................................................................................................10
　§ 855.4 .....................................................................................................11
　§ 8655 ...................................................................................................8, 9
　§ 821 .......................................................................................................10

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................6

Fed. R. Civ. Proc. 15(a) ............................................................................................22

**Internet References**

Carolyn Stein
   S.F. nonprofits give foil and pipes to fentanyl users. Critics say it's making drug crisis worse
   *S.F. Chronicle*, July 20, 2024 .....................................................................................4

Nuala Bishari
   An unsanctioned overdose prevention site just opened in the Tenderloin. Here's what happened
   *S.F. Chronicle*, Sept. 1, 2023 ....................................................................................5

## NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**TO THE COURT AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 10, 2024 at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Jon S. Tigar, United States District Court, Oakland, California, Defendant City and County of San Francisco (the "City") will, and hereby does, move the Court for an order to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs allege six causes of action in the First Amended Complaint and seek only injunctive relief. ECF No. 50 ("FAC"), ¶ 11. The City moves to dismiss claims third through six for: violations of California Disabled Persons Act ("DPA"), public nuisance, private nuisance, and violation of the state-created danger doctrine, respectively. *Id.* at ¶¶ 107-124. The City moves to dismiss these claims without leave to amend because Plaintiffs have failed to state any viable cause of action against the City and their deficiencies cannot be cured through further amendment.

This motion is based on this Notice of Motion and Motion to Dismiss and Memorandum of Points and Authorities filed herewith, the file in this case, the argument of counsel at the hearing, and any such further matters as the Court deems appropriate.

Dated:  August 9, 2024

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
WAYNE SNODGRASS
TARA M. STEELEY
THOMAS S. LAKRITZ
JOHN H. GEORGE
KAITLYN M. MURPHY
Deputy City Attorneys

By: */s/ Thomas S. Lakritz*
THOMAS S. LAKRITZ

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The City and County of San Francisco (the "City") spends hundreds of millions of dollars each year addressing homelessness, substance abuse, and crime: providing offers of shelter and other direct services to persons experiencing homelessness, harm reduction and related services to people dealing with substance abuse, and bringing local as well as state, and federal law enforcement resources to address crime. Like cities across the nation, the City faces challenging street conditions due to the fentanyl and drug crisis and that problem unfortunately is particularly acute in parts of the Tenderloin.

Plaintiffs—five individuals and three corporate entities—are not satisfied with the City's policy and funding choices or the City's efforts or results in the Tenderloin. Plaintiffs implausibly allege the City treats "[the Tenderloin] as a 'containment zone' for narcotic activities." While Plaintiffs paint a sordid picture of the real impacts of drug addiction, drug use, and illegal activity in the Tenderloin, most of the Plaintiffs' claims against the City are legally infirm. Despite the Court's previous order explaining why it granted the City's motion to dismiss (except for claims under the ADA and Section 504), Plaintiff have not addressed or resolved the legal infirmities in their First Amended Complaint ("FAC"), which is why San Francisco now seeks to dismiss them without leave to amend.

As with their original complaint, Plaintiffs' FAC seeks to challenge what they perceive as the City's lack of civil and criminal enforcement in the Tenderloin. Plaintiffs' disagreement with how the City makes funding and resources decisions in the Tenderloin, and throughout the City, is a policy and political quarrel, not a legally cognizable claim. To the extent that Plaintiffs have stated a state-law claim against the City, the City is immune under various statutory immunities.

Plaintiffs' third cause of action under the California Disabled Persons Act ("DPA") fails because it only cites to two California statutes, which by themselves do not require modifications to facilities. Plaintiffs' fourth and fifth cause of actions for public and private nuisance fail because Plaintiffs did not and cannot allege that the harm they suffered was different that any harm suffered by the general public (public nuisance) and because Plaintiffs did not and cannot allege that they have a property interest in the City's sidewalks and public right-of-way (private nuisance). Moreover,

Plaintiffs did not and cannot allege the factual or legal causation between the City's actions or inactions and the alleged nuisances. Finally, Plaintiffs sixth cause of action (state-created danger of the Due Process Clause) fails because (1) Plaintiffs' allegations are premised on the City's inaction, not affirmative conduct; (2) Plaintiffs have not alleged that any of the City's inaction or action was directed an them; (3) Plaintiff have not and cannot allege the factual or legal causation required to state a state-created danger claim; and (4) Plaintiffs have not and cannot plausibly allege the City acted with deliberate indifference to the risk of their alleged injuries.

Accordingly, as explained in greater detail below, the Court should dismiss the third, fourth, fifth, and sixth causes of action in Plaintiffs' FAC without leave to amend.

**BACKGROUND**

## I.    PLAINTIFFS' INITIAL COMPLAINT

Individual Plaintiffs and Tenderloin residents Jane, Mary, Susan, John, and Barbara Roe, the Phoenix Hotel Plaintiffs (Phoenix Hotels SF LLC and Funky Fun LLC) and the Best Western Plaintiff (2930 El Camino LLC) brought this lawsuit against the City alleging the City harmed them by treating the Tenderloin as "containment zone" for narcotics activities. ECF No. 1. Plaintiffs Mary and Susan Roe brought Americans With Disabilities Act ("ADA"), Rehabilitation Act ("Section 504"), and DPA claims. All Plaintiffs brought federal constitutional claims (Due Process, Equal Protection, and State-Created Danger), California statutory claims (public nuisance, private nuisance, and negligence), and a California Constitution Article I, § 1 claim. *Id.*

The City moved to dismiss each of Plaintiffs' claims and, following briefing and a hearing, the Court issued the Order Granting in Part and Denying in Part Defendant's Motion to Dismiss on July 19, 2024. ECF No. 46 ("Motion to Dismiss Order"). The Court found "Plaintiffs essentially want this Court to order the City to alter its enforcement policies surrounding drug use and encampments in the Tenderloin," but ruled Plaintiffs lacked standing to do so. *Id.* at 4-5. Accordingly, the Court dismissed Plaintiffs' federal constitutional claims. *Id.* The Court dismissed Plaintiffs' California Constitution claim because it imposes no duty on the City and Plaintiffs' state law claims because the City is immune under Government Code Section 814. *Id.* at 10-11. The Court denied the motion to dismiss Susan and Mary Roe's ADA and Section 504 claims. *Id.* at 6-9.

## II.     PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs filed their First Amended Complaint ("FAC") on July 26, 2024. ECF No. 50. The FAC alleges the same disability claims on behalf of Susan and Mary Roe as the initial Complaint (ADA, Section 504, and DPA), but only alleges public nuisance, private nuisance, and state-created danger claims on behalf of all Plaintiffs. *Id.* ¶¶ 94-124. Like the initial Complaint, the FAC prays for injunctive relief and attorneys' fees. *Id.* pp. 43-44.

In its Motion to Dismiss Order, the Court concluded that Plaintiffs' "claims are premised on the City's 'de facto' policy of non-enforcement in the Tenderloin and the affirmative acts of non-parties," and did not allege any affirmative act by the City. ECF No. 46 at 4. The FAC attempts to remedy this by adding "Section II. The City Conduct That Harms Plaintiffs" (FAC, pp. 4-12), but these allegations are no more than conclusory allegations of City actions unconnected to the harms Plaintiffs allege. This section contains six subsections, five of which allege conduct by the City or others supported by the City and the sixth repeats the initial Complaint's claim that the City fails to enforce the law in the Tenderloin.

First, Plaintiffs attempt to allege that the City "directly and indirectly distributes drug paraphernalia to addicts who live in sidewalk tents and encampments in the Tenderloin," but when it comes to actually alleging direct City action, the FAC wavers, claiming that the "Department of Public Health and other City departments and agencies distribute ***and/or*** facilitate the distribution of drug paraphernalia." FAC, ¶ 13, 14 (emphasis added). The FAC contains no facts to support even this qualified allegation of City action, which is undermined by the only article cited in support. The *San Francisco Chronicle* article the FAC relies on makes clear that "the city does not provide the equipment or explicitly fund the purchases [of fentanyl smoking equipment]," which is provided by non-profits. Carolyn Stein, S.F. nonprofits give foil and pipes to fentanyl users. Critics say it's making drug crisis worse, *S.F. Chronicle*, July 20, 2024 (cited by FAC, ¶ 15, n.4).

The FAC next alleges the City provides services to people experiencing homelessness in the Tenderloin, but would not do so in other neighborhoods. FAC, ¶¶ 17-21. To support this allegation, Plaintiffs cherry pick three programs that the City highlighted in its opposition to the *UC Law* plaintiffs' motion to enforce the stipulated injunction. *Id.* ¶¶ 18-20; Opposition to Motion to Enforce,

*Hastings College of Law et al. v. City and County of San Francisco,* No. 4:20-cv-3033-JST (N.D. Cal. Apr. 18, 2024) ("*UC Law*"), ECF No. 137 at pp. 6-8.[1] Plaintiffs' assertion that the very City actions highlighted to demonstrate the City's efforts to reduce homelessness and compliance with the *UC Law* injunction is not just cynical, it's wrong. As the *UC Law* opposition and its supporting declarations make clear, the City offers services to the homeless City-wide. *Id.* at pp. 5-10.

Third, the FAC alleges that the City purchased a building at 822 Geary, but never opened a safe consumption site there, and that it operated a safe consumption site at the Tenderloin Center from January to December 2022. FAC, ¶¶ 23-28. As the FAC makes clear, the 822 Geary site has *never* been used as a safe consumption site and the Tenderloin Center ceased operating over a year and a half ago.

Fourth, Plaintiffs claim the City "indirectly" supported a drug consumption site operated by "renegade" employees of a local non-profit. FAC ¶¶, 29-32. But, Plaintiffs fail to allege a single fact supporting their claim of even indirect support. The FAC contains nothing supporting Plaintiffs' claim that the City had "advance notice" and their inference of City support based on the City's funding of an unidentified non-profit is wholly undermined by the very news article they cite. *Id.* ¶ 32, n.10; Nuala Bishari, An unsanctioned overdose prevention site just opened in the Tenderloin. Here's what happened, *S.F. Chronicle*, Sept. 1, 2023 ("By not asking permission, volunteers told me, they couldn't be denied. Not wanting to put the organizations they worked for in jeopardy, they all took the day off, showing up to the site as individuals."). These allegations effectively reduce to another allegation of failing to enforce the law by not prosecuting the site's operators—an allegation that Plaintiffs lack standing to make. *See* ECF No. 46 at 3-5.

Fifth, the FAC alleges "the City and City-funded organizations, with no advance publicity or local input, have opened numerous 'wellness,' 'service' and 'support' centers in the Tenderloin under the guise of compassion for substance abusers." FAC, ¶ 33. Plaintiffs do not bother to identify a single "center" or describe what these unidentified entities do, let alone describe what they do wrong.

---

[1] The Court may take judicial notice of pleadings in related cases. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of briefs, transcripts, and various other court filings from a related case); *Adetuyi v. City & Cnty. of San Francisco*, 63 F. Supp. 3d 1073, 1080 (N.D. Cal. 2014) ("The Court may take judicial notice of court filings.").

Finally, Plaintiffs reassert their previously-dismissed allegations that the City "does not enforce narcotics laws that [addicts] foreseeably violate and other crimes that they foreseeably commit." FAC, ¶ 34.

Although it is not included in the "City Conduct" Section, and is instead specific to Plaintiff Jane Roe, the FAC alleges that the City has extended the use of the COVA Hotel as a non-congregate homeless shelter, which has been its use since 2020. FAC, ¶¶ 45-49 (Plaintiff Jane Roe Subsection). As Plaintiffs acknowledge in a recent letter to the Mayor and Board of Supervisors bemoaning the COVA's use as a homeless shelter, it changed "from a tourist hotel into a shelter-in-place location for the homeless at the start of the pandemic." *See* City's Request for Judicial Notice ("RJN"), Exhibit L, at p. 5. Plaintiffs' allegations regarding the COVA Hotel are perplexing given that the *UC Law* motion to enforce specifically calls for this Court to order the City to reinstitute the shelter-in-place program (*UC Law* ECF No. 139 at 9-10) and given that Plaintiff Best Western very publicly pleaded with the City to purchase its hotel and turn it into a homeless shelter. *See* RJN, Exhibit M.

Just as in their initial Complaint, Plaintiffs' FAC challenges policy decisions and raises only conclusory and insufficient allegations that do not support the legal claims they attempt to assert.

## ARGUMENT

### I.   LEGAL STANDARD

#### A.   Failure To State A Claim

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). A court "must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "[t]he plausibility standard is not akin to a probability requirement," it requires

"more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). Thus, a complaint that offers mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation and internal quotation marks omitted); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## II.     PLAINTIFFS' STATE-LAW CLAIMS FAIL AS A MATTER OF LAW

### A.     The City Is Immune From Liability For Plaintiffs' State-Law Claims (Third, Fourth, Fifth Causes of Action)

California courts have held that when injunctive relief would require a public entity to expend funds or impose legal or financial burdens on the public entity, then the public entity is immune under California Government Code section 815 and the statutory immunities provided in the Government Claims Act.[2] *See, e.g.*, *Schooler v. State of California*, 85 Cal. App. 4th 1004, 1014 (2000); *Esparza v. Cnty. of Los Angeles*, 224 Cal. App. 4th 452, 460 (2014) ("Plaintiffs may not circumvent the legislative immunity granted … simply by alleging injunctive relief."); *Madani v. Cnty. of Santa Clara*, No. 16-CV-07026-LHK, 2017 WL 2954643, at *14 (N.D. Cal. July 11, 2017) (discussing *Schooler*).

In *Schooler*, the plaintiff filed an action seeking an "injunction to abate a nuisance, costs of efforts to abate the nuisance and general damages arising from loss of use and the diminished value of his property caused by erosion of a state-owned adjacent bluff." *Schooler*, 85 Cal. App. 4th at 1007. The plaintiff argued that the state was not entitled to claim a statutory immunity under Section 814 to his injunctive relief claim. *Id.* The court of appeal rejected this argument and held that Section 814 "*does not resurrect legal and financial burdens eliminated by the immunity provisions of the Tort Claims Act.*" *Id.* at 1014 (emphasis added.)

Here, the Court found that *Schooler* applied to Plaintiffs' action because "the injunctive relief Plaintiffs seek would require the City to enforce its drug and anti-encampment laws to a greater extent that it does now. As in Schooler, this would create legal and financial burdens on the City that the Tort Claims Act guards against." ECF No. 46 at 11-12.

---

[2] "When first enacted, the statute was known as the Tort Claims Act; the Legislature later retitled it the Government Claims Act. *See Quigley v. Garden Valley Fire Prot. Dist.*, 7 Cal.5th 798, 803 n.1 (2019).

Courts have applied the statutory immunities provided in the Government Claims Act in civil rights and nuisance cases, similar to Plaintiffs' claims in this matter. *See*, *e.g.*, *Mandani*, 2017 WL 2954643, at *1, 15 (disability, age, and national origin discrimination under FEHA); *Schooler*, 85 Cal. App. 4th at 1015 (nuisance).

Accordingly, the City moves to dismiss Plaintiffs' third cause of action (Disabled Persons Act); fourth cause action (public nuisance) and fifth cause of action (private nuisance) without leave to amend based on the following statutory immunities.

Moreover, "[s]ince all California governmental tort liability flows from the California [Government] Claims Act [citations], the plaintiff must plead facts sufficient to show his [or her] cause of action lies outside the breadth of any applicable statutory immunity. [Citations.] He [or she] must plead 'with particularity,' '[e]very fact essential to the existence of statutory liability.'" *Keyes v. Santa Clara Valley Water Dist.*, 128 Cal. App. 3d 882, 885-886 (1982); *see also Giannuzzi v. State of California*, 17 Cal. App. 4th 462, 467 (1993) (same); *Nealy v. County of Orange*, 54 Cal. App. 5th 594, 602 (2020) (same). Thus, to allege a viable cause of action against the City, Plaintiffs were required to allege facts showing that the City's actions did not fall within any statutory immunity. *See*, *e.g.*, *City of Los Angeles v. Super. Ct.*, 62 Cal. App. 5th 129, 148 (2021)

### 1.     The City is immune pursuant to the Emergency Services Act

California Government Code section 8655, which is part of the California Emergency Services Act, provides:

> The state or its political subdivisions shall not be liable for any claim based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty on the part of a state or local agency or any employee of the state or its political subdivisions in carrying out the provisions of this chapter.

Cal. Gov't Code § 8655.

In *Labadie v. State of California*, 208 Cal. App. 3d 1366, 1369 (1989), the court noted

> "The purpose of the statute is obvious. In those cases where the state must take the steps necessary to quell an emergency, it must be able to act with speed and confidence without fear of incurring tort liability. [Citation.]" ([*Farmers Ins. Exchange v. State of California*] 175 Cal. App. 3d 494, 505 (1985).) …. As a result, the immunity granted under this section is significantly broader than that provided in Government Code section 820.2, and is specifically extended to

encompass not only the "discretionary" act but also the "performance of" or "failure to perform" that act..

On February 25, 2020, Mayor London Breed proclaimed a local emergency due to COVID-19.[3] The Mayor's proclamation required, among other things, "[a]ll City and County officers and employees take all steps requested by the Director of Public Health to prevent the spread of COVID-19 and to prevent or alleviate illness or death due to the virus." On March 4, 2020, Governor Gavin Newsom proclaimed of a state emergency related to COVID-19.[4] The Mayor's proclamation expired on June 30, 2023.[5] Governor Newsom's proclamation expired February 28, 2023.[6]

On December 17, 2021, Mayor Breed proclaimed a local emergency to address the drug overdoses in the Tenderloin.[7] In her proclamation, Mayor Breed found, among other things, "[t]he rapidly deteriorating conditions in the Tenderloin caused by the opioid crisis put the lives of San Franciscans at serious risk, and the City must take action beyond the City's ordinary response capabilities, including re-appropriating resources to address the crisis, directing personnel from City departments to assist with the response, implementing crisis response sites for individuals to obtain medical help and services, and quickly procuring goods and services to address the crisis." Mayor Breed's Tenderloin proclamation expired on June 30, 2023.[8]

Because Mayor Breed's COVID-19 and Tenderloin proclamations were issued under the authority in California's Emergency Services Act, Section 8655's immunity blocks all of Plaintiffs' state law claims between February 25, 2020, through June 30, 2023, to the extent they are based on actions or inactions related to the two emergencies.

### 2.    The City is immune for any failure to enforce laws

California Government Code section 818.2 states: "*A public entity is not liable for an injury caused* by adopting or failing to adopt an enactment or *by failing to enforce any law*." Cal. Gov't Code

---

[3] *See* Exhibit A to the City's RJN.

[4] *See* Exhibit B to the City's RJN.

[5] *See* Exhibits C and D to the City's RJN.

[6] *See* Exhibit E to the City's RJN.

[7] *See* Exhibit F to the City's RJN.

[8] *See* Exhibits G, H, I, and J to the City's RJN.

§ 818.2 (emphasis added). The companion section, Government Code section 821 extends the same immunity to the public employee: "A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or *by his failure to enforce an enactment*." *See*, *e.g.*, *Guzman v. Cnty. of Monterey*, 178 Cal. App. 4th 983, 996 (2009). This immunity is intended to shield discretionary decisions to enforce laws: "This section recognizes that the wisdom of legislative or quasi-legislative action, and the discretion of law enforcement officers in carrying out their duties, should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained." *Id*. at p. 996 (quoting Cal. Law Revision Com. com. to Cal. Gov't Code § 818.2); *see also Nunn v. State of California*, 35 Cal.3d 616, 622 (1984) (the immunity under section 818.2 attaches only to discretionary functions). These immunity provisions bar Plaintiffs' state law claims against the City arising out of the alleged failure to enforce laws or regulations. *See*, *e.g.*, *Sutton v. Golden Gate Bridge, Highway & Transp. Dist.*, 68 Cal. App. 4th 1149, 1165 (1998) (public entity not liable for failing to prohibit lane changing or enforcing speed limits).

Plaintiffs' state law claims are premised on the City's failure to enforce laws in the Tenderloin and the failure to maintain the public property under its control. Such allegations cannot overcome the statutory immunities set forth in Sections 818.2 and 821.

### 3.     The City is immune for discretionary decisions

"[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2.[9] "[I]nstead of interpreting 'discretionary' literally, the focus should be on the policy considerations underlying the governmental entity's claim of immunity." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160-61 (9th Cir. 2019). Specifically, discretionary functions are those that involve "*basic policy decisions* which have been expressly committed to coordinate branches of government." *Id*. at 1161 (quoting *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995)). Thus, this immunity prevents judicial interference in "areas of quasi-legislative

---

[9] If City employees are immune from liability under California Government Code section 820.2, the City is also immune from liability for the same conduct. *See* Cal. Gov't Code § 815.2(b).

policy-making" that "might even in the first instance affect the coordinate body's decision-making

process." *Caldwell*, 10 Cal. 4th at 793-94.

Here, Plaintiffs seek to challenge the discretionary decisions of the Executive and Legislative

branches of the City's government (FAC, ¶¶ 12-37), and this Court has determined "that federal courts

are generally not the proper forum for resolving [such] claims." ECF No. 46 at p. 5.

### 4.    The City is immune for any decision or action it took during the COVID-19 and Tenderloin health emergencies

California Government Code section 855.4 provides immunizes public employee with respect

to claims based on the employee's action or inaction to prevent or control the spread to disease:

> decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion vested in the public entity or the public employee, whether or not such discretion be abused.

Cal. Gov't Code § 855.4. Section 855.4 focuses on the a public employee's or entity's " 'decision to

perform or not to perform any act.'" *Greenwood v. City of L.A.,* 89 Cal. App. 5th 851, 862 (2023).

Because Section 855.4 requires that the decision be the "result of the exercise of discretion" vested in

the public entity or employee, it requires identifying "policy" decisions, which are distinct from

"ministerial" acts. *Id*. at 864.

Here, as Plaintiffs claims are all premised on policy decisions made by the Executive and

Legislative branches of the City's government in addressing the COVID-19 and drug emergencies in

the City and in the Tenderloin. FAC, ¶¶ 12-37. As such, the City is immune from any liability for

these decisions.

### B.    Plaintiffs' DPA Claim Fails As A Matter Of Law (Third Cause of Action)

As noted above, courts have applied the statutory immunities provided in the Government

Claims Act in civil rights cases, like the DPA. *See*, *e.g.*, *Mandani*, 2017 WL 2954643, at *1, 15

(disability, age, and national origin discrimination under FEHA). Here, this Court noted that Mary's

and Susan's claim "would require the City to enforce its drug and anti-encampment laws to a greater

extent than it now does." ECF No. 46 at 12. And "this would create legal and financial burdens on the

City that the Tort Claims Act guards against." *Id*. Accordingly, as this Court previously held, "the City

is entitled [to] immunity on [Mary and Susan's DPA claim]." ECF No. 46 at 12.

On the merits, Plaintiffs fail to state a cognizable DPA claim. Mary and Susan do not allege any details or facts supporting their DPA claims. Instead, they simply quote California Civil Code section 54(a) and a portion of section 54.1(a)(1). FAC, ¶ 108. But California courts have made clear that "Sections 54 and 54.1 do not, by themselves, require []modifications to [] facilities." *Baskin v. Hughes Realty, Inc.*, 25 Cal. App. 5th 184, 191 (2018); see also *Marsh v. Edwards Theatres Cir., Inc.* 64 Cal. App. 3d 881, 886, 891 (1976). Any such requirement—to make a facility accessible—must arise from another source. *Id.* And California courts have held that the possible sources for such a requirement can be found in the ADA or separate California statutes. *Id.* Because the FAC does not allege the statutory basis for any requirement to make the City's facilities accessible, Mary and Susan fail to state a viable DPA claim.

### C.    Plaintiffs' Public and Private Nuisance Claims Fail As A Matter Of Law (Fourth and Fifth Causes of Action)

Plaintiffs' public nuisance claim is premised on the City's "failure to maintain the public property under its control and to enforce the laws requiring the same," which Plaintiffs contend "is perpetuating and facilitating a public nuisance." FAC, ¶ 113. Plaintiffs' allegations are insufficient to state a public nuisance cause of action.

Where plaintiffs only allege harm that is experienced by the general public, they fail to state a public nuisance cause of action: A private party can maintain an action based on a public nuisance "if it is specially injurious to himself, *but not otherwise*." Cal. Civ. Code § 3493 (emphasis added). Thus, "[*t*]*he damage suffered must be different in kind and not merely in degree from that suffered by other members of the public.*" Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange,* 24 Cal. App. 4th 1036, 1040 (1994) (emphasis added). Here, Plaintiffs allege that conditions which allegedly create a public nuisance impact the entire Tenderloin, including residents, businesses, and visitors. FAC, ¶¶ 6-37. Because Plaintiffs have alleged the harm they experienced is the same alleged harm caused to the general public, they failed to state a public nuisance cause of action and their claim should be dismissed with prejudice. *See Koll-Irvine Ctr. Prop. Owners Ass'n,* 24 Cal. App. 4th at 1040-41.

Moreover, to state a nuisance cause of action, a plaintiff must establish the defendant had a duty to act. *In re Firearm Cases*, 126 Cal. App. 4th 959, 988 (2005). "The conduct necessary to make the actor liable for either a public or a private nuisance may consist of (a) an act; or (b) *a failure to act*

*under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.*" *Id*. at 988 (citation omitted). Thus, "[l]iability for nuisance does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance; *the critical question is whether the defendant created or assisted in the creation of the nuisance.*" *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 109 (2017) (emphasis added) (citation omitted). Here, Plaintiffs do not allege the City created the alleged public nuisance; nor do Plaintiffs allege the City had a mandatory duty with respect to any of the conduct alleged in the Complaint. Plaintiffs' public nuisance action therefore fails. *See In re Firearm Cases*, 126 Cal. App. 4th at 988.

Plaintiffs' private nuisance claim is premised on the following:

> The City's actions and inactions have created conditions or permitted conditions to exist that are harmful to the health, are indecent and offensive to the senses, obstruct the free passage and use of public parks, squares, streets, highway, and sidewalks, permit unlawful sales and consumption of illicit narcotics, illegal street vending, and constitute a fire hazard….

FAC, ¶ 118. Plaintiffs' allegations are insufficient to state a private nuisance cause of action.

To allege a private nuisance cause of action, a plaintiff must allege a disturbance in their property rights (that is, property rights in private land, not public land). *Koll-Irvine Ctr. Prop. Owners Ass'n*, 24 Cal. App. 4th at 1041–42. As noted above, Plaintiffs allege the conditions they claim establish a private nuisance are things that "obstruct the free passage and use of public parks, squares, streets, highway, and sidewalks, permit unlawful sales and consumption of illicit narcotics, illegal street vending, and constitute a fire hazard." FAC, ¶ 118. Thus, Plaintiffs do not allege in interference with their property rights. Accordingly, the Court should dismiss Plaintiffs' fifth cause of action without leave to amend. *See Koll-Irvine Ctr. Prop. Owners Ass'n*, 24 Cal. App. 4th at 1041–42.

As noted above, Plaintiffs do not allege the City created the allege private nuisance; nor do Plaintiffs allege the City had a mandatory duty with respect to any of the conduct alleged in the Complaint. Without a citation to a mandatory duty, Plaintiffs' private nuisance action fails. *See In re Firearm Cases*, 126 Cal. App. 4th at 988.

Finally, to succeed on a public or private nuisance cause of action, a plaintiff must establish causation. *Melton v. Boustred*, 183 Cal. App. 4th 521, 542 (2010); *In re Firearm Cases*, 126 Cal. App.

4th at 988; *Schaeffer v. Gregory Vill. Partners, L.P.*, 105 F. Supp. 3d 951, 967 (N.D. Cal. 2015 ("the elements of a private nuisance claim are the same as those for a public nuisance claim").  The challenged conduct must be both a "substantial factor in causing the alleged harm" (*i.e.*, factual causation), *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 361 (2017), and the proximate cause of the resulting nuisance (*i.e.*, legal causation); *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990) (nuisance claims only extend to "damage which is proximately or legally caused by the defendant's conduct, not to damage suffered as a proximate result of the independent intervening acts of others"). Plaintiffs' FAC fails to sufficiently allege either factual or legal causation.

Here, independent, non-City actors are the direct cause of Plaintiffs' alleged harms— impassable sidewalks, dangerous drug dealers, getting stuck by a discarded syringe, smoky fires, threats of harm, loss of business. FAC ¶¶ 37, 49-54, 61, 63, 66, 70, 75, 86-87, 92. Plaintiffs do not allege that the City placed items on the sidewalk, threatened them, started fires, discarded syringes, or stopped patronizing the Plaintiff-hotels. Instead, the FAC alleges five City "acts": (1) the City has "opened numerous 'centers' in the Tenderloin" without so much as identifying a single particular center or what they allegedly do wrong; (2) "operated an illegal narcotics consumption site" that closed in 2022; (3) "indirectly supported" a "renegade" consumption site that operated for a single day; (4) "supports addicts who refuse" shelter offers by providing medical care and other life-sustaining services; and (5) the City provides financial support for nonprofits that provide "drug paraphernalia" to "addicts." FAC ¶¶ 12-37.

Each of these is several, or more, steps removed from the third-parties' harm-causing actions and Plaintiffs do not allege any facts from which the Court can reasonably infer a causal link. For example, even accepting the allegations about the consumption sites, the FAC contains nothing but conclusions about how a site that closed 18 months ago and one that operated for a single day a year ago are presently causing the alleged harms. Plaintiffs do not even identify the alleged "centers," let alone allege facts supporting an inference that they are currently causing the alleged harms. Nor do they allege any facts showing how life-supporting care for the unhoused is causing the alleged harms. They merely allege, incorrectly, that such support is unavailable in other neighborhoods. Finally, the

FAC provides no facts to connect the City's financial support for one nonprofit to the distribution of fentanyl smoking kits, let alone connect that distribution to the cavalcade of alleged harms.

Plaintiffs' lack of non-conclusory causation allegations is particularly stark given the allegations in the related *UC Law* case, which alleged nearly identical street condition in the Tenderloin. That case blamed the same harms on City inaction and noted the long history of poor street conditions and drug use in the Tenderloin. Importantly, that case's identical "harms" all predate the City's alleged "acts" here. Given the related case's contradictory causation allegations, the FAC's failure to allege facts supporting this case's alternative causal chain is especially striking.

Even if Plaintiffs had alleged factual causation, the alleged harms are too remote from the alleged acts to allege a nuisance claim. Nuisance claims fail for lack of proximate cause where the defendant acted lawfully and the plaintiff "suffered as a proximate result of the independent intervening acts of others." *Martinez*, 225 Cal. App. 3d at 1565 (affirming dismissal of nuisance claim where defendants' maintenance of a telephone booth that attracted drug dealing allegedly caused plaintiff to be shot by a criminal involved in the drug trade at the phone); *In re Firearm Cases*, 126 Cal. App. 4th at 989 (holding no causal connection where plaintiffs claimed defendants lawful production of firearms resulted in harms that were proximately caused by others' illegal sales or use of those firearms). As set out above, all of the alleged harms are the direct result of others' independent intervening acts (*e.g.*, cluttering sidewalks, discarding needles, threatening Plaintiffs, starting fires, etc.). And, each of the alleged ongoing City acts is lawful activity (*e.g.*, funding non-profits providing housing and other services, providing medical and other services, opening "centers," extending the COVA Hotel's use as non-congregate shelter); the FAC does not allege otherwise. Accordingly, the FAC fails to allege the harms they suffer were proximately caused by the ongoing challenged actions.

Accordingly, Plaintiffs' public and private nuisance claims both fail as a matter of law.

**III.    PLAINTIFFS' STATE-CREATED DANGER CLAIM FAILS AS A MATTER OF LAW**

A state-created danger claim arises from the Due Process Clause. The clause does not obligate governments to "protect the life, liberty, and property of its citizens against invasion by private actors," *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989), and "does not confer any affirmative right to governmental aid," subject to a narrow exception, referred to as the

state-created danger doctrine, which applies in circumstances when a state actor affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).

Plaintiffs' state-created danger doctrine claim (sixth cause of action) fails for four reasons. First, Plaintiffs inappropriately base their claim on the City's omissions, not affirmative conduct. Omissions cannot form the basis of a state-created danger claim as a matter of law. Second, the generalized due process interests Plaintiffs allege are not sufficiently particularized to state a claim. "A danger is 'particularized' if it is directed at a specific victim," not an entire neighborhood such as the Tenderloin. *Sinclair v. City of Seattle*, 61 F.4th 674, 682 (9th Cir. 2023), cert. denied, 144 S. Ct. 88 (2023). Third, Plaintiffs' state-created danger claim suffers from the same causation issues as their nuisance claims discussed above. And fourth, Plaintiffs have not and cannot plausibly allege the City acted with deliberate indifference to the risk of *their* alleged injuries because the conduct about which Plaintiffs complain is too far removed from the injuries they put forward and Plaintiffs did not suffer a serious bodily injury. Each is a separate and independent reason to dismiss Plaintiffs' state-created danger claim without leave to amend.

### A.     The FAC Seeks to State A State-Created Danger Claim Based on Omissions, Which Is Inappropriate As A Matter Of Law

The first question in the state-created danger analysis is whether the state actor took "any affirmative actions" that placed the plaintiff "in [a] danger that [they] otherwise would not have faced" absent the state's conduct. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006). Omissions, as a matter of law, are not sufficient to state a claim and a plaintiff's attempt to recast "alleged omissions as intentional decisions" do not "turn the[] omissions into affirmative exercises of the state's power" that could support a claim. *Lamberth v. Clark Cnty. Sch. Dist.*, 698 Fed.App'x 387, 388 (9th Cir. 2017) (unpublished memorandum); *see also Phommathep v. Cnty. of Tehama*, No. 22-15132, 2023 WL 2400802, at *2 (9th Cir. Mar. 8, 2023) (unpublished memorandum) ("declining to arrest an individual does not constitute an affirmative act").

Plaintiffs rest their state-created danger claim on the City's "acts and omissions." FAC, ¶ 122. For example, they continue to complain that the City "fail[ed] to uphold its obligations to maintain

clear and accessible sidewalks," and failed to enforce certain criminal laws in the Tenderloin. *Id*. at ¶¶ 98, 34-37. These omissions cannot support a claim and Plaintiffs' state-created danger claim can only be assessed in the context of any affirmative conduct they allege the City undertook, not any other extraneous allegations in the FAC.

**B.    The FAC Lacks Plausible Allegations of a Sufficiently Particularized Danger**

Although Plaintiffs complain about conditions in the Tenderloin generally, the state-created danger doctrine requires Plaintiffs to plausibly allege they were exposed to a unique particularized danger, not one that impacted the entire neighborhood. *See e.g.,* FAC, ¶¶ 6, 11, 36-37. A particularized danger in the context of the state-created danger doctrine "naturally[] contrasts with a general one," and "is a danger . . . relating to . . . a single person or thing." *Sinclair*, 61 F.4th at 682 (citation and quotation marks omitted).

As a judge in this District ruled when dismissing a state-created danger claim against the City, "[b]ecause nothing in this case distinguished [plaintiff] from the general public at the time of the City Defendants' alleged wrongful conduct . . . the City Defendants cannot be held liable for a due process violation on a theory of state-created danger." *Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994, 1024 (N.D. Cal. 2017), aff'd, 919 F.3d 1154 (9th Cir. 2019) (*Steinle II*). In *Steinle II*, a shooting victim's estate sued the City after she was killed by a felon that had previously been in the City's custody, and where the City's policy prohibited it from responding to the federal government's request to provide it with 48-hours' notice before the City released the shooter so that he could be transferred to federal custody. The court acknowledged the victim's death was "senseless" and "preceded by a series" of government actions "that have been subject to much criticism," *id*. at 1003, but agreed the estate could not state a claim against the City because the state-created danger doctrine requires the government to place "a specific, identifiable person[] in a greater position of danger," and the estate's allegations, while tragic, fell short because the danger the victim faced was the same danger any other person in the City would have faced as a result of the policy. *Id.* at 1008.

The Ninth Circuit reached similar decisions last year in *Sinclair* and again in *Hall v. City of Portland*, No. 22-35705, 2023 WL 5527854 (9th Cir. Aug. 28, 2023) (unpublished memorandum), in

both cases affirming the district court's order granting a motion to dismiss because the complaint lacked factual allegations of a particularized injury.

In *Sinclair*, the mother whose child was shot after the police "took the unprecedented step of surrendering an entire precinct and a large area of the surrounding neighborhood to protestors" in the wake of George Floyd's death failed to state a claim against the city. *Sinclair*, 61 F.4th at 676. The Ninth Circuit was "sympathetic to [her] efforts to hold the City accountable for the death of her son," but affirmed dismissal because "the danger to which the City contributed was not particularized to [her] or her son, or differentiated from the generalized dangers posed by crime." *Id*.

Like Plaintiffs here, the protesters in *Sinclair* were alleged to be out "at all hours" and that "violence, vandalism of homes and businesses, open drug use, and other crimes proliferated in the lawless area" after police withdrew from the neighborhood. *Id*. at 677. The danger on which the plaintiff relied was not particularized because "the dangers that [her son] faced as a result of the City ignoring the lawlessness and crime occurring in the [Seattle neighborhood] were the same as anyone else; the City did not create a danger that posed a specific risk to [the plaintiff]." *Id*. at 682-83. The mother "fail[ed] to allege that the City had any previous interactions with her son, directed any actions toward him, or even knew of her son's existence until he was killed" and instead "alleged that the City left all visitors to [the neighborhood] in a much more dangerous position than it found them." *Id*. at 683. Under the circumstances, it was "at the ballot box" and not the courthouse, that the mother "must hold the City accountable" for its perceived failures. *Id*. at 684.

In *Hall*, the Ninth Circuit affirmed dismissal of Hall's complaint against the City of Portland based on an allegation that he was injured during a confrontation with protestors because the police failed to protect him. Rather than showing the City's affirmative actions exposed him to a danger different from what others faced, "Hall's allegations describe the danger as generalized and experienced by all who chose to enter Portland," with allegations that "describe[] city-wide danger on a grand and unprecedented scale, but do[] not explain why he *in particular* was endangered differently than the public at large." *Hall*, 2023 WL 5527854, at *1. In the same way, Plaintiffs' allegations in this case apply to anyone who enters the Tenderloin.

The rule from *Sinclair*, *Hall*, and *Steinle* that "the state-created danger doctrine does not encompass claims that policy decisions increased danger to the public as a whole" makes practical sense in addition to correctly construing "particularized danger." *Steinle II*, 230 F. Supp. 3d at 1023. To interpret the doctrine in the way Plaintiffs seek would allow any individual to assert a claim against a municipality for all generally-applicable policies they disfavor; this "would represent a significant expansion of the doctrine and would subject virtually any decision by policymakers in the field of public safety, who often must weigh known risks to public safety on either side of a decision, to post-hoc second guessing." *Id.* at 1024.

### C.     The FAC Lacks Plausible Allegations Demonstrating Causation

The same causation arguments that doom Plaintiffs' nuisance claims above also doom their state-created danger claims here because both are based on the same conduct. Where a complaint lacks a sufficiently plausible link between cause and effect, it must be dismissed. *See e.g., Phommathep*, 2023 WL 2400802, at *2 (affirming dismissal because causal allegations were not sufficiently plausible).

Plaintiffs also mischaracterize the "but-for" world they would have faced. The danger needed to plausibly allege a state-created danger claim needs to be one that the plaintiff "would not otherwise have faced" absent the defendant's conduct. *Hall*, 2023 WL 5527854, at *1 (citation and quotation marks omitted). This standard considers not what position Plaintiffs would be in if the City took different action, but what position Plaintiffs would be in the City took no action. Therefore, Plaintiffs must, yet cannot, show they would have been better off if the City had no plan of action in the Tenderloin, rather than arguing the City should have had a different plan.

In *Johnson v. City of Seattle*, the plaintiffs argued that the police's change in the crowd control policies resulted in third parties assaulting plaintiffs during a Mardi Gras event. *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007). The Court characterized the policy change as "calamitous," but ultimately inadequate because the policy change "did not place [the plaintiffs] in any worse position than they would have been had the police not come up with any operational plan whatsoever." *Id.* at 639, 641; s*ee also Taylor by & through Davies v. Cnty. of Los Angeles*, No. 20-56021, 2021 WL 4596583, at *1 (9th Cir. Oct. 6, 2021) (affirming judgment for defendant where "[t]he probability … is

extremely speculative [Citation.] that [plaintiff] would have been better off unconscious in a ditch" on the side of the road if the city had not acted to bring him to a parking lot) (unpublished memorandum). Here, too, Plaintiffs complain about the details of the City's policies in the Tenderloin, but do not go so far to allege that they would be in a better place if the City had no operational plan in the Tenderloin whatsoever. Such allegations would not be plausible, given Plaintiffs' general concerns about lawlessness in the area. And like the allegations in *Johnson*, they are ultimately inadequate to state a claim against the City.

### D.    The FAC Lacks Plausible Allegations Demonstrating Deliberate Indifference

Deliberate indifference to a known or obvious risk is an essential element of a state-created danger claim, yet Plaintiffs have not plausibly alleged the City acted with deliberate indifference because Plaintiffs' claimed injuries are too far afield from the conduct alleged and are not sufficiently serious.

### 1.    Plaintiffs' Claims Are Too Attenuated

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997). It requires even more than gross negligence, *L.W. v. Grubbs*, 92 F.3d 894, 897 (9th Cir. 1996). "[A] generalized showing of risk" is not enough, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 410-11, and the standard is only satisfied when the state actor recognizes the unreasonable risk and "actually intends to expose the plaintiff to such risk without regard to the consequences to the plaintiff." *Grubbs*, 92 F.3d at 899 (citation and quotation marks omitted). To state a claim, plaintiff must plausibly allege "the defendant knows that something *is* going to happen but ignores the risk and exposes [the plaintiff] to it." *Patel*, 648 F.3d at 974 (citation and quotation marks omitted).

Plaintiffs fail to link the City's affirmative conduct to their alleged injuries. For example, Plaintiffs complain that the City offers services to homeless individuals in the Tenderloin and offers "street-based care" and supplies to Tenderloin residents "struggling with substance use disorders" who refuse shelter. FAC, ¶¶ 17-20. But have not alleged how offers of shelter, care, or outreach supplies, would subject Plaintiffs to throngs of crowds outside their homes in the evening hours. Plaintiffs also

allege that the City purchased a Tenderloin building in December 2021 "with the intent of operating a narcotics consumption site," but admit no such program has opened. FAC, ¶¶ 22-24. There is no plausible explanation for why the City should have reasonably foreseen that purchasing the building would lead to Plaintiffs' alleged injuries. At best, Plaintiffs allege conduct that could be interpreted as "mak[ing] a violation of rights more *likely*," but this is not enough to plausibly allege a claim under the state-created danger doctrine because making a violation more likely does not "give rise to an inference that" the City's conduct "produced a specific constitutional violation." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, 520 U.S. at 410-11. All Plaintiffs ultimately allege are the type of "threadbare recitals" that cannot survive at the pleading stage. *Ashcroft*, 556 U.S. at 663 ("the first tenant that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements); *see e.g.,* FAC, ¶ 16 ("The effects and consequences of the City's direct and indirect" conduct "are foreseeable"). They are "not enough to constitutionalize a state tort" and are grounds to dismiss their state-created danger claim. *Patel*, 648 F.3d at 976 (citation and quotation marks omitted).

### 2.    The FAC Lacks Plausible Allegations Of A Sufficiently Serious Injury

Deliberate indifference requires the state actor to act "despite his knowledge of a substantial risk of serious harm." *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008) (citation omitted). The primary due process interests Plaintiffs allege the City infringed are their use and enjoy City sidewalks and a financial loss for the corporate Plaintiffs from lower hotel bookings due to general neighborhood decline. *See e.g*., FAC, ¶¶ 37, 49-50, 54, 61, 63, 66, 70, 75 (right of way); 86-87, 92 (loss of prospective business). These are not the type of serious harm the courts fashioned the state-created danger doctrine to redress.

The earliest Ninth Circuit case recognizing the state-created danger doctrine concerned a woman who was raped after a police officer stopped the car in which she was a passenger, arrested the driver, and impounded the car leaving her to walk five-mile home alone late at night through a high-crime area. *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989). In the intervening years, the Ninth Circuit has applied the doctrine in cases of similarly serious cases of assault, shootings, and death. *See e.g., Bracken v. Okura*, 869 F.3d 771 (9th Cir. 2017) (assault); *Hernandez v. City of San Jose*, 897

F.3d 1125 (9th Cir. 2018) (same); *Martinez v. High*, 91 F.4th 1022 (9th Cir. 2024) (same); *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) (shooting); *Nicholson v. City of L.A.*, 935 F.3d 685 (9th Cir. 2019) (same); *Corgan v. Keema*, 765 Fed.App'x 228 (9th Cir. 2019) (same); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (death); *Munger v. City of Glasgow*, 272 F.3d 1082 (9th Cir. 2000) (same); *Davis v. Washington State Department of Social and Health Services*, 773 Fed.App'x 367 (9th Cir. 2019) (same); *Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) (same); *Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023) (same); *Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023) (same). Plaintiff in one lawsuit unsuccessfully sought to expand the doctrine arguing that the county's failure to remove him from an unfit foster parent caused him emotional distress after his sibling was killed when she ingested methamphetamine, finding this was not the kind of harm the doctrine was able to redress. *J.P. by & through Villanueva v. Cnty. of Alameda*, 803 F.App'x 106, 108 (9th Cir. 2020) ("Our cases have not recognized a Fourteenth Amendment violation under [the state-created danger doctrine] for emotional distress alone").

The Ninth Circuit has never expanded the state-created danger doctrine to redress the types of sidewalk accessibility and economic losses Plaintiffs raise here nor should it given that the doctrine is a narrow, limited exception to a general rule of non-liability. This is true for all Plaintiffs, but especially so for the corporate Plaintiffs—Phoenix Hotel SF, LLC, Funky Fun, LLC and 2930 El Camino, LLC—who are by definition incapable of experiencing the type of serious physical injury that the doctrine requires.

## IV.     DISMISSAL WITHOUT LEAVE TO AMEND IS APPROPRIATE

The general rule that leave to amend should be freely given when justice so requires, should not be misstated as a rule that to amend is appropriate in every case. Fed. R. Civ. Proc. 15(a). A court need not grant leave to amend if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). The City successfully moved to dismiss each of the four challenged causes of action when Plaintiffs pleaded them in the original complaint. ECF No. 46. The motion was fully briefed and the Court issued a reasoned opinion explaining the legal and factual shortcomings in the complaint. *Id*. The prior round of briefing gave Plaintiffs fair notice of the inadequacies in their nuisance and state-created danger

claims. Although the Court gave Plaintiffs 21 days to correct those deficiencies, Plaintiffs filed the FAC after just seven days, indicating they did not need additional time to put forward the strongest version of their claims. But their second attempt fails for the same reasons as the first, which proves that further leave to amend would be futile.

The Ninth Circuit has affirmed dismissals without leave to amend, even as to an original complaint where amendment is futile. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1155 (9th Cir. 2016) (affirming dismissal without leave to amend where the court granted no prior amendment because amendment was futile); *In re Garabed Melkonian Tr.*, 235 Fed.App'x 404, 406 (9th Cir. 2007) (affirming dismissal without leave to amend and where court granted no prior amendment where "[a]ll of appellant's proposed amendments would be futile"); *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (affirming dismissal of original complaint without leave to amend where it was not factually possible for plaintiff to satisfy the standing requirements). Here, the Court also already afforded the Plaintiffs more than the law requires.

## CONCLUSION

For the foregoing reasons, the City respectfully requests the Court grant the City's motion and dismiss Plaintiffs' four causes of action without leave to amend.

Dated:  August 9, 2024

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
WAYNE SNODGRASS
TARA M. STEELEY
THOMAS S. LAKRITZ
JOHN H. GEORGE
KAITLYN M. MURPHY
Deputy City Attorneys


By: */s/ Thomas S. Lakritz*
     THOMAS S. LAKRITZ

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO