LAW OFFICES OF

**WALKUP, MELODIA, KELLY & SCHOENBERGER**

A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

MICHAEL A. KELLY (State Bar #71460)
mkelly@walkuplawoffice.com
RICHARD H. SCHOENBERGER (State Bar #122190)
rschoenberger@walkuplawoffice.com
MATTHEW D. DAVIS (State Bar #141986)
mdavis@walkuplawoffice.com
ASHCON MINOIEFAR (State Bar #347583)
aminoiefar@walkuplawoffice.com

SHANIN SPECTER (Pennsylvania State Bar No. 40928)
(Admitted Pro Hac Vice)
shanin.specter@klinespecter.com
ALEX VAN DYKE (CA State Bar No. 340379)
alex.vandyke@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1359

**ATTORNEYS FOR ALL PLAINTIFFS**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>Defendants. | Case No. 4:24-cv-01562-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**ASSIGNED FOR ALL PURPOSES TO THE HONORABLE DISTRICT JUDGE JON S. TIGAR, COURTROOM 6**<br><br>Hearing Date: 10/10/2024<br>Time: 2:00 PM<br>Place: Courtroom 6, 2nd Floor<br><br>Action Filed: 03/14/2024<br>Trial Date: Unassigned |

1

**TABLE OF CONTENTS**

2

Page

3    I.      INTRODUCTION ................................................................................................. 1

4    II.     STANDARDS ....................................................................................................... 1

5            A.    Applicable Rule 12(b)(6) Principles ......................................................... 1

6            B.    Article III Standing Requirement .............................................................. 2

7    III.    RELEVANT PROCEDURAL HISTORY ........................................................... 3

8            A.    The Initial Complaint ................................................................................ 3

9            B.    The Ruling on the Motion to Dismiss the Initial Complaint ..................... 3

10           C.    The First Amended Complaint ................................................................... 4

11   IV.     DISCUSSION ...................................................................................................... 6

12           A.    Plaintiffs Mary and Susan Roe have adequately alleged a claim
                   under the California Disabled Persons Act. ............................................. 6
13
             B.    Plaintiffs have alleged affirmative conduct by the City that was a
14                 cause of the nuisance. ............................................................................... 7

15           C.    Nuisance actions against public entities founded on Civil Code
                   § 3479 are not barred by Government Code § 815 ................................. 11
16
             D.    Plaintiffs allege affirmative conduct by the City that has placed
17                 them in danger. ........................................................................................ 12

18           E.    Plaintiffs seek injunctive relief that does not necessarily create
                   financial burdens or implicate prosecutorial decisions. ......................... 14
19
             F.    Whether the City's conduct falls under the Emergency Services
20                 Act or Proclamations is an issue of disputed fact. ................................. 15

21   V.      CONCLUSION .................................................................................................. 16

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

4

## <u>CASES</u>

*Allen v. Wright*, 468 U.S. 737, 752 (1984) ........................................................2

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................2

6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ....................................2

7

*Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1551 (2009)............11

8

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610,
    674 (N.D. Cal. 2020) .................................................................................8, 10

9

*City of Los Angeles v. Superior Ct.*, 62 Cal. App. 5th 129, 138, 276 Cal. Rptr. 3d
    332, 338 (2021)...............................................................................................12

10

11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)................................2

12

*DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195 (1989) ..... 12, 13

13

*Giannuzzi v. State of California*, 17 Cal. App. 4th 462, 467 (1993) ..........................12

14

*Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018)........................13

15

*Hood v. City of Sacramento*, no. 223CV00232KJMCKD, 2023 WL 6541870, at
    *4 (E.D. Cal. Oct. 6, 2023) ..........................................................................15

16

17

*Ileto v. Glock Inc.*, 349 F.3d 1191, 1212 (9th Cir. 2003)................................10

18

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ................2

19

*Kempton v. City of Los Angeles*, 165 Cal. App. 4th 1344, 1349 (2008)........10

20

*Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006)............13

21

*Keyes v. Santa Clara Valley Water Dist.*, 128 Cal. App. 3d 882, 885-886 (1982).........12

22

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018) .................15

23

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)....................................2

24

*Koll-Irvine Center Property Owners Assn. v. County of Orange* (1994) 24
    Cal.App.4th 1036.............................................................................................7

25

26

*Lew v. Superior Court of Alameda County*, 20 Cal.App.4th 866 (1993)....................8, 9

27

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) .........................2

28

*Mangini v. Aerojet–General Corp.*, 230 Cal.App.3d 1125, 1134 (9th Cir. 1991) ..........10

*Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019)....................................13

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ............1

*Nealy v. County of Orange*, 54 Cal. App. 5th 594, 602 (2020) ......................................12

*Patel v. Kent Sch. Dist.,* 648 F.3d 965, 971–72 (9th Cir. 2011) .....................................13

*Schooler v. State of California*, 85 Cal. App. 4th 1004 (2000) ..........................1, 4, 6, 14

*Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994, 1024 (N.D. Cal. 2017)...........................................................................................................................14

*United States v. Texas*, 599 U.S. 670, 675 (2023).........................................................2, 3

*Vedder v. Cnty. of Imperial*, 36 Cal. App. 3d 654, 661 (1974) ........................................7

## **STATUTES**

Civil Code § 3480.................................................................................................................7

Civil Code § 3481.................................................................................................................7

Fed. R. Civ. P. 8(a)(2) ........................................................................................................1

Government Code § 814 .....................................................................................................4

Government Code § 815 ..................................................................................................4, 11

Government Code § 818.2 ..................................................................................................4

Health & Safety Code §11570...........................................................................................9

## **OTHER AUTHORITIES**

CACI 431 ...........................................................................................................................10

# I. INTRODUCTION

Plaintiffs oppose defendant City and County of San Francisco's motion to dismiss four of the six causes of action contained in their First Amended Complaint (FAC). The motion should be denied because plaintiffs have added plausible allegations about affirmative conduct by the City that has drawn narcotics activity to the Tenderloin and that encourages drug addicts who refuse offers of shelter to live in encampments on that neighborhood's sidewalks. Each plaintiff has made specific allegations showing how the foreseeable consequences of the City's affirmative acts has injured and endangered them.

The City's state law immunity argument fails. Should plaintiffs prove their state claims, then this Court can consider appropriate injunctive relief. For example, should plaintiffs prove that the City has created nuisances that harms and endangers them, then this Court could prohibit the City from engaging in specific conduct that is causing the nuisances, such as ordering the City to stop distributing drug paraphernalia to addicts living in sidewalk encampments next to plaintiffs' homes and businesses. That type of relief would have no fiscal impact on the City and would not impinge upon prosecutorial functions. The principles behind the decision in *Schooler v. State of California*, 85 Cal. App. 4th 1004 (2000) may constrain the remedies available in this case, but they do not vitiate plaintiffs' claims.

# II. STANDARDS

## A.     Applicable Rule 12(b)(6) Principles

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to

1  relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

2  (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual

3  matter, accepted as true, to state a claim to relief that is plausible on its face."

4  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation

5  omitted). "A claim has facial plausibility when the plaintiff pleads factual content

6  that allows the court to draw the reasonable inference that the defendant is liable for

7  the misconduct alleged." *Id*. The Court must "accept all factual allegations in the

8  complaint as true and construe the pleadings in the light most favorable to the

9  nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However,

10  the Court is not "required to accept as true allegations that are merely conclusory,

11  unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.*

12  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation

13  omitted).

14  **B.    Article III Standing Requirement**

15      To invoke the jurisdiction of a federal court, plaintiffs must demonstrate

16  standing, which consists of the "irreducible constitutional minimum" of (1) an injury

17  in fact; (2) caused by the defendant; that is (3) redressable by a court order. *Lujan v.*

18  *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "The principle of Article III

19  standing is 'built on a single basic idea—the idea of separation of powers.'" *United*

20  *States v. Texas*, 599 U.S. 670, 675 (2023) (quoting *Allen v. Wright*, 468 U.S. 737, 752

21  (1984)). "By ensuring that a plaintiff has standing to sue, federal courts 'prevent the

22  judicial process from being used to usurp the powers of the political branches.' " *Id*. at

23  676 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). The Supreme

24  Court has "stressed that the alleged injury must be legally and judicially cognizable"

25  which "requires, among other things, that the dispute is traditionally thought to be

26  capable of resolution through the judicial process—in other words, that the asserted

27  injury is traditionally redressable in federal court." *Id*. at 676 (internal quotation

28  marks and citations omitted).

### III. RELEVANT PROCEDURAL HISTORY

**A.     The Initial Complaint**

Plaintiffs' initial complaint alleged ten causes of action: (1) violations of the ADA; (2) violations of Section 504; (3) violations of the California Disabled Persons Act; (4) public nuisance; (5) private nuisance; (6) violations of Due Process; (7) violation of Equal Protection; (8) violation of Due Process, State-Created Danger Doctrine; (9) Negligence; and (10) deprivation of the Guarantee of Safety and the Pursuit of Happiness, California Constitution, Article I, § 1. (ECF no. 1.) The disability claims, causes of action (1) through (3), were brought by plaintiffs Susan and Mary Roe only. All plaintiffs brought the remaining claims. Plaintiffs sought equitable/injunctive relief, fees and costs but did not pray for monetary damages. (*Id*.)

**B.     The Ruling on the Motion to Dismiss the Initial Complaint**

The City moved to dismiss the entire complaint. (ECF no. 35.) The Court denied the City's motion as to the federal disability claims, causes of action (1) and (2), but granted the City's motion to dismiss the remaining causes of action, (3) through (10), with leave to amend. (ECF no. 46 at 12.)

Specifically, the Court granted the City's motion to dismiss the three constitutional claims, counts (6), (7) and (8), because the complaint contained scant allegations of affirmative conduct by the City, and "a review of the complaint reveals [plaintiffs] claims are premised on the City's 'de facto' policy of non-enforcement in the Tenderloin and the affirmative acts of non-parties." (ECF no. 46 at 4.) The Court explained that plaintiffs lacked standing to assert the claims as alleged, citing authority for the proposition that citizens lack standing to challenge prosecutorial decisions when they are not themselves being prosecuted or threatened with prosecution. (*Id*. at 5-7, citing *United States v. Texas*, 599 U.S. 670 (2023) and other authorities.)

The Court ruled that plaintiffs Susan and Mary Roe had adequately alleged

1    their federal disability claims and denied the City's motion to dismiss the ADA and

2    Section 504 claims. (ECF no. 46 at 7-9.)

3         The Court granted the motion to dismiss the tenth cause of action, the

4    California Constitution claim, because that provision does not impose a mandatory

5    duty on public entities to protect a citizens' rights. (ECF no. 46 at 10.)

6         Finally, the Court addressed the City's argument that it was immune from

7    liability for plaintiffs' remaining state law claims "because they are premised on the

8    City's failure to enforce laws." (*Id.* at 10 citing Government Code §§ 815 and 818.2.)

9    The Court acknowledged that plaintiffs, citing Government Code § 814, argued that

10   because they only seek equitable relief the immunity provisions cited by the City are

11   inapplicable. The Court, however, noted that *Schooler v. State of California*, 85 Cal.

12   App. 4th 1004 (2000) held that a public entity is immune from injunctive or equitable

13   relief that imposes significant financial burdens. The Court held that "the injunctive

14   relief Plaintiffs seek would require the City to enforce its drug and anti-encampment

15   laws to a greater extent than it now does. As in *Schooler*, this would create legal and

16   financial burdens on the City that the Tort Claims Act guards against." The Court

17   thus dismissed the remaining state law claims with leave to amend. (ECF no. 46 at

18   10-12.)

19   **C.    The First Amended Complaint**

20        Plaintiffs thereafter filed the FAC. (ECF no. 50.) The FAC includes six causes

21   of action, compared to the 10 counts in the original complaint. Plaintiffs did not

22   renew two federal constitutional claims. They also dropped their claim under the

23   California Constitution and their state law claim for negligence.

24        The first two counts of the FAC are the ADA and Section 504 causes of action,

25   which the City does not challenge in the instant motion.

26        The FAC's third cause of action alleges violations of the California Disabled

27   Persons Act. Count four alleges public nuisance. Count five alleges private nuisance.

28   The sixth and final cause of action alleges violations of the Due Process Clause,

State-Created Danger Doctrine. The City moves to dismiss all four of those claims.

Plaintiffs added to the FAC allegations of affirmative conduct by the City that: (1) has drawn illegal narcotics activity to the Tenderloin; and (2) encourages addicts who refuse offers of shelter to camp out and use drugs on that neighborhood's sidewalks. Plaintiffs allege:

- The City directly and indirectly distributes drug paraphernalia to addicts who live in sidewalk encampments in the Tenderloin. City departments and agencies distribute and/or facilitate the distribution of fentanyl smoking kits "to addicts who opt to live on the Tenderloin's sidewalks, often using euphemisms like 'harm reduction' or 'personal autonomy' in documents and public statements to conceal the true nature of such activities." (ECF no. 50 at ¶¶ 13, 14.)[1]

- The City pays millions to organizations that the City knows to distribute drug paraphernalia to addicts who camp out on the Tenderloin's sidewalks. (*Id*. at ¶ 15.)

- The City's operates at least four separate programs that provide services, supplies and support to addicts who reject offers of shelter and instead live in tents on the Tenderloin's sidewalks. (*Id*. at ¶¶ 17-20.)

- The City opened the "Tenderloin Center" in January 2022. In knowing violation of state and federal criminal statutes, the City encouraged addicts to go there to consume fentanyl and other narcotics. The City instructed members of the SFPD to drop off addicts at the center. By doing this, "the City sent the clear and unmistakable message" to addicts and dealers that they should come to the Tenderloin to sell, buy and use drugs, which they foreseeably did. The City closed the Tenderloin Center in December 2022, "but the harmful aftereffects of its operations continue to this day because many of the addicts and dealers who were drawn to the Tenderloin by the City's operation of the Tenderloin Center remain in the neighborhood." (*Id*. at ¶¶ 22, 24-28.)

---

[1] These allegations should be accepted as true at the Rule 12(b)(6) stage. The City nevertheless seeks to inject extrinsic evidence to cast doubt about these and other allegations. For example, the City cites to a claim made in a news article to the effect that the does not distribute fentanyl smoking kits or "explicitly" fund such expenditures. (ECF no. 51 at 4.) Should there be doubts about the plausibility of plaintiffs' allegations, here is a link to a video recently posted on social media; it shows what appears to be an employee of the SF DPH handing out narcotic pipes to addicts who are sprawled out on a public sidewalk and blocking passage. https://twitter.com/i/status/1828874366396051699

- City officials recently supported the "activists" who set up tents on a Tenderloin street and invited addicts to come there to collect drug paraphernalia and ingest fentanyl. (*Id*. at ¶ 32.)

- Starting in 2020, the City took over the COVA Hotel on Ellis Street, steps away from plaintiff Jane Roe's apartment. Before the City takeover, the COVA had been a tourist hotel that brought vibrancy and commerce to the Tenderloin. The City now runs the COVA as a "non-congregate shelter." The City follows a "housing first" approach at the COVA, and allows occupants to live there even if they use and sell drugs or engage in harmful behavior inside and around the property. Illegal narcotics usage became rampant inside and around the COVA after the City took over operations. The COVA is now a magnet for illegal and dangerous narcotics activities in the surrounding neighborhood, including directly in front of Jane Roe's apartment building. The City's operations at the COVA expose Jane Roe to unreasonable dangers and harms. When she enters or leaves her apartment, she encounters drug dealers and addicts who openly inject and smoke fentanyl and block the building's entrance. She once cleared garbage from her steps and got stuck by a used syringe. People gathered in front of her building regularly threaten her and light bonfires. Encampments, bulky items and displays of stolen goods block passage of the sidewalks near her home. Trash, used syringes and human waste befoul the area. She and her family must walk in the busy street to get around these hazards and dangers. The City recently extended its operations at the COVA for another seven months. (*Id*. at ¶¶ 45-55.)

## IV. DISCUSSION

### A.  Plaintiffs Mary and Susan Roe have adequately alleged a claim under the California Disabled Persons Act.

The FAC alleges that the City's affirmative conduct encourages addicts to camp out and block the sidewalks and public spaces around Mary and Susan Roe's residences. If proved, relief from the City's conduct would be warranted. The claim has been adequately pled. Unlike *Schooler v. State of California*, *supra*, 85 Cal. App. 4th 1004, where the remedy would have been extremely costly to implement, the relief needed to address the harm to Mary and Susan Roe need not necessarily impose any fiscal burden on the City. Instead, it may only require that the City stop engaging in certain activities. Thus, the City is not immune as a matter of law from this claim.

**B.     Plaintiffs have alleged affirmative conduct by the City that was a cause of the nuisance.**

All plaintiffs bring the fourth and fifth causes of action, which allege public and private nuisance. These claims are adequately pled.

Nuisance actions can be brought against public entities "to the extent that such actions are founded on Civil Code sections 3479, 3480 and 3481, which define public and private nuisances." *Vedder v. Cnty. of Imperial*, 36 Cal. App. 3d 654, 661 (1974).

Plaintiffs' allegations about how they are affected and harmed by conditions adjacent to their homes and businesses, are all recognized by Civil Code § 3479, which provides the general definition of what is a nuisance. That statute says:

> Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of … any public park, square, street, or highway, is a nuisance.

Civil Code § 3480 defines which nuisances are a "public nuisance" and comports with plaintiffs' allegations about how the City's conduct affects their entire neighborhood. It says, "[a] public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." While Civil Code § 3481 defines a private nuisance as being every type of a nuisance that is not a public nuisance.

" 'A nuisance may be both public and private, but to proceed on a private nuisance theory the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land. The injury, however, need not be different in kind from that suffered by the general public.' " *People v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51, 122 (2017) quoting *Koll-Irvine Center Property Owners Assn. v. County of Orange* (1994) 24 Cal.App.4th 1036, 1041.

A public nuisance cause of action is premised on affirmative conduct that assisted in the creation of a hazardous condition. Affirmative conduct encompasses any action that assists in creating a system that causes hazardous conditions. *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 674 (N.D. Cal. 2020) (the City sufficiently pleaded that pharmaceutical companies and drug-store chains engaged in affirmative conduct that enabled the opioid epidemic in the City, as was relevant to determining if the City had stated a public-nuisance claim).

Here, plaintiffs allege that the City's affirmative conduct has caused nuisances around their premises. For example, since 2020 the City has operated a congregate shelter at the COVA and follows a "housing first" approach to running it. The City takes no action against the COVA occupants that the City knows to sell and use narcotics, or who engage in other injurious conduct in and around the property, which is steps from plaintiff Jane Roe's apartment. The City's operation of the COVA endangers Jane Roe and her family.  (ECF no. 50 ¶¶ 45-49.) Similarly, the City opened and operated a narcotics consumption site in the Tenderloin, in violation of federal and state criminal statutes. (*Id*. at ¶¶ 22, 24.) The City instructed members of the SFPD to drop off addicts at the center. (*Id*. at ¶ 25.) This affirmative conduct actively placed, drew and encouraged addicts and dealers to come to the Tenderloin. (*Id*. at ¶ 22-32.) The City also distributes, funds and facilitates the distribution of drug paraphernalia to addicts who refuse offers of shelter and instead live in tents on the Tenderloin's sidewalks. (*Id*. at  ¶¶ 13-16.) The City also provides "street based" support and encourage persons who reject shelter and instead live in sidewalk encampments in front of plaintiffs' homes and businesses. (*Id*. at ¶¶ 17-20.)

*Lew v. Superior Court of Alameda County*, 20 Cal.App.4th 866 (1993) is both analogous and instructive. There, plaintiffs lived near a multi-unit HUD insured apartment complex owned by defendants. Plaintiffs alleged defendants allowed illegal drug activity to occur at the complex. The allegations resembled those made in this case. For example, "[n]umerous times I have been confronted by dealers or

buyers and I am now afraid to walk near this property and down my street." *Id*. at

869. The trial court found that the complex was being used as a center for sale and

distribution of drugs and awarded the plaintiffs damages. *Id*. at 870. Defendant

brought a writ seeking to set aside the judgment, arguing that they could not be held

liable for the criminal acts of third parties. The court of appeals denied the petition,

holding:

> The Legislature has resolved any doubt as to the question
> of whether a so-called "drug house" is a nuisance through
> the enactment of section 11570 of the Health and Safety
> Code. That section, enacted in 1972, provides as follows:
> "Every building or place used for the purpose of unlawfully
> selling, serving, storing, keeping, manufacturing, or giving
> away any controlled substance, precursor, or analog
> specified in this division, and every building or place
> wherein or upon which those acts take place, is a nuisance
> which shall be enjoined, abated, and prevented, and for
> which damages may be recovered, whether it is a public or
> private nuisance."

> …. The fact that the immediate and specific injury
> plaintiffs suffered from this nuisance was due to the acts of
> third parties, rather than, for example, being due to
> noxious gases, is not relevant to the issue of whether the
> property qualifies as a nuisance under section 11570. That
> section does not require that the unlawful activity which
> makes the building a nuisance be conducted by the owner
> of the building, a tenant of the building, or a person
> entering with permission.

*Id*. at 871 (footnote omitted).

The City's operation of the COVA, as alleged, constitutes a public and private

nuisance under Health & Safety Code §11570.

Even where section 11570 does not apply, the City's affirmative acts in

operating the COVA and the Tenderloin Center, its distribution of drug

paraphernalia, and its "street based" programs that support addicts who opt to live in

sidewalk encampments, plausibly results in a nuisance due to the foreseeable

conduct of addicts and dealers who, as a result, congregate around plaintiffs' homes

and businesses. An adequate claim has been pled. *See City & Cnty. of San Francisco

v. Purdue Pharma L.P.,* 491 F. Supp. 3d at 634 (San Francisco sufficiently alleged

1   distributers' dispensing of opioids, despite specific warnings of a threat to public

2   health, enabled the foreseeable intervening acts of third parties resulting in

3   "increased rates of addiction and overdoses.").

4       At the pleading stage, plaintiffs need only show that the trier of fact could

5   reasonably conclude: (1) the City's mismanagement of Tenderloin Center and the

6   COVA, its distribution of drug paraphernalia, and its provision of services to addicts

7   living in sidewalk encampments, substantially increases the amount of drug activity,

8   congregation and offensive smells around plaintiffs' homes and businesses; (2) these

9   increases are not so remote as to be the legal cause of plaintiffs' harm; and (3) the

10  City's conduct was a substantial factor in producing the harm, even where another

11  "person, condition or event was also a substantial factor." CACI 431*; see also City &*

12  *Cnty. of San Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d at 677.

13      The resulting crowding, offensive smells, and fear of physical harm that

14  interferes with plaintiffs' use, enjoyment and egress from their property are

15  cognizable nuisances. *See Kempton v. City of Los Angeles*, 165 Cal. App. 4th 1344,

16  1349 (2008) (impairment of access to and from a home to abutting public streets

17  through physical barriers and the fear of physical harm stemming from navigating

18  the obstructions constitute both private and public nuisance). Moreover, California

19  law does not require that a nuisance originate from neighboring property. *See*

20  *Mangini v. Aerojet–General Corp.*, 230 Cal.App.3d 1125, 1134 (9th Cir. 1991)

21  (military laundry operations contaminated plaintiff's water well, 2000 feet away from

22  laundry); *see also Ileto v. Glock Inc.,* 349 F.3d 1191, 1212 (9th Cir. 2003) (California

23  law on proximate or legal cause does not require the defendant control the

24  instrument that caused the nuisance, so long as the conduct was a substantial

25  factor).

26      California recognizes that the aftereffects of prior conduct, such as the City's

27  operation of illegal narcotics consumption site at the Tenderloin Center, can continue

28  to assist in the creation of the public nuisance. *People v. ConAgra Grocery Prod. Co.*,

17 Cal. App. 5th 51, 97 (2017) (lead paint manufacturer's advertising in the 1930-40's was evidence of assisting in creating the public nuisance of lead paint in residential homes built after 1950 even if it stopped producing lead paint in 1948).

The City's argument that plaintiffs fail to allege an injury that is "different in kind" from the general public lacks merit. There is no requirement that plaintiffs suffer damage different in kind when the nuisance is both private and public. *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1551 (2009). Moreover, each plaintiff satisfies the special injury requirement if needed. Allegations of injury to "private property or to the health and comfort of an individual" are peculiar to the individual and satisfies as a special injury. *Id*. at 1550 (plaintiff sufficiently alleged discomfort and annoyance and the interference with the right to enjoy the rented premises from adjourning second hand smoke in common areas).

Each plaintiff makes specific allegations about how the harms that the City affirmatively fostered in the Tenderloin affects them and their property. (ECF no. 50 ¶¶ 34-37, 43-55, 57-58, 61, 62-64, 66, 67-68, 72-75, 77, 85-86, 89-92.)

In sum, the City's motion to dismiss should be denied as to the fourth and fifth causes of action.

**C.    Nuisance actions against public entities founded on Civil Code § 3479 are not barred by Government Code § 815**

The Legislative Committee made clear in its comments that Civil Code § 3479 provides the statutory basis for nuisance actions against public entities: "Under this statute, the right to recover damages for nuisance will have to be established under the provisions relating to dangerous conditions of public property *or under some other statute* that may be applicable to the situation. However, *the right to specific or preventive relief in nuisance cases is not affected*." Cal. Gov. Code § 815, Legislative Committee Comments (emphasis supplied). The California Supreme Court confirmed the intent of the Legislature in *Nestle v. City of Santa Monica*, 6 Cal. 3d 920, 933 (1972), in which they concluded:

> In view of the pervasive influence the commission has enjoyed in the field of governmental immunity, practically authoring both the 1963 act and the 1970 amendments, we must conclude that the Legislature, with due deliberation, decided to reject the commission's proposal to bar suits against public entities for nuisance. Consequently it is manifest that the Legislature intended to allow such causes of action if they could be tailored to meet the specifications of statutory provisions, such as section 3479 of the Civil Code.

*Id.* at 937 (footnotes omitted).

The City cites to several cases for the proposition that public entity liability for nuisance must flow through the Tort Claims Act's requirement for particularity. None of the cases it cites, however, relate to nuisance claims relying upon Civil Code § 3479. *Keyes v. Santa Clara Valley Water Dist.*, 128 Cal. App. 3d 882, 885-886 (1982) (negligence); *see also City of Los Angeles v. Superior Ct.*, 62 Cal. App. 5th 129, 138 (2021) (negligence); *Giannuzzi v. State of California*, 17 Cal. App. 4th 462, 467 (1993) (dangerous condition of public property); *Nealy v. County of Orange*, 54 Cal. App. 5th 594, 602 (2020) (same). As detailed above, plaintiffs allegations adhere to the requirements set forth in Civil Code § 3479.

**D.    Plaintiffs allege affirmative conduct by the City that has placed them in danger.**

In *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195 (1989) the Supreme Court held that a government is not obligated under the due process clause to "protect the life, liberty, and property of its citizens against invasion by private actors." An exception to the rule exists, however, where the state actor affirmatively places the plaintiff in a dangerous situation. "It is … well established that, although the state's failure to protect an individual against private violence does not generally violate the guarantee of due process, it can where the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006),

1    quoting *DeShaney,* 489 U.S. at 197. The affirmative act must create an actual,

2    particularized danger, and the ultimate injury to the plaintiffs must be foreseeable.

3    *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (attendees of

4    political rally alleged police officers violated their due process rights under state-

5    created danger theory by shepherding them into a crowd of violent protesters).

6      The Ninth Circuit has held that a local government may violate substantive

7    due process if it " 'affirmatively places [a plaintiff] ... in danger by acting with

8    'deliberate indifference' to a 'known or obvious danger.' " *Martinez v. City of Clovis*,

9    943 F.3d 1260, 1271 (9th Cir. 2019), quoting *Patel v. Kent Sch. Dist.,* 648 F.3d 965,

10   971–72 (9th Cir. 2011)). To prevail on state-created danger doctrine, a plaintiff must

11   show that (1) "the officers' affirmative actions created or exposed her to an actual,

12   particularized danger that she would not otherwise have faced," (2) "the injury ...

13   suffered was foreseeable," and (3) "the officers were deliberately indifferent to the

14   known danger." *Id*.

15     Here, plaintiffs' allegations satisfy each of these three prongs.

16     First, they allege that the City opened and operated an illegal drug

17   consumption site in their neighborhood, and thereby encouraged addicts and dealers

18   to come there. Many addicts and dealers so drawn to the Tenderloin remain there to

19   this day. Further, the City directly and indirectly distributes drug paraphernalia to

20   addicts who refuse offers of shelter and instead camp on the Tenderloin's sidewalks.

21   At least four City agencies provide support, kits and services to addicts living on the

22   Tenderloin's sidewalks. These affirmative acts foreseeably created "actual,

23   particularized dangers," *e.g.*, they encouraged gang members dealing drugs and

24   unstable fentanyl addicts to habituate the sidewalks of the Tenderloin. Plaintiff Jane

25   Roe, in particular, alleges a straight line between the City's operation of the COVA

26   near her apartment and the creation of "actual particularized dangers" that she

27   would not have otherwise faced.

28     Second, as discussed above, it was highly foreseeable that the City's

1    affirmative acts would cause plaintiffs to suffer injury.

2         Finally, the allegations could support the trier of fact to conclude City officials

3    have shown deliberate indifference to these dangers.

4         What plaintiffs allege differs from what happened in *Steinle v. City & Cnty. of*

5    *San Francisco*, 230 F. Supp. 3d 994, 1024 (N.D. Cal. 2017), aff'd, 919 F.3d 1154 (9th

6    Cir. 2019) (*Steinle II*), where the danger-creation claim failed because the City's

7    release of a felon equally endangered *everyone* in the city. Here, by contrast, the

8    City's operation at the COVA foreseeably endangers those who live nearby. Likewise,

9    the City's distribution of drug paraphernalia and provision of services to addicts

10   living in tents illegally pitched on public sidewalks endangers those who live or run a

11   business next to the encampments.

12        The City's argument that plaintiffs have not plausibly alleged causation belies

13   common sense. It is highly plausible to conclude that handing out drug

14   paraphernalia and providing support to addicts who refuse offers of shelter and

15   instead opt to camp out on a Tenderloin sidewalk will cause harm to those who live

16   next to the encampment.

17        **E.    Plaintiffs seek injunctive relief that does not necessarily create
              financial burdens or implicate prosecutorial decisions.**
18

19        The City's reliance on *Schooler* is misplaced. The City contorts the holding in

20   *Schooler* to apply broadly to any claim seeking injunctive relief. In *Schooler*, plaintiffs

21   sought to force the State to shoulder an immense expenditure to reverse naturally

22   occurring erosion and purposefully frustrate pedestrian access to public beaches in

23   contradiction of public policy. 85 Cal. App. 4th at 1014. By contrast, plaintiffs here

24   seek redress of harms caused by the City's affirmative conduct. The issues in

25   *Schooler* "dealt with a unique factual scenario" and the holding is "narrow." *Pierce v.*

26   *County. of Orange*, No. SACV01981GLTMLGX, 2004 WL 7340113, at *2 (C.D. Cal.

27   June 4, 2004). In *Pierce*, the court denied defendant's motion to dismiss claims

28   seeking injunctive relief because plaintiffs sought to "enforce compliance with

mandatory state jail regulations and the California Disabled Persons Act… Plaintiffs are not seeking to expose the County to financial burdens it would not otherwise have incurred." *Pierce v. County. of Orange*, No. SACV01981GLTMLGX, 2004 WL 7340113, at *2 (C.D. Cal. June 4, 2004).

Plaintiffs here seek injunctive relief closer to that sought in *Pierce*. Plaintiffs allege affirmative acts that cause the above-described nuisance and violations of the Disabled Persons Act. (ECF No. 50 ¶¶ 13-14, 17-20, 22, 24-28, 45-55.)

The Court is free to enter "any injunction it deems appropriate" and take into account the defendant's concerns. *Hood v. City of Sacramento*, no. 223CV00232KJMCKD, 2023 WL 6541870, at *4 (E.D. Cal. Oct. 6, 2023). If and when the court considers remedies, the appropriate relief may be as simple as ordering the City to cease engaging in certain activities. The relief night result in a reduction in spending, eliminate practices that are in violation of state and federal law.

### F. Whether the City's conduct falls under the Emergency Services Act or Proclamations is an issue of disputed fact.

The City's argument regarding the Emergency Services Act necessarily requires a resolution of disputed facts as to what "extent [plaintiffs' claim] are based on actions or inactions related to the two emergencies." (ECF no. 51 at p. 17.) The emergency proclamations do not provide specifics facts that relate to conduct alleged by plaintiffs that the Court may take judicial notice of to find an immunity applies. *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1000 (9th Cir. 2018) (trial court abused its discretion in dismissing Securities Exchange Act claims by relying upon judicial notice of an investors call transcript where there was reasonable dispute as to what specific facts were disclosed to investors.)

The City broadly claims that any conduct tangentially related to a proclamation issued by the City between February 25, 2020 through June 30, 2023 is immune. The City, however, does not identify any specific policy decision included in the documents of which it seeks judicial notice that relate to plaintiffs' allegations.

The proclamations instead relate to exemptions from local rules regarding short term leasing, hiring and government contracting requirements. (ECF no. 51-8 at p. 2, 51-9 at p. 2.) Lastly, plaintiffs allege conduct that is ongoing and outside the periods covered by the proclamations. (ECF no. 50 ¶¶ 13-15, 17-20, 45-55.)

## V. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny the City's motion to dismiss in its entirety.

WALKUP, MELODIA, KELLY & SCHOENBERGER

Dated:  August 30, 2024

By: _____

MICHAEL A. KELLY
RICHARD H. SCHOENBERGER
MATTHEW D. DAVIS
ASHCON MINOIEFAR
Attorneys for ALL PLAINTIFFS

## PROOF OF SERVICE

**Jane Roe, et al. v. City and County of San Francisco, et al.**
**USDC-Northern California Case No. 4:24-cv-01562-JST**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the county where the mailing took place,  My business address is 650 California Street, 26th Floor, City and County of San Francisco, CA 94108-2615.

On the date set forth below, I caused to be served true copies of the following document(s) described as

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

to:

| | |
|---|---|
| Shanin Specter, Esq. (Admitted Pro Hac Vice) Alex Van Dyke, Esq. KLINE & SPECTER, P.C. 1525 Locust Street Philadelphia, PA 19102 | **Co-Counsel for Plaintiffs** Telephone: (215) 772-1000 shanin.specter@klinespecter.com alex.vandyke@klinespecter.com escalanteyleana@uclawsf.edu |
| David Chiu, Esq., City Attorney Yvonne R. Meré, Esq., Chief Deputy City Attorney Wayne Snodgrass, Esq., Deputy City Attorney Tara M. Steeley, Esq., Deputy City Attorney Thomas S. Lakritz, Esq., Deputy City Attorney John H. George, Esq., Deputy City Attorney Kaitlyn M. Murphy, Esq., Deputy City Attorney Deputy City Attorneys City Hall, Room 234 1 Dr. Carlton B. Goodlett Place San Francisco, CA  94102-4682 | **Counsel for City and County of San Francisco** Steeley Direct: (415) 554-4655 Lakritz Direct: (145) 554-4628 George Direct:  (415) 554-4223 Murphy Direct: (415) 554-6762 Facsimile: (415) 554-4699 Mere Direct:  (415) 554-4700 Mere Facsimile:  (415) 554-4757 Yvonne.Mere@sfcityatty.org tara.steeley@sfcityatty.org tom.lakritz@sfcityatty.org john.george@sfcityatty.org kaitlyn.murphy@sfcityatty.org anita.murdock@sfcityatty.org celena.sepulveda@sfcityatty.org sophia.garcia@sfcityatty.org winnie.fong@sfcityatty.org |

John K. Dipaolo, Esq.
General Counsel
Secretary to the Board of Directors
College of the Law, San Francisco
200 McAllister Street
San Francisco, CA 94102

**Counsel for Plaintiff College of the Law, San Francisco**
(related case USDC-Northern California case #4:20-cv-03033-JST)

Telephone: (415) 565-4787
Facsimile: (415) 565-4825
dipaolojohn@uchastings.edu

Lauren Hansen, Esq.
Melissa A. Morris, Esq.
Public Interest Law Project
449 15th Street, Suite 301
Oakland, CA 94612-06001

**Counsel for Proposed Intervenors Hospitality House; Coalition on Homelessness; and Faithful Fools**
(related case USDC-Northern California case #4:20-cv-03033-JST)

Office: (510) 891-9794
Fax: (510) 891-9727
lhansen@pilpca.org
mmorris@pilpca.org

Lili V. Graham, Esq.
Tiffany L. Nocon, Esq.
Disability Rights California
350 S. Bixel Street Suite 290
Los Angeles, CA 90017-1418

**Counsel for Proposed Intervenors Hospitality House; Coalition on Homelessness; and Faithful Fools**
(related case USDC-Northern California case #4:20-cv-03033-JST)

Office: (213) 213-8000
Fax: (213) 213-8001
lili.graham@disabilityrightsca.org
tiffany.nocon@disabilityrightsca.org

Michael David Key, Esq.
Jessica Berger, Esq.
Bay Area Legal Aid
1454 43rd Avenue
San Francisco, CA 94122

**Counsel for Proposed Intervenors Hospitality House; Coalition on Homelessness; and Faithful Fools**
(related case USDC-Northern California case #4:20-cv-03033-JST)

Office: (415) 982-1300
Fax: (415) 982-4243
mkeys@baylegal.org
jberger@baylegal.org

1  William S. Freeman, Esq.              **Counsel for Amicus Curiae**
   John Thomas H. Do, Esq.               **(ACLU Foundation of Northern**
2  ACLU Foundation of Northern           **California)**
   California                            (related case USDC-Northern California
3  39 Drumm Street                       case #4:20-cv-03033-JST)
   San Francisco, CA 94111
4                                        Office: (415) 621-2943
                                         wfreeman@aclunc.org
5                                        jdo@aclunc.org

6

7

8        **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the
   document(s) with the Clerk of the Court by using the CM/ECF system.  Participants
9  in the case who are registered CM/ECF users will be served by the CM/ECF system.
   Participants in the case who are not registered CM/ECF users will be served by mail
10 or by other means permitted by the court rules.

11       I declare under penalty of perjury under the laws of the United States of
   America that the foregoing is true and correct and that I am employed in the office of
12 a member of the bar of this Court at whose direction the service was made.

13       Executed on August 30, 2024, at San Francisco, California.

14
                                         _____
15                                       Kirsten Benzien

16

17

18

19

20

21

22

23

24

25

26

27

28