DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar 173594
Chief Deputy City Attorney
TARA M. STEELEY, State Bar #231775
THOMAS S. LAKRITZ, State Bar #161234
JOHN H. GEORGE, State Bar #292332
KAITLYN M. MURPHY, State Bar #293309
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4655 (Steeley)
               (145) 554-4628 (Lakritz)
               (415) 554-4223 (George)
               (415) 554-6762 (Murphy)
Facsimile:     (415) 554-4699
E-Mail:        tara.steeley@sfcityatty.org
               tom.lakritz@sfcityatty.org
               john.george@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>        Defendant. | Case No. 4:24-cv-01562-JST<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND EQUITABLE RELIEF (DKT. NO. 51)**<br><br>Hearing Date:   October 10, 2024<br>Time:           2:00 p.m.<br>Place:          Courtroom 6 – 2nd Floor<br><br>Trial Date:     None set. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

    I.     Plaintiffs' State Law Claims Fail ........................................................................ 3

          A.     Plaintiffs Do Not Dispute The City Is Immune Under California Government Code Sections 820.2, 818.2, and 821 ................................. 3

          B.     The City is Immune Under Government Code Section 815 ....................... 4

               1.     The Relief Sought Imposes Burdens the Legislature Sought to Avoid.......................................................................................... 4

               2.     The Nuisance Statute Is No Exception to Section 815 Immunity ... 5

          C.     The City Is Immune Under the Emergency Services Act ........................... 7

          D.     Plaintiffs' Disabled Person Act Claim Fails ............................................. 8

          E.     Plaintiffs Do Not Plausibly Allege Public or Private Nuisance.................. 8

    II.    Plaintiffs' State-Created Danger Claim Fails ........................................................ 13

    III.   Dismissal With Prejudice Is Appropriate ............................................................. 15

CONLCUSION.................................................................................................................... 15

1

## **TABLE OF AUTHORITIES**

**Cases**

*Alamilla v. Hain Celestial Grp., Inc.*
  30 F. Supp. 3d 943 (N.D. Cal. 2014) ............................................................12

*Baskin v. Hughes Realty, Inc*.
  25 Cal. App. 5th 184 (2018) ...........................................................................8

*Bautista v. Los Angeles Cnty.*
  216 F.3d 837 (9th Cir. 2000) .........................................................................13

*Birke v. Oakwood Worldwide*
  169 Cal. App. 4th 1540 (2009) .....................................................................10

*Chen Through Chen v. Albany Unified Sch. Dist.*
  56 F.4th 708 (9th Cir. 2022) ...........................................................................7

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*
  491 F. Supp. 3d 610 (N.D. Cal. 2020) ..........................................................12

*Conway v. County of Tuolumne*
  231 Cal. App. 4th 1005 (2014) .......................................................................6

*Est. of Kempton*
  91 Cal. App. 5th 189 (2023) ...........................................................................9

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*
  145 F. Supp. 3d 1000 (S.D. Cal. 2015).........................................................10

*Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*
  No. C 15-00567 WHA, 2015 WL 4309427 (N.D. Cal. July 15, 2015) ....................................10

*Hall v. City of Portland*
  No. 22-25705, 2023 WL 5527854 (9th Cir. Aug. 28, 2023) ....................................14

*Harrell v. City & Cnty. of Honolulu*
  283 F. App'x 509 (9th Cir. 2008) ..................................................................14

*Hood v. City of Sacramento*
  No. 223CV00232KJMCKD, 2023 WL 6541870  (E.D. Cal. Oct. 6, 2023) .............................5

*In re Firearm Cases*
  126 Cal. App. 4th 959 (2005) ...................................................................11, 12

*In re Kinney*
  201 Cal. App. 4th 951 (2011) ..........................................................................9

*Kempton v. City of Los Angeles*
  165 Cal. App. 4th 1344 (2008) ........................................................................9

*Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*
    24 Cal. App. 4th 1036 (1994) ........................................................................................9, 10

*Labadie v. State of California*
    208 Cal. App. 3d 1366 (1989) ...............................................................................................8

*Lew v. Superior Court*
    20 Cal. App. 4th 866 (1993) ................................................................................................11

*Loehr v. Ventura Cnty. Cmty. Coll. Dist.*
    147 Cal. App. 3d 1071 (1983) ...............................................................................................6

*Madani v. Cnty. of Santa Clara*
    No. 16-CV-07026-LHK, 2017 WL 2954643 (N.D. Cal. July 11, 2017)....................................4

*Martinez v. Pac. Bell*
    225 Cal. App. 3d 1557 (1990) .......................................................................................11, 12

*Mikkelsen v. State of California*
    59 Cal. App. 3d 621 (1976) ...................................................................................................6

*Moore v. Apple, Inc.*
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ..........................................................................3, 8, 13

*Nestle v. City of Santa Monica*
    6 Cal. 3d 920 (1972) .........................................................................................................5, 6

*Pierce v. Cnty. of Orange*
    No. SACV01981GLTMLGX, 2004 WL 7340113 (C.D. Cal. June 4, 2004) ............................5

*Podesta v. City of San Leandro*
    No. C 05-2615 SBA, 2005 WL 2333802 (N.D. Cal. Sept. 21, 2005) .......................................7

*Roy v. Contra Costa Cnty.*
    No. 15-CV-02672-TEH, 2015 WL 5698743 (N.D. Cal. Sept. 29, 2015).........................3, 8, 13

*Sanchez v. Seibel*
    No. 5:15-CV-01901-R-DFM, 2019 WL 13038318 (C.D. Cal. July 11, 2019).........................13

*Schooler v. State of California*
    85 Cal. App. 4th 1004 (2000) ............................................................................................4, 5

*Shen v. Albany Unified Sch. Dist.*
    No. 3:17-CV-02478-JD, 2018 WL 4053482 (N.D. Cal. Aug. 24, 2018) ..................................7

*Silva v. City of San Leandro*
    744 F. Supp. 2d 1036 (N.D. Cal. 2010) .................................................................................3

*Sinclair v. City of Seattle*
    61 F.4th 674 (9th Cir. 2023) ...............................................................................................14

*Soto v. State of California*
  56 Cal. App. 4th 196 (1997) .................................................................................................4

*Stanford Health Care v. Trustmark Servs. Co.*
  No. 22-CV-03946-RS, 2023 WL 309047 (N.D. Cal. Jan. 18, 2023).........................................14

*Sumner Peck Ranch, Inc. v. Bureau of Reclamation*
  823 F. Supp. 715 (E.D. Cal. 1993) .........................................................................................6

*Tovar v. City of San Jose*
  No. 5:21-CV-02497-EJD, 2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) .......................3, 8, 13

*Varlitskiy v. Cnty. of Riverside*
  No. EDCV192099JGBSPX, 2020 WL 4187769 (C.D. Cal. Apr. 23, 2020) ..............................6

*Wolf Designs LLC v. Five 18 Designs LLC*
  635 F. Supp. 3d 787 (D. Ariz. 2022) .....................................................................................13

*Yeh v. Mayorkas*
  No. 4:24-CV-00797-KAW, 2024 WL 2263392 (N.D. Cal. Apr. 22, 2024) ..............................9

**Statutes**
Code of Civil Procedure
  § 3479 ......................................................................................................................................5

Government Code
  § 815 ...................................................................................................................................5, 8
  § 815(b) ...................................................................................................................................6
  § 818.2 ..............................................................................................................................3, 4, 6
  § 820.2 ..............................................................................................................................3, 4, 6
  § 821 ........................................................................................................................................3
  § 855.4 .....................................................................................................................................6
  § 8655 ...............................................................................................................................4, 6, 7, 8

Health & Safety Code
  § 11570 ...................................................................................................................................11

**Rules**
Fed. R. Evid. 201(b)................................................................................................................12

**INTRODUCTION**

This Court previously recognized that "Plaintiffs essentially want this Court to order the City to alter its enforcement policies surrounding drug use and encampments in the Tenderloin." Dkt. No. 46 at 4-5. Despite the Court's cautionary ruling, Plaintiffs' First Amended Complaint ("FAC") renews this request and expands on it, asking the Court to extensively meddle in Defendant City and County of San Francisco's ("City" or "San Francisco") policies and programs, including requiring the City to close or relocate a non-congregate shelter currently home to many formerly unsheltered residents, stop providing any social services to people the Plaintiffs refer to as "addicts," and mothball or sell a recently-purchased building so as not to attract people Plaintiffs find undesirable to the Tenderloin. The Court should decline Plaintiffs' invitation and grant San Francisco's Motion to Dismiss Plaintiffs' First Amended Complaint With Prejudice (Dkt. No. 51, "Motion" or "Mot.").

San Francisco's Motion identifies multiple reasons why Plaintiffs' California Disabled Persons Act ("DPA"), public nuisance, private nuisance, and state-created danger claims must be dismissed. Plaintiffs' Opposition to San Francisco's Motion (Dkt. No. 57, "Opposition" or "Opp.") largely ignores the Motion's arguments and cited authority, thereby conceding the arguments and acknowledging the claims should be dismissed with prejudice. For example, Plaintiffs provide no response to San Francisco's arguments that California law immunizes it from Plaintiffs' state law claims because each is based on discretionary acts and the failure to enforce the law. Plaintiffs also do not dispute their DPA claim is deficient because Plaintiffs fail to identify an underlying statutory requirement and their nuisance claims are deficient because Plaintiffs fail to allege a duty to act. Plaintiffs' concessions are alone enough to dismiss each claim with prejudice

Where Plaintiffs provide a response, it is insufficient. Plaintiffs argue the Court can put off to another day the question of whether the relief they seek will impose financial burdens on the City such that the City is statutorily immune from their state law claims. But doing so ignores Plaintiffs' obligation to plead, in the FAC, facts showing their claims are outside the breath of any statutory immunity. They also downplay the reality of what they are asking for—a significant and costly intervention in the City's social programs and policies and ramped up enforcement of laws prohibiting conduct they claim to be an actionable nuisance.

1    Plaintiffs' argument that nuisance actions are not barred by the statutory immunities in the

2    California Government Code is a distraction and easily rejected. San Francisco never claimed that

3    every nuisance action is foreclosed, just that this one is. Courts regularly hold the Government Code

4    can immunize a municipality from liability for a nuisance claim and the Court should do so here.

5    Plaintiffs make several arguments in an attempt to save their public and private nuisance

6    claims. All fail. Plaintiffs assert that their alleged fears of future injuries are sufficient to allege

7    substantial and unreasonable interference with their property rights, but California law is clear that fear

8    of future injury is insufficient to state a private nuisance claim. Plaintiffs cannot avoid the obligation to

9    allege they suffered injuries different in kind to the general public's injuries to support their public

10   nuisance claim. They make no meaningful effort to identify how their alleged injuries differ from the

11   public's and could not even if they had tried. All members of the public in the Tenderloin experience

12   the alleged harms in the FAC—Plaintiffs' alleged harms are at most different in degree, not kind. In a

13   late-breaking move to avoid the Motion's causation arguments, Plaintiffs now claim the COVA Hotel

14   is a "drug house" and therefore a *per se* nuisance. This baseless assertion, which was nowhere in the

15   FAC and is unsupported by the allegations or law, should be rejected. Finally, Plaintiffs' argument that

16   causation is pleaded because the actions of "addicts and drug dealers" are foreseeable ignores the lack

17   of connection to the City policies and programs Plaintiffs challenge and, regardless, is no more than

18   causation based on Plaintiffs' say-so, which cannot survive even at this early stage.

19   The Opposition's attempt to salvage the state-created danger claim fares no better. Plaintiffs

20   agree that the claim is based on omissions, but omissions are not actionable under the state-created

21   danger doctrine. Their argument that the "dangers" are particular to Plaintiffs is contradicted by their

22   own statement that the alleged harm affects the entire neighborhood. This is fatal to the claim. Finally,

23   Plaintiffs offer nothing but insufficient conclusory statements of deliberate indifference and causation.

24   Plaintiffs did not request leave to amend in the event the Court grants any part of the City's

25   motion. Nor did they identify any new facts they could plead in a Second Amended Complaint that

26   could survive. For the reasons set out in the Motion and below, the Court should grant the Motion and

27   dismiss Plaintiffs' claims without leave to amend.

28

**ARGUMENT**

I.      **Plaintiffs' State Law Claims Fail**

     A.      **Plaintiffs Do Not Dispute The City Is Immune Under California Government Code Sections 820.2, 818.2, and 821**

The City's Motion explained that it is immune from suit under California Government Code Section 820.2 because Plaintiffs challenge discretionary decisions of the Executive and Legislative branches of City government (*e.g.*, an ordinance extending the COVA's use as non-congregate shelter, social services programs benefitting people living unsheltered, non-profit funding, real estate purchases). *See* Mot. at 10-11. Plaintiffs have no response to this argument. Their Opposition does not even mention section 820.2 or discretionary immunity. Plaintiffs similarly fail to respond to the City's argument that Government Code Sections 818.2 and 821 provide immunity from Plaintiffs' state law claims, each of which is based on a failure to enforce the law. *See* Mot. at 9-10; FAC ¶ 34 ("After herding addicts and dealers into the neighborhood, the City does not enforce narcotics laws that they foreseeably violate and other crimes that they foreseeably commit."); ¶ 113 ("[T]he City, by its failure to maintain the public property under its control and to enforce the laws requiring the same, is perpetuating and facilitating a public nuisance."); ¶ 118 ("The City's . . . inactions have created conditions or permitted conditions to exist that are harmful to the health . . . ."); ¶ 10 ("Drug dealers know that the City herds addicts to the Tenderloin and allows them to use drugs in public there.").

Plaintiffs' state law claims therefore should be dismissed because "[w]hen a non-moving party's opposition to a motion to dismiss fails to address the moving party's arguments regarding certain claims, the non-moving party has conceded that those claims fail." *Roy v. Contra Costa Cnty.*, No. 15-CV-02672-TEH, 2015 WL 5698743, at *3 n.7 (N.D. Cal. Sept. 29, 2015) (citing *Silva v. City of San Leandro*, 744 F. Supp. 2d 1036, 1050 (N.D. Cal. 2010)); *see also Tovar v. City of San Jose*, No. 5:21-CV-02497-EJD, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021) ("By failing to respond to the City's arguments, Plaintiffs have conceded those arguments . . . ."); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) ("where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice") (quotation omitted). Plaintiffs' lack of response concedes the City is immune.

### B.    The City is Immune Under Government Code Section 815

#### 1.    The Relief Sought Imposes Burdens the Legislature Sought to Avoid

California law holds that a plaintiff cannot evade the purpose of the Government Code's statutory immunities by pleading an equitable relief claim that contravenes those purposes. *Schooler v. State of California*, 85 Cal. App. 4th 1004, 1012 (2000). Contrary to Plaintiffs' characterization, *Schooler* is not limited to cases seeking "an immense expenditure" of public funds. Opp. at 14:20. And, in fact, other courts have relied on *Schooler* to dismiss equitable relief claims that would have required far less financial investment than the amount Plaintiffs speculate *Schooler* involved. For example, Judge Koh dismissed a single nurse's wrongful termination claim seeking the equitable relief of backpay under *Schooler*. *Madani v. Cnty. of Santa Clara*, No. 16-CV-07026-LHK, 2017 WL 2954643, at *1 (N.D. Cal. July 11, 2017).

The *Schooler* opinion makes no reference to the amount of money it would have taken the State to comply with Schooler's demand to shore up the bluff on which his house sat. Instead, the court held the California Government Code's statutory immunities barred Schooler's claims because to hold otherwise would circumvent the "underlying legislative policy," of the applicable immunities, which was to "limit the government's legal and financial burdens with respect to injuries" of the type Schooler alleged. *Schooler*, 85 Cal. App. 4th at 1013-14.

The same is true here. The immunities San Francisco asserts limit a public entity's legal and financial exposure for policy decisions and preserve for elected representatives the power to enact their policy preferences. *See, e.g.,* Cal. Gov. Code § 820.2 Law Revision Commission Comments (stating the purpose of discretionary immunity to is ensure "public employees will continue to remain immune from liability for discretionary acts"); *Soto v. State of California*, 56 Cal. App. 4th 196, 200 (1997) (explaining immunity under Section 8655 is broader than the discretionary acts immunity in section 820.2 and considers whether "the responsibility for basic policy decisions has been committed to coordinate branches of government"); Cal. Gov. Code § 818.2 Law Revision Commission Comments (recognizing that the purpose of the "failure to enforce" immunity is to prevent judicial review of certain decisions "if political responsibility for these decisions is to be retained"). Even a prayer for relief that required the City to stop implementing certain policies would run afoul of this

standard because it asks the Court to step in and direct a matter of public policy the California Government Code entrusts to the Court's coordinate branches.

It is instructive that the court in *Schooler* gave the following as an example of the type of claim for equitable relief that would *not* be barred: a prayer to enjoin a state statute that the plaintiff believed unconstitutional. In contrast, Plaintiffs here have no prayer to enjoin any statute and no claim that any state statute is unconstitutional. The relief they seek is far more invasive, active, and expensive, which is why the California Government Code bars it. Plaintiffs' requested relief would force the City to incur the financial burden of a policy change, even if that change required stopping conduct the City currently supports. But a financial burden is not required under *Schooler*, which spoke of legal burdens in addition to financial ones. *Schooler*, 85 Cal. App. 4th at 1014. The relief Plaintiffs seek would also require the City to incur a legal burden is does not already have—the burden to enact (or to cease to enact) certain policies designed to support the City's most vulnerable residents. And most importantly, Plaintiffs' prayer for relief would circumvent the underlying legislative policy behind the four immunities the City asserts, which preserves for the other branches of government the ability to make and execute policy decisions about matters of public importance.

Plaintiffs' equitable relief claims are barred by the four statutory immunities the City identified in its motion. Neither case Plaintiffs cites compels otherwise. *Pierce v. Cnty. of Orange*, No. SACV01981GLTMLGX, 2004 WL 7340113 (C.D. Cal. June 4, 2004)—which has never been cited by another court in this jurisdiction or elsewhere—concerned a lawsuit where the plaintiffs sought to "enforce compliance with mandatory jail regulations." There is no corollary mandatory state regulation here. And *Hood v. City of Sacramento*, No. 223CV00232KJMCKD, 2023 WL 6541870 (E.D. Cal. Oct. 6, 2023), did not address *Schooler* or the California Government Code at all. It concerned redressability as a component of Article III standing.

### 2.    The Nuisance Statute Is No Exception to Section 815 Immunity

Section C of Plaintiffs' Opposition responds to an argument the City never made. Plaintiffs argue that California Government Code Section 815 does not bar a nuisance claim brought under California Code of Civil Procedure Section 3479, citing *Nestle v. City of Santa Monica*, 6 Cal. 3d 920, 925 (1972). Opp. at 11-12. San Francisco does not disagree. California courts allow nuisance claims

against public entities on the right facts. The City argued more narrowly that no such claim can survive *on the facts of this case* because tort liability against a public entity is subject to "any immunity of the public entity provided by statute," Gov. Code § 815(b), and in this case, the following four statutory immunities bar Plaintiffs' nuisance claims based on the facts alleged: (1) the Emergency Services Act at California Government Code Section 8655, (2) failure to enforce the law under Section 818.2, (3) discretionary immunity under Section 820.2, and (4) the public health immunity under Section 855.4. Mot. at 7:7-11:20.

Appellate courts consistently hold a plaintiff cannot sidestep the California Government Code's statutory immunities by pleading a cause of action for nuisance. *See, e.g., Mikkelsen v. State of California*, 59 Cal. App. 3d 621 (1976) (applying Government Code immunity to nuisance claim); *Conway v. County of Tuolumne*, 231 Cal. App. 4th 1005 (2014) (same); *Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 147 Cal. App. 3d 1071, 1079 (1983) (recognizing provisions of Government Code apply to "claims arising out of negligence, nuisance, breach of statutory duties, and intentional wrongs"); *see also Varlitskiy v. Cnty. of Riverside*, No. EDCV192099JGBSPX, 2020 WL 4187769, at *8 (C.D. Cal. Apr. 23, 2020) (dismissing nuisance claim without leave to amend because it was barred by the immunities in the Government Code). The Eastern District of California rejected the same argument Plaintiffs make here in *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715, 724 (E.D. Cal. 1993). In *Sumner Peck Ranch Inc*., plaintiffs brought a nuisance action against a public water district alleging the district's distribution and drainage system flooded the plaintiffs' property. The water district moved to dismiss, arguing the statutory immunities in the California Government Code barred the plaintiffs' nuisance claim. Like here, the plaintiffs argued that *Nestle* stood for the proposition that statutory immunities in the California Government Code had no impact on a nuisance claim. *Id*. at 725-26. The Court handedly disagreed, stating "*Nestle* does not hold that specific statutory immunities found within the Tort Claims Act are inapplicable to a nuisance claim," recognizing that state court cases applied the Code's immunities to a nuisance suit post-*Nestle*. *Id*. at 726. And like here, the plaintiffs did not provide the court with any case law holding that the relevant Government Code immunity did not apply to nuisance claims. *Id*.

Plaintiffs here had a duty to plead around these immunities to state a claim. They fail to do so. Instead, Plaintiffs quibble that none of the cases San Francisco relied on in support of its argument that parties with state law claims must plead around government immunities to survive a motion to dismiss concern a nuisance action. Yet, like *Sumner Peck Ranch Inc*., Plaintiffs identify no cases that hold nuisance actions are carved out of this generally applicable rule. They are not.

Courts in this district routinely grant motions to dismiss state law claims where the factual allegations do not show the Government Code's statutory immunities are inapplicable. *See e.g., Podesta v. City of San Leandro*, No. C 05-2615 SBA, 2005 WL 2333802, at *7 (N.D. Cal. Sept. 21, 2005) (dismissing assault and battery, negligence, and property damage claims because "the lack of specificity in the Complaint falls short of the required pleading standard under the California Tort Claims Act" since the plaintiff "has not clearly shown [that the two statutory immunities defendants raised] are inapplicable"); *Shen v. Albany Unified Sch. Dist.*, No. 3:17-CV-02478-JD, 2018 WL 4053482, at *5 (N.D. Cal. Aug. 24, 2018), aff'd sub nom. *Chen Through Chen v. Albany Unified Sch. Dist*., 56 F.4th 708 (9th Cir. 2022) (applying the same reasoning to dismiss negligence, intentional infliction of emotional distress, and false arrest claims imprisonment). The same result should apply here as Plaintiffs have failed to sufficiently plead around any of the immunities raised in the Motion.

## C.    The City is Immune Under the Emergency Services Act

Plaintiffs do not dispute that the City is immune under California Government Code section 8655 for *any claim* related to Governor Newsom's and Mayor Breed's emergency proclamations related to the COVID-19 emergency or Mayor Breed's proclamation related to the drug overdose emergency in the Tenderloin. *See* Mot. at 8-9; Opp. at 15-16. Instead, Plaintiffs argue that the emergency proclamations "do not provide specific facts that relate to conduct alleged by plaintiffs that the Court may take judicial notice to find the immunity applies." Opp. at 15. But Plaintiffs construe Section 8655 too narrowly.

As set forth in the City's Motion, Section 8655 immunity is broad and covers any action or failure to act related to the proclamations. Mot. at 8-9. Nothing in Section 8655 requires the emergency proclamation to specify what actions or inactions need to be taken in response to an emergency for the immunity to apply. Rather, Section 8655 immunizes the City against any claim for

acting (or not acting) in response to a declared emergency. *See Labadie v. State of California,* 208 Cal. App. 3d 1366, 1369 (1989). Requiring emergency proclamations to specify what actions should be taken by City employees would undermine the Legislature's purposes in creating the immunity. "The purpose of [Section 8655] is obvious. In those cases where [a City] must take the steps necessary to quell an emergency, it must be able to act with speed and confidence without fear of incurring tort liability. Under the severe time constraints inherent in a declared state of emergency, decisions must be made quickly and often without the time necessary to carefully analyze all of the potential repercussions." *Id*. Thus, once an emergency proclamation is issued, the City is immune from any claim related to implementing that emergency proclamation irrespective of whether the City's chosen conduct was expressly stated in the proclamation itself.

Accordingly, to the extent Plaintiffs' state law claims are premised on the City's actions or inactions taken (or not taken) between February 25, 2020, through June 23, 2023, to implement the two emergency proclamations, Section 8655 shields the City from all liability on Plaintiffs' claims.

### D.      Plaintiffs' Disabled Person Act Claim Fails

Plaintiffs do not respond to the City's argument that Plaintiffs failed to plead the merits of a DPA claim. *See* Mot. at 11-12; Opp. at 6. Instead, Plaintiffs limit their response to Section 815 immunity and their contention that *Schooler* does not apply. Opp. at 6. Plaintiffs therefore do not dispute that "Sections 54 and 54.1 do not, by themselves, require []modifications to [] facilities," or that the FAC fails to allege an independent statutory requirement to make the modifications they demand. *Baskin v. Hughes Realty, Inc*., 25 Cal. App. 5th 184, 191 (2018). The Court should dismiss Plaintiffs' DPA claim with prejudice based on their waiver. *Roy*, 2015 WL 5698743 at *3; *Tovar*, 2021 WL 6126931 at *2; *Moore*, 73 F. Supp. 3d at 1205.

### E.      Plaintiffs Did Not Plausibly Allege Public or Private Nuisance

The City identified several independent grounds to dismiss Plaintiffs' public and private nuisance claims: (1) the FAC fails to allege a disturbance in Plaintiffs' property rights necessary for private nuisance; (2) the FAC fails to allege a special injury distinct in kind from the public at large necessary for public nuisance; (3) the FAC fails to allege causation; and (4) the FAC fails to allege a duty to act. Mot. at 12-15. None of Plaintiffs' arguments undermine these bases for dismissal.

To plead a <u>private nuisance</u> claim, Plaintiffs must sufficiently allege a "substantial and unreasonable" interference with the "use and enjoyment of *his or her land*," and cannot rely solely on an interference with public property. *Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*, 24 Cal. App. 4th 1036, 1041 (1994) (emphasis added); *see* Mot. at 13. Plaintiffs' Opposition does not identify how Plaintiffs have sufficiently alleged substantial and unreasonable interferences with their own property rights rather than interferences on public property near their private property. Instead, they rely on *Kempton v. City of Los Angeles*, 165 Cal. App. 4th 1344, 1349 (2008), for the proposition that "fear of physical harm that interferes with plaintiffs' use, enjoyment and egress from their property" is sufficient. Opp. at 10. *Kempton* is no help to Plaintiffs because it did not hold that fear of harm is a sufficient injury to plausibly allege a private nuisance. If it had, it would have been contrary to California law. *Koll-Irvine Ctr. Prop. Owners Ass'n*, 24 Cal. App. 4th at 1041-42 ("In this state . . . a private nuisance action cannot be maintained for an interference in the use and enjoyment of land caused solely by the fear of a future injury.")[1]

In *Kempton*, plaintiffs sued Los Angeles to force the city to remove a fence, unlawfully built on city property next to plaintiffs' garage, that allegedly obstructed plaintiffs' sightlines as they exited their garage and entered the flow of traffic. *Kempton*, 165 Cal. App. 4th at 1346, 1349. The fence was a permanent physical barrier obstructing plaintiffs' view of the roadway and thus "interfer[ed] with the ingress and egress" to their private property. *Id.* at 1349. Here, Plaintiffs allege no such interference. The Opposition's refers to "crowding" and "offensive smells" in the Tenderloin (Opp. at 10), but does not cite any allegation in the FAC or provide any authority (or even argument) demonstrating these amount to a substantial and unreasonable interference with each Plaintiff's property rights. *See Yeh v. Mayorkas*, No. 4:24-CV-00797-KAW, 2024 WL 2263392, at *2 (N.D. Cal. Apr. 22, 2024) (where "Plaintiff did not identify which allegations" support her claim, the court refused to scour the

---

[1] *Kempton* was part of a "sprawling campaign of litigation abuse by [attorney and plaintiff] Kinney and [his wife, co-plaintiff, and attorney] Kempton over the course of more than a decade," for which Kinney was disbarred and Kempton was recommended to be disbarred (she died before proceedings concluded). *Est. of Kempton*, 91 Cal. App. 5th 189, 194 (2023); *see also In re Kinney*, 201 Cal. App. 4th 951, 953 (2011) (*Kempton* was part of a "persistent and obsessive campaign of litigation terror against [Kinney's] neighbors and the City of Los Angeles"). This history cautions against the expansive read Plaintiffs advocate.

complaint because "judges are not like pigs, hunting for truffles buried in briefs" (citation omitted)).

Plaintiffs accordingly fail to allege a private nuisance claim.

To allege a <u>public nuisance</u>, each Plaintiff must allege an injury "different in kind and not merely in degree from that suffered by other members of the public." *Koll-Irvine Ctr. Prop. Owners Ass'n*, 24 Cal. App. 4th at 1040; *see* Mot. at 12. Plaintiffs contend that they do not need to allege an injury that is different in kind from the general public's injury because "the nuisance is both private and public." Opp. at 11. But, as explained above, Plaintiffs' private nuisance claim fails, foreclosing this argument. Plaintiffs then invoke *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1550 (2009), to support the assertion that they in fact did suffer unique injuries. *Birke* is inapposite. "[T]he injury contemplated in that decision was the aggravation of the plaintiff's asthma due to the alleged nuisance of second-hand smoke, which was a special injury as compared to the general public's increased risk of lung cancer." *Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*, No. C 15-00567 WHA, 2015 WL 4309427, at *5 (N.D. Cal. July 15, 2015) (distinguishing *Birke* and dismissing public nuisance claim). Unlike in *Burke*, Plaintiffs identify no alleged injuries that set them apart from any other resident, visitor, or business owner in the Tenderloin. Plaintiffs' citation to 37 paragraphs of the FAC (Opp. at 11)—which again expects the Court and Defendant to do Plaintiffs' searching for them—only confirms the general applicability of the alleged harm. For example, Plaintiffs allege "the City-owned sidewalks in the Tenderloin are dangerous, unsanitary and no longer open and accessible to plaintiffs," just as they are to everyone else in the Tenderloin, and that inaccessibility is not unique to those with mobility issues—"[e]ncampments, garbage and biological hazards make it difficult or impossible for even able-bodied guests and patrons to navigate on the public walkways." FAC ¶¶ 37, 85; *see also* ¶ 70 (alleging sidewalks "impassable" for able-bodied John Roe). This failure to allege special injuries is fatal to the public nuisance claim, which should be dismissed with prejudice. *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000, 1016 (S.D. Cal. 2015) (public nuisance claim dismissed where "such a claim would be available to anyone" in a toxic plume's path).

Plaintiffs' nuisance claims fail without allegations sufficient to infer legal and factual causation. Mot. at 13-14. Plaintiffs ignore most of the City's causation arguments. They do not explain how the City's alleged conduct caused the street conditions they complain about when, before any of

the conduct alleged here, the related *UC Law* case made largely identical containment zone and street-condition allegations in May 2020. *Id.* at 15. Nor do they attempt to distinguish *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990) or *In re Firearm Cases*, 126 Cal. App. 4th 959, 988 (2005), both of which significantly limit nuisance actions where, like here, the alleged injury is directly caused by someone other than the defendant. Instead, Plaintiffs make two arguments on causation (Opp. at 8-9), but neither is sufficient to avoid dismissal with prejudice.

First, Plaintiffs claim the COVA is a "drug house" and thus a *per se* nuisance under Health & Safety Code Section 11570. Opp. at 9. The FAC never alleges as much—nor could it. Plaintiffs attack the COVA's generosity ("private bathroom and two free meals a day . . . no rent"), the City's "housing first" policy, and actions *outside* the hotel ("illegal and dangerous narcotics activities *in the surrounding neighborhood*"). FAC ¶¶ 47-48 (emphasis added). Bur their only factual allegation about drug use in the hotel is an unnamed "citizen journalist['s]" hearsay claim that "there have been at least 12 overdose deaths inside the COVA." *Id.* ¶ 48. This is wholly insufficient to allege a Section 11570 violation, and the sole case Plaintiffs rely on demonstrates as much. In *Lew v. Superior Court*, 20 Cal. App. 4th 866, 870 (1993), the apartment building at issue was "being used as a center for sale and distribution of drugs," with more than 250 police visits and two dozen drug-dealer arrests in two and a half years and a reputation so notorious that "citizens from other areas seeking to purchase drugs" would ask taxis to take them to the building. *Id.* at 874. Plaintiffs' single allegation of twelve overdoses does not compare. Nor is it sufficient to satisfy the text of Section 11570, which requires plausible factual allegations that the COVA is "used for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance." Health & Safety Code § 11570. The alleged overdose deaths, without more, do not establish the COVA is used for any of Section 11570's specific acts. The Court should reject this last-minute attempt to rewrite the FAC to allege a claim never raised, and one that is insufficient regardless.

Plaintiffs next claim they plausibly alleged causation because the City's operation of the COVA and the now shuttered Tenderloin Center, combined with its alleged support for distribution of drug paraphernalia, and provision of social services "plausibly results in a nuisance due to the foreseeable conduct of addicts and dealers who, as a result, congregate around plaintiffs' homes and

businesses." Opp. at 9. Plaintiffs own formulation of the causal chain acknowledges it has multiple steps—(1) City conduct, (2) congregation of addicts and dealers around their homes and businesses "as a result of" the City's alleged conduct, and (3) as a result of that congregation, a nuisance from unidentified "foreseeable conduct." Plaintiffs fail to explain, or identify factual allegations demonstrating, *why* the City's alleged acts[2] foreseeably result in addicts and dealers congregating in front of Plaintiffs' properties and *why* such congregation results in (1) homeless encampments, (2) impassable sidewalks, (3) getting stuck by a discarded syringe in a stairwell, (4) fires, (4) threats of harm, or (5) loss of business. Their argument, like the FAC's allegations, is *ipse dixit*.

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610 (N.D. Cal. 2020) cannot save Plaintiffs' insufficient allegations. There, the court recognized that *Martinez*, 225 Cal. App. 3d 1557, and *In re Firearm Cases*, 126 Cal. App. 4th 959, generally prohibit nuisance claims where the harm was caused by a third party, but distinguished those cases on the basis that the *Purdue Pharma* defendants' alleged acts were *unlawful* and the resulting harm foreseeable because defendants "violated laws aimed at preventing the very harms—increased third-party addiction, overdoses, and deaths—that these laws were designed to prevent." *Purdue Pharma L.P.*, 491 F. Supp. 3d at 679-83. Here, Plaintiffs allege no ongoing unlawful conduct on the part of the City and do not dispute that the only allegation of unlawful conduct ended when the Tenderloin Center closed in 2022.

*Purdue Pharma*, if anything, supports the City's Motion. There the court found that "[e]ven if the harm is foreseeable in some sense—because, in retrospect, one can draw a line, however zig-zagged, from the final event (a needle-clogged toilet) back to the first (a pamphlet marketing opioids)"—the harm can still be too remote to allege causation. *Purdue Pharma L.P.*, 491 F. Supp. 3d at 659, 679. The alleged harms here (*e.g.*, getting stuck with a syringe) are even more remote from the

---

[2] The Court should disregard Plaintiffs' allegations that are undermined by the articles they cite and incorporate by reference. *Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) ("The articles the plaintiffs cite thus contradict the allegation upon which their entire complaint hinges . . . . Courts need not accept as true allegations contradicting documents that are referenced in the complaint."). This includes Plaintiffs' allegation that the City directly distributes fentanyl smoking equipment. *See* Mot. at 5. The Court should also reject Plaintiffs' attempt to insert a disputed social media post (Opp. at 5 n.1), for which judicial notice (even if Plaintiffs had asked for it) would be inappropriate. Fed. R. Evid. 201(b) (permitting notice of facts "not subject to reasonable dispute").

acts (operating the COVA as a non-congregate shelter) than those in *Purdue Pharma*. Plaintiffs fail to allege factual or legal causation.

Finally, Plaintiffs' Opposition ignores the City's arguments regarding their failure to allege a duty to act. *See* Mot. at 12-13. Plaintiffs' nuisance claims are based on the City's alleged "failure to maintain the public property under its control and to enforce the laws requiring the same," (FAC ¶ 113), but they do not allege the City had legal duty to do so. Without such allegations, their claims fail and their failure to respond to the City's arguments results in dismissal with prejudice. *Roy*, 2015 WL 5698743 at *3; *Tovar*, 2021 WL 6126931 at *2; *Moore*, 73 F. Supp. 3d at 1205.

## II.    Plaintiffs' State-Created Danger Claim Fails

Plaintiffs do not dispute that omissions cannot support a state-created danger claim as a matter of law or that their state-created danger claim is based on both acts and omissions. Instead, they argue their claim should nevertheless survive because it is based at least in some part on affirmative conduct. This misses the point. The Court must dismiss the portions of Plaintiffs' state-created danger claim that rely on allegations of omissions rather than affirmative conduct. *See Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000) (treating different theories in single count as different counts"); *Wolf Designs LLC v. Five 18 Designs LLC*, 635 F. Supp. 3d 787, 795 (D. Ariz. 2022) (dismissing "entirely different" theories in cause of action). "The very purpose of a motion to dismiss is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Sanchez v. Seibel*, No. 5:15-CV-01901-R-DFM, 2019 WL 13038318, at *1 (C.D. Cal. July 11, 2019), aff'd, 830 F. App'x 943 (9th Cir. 2020). Allowing Plaintiffs to seek discovery on matters that clear Ninth Circuit precedent holds irrelevant would undermine San Francisco's Motion. If the Court permits any portion of Plaintiffs' state-created danger claim to proceed it should strike the portions Plaintiffs base on alleged omissions.

Plaintiffs also agree that clear and controlling law proscribes a state-created danger claim where the underlying affirmative conduct affects a neighborhood as opposed to an individual. Instead, they argue the FAC's alleged dangers are unique to Plaintiffs because "the City's operation at the COVA foreseeably endangers those who live nearby," and the City's offers of services to those who live on sidewalk encampments "endangers those who live or run a business next to the encampments."

Opp. at 14:8-11. But a danger that impacts all who live nearby is a general—not particularized—harm. Just seven pages earlier Plaintiffs argued the FAC contains "allegations about how the City's conduct *affects their entire neighborhood*." Opp. at 7:16-17 (emphasis added). They cannot have it both ways.

Even as described in the Opposition, the factual allegations in the FAC remain strikingly similar to those alleged in *Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023) and *Hall v. City of Portland*, No. 22-25705, 2023 WL 5527854 (9th Cir. Aug. 28, 2023) (unpublished memorandum), both of which affirmed dismissal of a state-created danger claim at this stage. San Francisco discussed both cases in detail in its Motion and Plaintiffs' Opposition ignores them. Mot. at 17:26-18:27. The City's application of the facts in the FAC to the law established in *Sinclair* and *Hall* remains unanswered, which is a basis to grant the City's Motion. *See, e.g., Harrell v. City & Cnty. of Honolulu*, 283 F. App'x 509, 513 (9th Cir. 2008) (affirming ruling in favor of defendant where plaintiff "has failed to distinguish his case from the controlling precedents") (unpublished).

Plaintiffs' causation issues fare no better. The causation issues that plague Plaintiffs' state law claims (*see supra* pp. 11-13) also apply to their state-created danger claim. The chain of causation Plaintiffs propose requires a series of inferential leaps that are impermissibly speculative.

Finally, Plaintiffs do not meaningfully respond to the City's argument that the FAC lacks allegations sufficient to plausibly allege deliberate indifference. Mot. at 20:8-22:19. The only reference Plaintiffs make to deliberate indifference in their Opposition is that "the allegations [in the FAC] could support the trier of fact to conclude that City officials have shown deliberate indifference" to the dangers alleged in the FAC. Opp. at 14:2-3. This is the same type of conclusory and formulaic recitation, devoid of any factual content, that dooms the rest of the FAC. Plaintiffs do not to engage with any of the more than dozen Ninth Circuit cases the City cited showing how the allegations in the FAC differ from cases where the Court applied the state-created danger doctrine, and Plaintiffs do not cite any cases of their own to contradict the City's presentation of the law. *Stanford Health Care v. Trustmark Servs. Co.*, No. 22-CV-03946-RS, 2023 WL 309047, at *3 (N.D. Cal. Jan. 18, 2023) (granting dismissal motion where plaintiff "fail[ed] to distinguish adequately the considerable quantity of caselaw supporting Defendants' position"). Accordingly, the Court should dismiss Plaintiffs' state-created danger claim with prejudice.

### III.     Dismissal With Prejudice Is Appropriate

San Francisco's Motion seeks dismissal with prejudice and puts Plaintiffs on notice that dismissal with prejudice is appropriate because further leave to amend would be futile. Mot. at 22:20-23:13. Plaintiffs do not disagree. Unlike Plaintiffs' opposition to the City's motion to dismiss the original complaint, where Plaintiffs argued they could "amend their complaint to add other acts of the City" in support of their claims if given leave to amend (Dkt. No. 40 21:24-25), Plaintiffs' opposition to the City's motion to dismiss the FAC does *not* seek leave to file a second amended complaint in the event the Court grants any portion of San Francisco's Motion. Nor do Plaintiffs allege they have additional facts they could plead to state a plausible claim. This makes sense because the Court already dismissed the same claims from Plaintiffs' original complaint in response to identical legal arguments from San Francisco. The FAC was Plaintiffs' chance to correct those errors but they did not. Nor did they respond to the majority of San Francisco's Motion. Therefore, the Court should dismiss with prejudice any claims in the FAC it finds Plaintiffs did not plausibly allege.

### CONLCUSION

For the reasons set forth in the City's Motion and above, the Court should grant the Motion and dismiss Plaintiffs' claims with prejudice.

Dated:  September 13, 2024

> DAVID CHIU
> City Attorney
> YVONNE R. MERÉ
> Chief Deputy City Attorney
> TARA M. STEELEY
> THOMAS S. LAKRITZ
> JOHN H. GEORGE
> KAITLYN M. MURPHY
> Deputy City Attorneys
>
>
> By:     /s/*John H. George*
> JOHN H. GEORGE
>
> Attorneys for Defendant
> CITY AND COUNTY OF SAN FRANCISCO