UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Defendant. | Case No. 24-cv-01562-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 51 |

Before the Court is Defendant the City and County of San Francisco's ("the City") motion to dismiss. ECF No. 51. The Court will grant the motion in part and deny it in part.

## I.    BACKGROUND

Plaintiffs are residents and businesses in the Tenderloin neighborhood in San Francisco. ECF No. 50 ¶ 6. Plaintiffs allege that the City treats the Tenderloin as a "containment zone" for narcotics activities. *Id.* Specifically, Plaintiffs contend that "[f]or years, the policy of the City has been to corral and confine illegal drug dealing and usage, and the associated injurious behaviors, to the Tenderloin." *Id.* "Addicts living on the Tenderloin's streets foreseeably support their habit by stealing (*e.g.* shoplifting, car break-ins, burglaries, robberies) and hawking the stolen merchandise on the sidewalks." *Id.* ¶ 9. And "[a]s their disease progresses, their mental and physical health declines, resulting in them acting erratically, ignoring serious medical problems, rummaging through trash, discarding garbage on the sidewalk around them, going partially clothed, and defecating in public." *Id.* As a result, "the City-owned sidewalks in the Tenderloin are dangerous, unsanitary and no longer open and accessible to plaintiffs." *Id.* ¶ 37. In addition, "[t]hose involved in narcotics sales block the entrance to [Plaintiff's] building," threaten them, and start smoky bonfires. *Id.* ¶¶ 50, 52, 53.

Plaintiffs filed their initial complaint on Mach 14, 2024, and the City moved to dismiss. ECF Nos. 1, 35. The Court denied the City's motion as to Plaintiffs' American with Disabilities Act ("ADA") and Rehabilitation Act claims. ECF No. 46. The Court dismissed Plaintiffs' federal constitutional claims finding Plaintiffs lacked standing to challenge the City's failure to enforce its drug and anti-encampment laws in the Tenderloin. *Id.* at 3–5. The Court also dismissed Plaintiffs' California constitutional claim for failure to state a claim and remaining state law claims on immunity grounds. *Id.* at 10–12.

Plaintiffs then filed their First Amended Complaint ("FAC") in which they reallege their claims for: (1) violation of the ADA; (2) violation of the Rehabilitation Act; (3) violation of California's Disabled Persons Act ("DPA"); (4) public nuisance; (5) private nuisance; and (6) state-created danger under the Due Process Clause of the United States Constitution. ECF No. 50. Plaintiffs also added the following allegations of affirmative conduct by the City that they contend contributed to the Tenderloin conditions:

- City departments and agencies distribute and/or facilitate the distribution of fentanyl smoking kits to addicts who opt to live on the Tenderloins sidewalks. *Id.* ¶ 14.
- The City pays millions to organizations that the City knows distribute drug paraphernalia to addicts who camp out on the Tenderloin's sidewalks. *Id.* ¶ 15.
- The City operates at least four separate programs that provide services, supplies and support to addicts who reject offers of shelter and instead live in tents on the Tenderloin's sidewalks. *Id.* ¶¶ 17–20.
- The City opened the Tenderloin Center in January 2022. In knowing violation of state and federal criminal statutes, the City encouraged addicts to go there to consume fentanyl and other narcotics. The City instructed members of the SFPD to drop off addicts at the center. As a result, narcotics sales and use surged. The City shut down the Tenderloin Center in December 2022, but the harmful aftereffects of its operations continue to this day because many of the addicts and dealers who were drawn to the Tenderloin by the City's operation of the Tenderloin Center

1       remain in the neighborhood.  *Id.* ¶¶ 24–28.

2   •   City officials recently supported the activists who set up tents on a Tenderloin
3       street and invited addicts to come there to collect drug paraphernalia and ingest
4       fentanyl.  *Id.* ¶¶ 29–32.

5   •   Starting in 2020, the City took over the COVA Hotel on Ellis Street, which it runs
6       as a non-congregate shelter.  The City follows a housing first approach at the
7       COVA, and allows occupants to live there even if they use and sell drugs or engage
8       in harmful behavior inside and around the property.  Illegal narcotics usage became
9       rampant inside and around the COVA after the City took over operations and is
10      now a magnet for illegal and dangerous narcotics activities.  *Id.* ¶¶ 45–55.

11  The City moves to dismiss all but Plaintiffs' ADA and Rehabilitation Act claims.  ECF No. 51.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## III. JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).  However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017).

The City requests the Court take judicial notice of 11 documents: (1) the proclamation by the Mayor declaring the existence of a local emergency (COVID-19); (2) the proclamation by the Governor declaring a statewide emergency (COVID-19); (3) the Mayor's January 25, 2023 termination of orders issued under proclamation of local emergency (COVID-19); (4) the Mayor's May 3, 2023 termination of orders issued under proclamation of local emergency (COVID-19); (5) the Governor's proclamation terminating the state emergency (COVID-19); (6) the proclamation

3

of the Mayor declaring the existence of a local emergency of drug overdoses in the Tenderloin; (7) the supplements to the proclamation by the Mayor declaring the existence of a local emergency of drug overdoses in the Tenderloin; (8) the Board of Supervisor's motion indicating that the proclamation by the Mayor declaring the existence of a local emergency of drug overdoses in the Tenderloin would expire on June 30, 2022; (9) a July 20, 2024 article from the San Francisco Chronicle; (10) a July 11, 2024 letter from Plaintiffs' counsel to Mayor London Breed regarding the COVA Hotel; (11) a December 26, 2023 article from the San Francisco Chronicle. ECF No. 51–1.

The Mayor and Governor's proclamations and supplements are public records properly subject to judicial notice. *See Nat. Res. Def. Council v. McCarthy*, No. 16-cv-02184-JST, 2016 WL 6520170, at * 2 (N.D. Cal. Nov. 3, 2016) (taking judicial notice of Governor's emergency proclamations). Accordingly, the Court will take judicial notice of Exhibits A through I. As for the San Francisco Chronicle articles, "a court may take judicial notice of publicly available newspaper and magazine articles and web pages that 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Tarantino v. Gawker Media, LLC,* No. CV 14-603-JFW (FFMx), 2014 WL 2434647, at *1 n.1 (C.D. Cal. Apr. 22, 2014) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)). Accordingly, the Court takes judicial notice of the existence of Exhibits K and M but not the facts contained within. The City, however, offers no support that a letter from Plaintiffs' counsel to the Mayor is a proper subject of judicial notice. Thus, the Court declines to take judicial notice of Exhibit L.

**IV.     LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

## V.     DISCUSSION

### A.     Due Process Clause

"[T]he Fourteenth Amendment's Due Process Clause generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).  Thus, the Fourteenth Amendment typically "does not impose a duty on [the state] to protect individuals from third parties." *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007).  "There are two exceptions to this rule: (1) when a special relationship exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger (the state-created danger exception)." *Patel*, 648 F.3d at 971–72 (internal quotation marks and citations omitted).  "To succeed on a state-created danger claim, a plaintiff must establish that (1) a state actor's affirmative actions created or exposed him to an actual or particularized danger [that they] would not otherwise have faced, (2) that the injury [they] suffered was foreseeable, and (3) that the state actor was deliberately indifferent to the known danger." *Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023) (internal quotation marks and citation omitted).

Plaintiffs here contend that the City's affirmative acts—operating an illegal drug consumption site, and distributing drug paraphernalia, kits and services to addicts who refuse

offers of shelter—created actual and particularized dangers by encouraging "gang members dealing drugs and unstable fentanyl addicts to habituate the sidewalks of the Tenderloin." ECF No. 57 at 17. The City argues that Plaintiffs have not alleged a sufficiently serious injury to sustain a state-created danger claim. ECF No. 51 at 29–30. Rather, the City points out, "[t]he primary due process interests Plaintiffs allege the City infringed are their use [of] City sidewalks and a financial loss for the corporate Plaintiffs from lower hotel bookings due to general neighborhood decline." *Id.* at 29.

The Ninth Circuit has applied the state-created danger doctrine only in serious cases of assault, shootings, and death. *Id.* (citing *Bracken v. Okura*, 869 F.3d 771 (9th Cir. 2017); *Hernandez v. City of San Jose*, 897 F.3d 1125 (9th Cir. 2018); *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) and others). Accordingly, the Court agrees with the City that Plaintiffs here have not alleged a harm severe enough to constitute danger.[1] *See Polanco v. Diaz*, 76 F.4th 918, 927 (9th Cir. 2023) ("Although our precedent has not elaborated on the level of harm required to sustain a state-created-danger claim, it has been implicit in our cases that not any risk will do–the harm must be severe enough to constitute a 'danger.'"). Accordingly, Plaintiffs' state-created danger due process claim is dismissed, with leave to amend.

**B.    State Claims**

**1.    Immunity**

California Government Code Section 818.2 states that "[a] public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." Cal. Govt. Code. § 818.2. Section 820.2 provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." *Id.* § 820.2.

---

[1] Although Plaintiffs do not respond to this argument, ECF 57 at 16–18, it appears from the complaint that they contend the City's actions have heightened the risk they will be subject to violence in the future. While some courts have found that a "party threatened with real harm stemming from a constitutional violation" may have a state-created danger claim, the Court finds Plaintiffs' threatened harm too speculative in this case. *Boyd v. City of San Rafael*, No. 23-cv-04085-EMC, 2023 WL 6960368, at *19 (N.D. Cal. Oct. 19, 2023).

The City contends it is immune from Plaintiffs' state law claims under Sections 818.2 and 820.2. ECF No. 51 at 17–19. Plaintiffs point to Section 814 which states that "[n]othing in this part affects liability based on contract or the right to obtain relief other than money damages against a public entity or public employee." Cal. Govt. Code § 814. Because Plaintiffs only seek equitable relief, they argue these immunity provisions do not apply. ECF No. 57 at 10. The City, however, relying on *Schooler v. State of California*, 85 Cal. App. 4th 1004 (2000), argues it is still immune because the injunctive relief Plaintiffs seek would create legal and financial burdens on the City. ECF No. 51 at 15.

In *Schooler*, the plaintiff brought suit against the State for the loss of use and diminished value of his property caused by the erosion of a state-owned bluff. 85 Cal. App. at 1007. He argued that with respect to the injunctive relief he requested, any governmental immunity would be inapplicable under Section 814. *Id.* The Court disagreed, noting that "with respect to 'relief other than money or damages,' the type of relief covered cannot circumvent the underlying policies behind the governmental tort liability for money damages; any 'relief' allowed under section 814 cannot create duties that immunity provisions guard against." *Id.* at 1014. It noted that "[t]he example of equitable relief provided by the Legislative Committee comment is the enjoinment of an unconstitutional statute" which "would not create legal and financial burdens" on the State. *Id.* "In contrast, the injunctive relief [plaintiff] seeks requires the State to provide physical support for the bluff along with other measures to prevent pedestrian activity. These types of actions impose financial burdens on the State that [the Government Claims Act] guards against." *Id.* Accordingly, the State was entitled to immunity on plaintiff's claims. *Id.* at 1014–15.

In its order granting in part and denying in part the City's first motion to dismiss, the Court found the City was entitled to immunity on Plaintiffs' state law claims because the injunctive relief Plaintiffs sought would require the City to enforce its drug and anti-encampment laws to a greater extent than it does now. As in *Schooler*, that would have created legal and financial burdens on the City that the Government Claims Act guards against. ECF No. 46 at 11–12. Plaintiffs' amended complaint, however, now alleges affirmative conduct on the part of the City.

7

Thus, "[i]f and when the court considers remedies, the appropriate relief may be as simple as ordering the City to cease engaging in certain activities." ECF No. 57 at 19. The Court cannot at this point determine whether Plaintiffs' claim for relief "circumvent[s] the underlying policies behind the governmental tort liability." *Schooler*, 85 Cal. App. 4th at 1014.

The City also argues it is immune under Section 8655 which provides that "the state or its political subdivisions shall not be liable for any claim based upon the exercise or performance, or the failure to exercise or perform a discretionary function or duty on the part of a state or local agency or any employee of the state or its political subdivisions in carrying out the provisions of [the Emergency Services Act]" and Section 855.4 which immunizes public entities and employees with respect to claims based on the "decision to perform or not to perform any act to" prevent or control the spread of disease. ECF No. 51 at 16–19. The City points to Mayor London Breed and Governor Gavin Newsom's proclaimed local and state emergencies related to the COVID-19 pandemic. *Id.* In addition, on December 17, 2021, Mayor Breed proclaimed a local emergency to address drug overdoses in the Tenderloin. Accordingly, the City argues it is immune from "all of Plaintiffs' state law claims between February 25, 2020, through June 30, 2023, to the extent they are based on actions or inactions related to the two emergencies." *Id.* at 17. However, as Plaintiffs point out, it is not clear from the face of the complaint or the judicially noticed documents that any of the allegations which Plaintiffs' claims rest relate to either of the emergencies.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' state law claims on immunity grounds.

### 2. California Disabled Persons Act

The DPA provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities . . . and other public places." Cal. Civ. Code § 54(a). It further provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, . . . places of public accommodation, amusement, or resort, and other places to which the general public is invited,

subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." *Id.* § 54.1(a)(1). Both provisions "incorporate the ADA's protections against discrimination." *Baskin v. Hughes Realty, Inc.*, 25 Cal. App. 5th 184, 192 (2018).

The City argues Plaintiffs fail to state a cognizable DPA claim because they do not allege any details or facts supporting the claim but rather "quote California Civil Code section 54(a) and a portion of section 54.1(a)(1)," which "California courts have made clear . . . do not, by themselves, require modifications to facilities." ECF No. 51 at 20 (internal quotation marks and citation omitted). "Because the FAC does not allege the statutory basis for any requirement to make the City's facilities accessible" the City contends Plaintiffs have failed to state a claim. *Id.* However, as the City recognizes, a DPA claim may be premised on ADA violations. *Id.* Because the Court has already found Plaintiffs have stated a claim under the ADA, they have also stated a DPA claim. *See Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905 PJH, 2006 WL 2168877, at *16 (N.D. Cal. July 31, 2006) ("Under the CDPA, a plaintiff can show either that the ADA was violated, or that the facility in question does not comply with the California Building Code requirements for disabled access.").

### 3. Private Nuisance

Under California law, a nuisance is "anything that is injurious to health or is indecent or offensive to the senses, or an obstruction to the free use of property, that interferes with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway." *In re Firearm Cases*, 126 Cal. App. 4th 959, 987 (2005) (internal quotation marks and citation omitted). "Unlike public nuisance, which is an interference with the rights of the community at large, private nuisance is a civil wrong based on disturbance of rights in land." *Koll-Irvine Ctr. Prop. Owner Ass'n v. Cnty. of Orange*, 24 Cal. App. 4th 1036, 1041 (1994). "A nuisance may be both public and private, but to proceed on a private nuisance theory the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land." *Id.*

"The conduct necessary to make the actor liable for either a public or a private nuisance may consist of (a) an act; or (b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest." *In re Firearm Cases*, 126 Cal. App. 4th at 988 (internal quotation marks and citation omitted). Thus, "liability for nuisance does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance; the critical question is whether the defendant created or assisted in the creation of the nuisance." *City of Modesto Redevelopment Agency v. Superior Ct.*, 119 Cal. App. 4th 28, 38 (2004) *as modified on denial of reh'g* (June 28, 2004).

### a. Act or Duty to Act

The City argues Plaintiffs have failed to state a claim for nuisance because they have failed to allege the City had a duty to act. ECF No. 51 at 20–21. In fact, Plaintiffs do not rely on a duty to act theory, but rather allege affirmative conduct on the part of the City that has caused or contributed to nuisance. ECF 57 at 12. Specifically, Plaintiffs allege the City has operated a congregate shelter at the COVA where it allows occupants to sell and use narcotics; has operated consumption cites in the Tenderloin; distributes, funds and facilitates the distribution of drug paraphernalia to addicts who refuse offers of shelter; and provides street-based support to those who reject shelter. *Id.* Because Plaintiffs allege affirmative conduct on the part of the City that they contend created or assisted in the creation of the nuisance, they need not allege a duty to act. *See In re Firearm Cases*, 126 Cal. App. 4th at 988.

### b. Disturbance in Property Rights

"To proceed on a private nuisance theory, the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land." *Monks v. City of Rancho Palos Verdes*, 167 Cal. App. 4th 263, 302.

The City contends that Plaintiffs have not alleged a claim for private nuisance as they have failed to allege a disturbance in their property rights. ECF No. 51 at 21. The City argues that the conditions Plaintiffs claim establish a private nuisance are things that "obstruct the free passage and use of public parks, squares, streets, highway[s], and sidewalks, permit unlawful sales and

10

consumption of illicit narcotics, illegal street vending, and constitute a fire hazard." ECF No. 51 at 21 (quoting FAC ¶ 118). While Plaintiffs do make those allegations, they also allege that "[t]hose involved in narcotic sales block the" entrances to their buildings and start smoky bonfires outside their apartment, ECF No. 50 ¶¶ 50, 53, which are injuries specifically referable to the use and enjoyment of their land. *See Kempton v. City of Los Angeles*, 165 Cal. App. 4th 1344, 1349 (2008) ("Interference with the ingress and egress to and from a public street constitutes 'both a private and public nuisance' and may constitute a special injury actionable by an individual."); *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1551–52 (2009) (finding allegations of secondhand smoke interfered with use and enjoyment of outdoor common areas of apartment building sufficient to support a private nuisance claim).

### c. Causation

Finally, the City argues Plaintiffs have failed to plausibly allege causation. The challenged conduct must be both a "substantial factor in causing the alleged harm," *Citizen for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 361 (2017), and the proximate cause of the resulting nuisance, *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990). "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Bockrath v. Aldrich Chem. Co., Inc.*, 21 Cal. 4th 71, 79 (1999) (internal quotation marks and citation omitted). Proximate cause, on the other hand, "is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal. 4th 1037, 1045 (2003) (internal quotation marks and citation omitted). "[C]ourts place great emphasis on 'foreseeability of harm' in determining whether a . . . nuisance claim sufficiently alleges proximate cause." *City and Cnty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 679 (N.D. Cal. 2020).

The City contends that "independent, non-City actors are the direct cause of Plaintiffs' alleged harms—impassable sidewalks, dangerous drug dealers, getting stuck by a discarded syringe, smoky fires, threats of harm, [and] loss of business." ECF No. 51 at 22. The City argues its own alleged conduct "is several, or more, steps removed from the third-parties' harm-causing

actions and Plaintiffs do not allege any facts from which the Court can reasonably infer a causal link." *Id.* Plaintiffs argue that the City's acts, such as the operation of a congregate shelter which allows residents to use and sell narcotics; operation of narcotic consumption sites in the Tenderloin; instruction of SFPD to drop off addicts at the center; distribution or facilitation of the distribution of drug paraphernalia to addicts in the Tenderloin; and street-based support for those that reject shelter and live on the sidewalk have actively placed and encouraged addicts and dealers to come to the Tenderloin which was a substantial factor in producing the harm. ECF No. 57 at 12. Accepting Plaintiffs allegations as true, as it must, the Court cannot at this juncture conclude that it is implausible the City's acts were "more than [a] negligible or theoretical" cause of Plaintiffs' harms. *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 978 (1997), *as modified on denial of reh'g* (Oct. 22, 1997).

The City also contends that Plaintiffs' nuisance claims fail for a lack of proximate cause because Plaintiffs have "suffered as a proximate result of the independent intervening acts of others." ECF No. 51 at 23 (quoting *Martinez*, 225 Cal. App. 3d at 1565). However, under California law, a defendant may nonetheless be liable if a factfinder concludes that the defendant "could reasonably foresee the intervening acts of third parties." *Purdue Pharma L.P.*, 491 F. Supp. 3d at 679. Plaintiffs contend it was reasonably foreseeable that the City's acts would encourage addicts and dealers to congregate in the Tenderloin causing the alleged nuisances. The Court cannot at this time conclude this is implausible. *See Harrison v. City and Cnty. of S.F.*, No. 20-cv-05178-JST, 2022 WL 20241964, at * 5 (N.D. Cal. Apr. 19, 2022).

Accordingly, the Court finds Plaintiffs have stated a claim for private nuisance.

### 4. Public Nuisance

"A public nuisance is one which 'affects at the same time an entire community or neighborhood, or any considerable number of persons.'" *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1104 (1997) (quoting Cal. Civ. Code § 3480). "A private individual may bring an action against a municipality to abate a public nuisance when the individual suffers harm that is … specially injurious to himself, but not otherwise." *Kempton*, 165 Cal. App. 4th at 1349 (internal quotation marks and citation omitted).

12

1   The City argues that "Plaintiffs allege that conditions which allegedly create a public nuisance impact the entire Tenderloin, including residents, businesses, and visitors."  ECF No. 51 at 20.  "Because Plaintiffs have alleged the harm they experienced is the same alleged harm caused to the general public" the City argues "they failed to state a public nuisance cause of action."  *Id.*  However, "when the nuisance is a private as well as a public one, there is no requirement the plaintiff suffer damage different in kind from that suffered by the general public."  *Birke*, 169 Cal. App. 4th at 1551.  Because Plaintiffs also allege a private nuisance, they need not allege facts showing a special injury to maintain their public nuisance claim.

## CONCLUSION

For the foregoing reasons, the Court grants the City's motion to dismiss Plaintiffs' sixth claim for relief, with leave to amend.  The Court denies the City's motion to dismiss in all other respects.  Plaintiffs may file an amended complaint within 21 days, solely to correct the deficiencies identified in this order.  If no amended complaint is filed by that date, the dismissed claim in this order will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:  October 15, 2024



_____
JON S. TIGAR
United States District Judge