LAW OFFICES OF
WALKUP, MELODIA, KELLY & SCHOENBERGER
A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

MICHAEL A. KELLY (State Bar #71460)
mkelly@walkuplawoffice.com
RICHARD H. SCHOENBERGER (State Bar #122190)
rschoenberger@walkuplawoffice.com
MATTHEW D. DAVIS (State Bar #141986)
mdavis@walkuplawoffice.com
ASHCON MINOIEFAR (State Bar #347583)
aminoiefar@walkuplawoffice.com

SHANIN SPECTER (Pennsylvania State Bar No. 40928)
(Admitted Pro Hac Vice)
shanin.specter@klinespecter.com
ALEX VAN DYKE (CA State Bar No. 340379)
alex.vandyke@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA  19102
Telephone:  (215) 772-1000
Facsimile:  (215) 772-1359

**ATTORNEYS FOR ALL PLAINTIFFS**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>　　　　　　　　Defendants. | Case No. 4:24-cv-01562-JST<br><br>**Joint Case Management Statement**<br><br>**ASSIGNED FOR ALL PURPOSES TO THE HONORABLE DISTRICT JUDGE JON S. TIGAR, COURTROOM 6**<br><br>Hearing Date:　January 17, 2024<br>Time:　　　　 2:00 p.m.<br>Place:　　　　Videoconference<br><br>Trial Date:　　None set. |

Pursuant to the Court's December 17, 2024 Minute Entry (ECF No. 70), the parties jointly submit this Joint Case Management Statement.

## I. THE PARTIES' PRELIMINARILY STATEMENTS ON DISCOVERY AND RELATED ISSUES

### A. Plaintiffs' Statement

#### 1. The City continues to stall depositions and discovery.

Plaintiffs contend that the City's affirmative conduct creates and contributes to horrific and at times life-threatening conditions around their homes and businesses.[1] Plaintiffs have thus prosecuted this case diligently toward the end of moving for a preliminary injunction as soon as practical. As soon as discovery was authorized following the Court's ruling on the City's motion to dismiss the FAC, plaintiffs identified six City-employees they wanted to depose. After meeting and conferring with the City about schedules, Plaintiffs noticed their depositions for the month of December.

The first deposition happened on December 2, when Plaintiffs deposed Danny Manning, acting SFPD Captain of the Tenderloin.  His testimony corroborated many of Plaintiffs' allegations, including the that the City operated a supervised drug consumption site at the Tenderloin Linkage Center, which drew addicts, dealers and crime to the area. He also confirmed that City-funded entities handed out fentanyl smoking kits and other drug paraphernalia on the Tenderloin's sidewalks, and that he was ordered to stand down from arresting people on drug paraphernalia charges.

He also confirmed that the COVA Hotel and 685 Ellis, a former youth hostel turned shelter on the same block, attracted narcotic use, dealing, and associated nuisances on the adjacent sidewalks.

---

[1] Two disabled plaintiffs contend that their access to sidewalks and other public facilities is blocked.

The City effectively shut down and delayed discovery after Plaintiffs elicited that inculpatory testimony from a high-ranking police officer.

The next deposition of a City employee was scheduled and noticed for December 6. However, late in the afternoon of December 5, the City Attorney's office contacted Plaintiffs' counsel to announce that the City was taking the remaining five depositions of City employees off calendar, because the office had only minutes before decided that each of those employees needed outside counsel. The Deputy City Attorney apologized profusely for the abrupt cancellation. Plaintiffs' counsel again reiterated the emergency nature of this case. The Deputy City Attorney promised that the City would arrange for outside counsel as quickly as possible.

And yet, as of the date of this statement, more than a month later, there is no word from the City as to who will be representing these five deponents, let alone when their depositions will get back on calendar. Plaintiffs' counsel has repeatedly told the City Attorney that it is urgent from Plaintiffs' perspective to get the depositions back on calendar. The City's only response has been to say "we will let you know as soon as the agreements are signed." Nothing more. No names of outside counsel. No dates for the deposition.

The City in previous case management statements made clear that it wants to push the date for the hearing on the Plaintiffs' request for a preliminary injunction as far into the future as possible. And the delay in the depositions of the City employees pushes out the date by which Plaintiffs can gather the evidence and testimony to support their request for an preliminary injunction to address the emergency conditions in their neighborhoods.

It is extremely frustrating from Plaintiffs' perspective to be in the same position as of more than a month ago. Depositions abruptly taken off calendar. Depositions still off calendar. No word as to when they might get on calendar. And thus no ability on Plaintiffs' side to make an informed proposal as to a schedule for the hearing on their request for a preliminary injunction.

1
2
      **2.    Plaintiffs took Statements of Non-appearance for the Depositions of City Contracted Operators of the Tenderloin Linkage Center.**

3       Plaintiffs issued a series of third-party witness subpoenas for two executives of

4 HealthRight360 – the organization contracted by the City to operate the Tenderloin

5 Linkage Center. On December 11, 2024, Plaintiffs personally served subpoenas with

6 notice of depositions on Dr. Vitka Eisen, CEO of HealthRight360, and Paul Harkin,

7 Director of Harm Reduction Services for HealthRight360, for January 3 at 10:00 am

8 and 2:00 pm, respectively.

9       Plaintiffs' counsel never received any response from the representative of Mr.

10 Harkin or Dr. Eisen even though they were unquestionably legally served. On

11 January 3, 2025, plaintiffs' counsel took statements of non-appearance for both Dr.

12 Eisen and Mr. Harkin. Without cooperation from the deponents, and in light of the

13 deponents' brazen disregard of the deposition subpoenas, Plaintiffs' counsel intend to

14 compel their appearance.

15
16
      **3.    Plaintiffs Requested Consent from Defendant to Submit Discovery Disputes to a Magistrate Judge for an Informal Discovery Conference**

17       Plaintiffs served their First Set of Requests for Production on Defendant on

18 November 5, 2024 – all of which related to shelters operated by the City (the COVA,

19 Adante, Monarch, and 685 Ellis). Defendant served its response and objections on

20 December 5, 2024, without any production of documents and instead, a request to

21 meet and confer on the scope of Plaintiff's requests. The parties engaged in meet and

22 confer efforts beginning on December 6 that are currently ongoing. The parties have

23 reached agreements on certain categories and the identification of custodians with

24 which to conduct a search.

25       The parties have reached an impasse on two issues. Firstly, whether Plaintiff

26 is entitled to documents related to affirmative conduct alleged to have occurred at

27 any shelter other than COVA. Plaintiffs believe that the breadth of allowable

28 discovery easily includes conduct not just at the COVA, but other similarly situated

and nearby non-congregate shelters. For instance, Captain Manning testified that 685 Ellis is a source of similar affirmative conduct and nuisances as the COVA, which is on the very same block as Plaintiff Jane Roe's home.

Secondly, a dispute whether Plaintiffs' discovery requests can extend beyond two years prior to the date the complaint was filed (March 14, 2024) has arisen. Defendant asserts that because the applicable statute of limitation for Plaintiffs' ADA and nuisance claims is two years, "all that Plaintiffs' are entitled to" are documents dating to March 14, 2022. Plaintiffs dispute the premise that the asserted two years is the applicable statute of limitations period and even if it were, that discovery is limited in such a fashion. Plaintiffs assert that documents related to the contracts between the City and its contractors, policies and procedures surrounding narcotic use, and complaints of those activities are well within the scope of discovery irrespective of whether they occurred on March 13 or March 14, 2022.

On December 17, 2024, Defendant produced a limited set of responsive documents related to the operation of the COVA hotel from one department, Homelessness and Supportive Housing Services. On January 6, 2025, Defendant produced SFPD and 311 code sheets to inform a search for department records.

On January 7, Plaintiffs requested Defendant's consent to submit the disputes to a magistrate judge as the parties have presently reached an impasse. Defendant responded on January 10, asserting this approach is premature and that brief letters should be first submitted to this Court. Plaintiffs welcome an opportunity to bring the dispute before this Court. However, Plaintiffs do believe this dispute could be expediently resolved were it submitted directly to a magistrate judge, particularly given the contracted schedule for a preliminary injunction. Plaintiffs defers to the Court's instructions and will continue to meet and confer in good faith in the interim.

Plaintiffs received notice of two sets of subpoenas for Susan and Mary Roe's medical providers, the Plaintiffs bringing claims under the Americans with Disability Act ("ADA"). The subpoenas seeks 10 years of all medical, psychiatric, and billing

records and is not limited to the parts of the body affected by Plaintiffs' disability. Plaintiffs Mary and Susan Roe are not claiming any medical bills or any psychiatric conditions – an invasion into their extremely private mental health records is particularly unwarranted.

On January 7, the Plaintiffs requested the subpoenas be withdrawn as they are grossly overbroad and seek any and all private medical records, psychiatric records, and medical billing records. Plaintiffs requested that the Defendants explain why they feel they need such an extensive amount of medical records for the limited issue of whether Plaintiffs qualify under the ADA. In subsequent meet and confer communications, Plaintiffs offered to provide a limited set of medical records containing the most recent diagnosis of Mary Roe's spinal and respiratory conditions that caused her disability. After this offer was not accepted, Plaintiff offered one year of just medical records (not psychiatric or billing), limited to the spine and lungs, and with a first look agreement to redact unrelated private medical records. As Susan Roe utilizes a walker on a daily basis, Plaintiffs requested her subpoena be withdrawn since there is no real dispute she qualifies under the ADA. A response was not received by the time of this filing.

**B.  Defendant's Statement**

Plaintiffs, dissatisfied with Defendant's refusal to give into their unreasonable demands, continue to prematurely declare the parties are "at an impasse" instead of responding to Defendant's basic questions about the scope of discovery.  Although they seek only a forward-looking injunction, Plaintiffs demand five-years' worth of every single type of document they request without any explanation as to why such an exceptionally burdensome demand is warranted here.  Worse, instead of attempting to discuss the issue with Defendant – who has offered to provide certain contractual documents and more-easily-collected databases for time periods before 2022 – Plaintiffs quickly fire off emails claiming the parties are at an impasse and threatening to rush off to the Court.  This is not productive and, to prove the point,

the documents Plaintiffs seem to identify above seem to be include some (maybe more) that Defendant has already offered to produce. If Plaintiffs would simply engage in measured communications instead of posturing in emails, the parties would likely burden the Court with fewer "disputes." If the parties do reach an impasse, Defendant welcomes the opportunity to explain its position through the letter brief process contemplated by the Court's Standing Orders.

To the extent the parties are at any impasse, Plaintiffs – despite having been notified of the Court's Standing Order by Defendant – ignore the Court's direction in Section H of its Standing Order and instead seek reference to a magistrate judge. If the parties are actually at an impasse, Defendant sees no reason to depart from the Court's Standing Order and its requirement to submit a joint letter.

Plaintiffs are simply wrong about the proper scope of discovery. Plaintiffs had multiple opportunities to amend their Complaint and obtained numerous documents from Defendant via public records requests before these opportunities for amendment. But, despite this, they alleged just one hotel – the COVA – was a drug house responsible for some of the neighborhood's ills and Plaintiff's Jane Roe's harms (the COVA allegations only appear in allegations concerning Jane Roe). Now, having been informed that the COVA is closing at the end of March, Plaintiffs (who should be delighted the relief they seek has been provided) have attempted to turn this case into something it never was and seek discovery about several housing sites they have never alleged were drug houses or anything of the sort. The Court should not indulge this fishing expedition, particularly where it is based on incomplete and misleading testimony. Acting Capt. Manning never said Defendant's affirmative conduct at 685 Ellis was similar to Plaintiffs' allegations about the COVA. In fact, he said that neighbors of 685 Ellis had not complained "directly about it" and instead were more concerned with general conditions on the block, not 685 Ellis specifically, let alone some claim of Defendant's conduct related to the shelter.

1    Defendant has subpoenaed medical records from non-parties related to the two
2 Plaintiffs who allege ADA violations. Plaintiffs have demanded Defendant withdraw
3 these subpoenas and has, thus far, refused to provide any meaningful proposals to
4 limit the requests for what it plainly relevant information in a case where the
5 Plaintiffs themselves have alleged they have physical disabilities and thus put their
6 medical histories at issue. Specifically, Mary Roe alleges "pulmonary and spinal
7 conditions that make it difficult for her to walk," and that the alleged conduct by the
8 City forces her to jaywalk, "which is especially dangerous because of her age and
9 medical conditions." Her complaint does not identify the specific pulmonary or spinal
10 conditions she allegedly suffers or when she first allegedly started suffering them.
11 Nor does her complaint allege when her age made jaywalking especially dangerous
12 for her as compared to any other resident. Even if she had, the City would be entitled
13 to assess the veracity of such allegations, and therefore her asserted right to privacy
14 must yield to the "historically important state interest in facilitating the
15 ascertainment of truth in connection with legal proceedings." *Smith v. Equinox*
16 *Holdings, Inc.*, 2015 WL 628361, at *2 (N.D. Cal. Feb. 12, 2015). The requested
17 records are therefore discoverable and relevant to the City's defense on the merits.
18 Defendant continues to attempt to meet and confer in good faith with Plaintiffs and
19 will abide by the Court's Standing Order in presenting any disputes. The parties
20 have a further meet and confer scheduled on this issue at the time the Case
21 Management Statement was filed.
22    Plaintiffs make much of the supposed "delay" in rescheduling depositions of
23 City employees who will be separately represented, but wholly ignore that two of the
24 past four weeks since the parties were before the Court were the winter holidays
25 when people, even lawyers on occasion, take time off and are thus unavailable.
26 Defendant continues to do what it can to secure representation for the City
27 employees who require separate representation and will provide updates to the Court
28 and Plaintiffs as it can.

**II.   SETTLEMENT AND ADR**

Pursuant to the Court's direction, the parties reported to Magistrate Judge Alex G. Tse on January 7, 2025, for a scheduling conference. (ECF No. 71-72.) At the settlement conference, Magistrate Judge Tse requested Plaintiffs submit a terms sheet for injunctive relief by January 14, 2025, and that Defendant submit its response by January 23, 2025. The parties intend to hold a settlement conference on February 26, 2025. The parties will obviously meet their obligations in this regard.

**III.   SCHEDULING**

   **A.   Preliminary Injunction**

   Plaintiffs' Statement

Plaintiffs had proposed a discovery cutoff of February 14, 2025. That was before the City canceled the depositions of its five employees. It is not clear how much delay this will cause in terms of Plaintiffs' ability to complete the necessary discovery. Plaintiffs intend to serve the City with a Rule 30(b)(6) deposition notice on some of the issues in dispute. Plaintiffs have served subpoenas for deposition nonparties, including employees of nonprofits and vendors that plaintiffs understand and believe have received City funding and support to operate the Tenderloin Linkage Center, hand out drug paraphernalia on City sidewalks and streets, operate the COVA Hotel and similar shelters in the Tenderloin, and provide support and services that enables addicts, who refuse offers of treatment and shelter, to remain on the streets of the Tenderloin. Plaintiffs may be forced to seek judicial relief to conduct these depositions as Dr. Eisen and Mr. Harkin have thus far been uncooperative.

Pending the resolution of the outstanding depositions, Plaintiffs believe discovery for the purpose of the preliminary injunction can be completed by March 17, 2025.

The Court requested a proposed briefing and witness examination schedule from both parties. Plaintiffs believe they can submit an opening brief approximately

1 three weeks after they complete the foregoing discovery. They believe it would be
2 reasonable for the City to receive 30 days to respond. Plaintiffs would then file a
3 reply 14 days after that. While the outstanding depositions impede Plaintiffs' ability
4 to determine which witnesses will be necessary, the Plaintiffs anticipate they will call
5 four to five live witnesses and also submit evidence in the form of written
6 submissions, including deposition testimony, documents, photographs, and video
7 recordings. As such, Plaintiff's propose a three-day hearing and the following
8 schedule:

| Event | Plaintiff's Proposal |
|---|---|
| Plaintiffs' Preliminary Injunction Submission | April 7, 2025 |
| Defendant's Opposition Submission | May 7, 2025 |
| Plaintiff's Reply Submission | May 21, 2025 |
| PI Injunction Hearing Day 1 | May 28, 2025 |
| PI Injunction Hearing Day 2 | May 29, 2025 |
| PI Injunction Hearing Day 3 | May 30, 2025 |

Plaintiffs propose the parties make brief opening statements of 20 minutes and reserve 30 minutes for closing remarks.

Defendant's Statement

Plaintiffs first provided Defendant a draft joint cases management conference statement on Sunday, January 12, 2025, with no explanation or offer to meet and confer regarding all dates for discovery, the preliminary injunction motion and hearing, and trial, as requested by the Court during the December 17, 2024 case management conference. Similarly, Plaintiffs have not provided Defendant any information regarding the structure and contours of a hearing on the preliminary injunction other than what is included in this Statement.

Based on the breath of relief Plaintiffs intend to seek in their preliminary injunction, their intention to seek an injunction based on each surviving claim, the significant amount of evidence they intend to submit in support, and Defendant's need to conduct discovery in response to Plaintiffs' motion (including much that cannot be completed in advance, like declarant depositions and responsive expert testimony), Defendant proposes the following schedule, which accounts for the Court's preference (stated at the prior conference) for three weeks between the reply brief and the hearing:

| Event | Defendant's Proposal |
|---|---|
| Plaintiffs' Preliminary Injunction Motion Due By | April 7, 2025 |
| Defendant's Opposition Due By | June 10, 2025 |
| Plaintiff's Reply Due By | June 24, 2025 |
| PI Injunction Hearing Day 1 | July 15, 2025 |
| PI Injunction Hearing Day 2 | July 16, 2025 |
| PI Injunction Hearing Day 3 | July 17, 2025 |
| PI Injunction Hearing Day 4 (if necessary) | July 18, 2025 |

Defendant contends that no discovery cut-off is necessary for the preliminary injunction hearing. Given the lack of details about the specific remedies Plaintiffs will seek in their motion for preliminary injunction and Plaintiffs attempts to enlarge the case beyond the operative complaint, Defendant cannot say with certainty what the preliminary injunction hearing should look like. Defendant contends that a fully briefed preliminary injunction motion can be heard in a four-day hearing with equal time limits on both sides.

**B.     Case Schedule and Trial**

Plaintiffs' Statement

Plaintiffs propose the following case schedule:

11

| Event | Plaintiffs' Proposal |
|---|---|
| Fact Discovery Cut-Off | July 31, 2025 |
| Opening Expert Report Deadline | August 14, 2025 (2 weeks after close of fact discovery) |
| Rebuttal Expert Report Deadline | August 28, 2025 (4 weeks from initial disclosure) |
| Expert Discovery Cut-Off | September 11, 2025 (2 weeks from rebuttal disclosure) |
| Last Day to File Dispositive Motions | October 9, 2025 (28 days after expert discovery cut-off) |
| Last Day to Hear Dispositive Motions (Thursday, 2PM) | November 13, 2025 (35 days after motion deadline) |
| Pretrial Conference (Monday, 2PM) | December 1, 2025 |
| Trial (M-Th, 8AM) | December 8, 2025 |

Defendant's Statement

Defendant proposes the following case schedule, which considers the need to conduct discovery into Plaintiffs' allegations regarding several distinct categories of alleged activity by San Francisco and third parties:

| Event | Defendant's Proposal |
|---|---|
| Fact Discovery Cut-Off | August 8, 2025 |
| Opening Expert Report Deadline | August 22, 2025 (2 weeks after close of fact discovery) |
| Rebuttal Expert Report Deadline | September 19, 2025 (4 weeks from initial disclosure) |
| Expert Discovery Cut-Off | October 3, 2025 (2 weeks from rebuttal disclosure) |

| | |
|---|---|
| Last Day to File Dispositive Motions | November 6, 2025 (34 days after expert discovery cut-off) |
| Last Day to Hear Dispositive Motions (Thursday, 2PM) | Thursday December 11, 2025 (35 days after motion deadline) |
| Pretrial Conference (Friday, 2PM) | Friday January 23, 2026 (6 weeks after MSJ hearing) |
| Trial (M-Th, 8AM) | Monday February 2, 2026 (2nd Monday following Pretrial Conference) |

Defendant believes that the case could bifurcated to address the disability access and nuisance claims in separate motions for summary judgment.

Defendant shares the goal of efficiently trying this case before the Court, but cannot determine at this time the form of presentation of trial testimony. San Francisco requests 10 days for trial, inclusive of all parties' cases.

Dated: January 14, 2025          WALKUP, MELODIA, KELLY & SCHOENBERGER


By:       /s/ Ashcon Minoifar
          MICHAEL A. KELLY
          RICHARD H. SCHOENBERGER
          MATTHEW D. DAVIS
          ASHCON MINOIEFAR
          Attorneys for ALL PLAINTIFFS

Dated:  January 14, 2025          DEPUTY CITY ATTORNEYS

By: /s/ John H. George
DAVID SHIU
YVONNE R. MERE
TARA M. STEELEY
THOMAS S. LAKRITZ
JOHN H. GEORGE
KAITLYN M. MURPHY
Attorneys for Defendant CITY AND COUNTY OF SAN FRANCISCO