

LAW OFFICES OF
**WALKUP, MELODIA, KELLY & SCHOENBERGER**
A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
T: (415) 981-7210 · F: (415) 391-6965

MICHAEL A. KELLY (State Bar #71460)
mkelly@walkuplawoffice.com
RICHARD H. SCHOENBERGER (State Bar #122190)
rschoenberger@walkuplawoffice.com
MATTHEW D. DAVIS (State Bar #141986)
mdavis@walkuplawoffice.com
ASHCON MINOIEFAR (State Bar #347583)
aminoiefar@walkuplawoffice.com

SHANIN SPECTER (Pennsylvania State Bar No. 40928)
(Admitted Pro Hac Vice)
shanin.specter@klinespecter.com
ALEX VAN DYKE (CA State Bar No. 340379)
alex.vandyke@klinespecter.com
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA  19102
Telephone:  (215) 772-1000
Facsimile:  (215) 772-1359

**ATTORNEYS FOR ALL PLAINTIFFS**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>　　　　　　　Defendants. | Case No. 4:24-cv-01562-JST<br><br>**DECLARATION OF MARY ROE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ASSIGNED FOR ALL PURPOSES TO THE HONORABLE DISTRICT JUDGE JON S. TIGAR, COURTROOM 6**<br><br>Action Filed:　03/14/2024<br>Trial Date:　　Unassigned |

I, Mary Roe, declare as follows:

1. I am over the age of 65 and am one of the plaintiffs in the above-captioned action. I am appearing in this action under the fictitious name of "MARY ROE," in order to preserve my anonymity. I have personal knowledge of the facts stated herein, except for facts that are stated on information, belief, or understanding. As to the latter, I have a good faith basis for believing them to be true. If called as a witness, I could and would competently testify thereto. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction.

2. I have lived in the Tenderloin neighborhood of San Francisco since 2016. I currently live on the 200 block of Turk Street. I live within three blocks of the GLIDE memorial church parking lot and within four blocks of the COVA hotel and 685 Ellis Street, which I understand to have been operated as homeless shelters by the City of San Francisco. I also live right next to the Hospitality House located at 290 Turk Street, a non-profit that offers services to the homeless.

3. I am disabled as a result of Chronic Obstructive Pulmonary Disease ("COPD") and a degenerative spinal condition, and since approximately 2010, I have had to use an oxygen tank and cannot leave my home without my inhaler. I must be careful not to overexert myself, as I have had several recent flare-ups that result in hospitalizations. Very often, I will have shortness of breath and will need to take breaks when walking. A simple trip around the corner can set off my COPD and result in a flare-up requiring medical attention. Adding extra steps, like stepping up and down from the sidewalk, can cause me to exert myself and risk a flare-up. Living in the Tenderloin with this disability is both scary and serious because you don't want to take your time walking through the conditions described in this declaration. Whenever I need to rest to catch my breath, I feel that I am a target for criminal activity. I often fear for my safety when leaving my home, particularly when I am having a bad day and the conditions on the sidewalk require me to take extra care

with where I walk and who I interact with. Anything that causes me to have to stop and rest makes me worried for my safety.

4.   I frequently walk to the public bus stop on my block to access medical care and other services. On the way to accessing these public services, I frequently encounter the conditions and hazards described in this declaration.

5.   I am aware of a new policy by the City related to the distribution of drug paraphernalia. Prior to that policy change earlier this year, the Hospitality House openly distributed drug paraphernalia, including glass pipes, foil, needles, and cotton, on a table out front. Individuals would then sit right outside the Hospitality House and start smoking or injecting drugs.

6.   Presently, I see an increased number of people, sometimes five to eight at a time, who hang out outside the Hospitality House. They will knock on the door. Someone inside will crack the door open, hand them something, and then close the door again. At times, I will see them walk a short distance away from the Hospitality House, then stop near the front door to my building and start to smoke or inject drugs. I believe these individuals are receiving drug paraphernalia from the Hospitality House.

7.   Very recently, the sidewalks on and near my block have been increasingly blocked by loitering groups of people who appear to be homeless drug users in various states of intoxication. Right outside my home, I frequently see people gathered on the sidewalk appearing to be selling and smoking illegal drugs. I often see people sitting, standing or lying down outside my front door smoking or injecting what appears to be illegal drugs on the sidewalk. Recently, people have fully obstructed the front door to the building and must be removed before I can leave the property. Oftentimes, I find these individuals to be intimidating, scary, and unpredictable. There is often debris, garbage, and human excrement outside the front door to my building and on the sidewalk on my block. The smell from this debris and human waste has been incredibly nauseating lately. Recently, as I left my

1  home to go to work, the smell of human excrement was so bad that I was sick to my
2  stomach. I almost decided to turn back around and not go to work. At times, I have
3  seen homeless individuals burning wood and other materials on the sidewalk. At
4  night, I am too scared to leave my apartment building because of the people who
5  gather and loiter outside my home. Because of these conditions on my block and the
6  adjoining sidewalks, I must take extra care for my safety when entering or leaving
7  my home.

8.  When I walk down the sidewalk, I frequently have to walk into the street to avoid people loitering in various states of intoxication who are blocking the sidewalk. I also have to navigate around debris, including discarded drug paraphernalia. It is both difficult and scary to step off the sidewalk and into the street because I need to move quickly to avoid moving traffic, and by the time I make it back to the sidewalk, my COPD will sometimes flare up, and I need to catch my breath.

9.  While these conditions and hazards outside my home will improve at times, they have been largely consistent and have had a substantial impact on my ability to enjoy the use of my home and access to public services. Very recently, I have noticed an increase in these conditions I have described. I continue to take extra care for my safety when I leave my building and walk on the sidewalks when accessing services in the Tenderloin and the City of San Francisco.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 22th day of August, 2025, at San Francisco, California.

_____
Mary Roe