DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
TARA M. STEELEY, State Bar #231775
JOHN H. GEORGE, State Bar #292332
KAITLYN M. MURPHY, State Bar #293309
ABIGAIL H. WALD, State Bar #309110
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4655 (Steeley)
               (415) 554-4223 (George)
               (415) 554-6762 (Murphy)
               (415) 554-3901 (Wald)
Facsimile:     (415) 554-4699
E-Mail:        tara.steeley@sfcityatty.org
               john.george@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org
               abigail.wald@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>Defendant. | Case No. 4:24-cv-01562-JST<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:  October 27, 2025<br>Time:  8:30 a.m.<br>Place:  Courtroom 6, 2nd Floor<br>  1301 Clay Street<br>  Oakland, CA 94612<br><br>Trial Date:  August 10, 2026 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

I.    STATEMENT OF FACTS .....................................................................................2

    A.    California Law Authorizes the Distribution of Safer Smoking Supplies ....2

    B.    CDPH's Policy Relies on Scientific Evidence Showing the Public Health Benefits of Distributing Safer Smoking Supplies.........................................3

    C.    CDPH Funding for the Distribution of Safer Smoking Supplies.................4

    D.    San Francisco's Approach In The Tenderloin Reflects A Multi-Prong, Citywide Response That Considers The Public Health Of All San Franciscans......................................................................................................4

    E.    San Francisco's Relationship with California Authorized SSPs Who Distribute Safer Smoking Supplies in the Tenderloin .................................5

    F.    Plaintiff's Motion for Preliminary Injunction...............................................6

II.    PLAINTIFFS' MOTION IMPROPERLY RELIES ON IRRELEVANT CONDUCT .............................................................................................................8

    A.    The City Closed the Tenderloin Linkage Center In 2022.............................8

    B.    The Distribution Site on Willow Street Closed in August 2024...................8

    C.    Plaintiffs Offer No Evidence Homeless Shelters Distribute Safer Smoking Supplies ..........................................................................................8

III.    LEGAL STANDARD............................................................................................9

IV.    LEGAL ARGUMENT.........................................................................................10

    A.    Plaintiffs Lack Standing and This Court Lacks Jurisdiction ....................11

        1.    Plaintiffs Have No Certainly Impending Injury In Fact ...............11

        2.    Any Injury Plaintiffs Raise Is Not Fairly Traceable to The City's Conduct and The Relief Sought Will Not Redress The Injury ......13

    B.    Plaintiffs Did Not Establish Their Likelihood of Success Under Any *Winter* Factor ............................................................................................14

        1.    Plaintiffs Are Unlikely to Succeed on the Merits .........................14

            a.    San Francisco Is Immune from Plaintiffs' Nuisance Claim...............................................................................15

            b.    Plaintiffs Fail to Show A Present Substantial Disturbance18

            c.    Plaintiffs Fail to Establish a Causal Connection Between their Alleged Harm and San Francisco's Conduct Generally...................................................................................19

                i.    Plaintiffs Did Not Establish Factual Causation .....20

                ii.    Plaintiffs Did Not Establish Proximate Causation.24

d.    The Public Benefit of the City's Considered And Focused Policies Outweighs The Harms Plaintiffs Allege .............25

2.    Plaintiffs Will Not Suffer Irreparable Harm Absent Preliminary Relief.....................................................................................26

a.    The Harm Plaintiffs Allege Is Not Irreparable .................27

i.    Roe Plaintiffs Fail to Show Irreparable Injury.......27

ii.    Entity Plaintiffs' Alleged Harm Is Not Irreparable29

b.    Plaintiffs' Delay Demonstrates A Lack of Irreparable Harm ...............................................................................29

3.    There Is No Equitable Justification For Plaintiffs' Requested Injunction ...........................................................................30

C.    Plaintiffs Improperly Seek a Universal Injunction Beyond the Court's Authority ....................................................................................32

CONCLUSION...............................................................................................32

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AboveGEM, Inc. v. Organo Gold Mgmt., Ltd.*
No. 19-cv-04789-PJH, 2019 WL 3859012 (N.D. Cal. Aug. 16, 2019) ....................................29

*Al Otro Lado v. Wolf*
952 F.3d 999 (9th Cir. 2020) ...............................................................................................29

*Am. Passage Media Corp. v. Cass Commc'n, Inc.*
750 F.2d 1470 (9th Cir. 1985) .......................................................................................28, 29

*Amylin Pharms., Inc. v. Eli Lilly & Co.*
456 Fed. Appx. 676 (9th Cir. 2011).......................................................................................27

*Anderson v. United States*
612 F.2d 1112 (9th Cir.1979) ...............................................................................................10

*Califano v. Yamasaki*
442 U.S. 682 (1979).............................................................................................................32

*Caribbean Marine Servs. Co. v. Baldrige*
844 F.2d 668 (9th Cir. 1988) ...............................................................................................27

*CFNR Operating Co. v. City of Am. Canyon*
282 F. Supp. 2d 1114 (N.D. Cal. 2003) ..........................................................................28, 31

*Citizens for Odor Nuisance Abatement v. City of San Diego*
8 Cal. App. 5th 350 (2017) ...................................................................................................19

*City of Norwalk v. City of Cerritos*
99 Cal. App. 5th 977 (2024) ...........................................................................................15, 16

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013).............................................................................................................11

*Communities for a Better Env't v. Pac. Steel Casting Co.*
No. C06-4184 BZ, 2006 WL 4491437 (N.D. Cal. Sept. 21, 2006) ...........................................28

*Dep't of Fish & Game v. Superior Court*
197 Cal.App.4th 1323 (2011) ...............................................................................................25

*Diamond S.J. Enter., Inc. v. City of San Jose*
No. 18-CV-01353-LHK, 2018 WL 11009362 (N.D. Cal. Mar. 2, 2018)................................29

*Drakes Bay Oyster Co. v. Jewell*
747 F.3d 1073 (9th Cir. 2014) ...............................................................................................30

*Dymo Indus. v. Tapeprinter, Inc.*
326 F.3d 141 (9th Cir. 1964) .................................................................................................9

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Esparza v. Cnty. of Los Angeles*
    224 Cal. App. 4th 452 (2014) ...........................................................................................18

*F.D.I.C. v. Jackson-Shaw Partners No. 46, Ltd.*
    No. CIV. 92-20556 SW, 1994 WL 695376 (N.D. Cal. Dec. 8, 1994)......................................27

*Garcia v. Google, Inc.*
    786 F.3d 733 (9th Cir. 2015) ...........................................................................................10

*Gonzales v. Gorsuch*
    688 F.2d 1263 (9th Cir. 1982) .........................................................................................13

*Hazari v. Cnty. of Santa Clara*
    No. 19-CV-04392-BLF, 2025 WL 1828514 (N.D. Cal. July 1, 2025)......................................18

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*
    736 F.3d 1239 (9th Cir. 2013) .........................................................................................29

*In re Firearm Cases*
    126 Cal. App. 4th 959 (2005) ............................................................................19, 21, 24

*Kolender v. Lawson*
    461 U.S. 352 (1983).........................................................................................................13

*Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*
    24 Cal. App. 4th 1036 (1994) ................................................................12, 18, 19, 27

*Liebman v. Richmond*
    103 Cal. App. 354 (Ct. App. 1930)...................................................................................17

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*
    634 F.2d 1197 (9th Cir. 1980) .........................................................................................29

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992).................................................................................................11, 13

*Lydo Enters., Inc. v. City of Las Vegas*
    745 F.2d 1211 (9th Cir. 1984) .........................................................................................30

*Madani v. Cnty. of Santa Clara*
    No. 16-CV-07026-LHK, 2017 WL 2954643 (N.D. Cal. July 11, 2017)...................................18

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
    571 F.3d 873 (9th Cir. 2009) ...........................................................................................10

*Martinez v. Pac. Bell*
    225 Cal. App. 3d 1557 (1990) ....................................................................................19, 24

*Mazurek v. Armstrong*
    520 U.S. 968 (1997)...........................................................................................................9

*Melton v. Boustred*
  183 Cal. App. 4th 521 (2010) ................................................................................................19

*Merriman v. Telander*
  No. 216CV2030JAMEFBP, 2018 WL 2058207 (E.D. Cal. May 3, 2018) ..............................28

*Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*
  991 F.2d 536 (9th Cir. 1993) ................................................................................................30

*Monks v. City of Rancho Palos Verdes*
  167 Cal. App. 4th 263 (2008) ................................................................................................21

*Murphy v. Hunt*
  455 U.S. 478 (1982) ................................................................................................................13

*Murthy v. Missouri*
  603 U.S. 43 (2024) ..................................................................................................................11

*Nelsen v. King Cnty.*
  895 F.2d 1248 (9th Cir. 1990) ................................................................................................11

*Oakland Trib., Inc. v. Chronicle Pub. Co., Inc.*
  762 F.2d 1374 (9th Cir. 1985) ................................................................................................29

*Oliver v. AT&T Wireless Servs.*
  76 Cal. App. 4th 521 (1999) .............................................................................................18, 19

*Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*
  415 F.3d 1078 (9th Cir. 2005) ................................................................................................14

*Salmon Spawning & Recovery Alliance v. Gutierrez*
  545 F.3d 1220 (9th Cir. 2008) ................................................................................................13

*Sampson v. Murray*
  415 U.S. 61 (1974) ..................................................................................................................29

*San Diego Gas & Elec. Co. v. Superior Ct.*
  13 Cal. 4th 893 (1996) ............................................................................................................19

*Schooler v. State of Cal.*
  85 Cal. App. 4th 1004 (2000) ................................................................................................18

*SF Aids Foundation v. Trump*
  Case No. 3:25-cv-1824 (N.D. Cal. Feb. 20, 2025) ................................................................31

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016) ................................................................................................................11

*Stanley v. Univ. of S. Cal.*
  13 F.3d 1313 (9th Cir. 1994) ................................................................................................10

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*
　585 Fed. App'x 390 (9th Cir. 2014) ...............................................................28

*Today's IV, Inc. v. Los Angeles Cnty. Metro. Transp. Auth.*
　83 Cal. App. 5th 1137 (2022) .......................................................................17

*Trump v. CASA, Inc.*
　145 S. Ct. 2540 (2025)..................................................................................32

*Tulelake Irrigation Dist. v. U.S. Fish & Wildlife Serv.*
　40 F.4th 930 (9th Cir. 2022) .........................................................................18

*Wilson v. S. Cal. Edison Co.*
　234 Cal.App.4th 123 (Cal. App. 2015).........................................................25

*Wilson v. Seattle Hous. Auth.*
　No. C09-226MJP, 2010 WL 1945740 (W.D. Wash. May 13, 2010) ............30

*Wilson v. Woodford*
　2009 WL 839921 (E.D. Cal. Mar. 30, 2009) ................................................28

*Winter v. Nat. Res. Def. Council, Inc.*
　555 U.S. 7 (2008)............................................................................................9


**Statutes**
Cal. Civ. Code
　§ 3482 ................................................................................................14, 16, 17
　§ 3493 ............................................................................................................19

Government Code
　§ 815.2(b)......................................................................................................18
　§ 820.2 ...........................................................................................................18

Health and Safety Code
　§ 11364 ..........................................................................................................15
　§ 11364.7 .......................................................................................................15
　§ 120780.2 ................................................................................................2, 15
　§ 121349.1 ..........................................................................................2, 16, 18


**Other Authorities**
Carine E. Megerian
　*Health risks associated with smoking versus injecting fentanyl among people who use drugs in California*, Vol. 255, Drug and Alcohol Dependence, 111053 (2024) ....................................26

At the heart of this Motion is a policy and political dispute that Plaintiffs[1] improperly and improvidently lay at the Court's feet. Drug addiction and street level crime are challenges all cities face. To meet them, cities must be agile, responsive, and thoughtful about how to balance citywide public health with the needs of vulnerable persons facing health crises. San Francisco does just that.

San Francisco is not blind or unaware that there are complicated, multi-faceted conditions on our streets. And the City is taking action. Using data-driven metrics, innovative approaches, and bold policies, San Francisco is making progress to break the cycle of addiction and engage individuals in meaningful substance abuse and mental health treatment. These efforts include passing the Fentanyl State of Emergency Ordinance, which allows the City to take swift action to address the fentanyl crisis; opening several hundred recovery and treatment beds outside the Tenderloin to move people off the street and into care; opening a 24/7 police-friendly crisis stabilization center to quickly move those in psychiatric or addiction crisis off the street and into treatment; reconfiguring cross-department neighborhood street teams to proactively resolve street conditions; investing to ensure better compliance with the City's "good neighbor" policy for homeless services; and significantly changing the City's policies for safer smoking supplies to prohibit distribution of such supplies in public spaces and require distribution to be paired with counseling and attempts to connect individuals to treatment.

As demonstrated above, City leaders are committed to ensuring that all 800,000 San Franciscans feel healthy and safe in their neighborhoods. But rather than letting City public health experts and other City partners do the hard work to analyze and advance real, long-term strategies to combat these seemingly intractable societal problems, Plaintiffs ask this Court to impose their preferred blunt policy solutions. Plaintiffs would have the Court oversee lawful municipal decisions supported by state law—decisions that are more appropriately left to those with the multi-disciplinary tools and expertise to evaluate strategies, iterate and refine, and execute plans that are effective and practical. Plaintiffs' Motion asks that this Court find that San Francisco's conduct has created a nuisance but their Motion lacks factual and legal support. Plaintiffs cannot show that San Francisco's

---

[1] Jane Roe, Mary Roe, Susan Roe, John Roe, Barbara Roe (together, "Roe Plaintiffs"), and Phoenix Hotel SF, LLC, Funky Fun, LLC, and 2930 El Camino, LLC (together, "Entity Plaintiffs," and together with Roe Plaintiffs, "Plaintiffs").

actions directly or in collaboration with community-based non-profit partners caused the conditions in San Francisco's Tenderloin neighborhood that Plaintiffs complain of—namely, illegal drug dealing, drug use, homelessness, loitering, fires, littering, or defecation on the streets.

Policy issues surrounding drug use and homelessness are complex and reasonable people can disagree about the right approach to confront them. Plaintiffs' political and policy disagreements with the City that animate this Motion do not entitle them to the extraordinary remedy of preliminary injunctive relief. Plaintiffs' Motion should be denied.

## I.    STATEMENT OF FACTS

### A.    California Law Authorizes the Distribution of Safer Smoking Supplies

The State of California has long championed laws and policies aimed at protecting the public while engaging individuals in distress. These statewide efforts have resulted in needle exchange programs that authorize cities and counties to distribute clean needles as part of "syringe services programs" (SSPs) through Section 121349.1 of the Health and Safety Code, which creates an exception to laws criminalizing distribution and possession of these materials.

Beginning in 2018, the California State Legislature amended and expanded Section 121349.1 to allow the distribution of *safer smoking materials* as part of the SSPs. *See* Wald Decl. ¶ 44, Ex. 43. Distribution of "any materials deemed by a local or state health department to be necessary to prevent the spread of communicable diseases, or to prevent drug overdose, injury, or disability" is lawful. Cal. Health & Safety Code § 121349.1. Section 120780.2 similarly permits the distribution of "other supplies" to SSPs and authorizes the California Department of Public Health ("CDPH") to purchase such supplies for distribution. Cal. Health & Safety Code § 120780.2. The State of California specifically includes smoking supplies in this list. Declaration of Susan Philip, MD, MPH (Philip Decl.) Ex. D. CDPH determined that "[d]istribution of non-injection drug using equipment is an accepted harm reduction practice." *Id*. at Ex. E. Beginning in January 2020, CDPH made safer smoking supplies, including glass pipes, foil, copper wire filters, and straws available to authorized SSPs through the State Office of AIDS Supply Clearinghouse ("Clearinghouse"). *Id*. at Ex. D.

Both San Francisco AIDS Foundation (SF AIDS) and its subcontractor, Glide, are SSPs authorized by the State of California to lawfully distribute items from the Clearinghouse. *See* Philip

Decl. Ex. C. San Francisco Drug Users Union (whose distribution of safer smoking supplies at 172 Turk Street Plaintiffs incorrectly attribute to SF AIDS) is also a California authorized SSP, and does not receive any funds from San Francisco, as explained below. *Id*.

**B.      CDPH's Policy Relies on Scientific Evidence Showing the Public Health Benefits of Distributing Safer Smoking Supplies**

California recognizes that like providing clean needles and syringes, distributing safer smoking supplies reduces drug-related harm:

> [S]afer smoking materials, provided in a harm reduction context alongside health education and other care, may help individuals avoid initiation of injection drug use, and may allow people who inject drugs to transition from injection to safer modes of administration. In addition, availability of safer smoking supplies may reduce the risk of respiratory infections including influenza and tuberculosis, and injuries such as cuts and burns from using damaged pipes.

Philip Decl. Ex. E. According to the California Department of Public Health, the evidence shows:

- A person's overall drug-related risk is lowered every time they smoke instead of inject.

- Sharing non-injection drug using equipment is associated with Hepatitis C.

- Pipe sharing has also been implicated in outbreaks of other diseases, such as tuberculosis.

- Providing pipes to people who use drugs leads to decreased risks from sharing pipes, using damaged pipes and improvising other objects as pipes, such as aluminum cans.

- Supplying pipes and non-injection drug using supplies through SSPs can help with engagement and bring services to people who use drugs, but do not inject.

- There is a marked decrease of reported drug-related health problems among people who obtain new pipes through SSPs and SSPs serve as a point of entry to other services, including linkage to care and treatment services.

Philip Decl. Ex. E.

California implements these evidence-based conclusions by offering SSPs across the state, including in San Francisco, and has concluded that "[e]xpanding harm reduction services beyond people who inject drugs is an effective strategy to address [California's] opioid and methamphetamine overdose epidemic" and "[i]t provides equitable access to care and treatment services, regardless the mode of drug consumption." Philip Decl. Ex. E.

### C.    CDPH Funding for the Distribution of Safer Smoking Supplies

The safe smoking supplies distributed by these organizations are primarily funded by the State of California and come from the State's public health supplies warehouse. CDPH distributes grant funding to SSPs. The 2019 Budget Act included $15.2 million over four years to SSPs that prevent HIV and Hepatitis C transmission by increasing access to new, sterile supplies for people who inject and smoke fentanyl and/or methamphetamines. Philip Decl. Ex. A. SF AIDS, Glide, and San Francisco Drug Users Union, are all state grant recipients. *See* Wald Decl. ¶ 41, Ex. 40.

### D.    San Francisco's Approach In The Tenderloin Reflects A Multi-Prong, Citywide Response That Considers The Public Health Of All San Franciscans

San Francisco's safer smoking supplies policy is stricter than what state law requires. Beginning April 30, 2025, all San Francisco Department of Public Health (SFDPH) funded programs that distribute any safer use supplies, including smoking supplies, must include proactive counseling and treatment referrals as part of the distribution process to ensure better pathways to care and quicker entry to treatment. Philip Decl., Ex. F. This policy was designed with the objective to more proactively move those in crisis on the streets of the Tenderloin into a pathway for substance use treatment. This new policy prohibits all SFDPH funded programs, including SF AIDS and Glide, from distributing safer smoking supplies (foil, pipes, and straws) in public spaces. *Id*. In addition, the new policy restricts contractors who provide safer smoking supplies to only be able to do so indoors or in SFDPH approved controlled spaces when paired with counseling and offers of substance abuse treatment. *Id*. ¶ 11, Ex. F. Contractors must also ensure that these efforts are done in accordance and in compliance with all other guidelines and provisions of San Francisco's policy and state law. *Id*. San Francisco is committed to building a more responsive, proactive behavioral health system that moves clients into effective treatment and sustained recovery. *Id*. at ¶ 12.

San Francisco's current policy on the distribution of safer use supplies is part of a broader strategy to save lives and get people into treatment or stable housing. San Francisco has taken numerous other concrete steps to this end since Plaintiffs initiated this lawsuit, both in the Tenderloin and the City as a whole. On February 4, 2025, San Francisco passed the Fentanyl State of Emergency Ordinance, giving the City the ability to take swift action to address the fentanyl crisis. Wald Decl. ¶

41, Ex. 40; Biggs Decl. ¶ 5. On April 24, 2025, San Francisco opened a new 24/7 police-friendly stabilization center at 822 Geary Street to provide rapid access to lifesaving care and pathways to treatment for people experiencing urgent mental health crises on our streets. Wald Decl. at ¶ 42, Ex. 41; Biggs Decl. ¶ 5. And, as of April 30, 2025, San Francisco had opened 279 new recovery and treatment beds in locations outside of the Tenderloin. Wald Decl. at ¶ 43, Ex. 42. The City has also implemented a robust response system to address community complaints about street conditions. In March 2025, the City created a Neighborhood Streets Team (NST) to respond to 311 complaints daily. Decl. Vaing ¶ 6; Decl. Brandon ¶¶ 3-9, Ex. A; Decl. Young ¶ 9-17. That includes services to clean the streets and sidewalks in the Tenderloin. Decl. Vaing ¶ 20. While public health efforts seek to refer individuals into treatment, the San Francisco Police Department enforces laws against drug dealers by devoting specific resources to the Tenderloin through the Drug Market Agency Coordination Center ("DMACC"). Biggs Decl. ¶ 3. As part of DMACC, SFPD holds monthly meetings at the Tenderloin Police station and invites community members to provide input regarding neighborhood conditions and observations, which the Captain then may deploy support and resources to those areas. *Id.* at ¶ 6.

### E.    San Francisco's Relationship with California Authorized SSPs Who Distribute Safer Smoking Supplies in the Tenderloin

San Francisco does not directly operate any of the existing smoking supply distribution sites Plaintiffs complain about in their Motion. Philip Decl. ¶ 13. To the extent Plaintiffs argue San Francisco has any involvement in these sites, it is only by funding contractors who are authorized SSPs, including SF AIDS and Glide. *Id* at. ¶¶ 14-15.

San Francisco provides funding to SF AIDS and its subcontractor, Glide. Philip Decl. ¶¶ 14-15. That funding allows SF AIDS and Glide to provide essential community services, including syringe access and disposal services, HIV & Hepatitis C prevention services, overdose prevention and health education, naloxone distribution, linkage to physical and behavioral health services and housing or shelter, medical care and buprenorphine, and community syringe clean-ups. *Id.* at ¶ 15. San Francisco does not use its contractual agreements to direct SF AIDS or Glide to use any of its funding to distribute safer smoking supplies. *Id.* at ¶ 16. San Francisco does not provide any funding to San Francisco Drug Users Union. *Id.* at ¶ 17.

### F.    Plaintiff's Motion for Preliminary Injunction

On March 14, 2024, Plaintiffs filed their complaint. ECF No. 1. On August 25, 2025, well over a year later, they sought preliminary relief. ECF No. 101. Plaintiffs' Motion only seeks an injunction as to the causes of action in the FAC for public nuisance and private nuisance. *Id.*; ECF No. 50.

Plaintiffs argue that as of April 30, 2025, San Francisco "directly or indirectly" supplies "fentanyl or methamphetamine-related drug paraphernalia" to persons or entities in the Tenderloin. Mot. at 1. Plaintiffs submit the following evidence:

- Testimony that a witness, Omar Ward, saw SF AIDS workers pass out a bag with foil in Duboce Park, which is not in the Tenderloin. ECF No. 101-2 at ¶ 3.

- Testimony from Mr. Ward that a distribution center at 172 Turk Street gave him a glass pipe, and "a straight glass tube, straws and Brillo." ECF No. 101-2 at ¶ 4.[2]

- Testimony from Mr. Ward that he received a "smoking kit" containing "aluminum foil, straws and Brillo" from Glide employees at Glide Memorial Church at 322-330 Ellis Street, and that pipes were available at that location on other days. *Id.* at ¶ 5.

- Testimony from current and former City employees who believed the City was involved in the distribution of safer smoking supplies (often without specific factual details). ECF No. 101-11, Ex. A at 22:18-21; Ex. B at 31:22-32:7, 35:13-20; Ex. D at 20:22-22:25.

- Testimony that sites which closed approximately one (Willow St.) to three (Tenderloin Linkage Center) years ago were used to distribute syringes or other safer use supplies. *E.g.*, ECF No. 101-11, Ex. B at 61:17-20; Ex. E at 28:11-14; Ex. F at 47:12-48:4, 49:11-16.

- Testimony from one former and one current City employee who are personally skeptical about permitting distribution of safer smoking supplies. ECF No. 101-11, Ex. A at 22:18-23:01, 28:2-9, 22:18-23:01; ECF No. 101-11, Ex. B at 39:17-17, 41:13-42:01, 52:8-12.

- Testimony that drug use also occurs at or near shelters owned or operated by San Francisco or its contractors. *E.g.*, ECF No. 101 at 11-12.

---

[2] Although Mr. Ward asserts SF AIDS workers were distributing safer smoking supplies at 172 Turk Street, that site is operated by San Francisco Drug Users Union, not SF AIDS. *See* Philip Decl. ¶ 18; San Francisco Drug Users Union Website, listing their address as "172 Turk Street SF 94102." *available at* https://www.sfduu.org/.

- Testimony from a SFDPH employee, who agreed with the unremarkable proposition that safer smoking supplies are used to do drugs, and it is possible a person may choose to use drugs in public. ECF No. 101-11, Ex. E at 79:4-80:18.
- Testimony from Plaintiff Mary Roe that at an unspecified time before April 2025, she observed a table outside of a Hospitality House location at 290 Turk Street that distributed "glass pipes, foil, needles, and cotton." ECF No. 101-5 at ¶¶ 5-6.

Roe Plaintiffs claim they are entitled to a preliminary injunction because for at least the last 18 years, there have been unacceptable living conditions in the neighborhood, including the presence of drug dealers, drug users, and homeless people gathering on the sidewalk; drug use; persons who threaten them; and the presence of discarded items, such as garbage, syringes, needles, pipes, human excrement, and aluminum foil. *E.g.*, ECF No. 101-4 at ¶ 2, 4, 6; ECF No. 101-5 at ¶¶ 2, 5-8; 101-6 at ¶¶ 2, 4-5; 101-7 at ¶¶ 2-3; 101-8 at ¶¶ 2-5. They contend that although certain conditions and hazards in the neighborhood "will improve at times, they have largely been consistent." *E.g.*, ECF No. 101-4 at ¶ 12; ECF No. 101-5 at ¶ 9; 101-6 at ¶ 8; 101-7 at ¶ 7; 101-8 at ¶ 7. However, during their depositions, Plaintiffs admitted that conditions have improved in recent months. (*See* Section IV.A.1., *infra*.) No Plaintiff contends these conditions caused them any physical injury or diagnosed mental health condition. Mot. at 22:26-28.

Entity Plaintiffs claim similar neighborhood conditions (ECF No. 101-9 at ¶ 5; ECF No. 101-10 at ¶ 4), that negatively impact their businesses. ECF No. 101-9 at ¶ 4; ECF No. 101-10 at ¶¶ 4-6. Phoenix Hotel SF, LLC, and Funky Fun, LLC, plan to close their hotel and restaurant when their lease expires on January 31, 2026. ECF No. 101-9 at ¶ 4.

Aside from a few vague anecdotes, Plaintiffs' Motion contains no evidence San Francisco operates any safer smoking supply distribution sites in the Tenderloin. Plaintiffs also provide no evidence regarding the City's "indirect" distribution of smoking supplies through nonprofits. For example, Plaintiffs submit no evidence of the amount of money the two nonprofits receive from the City, what portion of those funds (if any) the nonprofits use to purchase the safer smoking supplies, the terms of any contracts they have with the City, the amount of supplies distributed (either in absolute terms or relative to the total distribution of smoking supplies) or when distribution began.

And, aside from improper and speculative testimony (to which the City objects and addresses below), Plaintiffs offer no evidence of what impact, if any, the distribution of safer smoking supplies has on the neighborhood conditions of which they complain. Plaintiffs also submit no evidence of what impact, if any, San Francisco's role in funding two nonprofit organizations that also distribute safer smoking supplies has on the claimed harms. Nor do Plaintiffs offer evidence that drug use, drug dealing, or any of the attendant conditions Plaintiffs complain about, would decrease if the City ceased any role in distributing smoking supplies. In fact, Plaintiffs disclaimed any knowledge of such a causal link in their depositions. Plaintiffs do not submit any data or expert opinion evidence. Plaintiffs cannot and do not show that San Francisco caused a nuisance in the Tenderloin.[3]

## II.     PLAINTIFFS' MOTION IMPROPERLY RELIES ON IRRELEVANT CONDUCT

All other conduct that Plaintiffs attribute to San Francisco either ceased years ago or has no relation to the distribution of safer smoking supplies. San Francisco objects and asks this Court to decline to consider this irrelevant and inadmissible material.

### A.     The City Closed the Tenderloin Linkage Center In 2022

Plaintiffs' Motion spills much ink over what may have transpired at the Tenderloin Linkage Center. However, the parties agree the City closed the Linkage Center almost three years ago on December 4, 2022. Philip Decl. ¶ 19; Mot. at 15. Moreover, neither party contends San Francisco has any plans to reopen the Linkage Center. *See* ECF Nos. 50 ¶ 1, 101; *generally*; Philip Decl. ¶ 19.

### B.     The Distribution Site on Willow Street Closed in August 2024

The Motion also references a distribution site on Willow Street run by an unnamed City contractor that may have distributed safer smoking supplies. According to Plaintiffs' own evidence, the site closed more than one year ago in August 2024. ECF No. 101-11, Ex. F at 49:11-16.

### C.     Plaintiffs Offer No Evidence Homeless Shelters Distribute Safer Smoking Supplies

Plaintiff's Motion also describes neighborhood conditions near Tenderloin hotels operated as homeless shelters. *E.g.*, ECF No. 101 at 11-12 (referring to the COVA, Adante, Monarch, 685 Ellis).

---

[3] Given that Plaintiffs have not met their burden to demonstrate a preliminary injunction is appropriate as explained below, the City requests the Court release the days reserved for evidentiary hearings and set the motion for oral argument on October 27, 2025, or at the Court's convenience.

Plaintiffs do not claim any of these hotels currently distribute safer smoking supplies to the public or

otherwise explain how funding these hotels relates to the distribution of safer smoking supplies.[4] Nor

do Plaintiffs explain how the hypothetical distribution of smoking supplies at these locations causes

their alleged injuries. *See e.g.,* Wald Dec. ¶ 12, Ex. 11 (John Roe) at 123:20-124:1; 124:25-126:12.

Moreover, many of these hotels either closed or are winding down their role as shelters. The COVA

Hotel closed as a homeless shelter in February 2025. Rachowicz Decl. ¶ 4. Jane Roe has not seen

people loitering in front of the building since it closed. Wald Decl. ¶ 2, Ex. 1 (Jane Roe) at 163:3-6.

The Monarch Hotel's lease expires on March 31, 2026, and the City does not have plans to renew it.

Rachowicz Decl. ¶ 5. The Adante's lease hotel also ends March 31, 2026. Rachowicz Decl. ¶ 6. The

City amended its Planning Code so that the COVA, Monarch, and Adante hotels could efficiently

return to their use as hotels after temporarily serving as homeless shelters. *Id.* ¶ 8, Ex. A.

## III.    LEGAL STANDARD

Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Winter v.

Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). They require "exercise of a far-reaching power"

that should not be "indulged except in a case clearly warranting it." *Dymo Indus. v. Tapeprinter, Inc.*,

326 F.3d 141, 143 (9th Cir. 1964). Injunctive relief "may only be awarded upon a clear showing that

the plaintiff is entitled" to it. *Winter*, 555 U.S. at 22. A plaintiff must establish the law and facts

"clearly favor" their position that: (1) plaintiffs are likely to succeed on the merits; (2) plaintiffs are

likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in the

plaintiffs' favor; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 24; *see also

Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (holding plaintiff carries the burden of proof).

Plaintiffs seek an order enjoining San Francisco from (1) "directly distributing fentanyl or

methamphetamine-related drug paraphernalia" or (2) "allowing City-funded contractors to furnish

---

[4] In other words, Plaintiffs make no attempt to link the conditions they complain about outside these hotels to the distribution of safer smoking supplies.  The closest Plaintiffs come is testimony by Plaintiff Mary Roe that since April 2025, people "knock on the door" of the Hospitality House at 290 Turk Street, then "[s]omeone inside will crack the door open, hand them something, and then close the door again." ECF No. 101-5 at ¶¶ 5-6. This speculative claim is insufficient to establish any causal link between the City's funding for homeless shelters and the alleged harms from distributing safer smoking supplies. Without any connection to the conduct Plaintiffs seek to enjoin, Plaintiffs' alleged evidence related to these homeless shelters is irrelevant, and the City objects to its inclusion.

such paraphernalia" regardless of whether that distribution has any relation to their contract with the City. Mot. at 1. Although Plaintiffs frame their injunction as prohibitory, they demand the City take actions to prevent third parties from offering lawful safe smoking supplies (*e.g.*, by amending San Francisco's contracts to prohibit lawful conduct). This orders a party to take action and is therefore a "particularly disfavored" mandatory injunction. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id*. (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir.1979)); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) ("mandatory injunctions should not issue in doubtful cases"). Courts should deny requests for such injunctions "unless the facts and law clearly favor the moving party." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citation omitted).

## IV.    LEGAL ARGUMENT

The Motion fails for three primary reasons. First, Plaintiffs lack Article III standing because they have not shown sufficiently certain future injuries are that are redressable by the relief sought.

Second, Plaintiffs do not meet their burden to establish each *Winter* factor. Plaintiffs' Motion fails to show a clear likelihood that they will succeed on the merits of their public or private nuisance claims. Indeed, San Francisco is immune from such claims. Plaintiffs also fail to put forth sufficient evidence that the distribution of safer smoking supplies is the factual or proximate cause of any of the conditions that Plaintiffs contend constitute a nuisance. Plaintiffs likewise have not (and cannot) show they will suffer irreparable harm if San Francisco continues to fund non-profit organizations who comply with current City policy, without amending their contracts to condition receipt of funds on an agreement to cease distributing safer smoking supplies. Plaintiffs' lack of imminent harm is further evidenced by their years-long delay in bringing this action. The balance of the equities and public interest both favor San Francisco's approach, which is consistent with California state law, policy, and the scientific literature.

Third, Plaintiffs have not adequately tied the relief they seek to the facts alleged. Plaintiffs seek vague, wide ranging injunctive relief without making the requisite showing that such relief is necessary to remedy the nuisance alleged.

### A.    Plaintiffs Lack Standing and This Court Lacks Jurisdiction

To meet the "irreducible constitutional minimum" of standing, a plaintiff must suffer (1) an "injury in fact," (2) that is "fairly traceable" to the challenged conduct, and (3) will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). "Where, as here, the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence," to justify an injunction. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

### 1.    Plaintiffs Have No Certainly Impending Injury In Fact

Injury in fact requires the "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotation omitted). The "threatened injury must be *certainly impending*" such that "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "[P]ast exposure to harm is largely irrelevant when analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." *Nelsen v. King Cnty.*, 895 F.2d 1248, 1251 (9th Cir. 1990).

None of the Plaintiffs meet that standard here. Photos of the area outside Plaintiffs' homes and businesses confirm the conditions alleged have abated to the extent they ever existed. Wald Dec. ¶ 2, Ex. 1 (Jane Roe) at 137:18-143:15]; Exs. 2-10 (photos); Ex. 11 (John Roe) at 93:15-18; 94:20-25; 95:20-97:2; Ex. 12 (photo); Ex. 38 (photo); Ex. 14 (Barbara Roe) at 102:9-103:6; 103:23-104:3; 104:18-105:3; 180:22-182:7; 184:22-185:9; Exs. 15-21 (photos); Ex. 22 (Mary Roe) at 86:8-87:23; Exs. 23-26 (photos); Ex. 27 (Phoenix 30(b)(6)) at 177:11-179:10; 186:24-188:1; Exs. 28-29 (photos); Ex. 30 (Best Western 30(b)(6)) at 225:17-226:9; 226:15-227:9; 227:16-228:6; 232:2-17; 232:23-233:10; 241:9-242:6; 242:11-243:9; Exs. 31-37 (photos).

Even if fear of future harm were a cognizable nuisance injury (it is not), Plaintiffs' declarations contain speculative fears about what may occur, to which the City objects, with no facts to show that those fears are well-founded and the risks certainly impending. *Koll-Irvine Ctr. Prop. Owners Ass'n v.*

*Cnty. of Orange*, 24 Cal. App. 4th 1036, 1040-42 (1994) ("In this state . . . a private nuisance action cannot be maintained for an interference in the use and enjoyment of land caused solely by the fear of a future injury."). John Roe admits the conditions around his home improved in 2023 but argues he needs preliminary relief because he is "not confident that response will remain consistent" without any basis for his concern. ECF No. 101-7 ¶ 15; Wald Decl. Ex. 11 (John Roe) at 134:11-20. Jane, Barbara and Mary Roe argue for an injunction because they fear for their safety and take extra care in the area around their home (ECF Nos. 101-4 ¶ 12; 101-5 ¶ 9; 101-8 ¶ 7), but admit they have never been assaulted or injured in all the years they have lived in the neighborhood and have no explanation for why they believe that will change between now and when this case is set for trial in less than a year. Wald Decl. Ex. 1 (Jane Roe) at 61:3-8; Ex. 14 (Barbara Roe) at 110:10-14; 112:1-6; 129:17-23; 188:22-24; 191:19-22; 205:18-23); Ex. 22 (Mary Roe) at 92:9-16; 92:21-25; 94:11:95:20; *see* Ex. 27 (Phoenix 30(b)(6)) at 122:1-4; Ex. 30 (Best Western 30(b)(6)) at 142:21-143:1.

Plaintiffs also confirm they have not recently used 311 or Twitter to report complaints about the conditions in this case. Wald Decl. Ex. 1 (Jane Roe) at 33:5-7; 103:25-104:9; 106:7-19; 117:1- 9; 165:11-24; Ex. 11 (John Roe) at 65:25-66:3; 68:7-15; Ex. 22 (Mary Roe) at 50:16-51:18.

And Plaintiffs acknowledge additional positive changes in their neighborhood that undercuts their basis to seek relief. Beginning in 2023, the City hired an Urban Alchemy employee to patrol the entrance of John Roe's street 12 hours a day and clean the street, pick up debris, and move along people loitering, which has had a significant positive impact. Wald Decl. 11 (John Roe) at 68:24- 69:20; 88:14-90:14; 90:15-19; 118:9-119:3. He describes the conditions as going from a "ten" to a "three" after the change. *Id*. at 129:3-15; 130:9-131:1. Barbara Roe said the Urban Alchemy employees at UN Plaza do an excellent job of making her feel safe. Wald Decl. Ex. 13 (Barbara Roe) at 150:21-151:2. A fence was also installed in the sidewalk area in front of Barbara Roe's home in 2024 and she is now able to walk outside "into a safe, clean space." *Id*. at 180:11-13. Jane Roe has seen improvement in the conditions outside her home over the preceding months including daily street cleaning on her block in the last month. Wald Decl. Ex. 1 (Jane Roe Tr.) at 100:5-24. The Phoenix Plaintiffs' owner described the streets abutting the property as looking "better than they ever have before" and confirmed for at least six months, the area is "a better place" without the previous

1    nuisances. Ex. 27 (Phoenix 30(b)(6)) at 259:12-23; 157:16-158:5. The streets in the Tenderloin are

2    washed every day of the week. Duong Decl. ¶¶ 5-7, 10-12, Exs. A and B. Injunctive relief requires a

3    "credible threat" Plaintiffs will again be subject to the specific injury for which they seek relief.

4    *Kolender v. Lawson*, 461 U.S. 352, 355 n. 3 (1983). The "mere physical or theoretical possibility" as

5    claimed here, is insufficient. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).[5]

6
        **2.    Any Injury Plaintiffs Raise Is Not Fairly Traceable to The City's Conduct
7              and The Relief Sought Will Not Redress The Injury**

8        Causation and redressability are related. To show a causal connection the alleged injury "has to

9    be fairly traceable to the challenged action of the defendant, and not the result of the independent

10   action of some third party not before the court." *Lujan*, 504 U.S. 560-61. Redressability in turn

11   "requires an analysis of whether the court has the power to right or to prevent the claimed injury" and

12   fails where circumstances "indicate that the requested relief will actually worsen the plaintiff's

13   position" or where the requested relief is "insufficient because of the court's inability to formulate any

14   meaningful decree." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). The relief Plaintiffs

15   request will both put them in a worse position and will not redress their alleged harm.

16       Plaintiffs built their Motion on the false premise that if only City-supported nonprofits stopped

17   distributing smoking supplies in the Tenderloin, drug use, homelessness, and crime in the

18   neighborhood would decline. There is no factual support for that conclusion. Instead, it is at best an

19   unrealistic but-for world that calls for an "attenuated chain of conjecture" insufficient to support

20   standing. *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008).

21   Plaintiffs agree fentanyl and methamphetamines are highly addictive. Wald Decl. Ex. 1 (John Roe) at

22   83:4-11]; Ex. 14 (Barbara Roe) at 64:13-22; Ex. 22 (Mary Roe) at 62:14-20. The City's approach is

23   designed to engage those who are addicted and more actively direct them into substance use treatment.

24   The more likely outcome if the Court orders the injunction Plaintiffs seek would be that the number of

25

26       [5] Plaintiffs claim no physical or mental injury.  Plaintiffs agreed Jane Roe referenced mental
     health treatment should be excluded and her daughter's asthma is not alleged to have been caused or
27   aggravated by the conditions alleged. Wald Decl. ¶ 2, Ex. 1 (Jane Roe) at 150:21-151:3; 154.
     Similarly, Jane Roe's daughter's asthma is not alleged to have been caused or aggravated by the
28   conditions alleged. *Id*. at 154.

individuals with substance use issues in the Tenderloin would stay the same, only now, instead of having clean smoking supplies, those same people would continue to use opioids and methamphetamines by sharing old smoking supplies, using makeshift supplies (*e.g.*, soda cans) or by switching from smoking to injection. Philip Decl. Ex. E. If the Court order the injunction Plaintiffs seek, it would also close off a pathway into substance use treatment created since the City's updated policy in April 2025. Each would *increase* rather than decrease the risk to public health and do nothing to redress the injuries Plaintiffs allege. *See* Bluthenthal Decl. 7, 10, 11 (describing how safer use supplies reduce the spread of disease, while safety concerns related to harm reduction sites are contradicted by empirical evidence); *see also* Philip Decl. Para. 9 Ex. E.

Plaintiffs also admit businesses and people on the street in the Tenderloin sell smoking supplies, and so pipes and foil would remain available in the neighborhood regardless.[6] Wald Decl. Ex. 11 (John Roe) at 78:15-79:2; Ex. 14 (Barbara Roe) at 224:5-17; Ex. 22 (Mary Roe) at 150:12-14; Ex. 27 (Phoenix 30(b)(6)) at 205:10-21. This further undermines Plaintiffs' theory of causation. Plaintiffs themselves acknowledge they have no factual basis to believe an order that prevented the City from distributing smoking supplies in the Tenderloin would resolve the conditions about which they complain. Wald Decl. Ex. 11 (John Roe) at 85:7-13; Ex. 27 (Phoenix 30(b)(6)) at 260:15-261:19.

As Plaintiffs have no certainly impending injury fairly traceable to the City's conduct and no basis to prove that their alleged injury will be redressed by the relief sought, this Court has no jurisdiction and there can be no preliminary injunction. *See Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1104 (9th Cir. 2005) (holding that without standing, there can be no likelihood of success to support a preliminary injunction).

**B.    Plaintiffs Did Not Establish Their Likelihood of Success Under Any *Winter* Factor**

**1.    Plaintiffs Are Unlikely to Succeed on the Merits**

Plaintiffs cannot establish a likelihood of success on either their public or private nuisance claim for four reasons. First, state law eliminates any theory of nuisance based on conduct "done or maintained under the express authority of a statute," (Cal. Civ. Code § 3482), and the California

---

[6] The City, for its part, continues to take steps to enforce its laws against those businesses who engage in such unlawful business practices.

Health and Safety Code expressly authorizes distribution of the supplies at issue here. The requested relief is also barred because Plaintiffs did not submit a government claim and their prayer would require the City to expend public funds.

Second, Plaintiffs fail to show a substantial interference with their use or enjoyment of their property and their generic claims of smells and blocked entrances are contradicted by their own testimony and recent photos showing no nuisances.

Third, Plaintiffs fail to demonstrate the necessary causal connection between the alleged interference with their enjoyment or use of their property and the challenged conduct.

Fourth, Plaintiffs did not show the challenged activity's harm outweighs its social utility. Plaintiffs contend there is zero public good from distributing safer smoking supplies. But, as the California legislature and CDPH recognize, there are numerous public health benefits from such distribution, including reducing the risk of overdose or skin infections and switching users from a riskier method of ingestion (injection) to a less risky method (smoking). Bluthenthal Decl. ¶10. Moreover, San Francisco's policy goes even further in assertively engaging people and connecting them to substance use treatment.

### a.    San Francisco Is Immune from Plaintiffs' Nuisance Claim

California Civil Code section 3482 immunizes the City from Plaintiffs' claims. "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Civ. Code, § 3482. This extends "to acts authorized by regulations and other government approvals." *City of Norwalk v. City of Cerritos*, 99 Cal. App. 5th 977, 988 (2024). Here, the State of California expressly authorizes the distribution of safer smoking supplies, and expressly allows SSPs, such as SF AIDS and Glide, to provide those supplies to drug users. *See* Section I.A., *supra*. Accordingly, the first *Winter* factor favors the City since "the alleged nuisance is an inexorable and inescapable consequence that necessarily flows from the statutorily authorized act[.]" *City of Norwalk*, 99 Cal. App. 5th at 988.

"Enabling people who use drugs to protect their health and safety is essential to meet California's public health goals." Philip Decl. Ex. B. For this reason, the Legislature permits the distribution of certain safer consumption supplies that would otherwise be illegal to distribute. Cal. Health & Safety Code § 120780.2; *see id.* at §§ 11364 (prohibiting possession), 11364.7 (prohibiting

distribution). This includes not only "sterile hypodermic needles and syringes," but also "other supplies" used "to reduce the spread of HIV, hepatitis C, and other potentially deadly blood-borne pathogens." *Id*. § 120780.2. The State interprets "other supplies" to include "pipes and foil suitable for smoking opioids or methamphetamine, [and] straws." Philip Decl. Ex. B; *see also id*. Ex. D.

In conjunction with Health and Safety Code section 120780.2, the California Legislature also empowered cities and counties to authorize the exchange of safer use materials "as part of a network of comprehensive services . . .  to combat the spread of HIV and bloodborne hepatitis infection among injection drug users." Cal. Health & Safety Code § 121349.1. Any person participating in such a program cannot be subject to criminal prosecution for "any law related to the possession, furnishing, or transfer of . . . any materials deemed by a local or state health department to be necessary to prevent the spread of communicable diseases, or to prevent drug overdose." *Id*.

Collectively, these sections expressly authorize cities, counties and SSPs to distribute glass pipes, foil, and straws. This is legally significant because "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance," Cal. Civ. Code § 3482, and this code section "confers a statutory immunity that is a complete defense to a nuisance claim." *City of Norwalk*, 99 Cal. App. 5th at 986.

Plaintiffs agree that if the Health and Safety Code expressly authorizes the City to distribute smoking supplies their claim fails, but argue there is no express authority here because California Civil Code Section 3482 is to be interpreted narrowly, the Health and Safety Code only prevents criminal prosecution, and the Code only applies to needles and syringes, not smoking supplies. Mot. at 24-25. They are wrong on each.

Plaintiffs rely on *City of Norwalk*, 99 Cal. App. 5th at 986 for the generic proposition that Civil Code section 3482 is narrowly construed, but that case requires a finding of immunity here. There the court concluded that a city that restricted commercial traffic on its streets was immune from liability for alleged harms caused by more traffic in a neighboring city. *Id.* Because the harms (noise, dust, etc.) were "the consequences inexorably flowing from" the ordinance restricting traffic, which state law specifically allowed under an exception to a general preemption of traffic regulation, the court easily found Section 2482 applied. *Id.* at 991. Here, the same is true. The challenged act (distribution of

smoking supplies) is specifically allowed under an exception to a general prohibition and the claimed harms inexorably flow from that distribution (accepting for sake of argument that Plaintiffs establish causation). Unlike cases where Section 3482 has not applied, Plaintiffs here do not contend there is a way to distribute smoking supplies without causing the harms they allege and do not challenge the way in which the City or its contractors distribute smoking supplies, but rather challenge that supplies are distributed at all. *See id.* at 988-89. Courts have applied Section 3482 broadly enough to prevent a lawsuit to have the government fix decrepit conditions in a courthouse because the power to build and maintain the courthouse had been vested with the defendant. *Liebman v. Richmond*, 103 Cal. App. 354, 357 (Ct. App. 1930). The connection here is far more express since the conduct challenged would be illegal but for the State laws identified above and the very safer consumption supplies at issue are expressly named in CDPH's Clearinghouse.

Plaintiffs cite no case where a court held a code provision that prevented criminal prosecution was inadequate to qualify as express authorization under California Civil Code section 3482. And it should not be. By absolving those who distribute smoking supplies consistent with the Health and Safety Code from criminal liability, the Legislature authorizes that conduct because it is the "unavoidable byproduct[] of the statutorily authorized act." *Today's IV, Inc. v. Los Angeles Cnty. Metro. Transp. Auth.*, 83 Cal. App. 5th 1137, 1180 (2022) (affirming application of section 3482). In fact, the legislature's decision to immunize conduct from *criminal prosecution* shows the same conduct should be immunized from civil liability under Section 3482. To hold otherwise would cripple the intended immunity by exposing SSPs to legal action the State intended to block.

Finally, Plaintiffs' reading of the Health and Safety Code to address needles and syringes, but not smoking supplies, conflicts with the statute's language, legislative history, and basic tenets of statutory interpretation. Although the Code initially only addressed needles and syringes, the Legislature's 2018 revisions expanded it to include "*any materials*" that state or local health department deem "necessary to prevent the spread of communicable diseases, or to prevent drug overdose, injury, or disability during participation in an exchange project." Cal. Health & Safety Code

§ 121349.1 (emphasis added).[7] Plaintiffs read this amendment out of the Code. This is wrong. "When construing a statute, courts should avoid any interpretation that renders any section" or any "language within a single section" superfluous. *Tulelake Irrigation Dist. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 930, 936 (9th Cir. 2022).

The City is also immune because the relief Plaintiffs seek—the imposition of new contract terms and monitoring and enforcement of those terms—requires the City to spend money and imposes "legal and financial burdens" on the City. *Madani v. Cnty. of Santa Clara*, No. 16-CV-07026-LHK, 2017 WL 2954643, at *14 (N.D. Cal. July 11, 2017). This end-run around the immunity California Government Code sections 814 and 815 provide is impermissible. *Id.* (applying *Schooler v. State of Cal.*, 85 Cal. App. 4th 1004, 1014 (2000) to dismiss injunctive relief claim that required funds to be spent); *accord Esparza v. Cnty. of Los Angeles*, 224 Cal. App. 4th 452, 460 (2014) ("Plaintiffs may not circumvent the legislative immunity granted … simply by alleging injunctive relief."). The Government Code required Plaintiff to file a claim before seeking the relief prayed for in their Motion. *See Hazari v. Cnty. of Santa Clara*, No. 19-CV-04392-BLF, 2025 WL 1828514, at *4 (N.D. Cal. July 1, 2025) ("Plaintiff has the burden of pleading compliance with the [California Tort Claims Act] in his complaint."). They did not. And, the City is also immune from liability pursuant to California Government Code sections 815.2(b) and 820.2, for its employees' discretionary policy choices.

### b.    Plaintiffs Fail to Show A Present Substantial Disturbance

To show a private nuisance, the plaintiff "must prove an injury specifically referable to the use and enjoyment of his or her land." *Koll-Irvine Ctr. Prop. Owners Assn' v. Cnty. of Orange*, 24 Cal. App. 4th 1036, 1041 (1994). The challenged activity must "disturb or prevent the comfortable enjoyment of property, such as smoke from an asphalt mixing plant." *Oliver v. AT&T Wireless Servs.*, 76 Cal. App. 4th 521, 534 (1999). The disturbance must be "*substantial, i.e.*, that it caused the plaintiff to suffer 'substantial actual damage'" and "is to be judged by an objective standard." *San Diego Gas*

---

[7] And, "[a]s of December 6, 2019, [CDPH] designates all materials included in the ... Clearinghouse, which provides supplies for California SSPs, as necessary for the prevention of disease, injury, or overdose." Philip Decl. Ex. D.

1  *& Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 938 (1996). Further, "fear of future injury" is insufficient

2  to show a private nuisance. *Koll-Irvine*, 24 Cal. App. 4th at 1041-42.

3        Plaintiffs claim three interferences with their use and enjoyment of their property: "crowding

4  [interfering with egress], offensive smells, and fear of physical harm."[8] ECF No. 101 at 23. The last

5  (fear of harm) is not actionable as a private nuisance. *Koll-Irvine*, 24 Cal. App. 4th at 1041-42.

6  Plaintiffs fail to establish substantial ongoing disturbances from blocked entrances or offensive smells

7  at their properties. As detailed above (*supra* § IV.A.1.), Plaintiffs testified that conditions have

8  significantly improved at their properties and each confirmed they saw none of the claimed nuisances

9  in recent photos of the public spaces outside their properties. Plaintiffs' Motion offers nothing to show

10 the opposite—no photos, video, or other documentation showing the claimed disturbances currently

11 exist. Instead, they rely on vague (and nearly identical) declarations claiming the conditions are

12 "largely consistent." This "evidence," which has been directly contradicted by recent photos and

13 Plaintiffs' deposition testimony, does not come close to showing a presently-existing substantial injury

14 to Plaintiffs' comfortable enjoyment of their properties.[9]

15               **c.      Plaintiffs Fail to Establish a Causal Connection Between their**
16                        **Alleged Harm and San Francisco's Conduct Generally**

17        Nuisance requires causation. *Melton v. Boustred*, 183 Cal. App. 4th 521, 542 (2010); *In re*

18 *Firearm Cases*, 126 Cal. App. 4th 959, 988 (2005). The challenged conduct must be both a

19 "substantial factor in causing the alleged harm" (*i.e.*, factual causation), *Citizens for Odor Nuisance*

20 *Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 361 (2017), and the proximate cause of the

21 resulting nuisance (*i.e.*, legal causation); *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990)

22        [8] Although Plaintiffs' complaint and motion refer to a host of other claimed problems in the
23 Tenderloin, their claims are limited to the three interferences they identify because their public
   nuisance claim depends on their private nuisance claim, and they cannot maintain a public nuisance
24 action for harms that injure the public at large without also specifically injuring Plaintiffs' property
   rights. *See Koll-Irvine*, 24 Cal. App. 4th at 1040 (for public nuisance, the plaintiff must suffer harm
25 "different in kind and not merely in degree from that suffered by other members of the public"); Cal.
   Civ. Code § 3493; ECF No. 63 at 12-13 (finding Plaintiffs alleged public nuisance claims only
26 because they alleged private nuisance).

27        [9] To the extent the Entity Plaintiffs claim an interference with the value of their businesses, this is not
   cognizable as a public nuisance because "[a] diminution in value does not interfere with the present
28 use of property and cannot alone constitute a nuisance." *Oliver*, 76 Cal. App. 4th at 534.

(nuisance claims only extend to "damage which is proximately or legally caused by the defendant's conduct, not to damage suffered as a proximate result of the independent intervening acts of others"). Plaintiffs fail to show a clear likelihood they can establish either factual or legal causation for the relevant, legally cognizable harms.

Plaintiffs argue "the City's policy of distributing smoking materials has caused drug addicts and dealers to congregate around their residences and businesses" resulting "crowding [interfering with egress], offensive smells, and fear of physical harm." ECF No. 101 at 23. Even assuming Plaintiffs have sufficiently shown these are substantial and unreasonable interferences (they have not), Plaintiffs offer no evidence, or even explanation, of how the City's unspecified and undescribed financial support for two nonprofits that distribute State-approved items caused crowding, offensive smells, and threats of physical harm at each of their residences or businesses. Indeed, multiple Plaintiffs either disavowed a connection between the distribution of safer smoking supplies and the claimed harms or said they had no idea how they were connected, if at all. Ex. 27 (Phoenix 30(b)(6) at 225:23-226:11 (stating "I have no idea" whether people who get supplies from Glide use them in front of the Phoenix and describing the harm from Glide as people congregating blocks away *at Glide*); Ex. 30 (Best Western 30(b)(6)) at 136:17-137:1; 168:17-25; 187:13-17; 191:12-192:2 (Best Wester has no position on whether smoking supply distribution caused harms at the hotel and no idea whether those harms are connected to distribution).

### i.    Plaintiffs Did Not Establish Factual Causation

Plaintiffs claimed causation fails at the very first link in their attenuated chain—the supposed connection between the City and the distribution of safer smoking supplies. Plaintiffs provide no evidence as to how the City directly distributes these supplies (*i.e.*, the volume, location, manner, etc.) in the Tenderloin (or anywhere else); they simply assert that it does. Similarly, they offer no evidence that the nonprofits' distribution of smoking supplies is because of, or even connected to, the City's financial support for these nonprofits. This lack of evidence is especially deficient where the State has provided money to the same nonprofits specifically to distribute safer smoking supplies. *See* Philip Decl. Ex. A; Wald Ex. 40.

Even assuming the nonprofits' distribution is because of the City's funding, Plaintiffs' evidence fails to show that the distribution of safer smoking supplies causes drug addicts and dealers to congregate around their residences and businesses resulting in blocked entrances, foul smells, and threats. These speculative safety concerns are also contradicted by empirical evidence. *See* Bluthenthal Decl. Para. 12, 13 (describing how systematic reviews have found no evidence of increased crime or public disorder attributable to harm reduction programs.) And Plaintiffs themselves cannot confirm what caused the conditions about which they complain, and in particular what role (if any) the City had in causing those conditions. *See e.g.,* Wald Decl. Ex. 1 (Jane Roe) at 137:6-11; Ex. 22 (Mary Roe) at 53:1-24; 54:1-5; 55:19-24; Ex. 14 (Barbara Roe) at 122:10-123:18; 153:18-156:8; Ex. 11 (John Roe) at 83:20-84:4; 140:6-17; 151:16-159:17. To the extent Plaintiffs have complaints about the City it involves the City's alleged *failure* to act (*id*. at Ex. 22 (Mary Roe) at 139:10-23; Ex. 30 (Best Western 30(b)(6)) at 159:2-19; Ex. 27 (Phoenix 30(b)(6)) at 193:4-194:3), which is not a cognizable nuisance claim. *In re Firearm Cases*, 126 Cal. App. 4th 959, 988 (2005).

Plaintiffs contend they meet the substantial factor test because the City "furnish[es] the pipes that are used by, and later discarded on the streets of the Tenderloin, by homeless drug addicts." ECF No. 101 at 26. As noted, Plaintiffs have no evidence explaining how or where the City furnishes pipes, but even if it did, the supposed discarded pipes are *not* the specific property interferences they claim (crowded entrances, smells, threats). Nor could they be—discarded pipes *on the streets* are not the requisite interference with Plaintiffs' *real property. Monks v. City of Rancho Palos Verdes*, 167 Cal. App. 4th 263, 302 (2008) ("To proceed on a private nuisance theory, the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land."). Plaintiffs also point to the existence of the April 2025 policy limiting where nonprofits can distribute smoking supplies and note the City's compliance monitoring (ECF No. 101 at 26:6-9), but neither of these shows how the nonprofits' distribution causes any of the three specific harms. And, as noted above, the City has daily services in the Tenderloin that clean the streets and sidewalks in the neighborhood. Decl. Vaing ¶ 20; Wald Decl. Ex. 22 (Mary Roe) at 192:14-17.

Plaintiffs also base causation for their specific property harms on the claim that people who receive smoking supplies from the nonprofits "use drugs in nearby public spaces." ECF No. 101 at 23.

This assertion fails because the evidence Plaintiffs offer has nothing to do with the City's conduct and, even if it did, none of Plaintiffs' evidence demonstrates that the people allegedly doing and selling drugs in front of their residences and business are connected to the nonprofits' distribution in any way. Plaintiffs first point to Ward's video of distribution at 172 Turk (*id.*), but as shown, the City has nothing to do with that location or its operator. *See* fn. 2 *supra*.

Plaintiffs next rely on Mary Roe's claim that she supposes smoking supplies are handed out at Hospitality House (ECF No. 101 at 23), but Plaintiffs offer no evidence the City funds any distribution there. Indeed, Hospitality House is not an approved SSP. Philip Decl. Ex. C.

Finally, Plaintiffs point to a city employee's supposition that some people who receive supplies from nonprofits may do drugs in public spaces, but this entirely unremarkable statement does nothing to prove that crowding, threats, and smells anywhere, let alone at Plaintiffs' residences, are caused by the City's funding or distribution of safer smoking supplies.

Moreover, the distribution of safer smoking supplies in California began sometime after 2018. *See* Section I.A., *supra*. Yet, Plaintiffs state that the conditions in the Tenderloin have existed for at least 18 years. ECF No. 101-4 at ¶¶ 2, 12; Wald Decl. 1 (Jane Doe) at 27:20-23; 47:2-13; 55:18-22; 56:11-17. The distribution of safer smoking supplies cannot cause conditions that predated that distribution by many years.

Indeed, Plaintiffs' only attempt to link the distribution of safer smoking supplies to their alleged injuries is that they each claim to live or operate a business two to six blocks away from Glide Memorial Church (a site that distributes safer smoking supplies). ECF No. 101-4 ¶¶ 2-3, 101-5 ¶ 2, 101-6 ¶ 2, 101-7 ¶ 2, 101-8 ¶ 2, 101-9 ¶¶ 2-3, 101-10 ¶¶ 2-3. Plaintiffs, however, fail to explain how this proximity has any link to their alleged injuries. This is not a simple nuisance case where Plaintiffs complain that their neighbor is playing music too loud and they can hear it. Plaintiffs take issue with the lawful conduct of a nonprofit occurring blocks away and claim—without any further evidence— that such conduct is the root cause of all illegal conduct everywhere in their neighborhood and specifically the cause of crowding, smells, and threats at their properties. Plaintiffs do not provide evidence that San Francisco's financial support for the two nonprofits at issue caused people to

actually ingest or sell drugs, crowd the sidewalks, litter, or stop patronizing the Plaintiff-hotels.[10] Nor do Plaintiffs explain how an order requiring the City to prohibit its contractors from distributing smoking supplies in the Tenderloin would remedy this third-party conduct. Plaintiffs have the burden of explaining how the conduct they seek to enjoin has caused an increase in the blockage of egress to their homes, increased smells, or threats. Plaintiffs have not met their burden.

Plaintiffs do not provide evidence that San Francisco's financial support for the two nonprofits at issue caused people to actually ingest or sell drugs, crowd the sidewalks, litter, or stop patronizing the Plaintiff-hotels. Nor do Plaintiffs explain how an order requiring the City to prohibit its contractors from distributing smoking supplies in the Tenderloin would remedy this third-party conduct.

Plaintiffs fail to cite any data or expert opinion linking the distribution of safer smoking supplies to illegal drug use or drug deals, or any other associated harms (*e.g.*, littering, loitering, or defecating on the street). The only evidence Plaintiffs provide is certain witnesses' assertions that they have seen drug use occur near safer smoking distribution sites. *See* Section I.F. *supra*. This is not enough. Plaintiffs put forward no evidence demonstrating that such conduct occurred *because of* the presence of a safer smoking supply distribution site. Nor do they offer any evidence that any person who received safer smoking supplies decided to buy or ingest drugs that they otherwise would not have, or bought or ingested drugs in a markedly different location than they otherwise would have. Given that Plaintiffs complain that they have been dealing with the same problematic neighborhood conditions for years before the challenged distribution sites opened, the sparse circumstantial evidence of factual causation Plaintiffs put forth is particularly uncompelling. *See* Section I.F. *supra*. It is far more likely that, if the Court enjoins the City from distributing smoking supplies, those with substance use issues will continue to use opioids and methamphetamines, but will do so under less safe conditions—either by switching from smoking to injection or by sharing and re-using smoking supplies (or improvising with soda cans or other objects). It will also leave more people in crisis on our street by closing off an avenue for engagement and active counseling and connection to substance

---

[10] As noted above, Plaintiffs provide no evidence showing how the City directly distributes the safer smoking supplies they complain of in the Tenderloin. Instead, they point to two City-supported nonprofits, but provide no evidence detailing the nature, extent, or even existence of any "indirect" distribution by the City. Regardless, they fail to show causation.

use treatment. And, critically, Plaintiffs fail to explain how San Francisco's provision of funds to nonprofits has any impact whatsoever on whether such nonprofit organizations will be able to continue to distribute safer smoking supplies, as they are authorized (and funded) by the state of California. This makes Plaintiffs' factual causation argument even more tenuous—particularly for distribution sites that are run by nonprofits who do not receive funding from San Francisco, such as 172 Turk Street, which is run by San Francisco Drug Users Union. *See* fn. 2 *supra*. Finally, Plaintiffs fail to explain how alleged distribution sites that closed one to three years ago are presently causing any alleged current or future harms.

### ii.    Plaintiffs Did Not Establish Proximate Causation

Plaintiffs' alleged harms are too remote to establish proximate cause. Nuisance claims fail for lack of proximate cause where the defendant acted lawfully and the plaintiff "suffered as a proximate result of the independent intervening acts of others." *Martinez*, 225 Cal. App. 3d at 1565 (dismissal of nuisance claim where defendants' maintenance of telephone booth that attracted drug dealing allegedly caused plaintiff to be shot at the phone); *In re Firearm Cases*, 126 Cal. App. 4th at 989 (holding no causal connection where plaintiffs claimed defendants lawful production of firearms resulted in harms that were proximately caused by others' illegal sales or use of those firearms). Here, third party criminal actors are the direct cause of Plaintiffs' alleged harms—drug dealing, drug use, offensive smells, threats. *E.g.*, ECF No. 101-4 at ¶ 2, 4, 6; ECF No. 101-5 at ¶¶ 2, 5-8; 101-6 at ¶¶ 2, 4-5; 101-7 at ¶¶ 2-3; 101-8 at ¶¶ 2-5; 101-9 at ¶ 5; 101-10 at ¶ 4.[11] And, the alleged ongoing conduct by San Francisco is providing funds to nonprofits who are engaged in lawful activity in California. Accordingly, Plaintiffs fail to provide evidence showing a clear likelihood that they can show that the harms they suffer were proximately caused by the ongoing challenged actions.

---

[11] Many of Plaintiffs alleged harms are even more speculative and unsupported. For example, each Plaintiffs complain they have seen or smelled human waste on the sidewalk, (ECF Nos. 101-4 ¶ 9; 101-5 ¶ 12; 101-6 ¶ 7; 101-7 ¶ 7; 101-8 ¶ 5; 101-9 ¶ 5; 101-10 ¶ 6), yet make no effort to explain the legally sufficient causal chain to tie this complaint to the challenged City conduct.

### d. The Public Benefit of the City's Considered And Focused Policies Outweighs The Harms Plaintiffs Allege

To prove nuisance, Plaintiffs must show the seriousness of the harm outweighs the challenged conduct's social utility. *Dep't of Fish & Game v. Superior Court*, 197 Cal.App.4th 1323, 1352 (2011); *see Wilson v. S. Cal. Edison Co.,* 234 Cal.App.4th 123, 163-164 (Cal. App. 2015) (holding an assessment of social utility requires weighing: (1) "the value society places on the primary purpose of the conduct that caused the interference," (2) "the suitability of the conduct that caused the interference to the character of the locality" and (3) the practicability or impracticability of preventing or avoiding the invasion"). Plaintiffs do not acknowledge any social utility in distributing safer smoking supplies and therefore conclude without analysis that their alleged harms are greater. They are wrong and their claims fail as a result.

Plaintiffs incorrectly assume the distribution of smoking supplies does nothing to decrease the public health risks of HIV, hepatitis, or other blood-borne pathogens without presenting any medical or public health expert to support their position. In fact, the evidence overwhelmingly shows otherwise. California recognizes that distributing safer *smoking* materials "reduce[s] the spread of communicable diseases such as HIV and hepatitis C" and also "reduce[s] the risk of injury and fatal drug overdose." Philips Decl. Ex. D. Safer smoking materials also "help individuals avoid initiation of injection drug use" and "allow people who inject drugs to transition from injection to safer modes of administration." Philip Decl. Ex. E ("Distribution of non-injection drug using equipment is an accepted harm reduction practice" and is "an effective strategy to address our opioid and methamphetamine epidemic.").

Methamphetamines and fentanyl can be ingested intravenously or by smoking. Philip Decl. Ex. E. While all drug use carries risk, smoking generally poses fewer risks than intravenous use. *Id*. Studies find participants who inject drugs are often willing to switch to smoking . . . when feasible and that non-injection routes of administration may pose less risk of overdoses." *Id*. One 2024 study of the health risks associated with smoking versus injecting fentanyl among Californians found those who injected were 40-percent more likely to have overdosed, 253-percent more likely to develop an abscess, and on average spent more nights in the hospital than those who smoked. Bluthenthal Decl. ¶

10 (citing Carine E. Megerian, *Health risks associated with smoking versus injecting fentanyl among people who use drugs in California*, Vol. 255, Drug and Alcohol Dependence, 111053 (2024)); *see also* Philip Decl. Ex. E (recognizing intravenous drug use is "associated with disease transmission, injury, and substantial morbidity" in addition to "mortality, and high costs to the health care system in California," and smoking these same drugs "is a significantly less risky mode of administration for people who are unwilling or unable to stop using drugs."); Ex. D ("The California Department of Public Health . . . has determined that . . . safer smoking and sniffing materials . . . may reduce the spread of communicable diseases such as HIV and hepatitis C, and reduce the risk of injury and fatal drug overdose."). Distribution of glass pipes, aluminum foil, and straws has social utility because it encourages individuals to smoke rather than inject, which is a safer method of consumption as described above. *See also* Bluthenthal Decl. ¶ 10. This is not a fringe position. It is California law, as stated by the legislative and executive branch, and supported by scientific consensus.

There is also a risk that sharing smoking supplies increases the risk of non-bloodborne pathogens, and a risk that those who wish to smoke but do not have a glass pipe will resort to altering objects such as soda cans to create makeshift pipes that "may introduce harmful chemicals from any printing or lining" that would not otherwise be present in a glass pipe. Philip Decl. Ex. E. Safer smoking supplies may also "reduce the risk of respiratory infections including influenza and tuberculosis, and injuries such as cuts and burns from using damaged pipes. *Id*. Providing safer consumption supplies "can serve as engagement strategy," and "strength[en] prevention interventions," thereby reducing the number of individuals addicted to opioids and amphetamines at a population level. Philip Decl. Ex. E; Bluthenthal Decl. ¶ 10. This is the case with San Francisco's policy, which pairs the distribution of smoking supplies with information and services. *See* Philip Decl. Ex. F;. In short, even if Plaintiffs could show a causal connection between the distribution of smoking supplies and their claimed harms, the State-recognized, evidence-based societal benefits outweigh the claimed harms.

### 2.    Plaintiffs Will Not Suffer Irreparable Harm Absent Preliminary Relief

After experiencing the same neighborhood conditions for at least 18 years, Plaintiffs have now, one year into their lawsuit, identified a 2018 California law they disagree with. They seek an

injunction to force a change in policy, rather than prevent "a change in the status quo." *F.D.I.C. v. Jackson-Shaw Partners No. 46, Ltd.*, No. CIV. 92-20556 SW, 1994 WL 695376, at *3 (N.D. Cal. Dec. 8, 1994). Both their delay and overall failure to establish a threat of irreparable harm are reasons to deny their motion in its entirety. *See Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 Fed. Appx. 676, 679 (9th Cir. 2011) ("because [plaintiff] has failed to carry its burden of showing a likelihood of irreparable harm, we need not address the remaining factors necessary for injunctive relief.").

### a.    The Harm Plaintiffs Allege Is Not Irreparable

For a preliminary injunction, Plaintiffs must show not only that they will suffer harm absent relief, but that that they will be harmed irreparably. This requires they "do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiffs do not meet this exacting standard. None of the Plaintiffs submitted evidence showing they will suffer irreparable injury unless the Court enjoins San Francisco from funding nonprofits who distribute safer smoking supplies. *See* Section IV.A.1., *supra*. And Plaintiffs identify no case that supports their argument. In fact, Plaintiffs cite no case law at all in the 14 lines they devote to irreparable harm.

### i.    Roe Plaintiffs Fail to Show Irreparable Injury

As explained above (*supra* § IV.A.1.), Plaintiffs' vague claims of undated blockages, smells, and fears are insufficient to show the requisite current and substantial interference with their property rights necessary to prove a private nuisance. Without evidence of a present, legally relevant injury, Plaintiffs cannot show any harm, let alone irreparable harm warranting an injunction.

None of the Roe Plaintiffs' alleged injuries are sufficiently detailed, certain, or irreparable. Roe Plaintiffs admit they have not suffered a "significant physical injur[y]" despite alleging the offensive conditions have persisted for years. Mot. at 22:26-28. Instead, they generally allege public conduct of third-parties makes them uncomfortable—at times they smell odors, or experience people blocking entrances to buildings or the public right of way. ECF Nos. 101-4 ¶ 12 (Jane Roe); 101-5 ¶¶ 3-4 (Mary Roe); 101-6 ¶ 5-7 (Susan Roe); 101-7 ¶ 3, 5-6 (John Roe); 101-8 ¶ 3, 5 (Barbara Roe). Generalized allegations of discomfort or anxiety due to neighborhood conditions, even if accepted as true, are not enough. *See e.g., Koll-Irvine Ctr. Prop. Owners Ass'n*, 24 Cal. App. 4th at 1041-42 ("In this state . . . a

private nuisance action cannot be maintained for an interference in the use and enjoyment of land

caused solely by the fear of a future injury."); *Merriman v. Telander*, No. 216CV2030JAMEFBP,

2018 WL 2058207, at *2 (E.D. Cal. May 3, 2018), report and recommendation adopted, No.

216CV2030JAMEFBP, 2018 WL 3239764 (E.D. Cal. July 3, 2018) (finding no irreparable harm

based on "extreme mental health setbacks" because those injuries were "not indicative of a specific,

irreparable harm for which a preliminary injunction could be narrowly tailored to prevent"). Plaintiffs

must show not only that they "might" be harmed by the challenged conduct, but that "irreparable

harm" to them "is likely." *Titaness Light Shop, LLC v. Sunlight Supply, Inc*., 585 Fed. App'x 390, 391

(9th Cir. 2014) (unpublished). They do not meet that standard here.

Overall, Roe Plaintiffs' attempts to show irreparable harm are too conclusory, vague, and

uncertain—both as to the claimed injuries and the causal connection between the challenged conduct

and the claimed injury, and the City objects to their declarations on that basis. Aside from certain

Plaintiffs declaring that they live in close proximity to sites where safer smoking supplies are

distributed and stating they have seen drug use nearby, Plaintiffs do not include any facts connecting

the harms they complain of to the distribution of safer smoking supplies. *See generally* ECF Nos. 101-

4; 101-5; 101-6; 101-7; 101-8. Roe Plaintiffs therefore fail to justify an injunction since conclusory

claims of irreparable harm are objectionable speculation and insufficient for injunctive relief, "as they

are set forth without any supporting factual basis, and without the benefit of . . . expertise on

causation." *Wilson v. Woodford*, 2009 WL 839921, at *27 (E.D. Cal. Mar. 30, 2009) (citing FRE 701

and 702); *Am. Passage Media Corp. v. Cass Commc'n, Inc.,* 750 F.2d 1470, 1473 (9th Cir. 1985)

(reversing injunction because plaintiffs "affidavits are conclusory and without sufficient support in

facts"); *CFNR Operating Co. v. City of Am. Canyon*, 282 F. Supp. 2d 1114, 1119 (N.D. Cal. 2003)

(finding lack of irreparable harm where the claimed losses "are speculative and so do not rise to the

level of irreparable harm"); *Communities for a Better Env't v. Pac. Steel Casting Co*., No. C06-4184

BZ, 2006 WL 4491437, at *3 (N.D. Cal. Sept. 21, 2006) (finding lack of irreparable harm where

plaintiffs alleged "a link between defendant's emissions and potentially serious health risks," yet the

record showed "little evidence to suggest that the consequences attributed to defendant's emissions

ha[d] materialized"); *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc*., 736

F.3d 1239, 1250 (9th Cir. 2013) (reversing injunction where "[t]he district court's analysis of irreparable harm [was] cursory and conclusory, rather than being grounded in any evidence").

### ii.    Entity Plaintiffs' Alleged Harm Is Not Irreparable

Phoenix Hotel SF, LLC and Funky Fun, LLC, already decided not renew their lease past January 31, 2026. ECF No. 101-9 at ¶ 4.[12] Accordingly, they cannot show irreparable harm in the next few months as any alleged harm would be financial and "[i]t is well established" that "monetary injury is not normally considered irreparable." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). The Phoenix Plaintiffs confirmed that even if the Court grants their Motion is granted in full, they will still not renew their lease. Ex. 27 at 260:24-261:19 (cessation of smoking supply distribution "would have to be in tandem with other things" for owners to *consider* renewing lease).

2930 El Camino, LLC likewise has not made a showing of irreparable harm as it too makes generalized allegations its business is not doing as well as it could due to neighborhood conditions. ECF No. 101-10 at ¶¶ 4-6. 2930 El Camino, LLC does not contend it faces imminent closure and even if it had, assertions that a plaintiff may go out of business or sustained substantial losses are likewise insufficient. *Am. Passage Media Corp.*, 750 F.2d at 1474 (finding fact that large losses are insufficient to establish irreparable harm); *AboveGEM, Inc. v. Organo Gold Mgmt., Ltd.*, No. 19-cv-04789-PJH, 2019 WL 3859012, at *5 (N.D. Cal. Aug. 16, 2019) ("The co-founder's statement that plaintiff 'may' not be able to continue is inherently speculative" and does not show a likelihood of irreparable harm).

### b.    Plaintiffs' Delay Demonstrates A Lack of Irreparable Harm

Finally, the length of time between Plaintiffs initial Complaint and this Motion evidences that immediate relief is not necessary to prevent irreparable harm. *See Oakland Trib., Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."). As does Plaintiffs' even longer delay between when the alleged nuisance began and when they filed their complaint—18 years. *E.g.*, ECF

---

[12] Plaintiffs' decision to shut down does not entitle them to preliminary relief. Courts decline to issue relief "when the irreparable injury . . . has been self-created." *Diamond S.J. Enter., Inc. v. City of San Jose*, No. 18-CV-01353-LHK, 2018 WL 11009362, at *4 (N.D. Cal. Mar. 2, 2018); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("Self-inflicted wounds are not irreparable").

No. 101-4 ¶¶ 2, 12; *see Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."). This is true particularly here, where Plaintiffs' Motion provides no explanation for their many years delay. *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213–14 (9th Cir. 1984). "It simply strains credibility" for Plaintiffs to assert that although they have "been able to exist" with largely the same neighborhood conditions for many years without an injunction, they will now be "irreparably injured by the absence of those benefits." *Wilson v. Seattle Hous. Auth.*, No. C09-226MJP, 2010 WL 1945740, at *4 (W.D. Wash. May 13, 2010) (denying injunction where plaintiff claimed to be on the verge of homelessness due to three-year delay in seeking preliminary injunction).

### 3.    There Is No Equitable Justification For Plaintiffs' Requested Injunction

The balance of equities and public interest merge "[w]hen the government is a party." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Both favor San Francisco. As explained above, San Francisco is implementing evidence-based policies to engage individuals in meaningful substance abuse and mental health treatment. Its policy aligns with California law and correctly balances the public interest. It is also just one part of San Francisco's broader strategy to save lives and get people off the streets and into stable housing. San Francisco also enacted a law that empowers the City to take swift action to address the fentanyl crisis, opened a 24/7 police-friendly stabilization center to provide rapid access to lifesaving care, opened 279 recovery and treatment beds outside the Tenderloin, invested to ensure homeless service providers comply with the City's "good neighbor" policy, and implemented a more robust response system to address community complaints about street conditions. Wald Decl. Exs. 39-42.

Plaintiffs makes no attempt to balance the equities. They instead seek a *de facto* ban of an evidence-based statewide policy that they disagree with, by defunding all organizations who engage in lawful conduct, without regard to any consequences of defunding those organizations. San Francisco's funding allows SF AIDS and Glide to provide services that benefit the entire community, such as syringe access and disposal services, HIV and Hepatitis C prevention services, overdose prevention and health education, naloxone distribution, linkage and navigation to physical and behavioral health services and housing or shelter, medical care and buprenorphine, and community syringe clean-ups.

Philip Decl. ¶ 15, Ex. H. If the Court enjoined San Francisco from funding organizations that refuse to cease lawfully distributing safer smoking supplies, the community could lose access to these other important services. SF AIDS and Glide may not be able to afford to provide these other services without funding from San Francisco, especially given recent shifts in federal funding policies. *See e.g., SF Aids Foundation v. Trump*, Case No. 3:25-cv-1824 (N.D. Cal. Feb. 20, 2025).

By contrast, it is not clear that a refusal by San Francisco to fund to SF AIDS and Glide would have any impact on their ability to distribute safer smoking supplies where California funds them to distribute the same materials, regardless of any funding by San Francisco. *See* Section I.C., *supra*. A change in City contracting requirements likewise would not impact San Francisco Drug Users Union, who receive no City funding yet distributes safer smoking supplies in the Tenderloin.

Moreover, Plaintiffs are incorrect that there is no benefit to the distribution of safer smoking supplies. The distribution of safe smoking supplies benefits the entire community because it dramatically increases entry into addiction treatment, offers a touchpoint for healthcare such as vaccination, and reduces the risk of overdose and death. Bluthenthal Decl. ¶ 10. As noted above, according to CDPH, the evidence shows: overall drug-related risks decrease when users smoke instead of inject; tools which reduce the sharing of non-injection drug using equipment reduces the spread of Hepatitis C infection, tuberculosis, and likely COVID-19; and there is a marked decrease in drug-related health problems among those who obtain new pipes through SSPs, which also serve as an entry point to other services, including care and treatment services. *See* Section I.B., *supra*.

And even if Plaintiffs had presented adequate evidence of sufficiently certain harm (which they have not), the Court must balance any harm against "the opposing public interests such as the health and safety of the City's residents and the ability of the City to protect those residents by enforcement of municipal regulations." *CFNR Operating Co. v. City of Am. Canyon*, 282 F. Supp. 2d 1114, 1120 (N.D. Cal. 2003) (finding balance of the equities did not favor injunction where "preliminary injunction would certainly prevent the City from enforcing" policies "which appear to reflect the interests of public health and safety."). Because San Francisco's funding to SF AIDS and Glide serves an important public health purpose, the balance of equities does not favor an injunction.

**C.    Plaintiffs Improperly Seek a Universal Injunction Beyond the Court's Authority**

Plaintiffs seek an impermissibly overbroad injunction. Plaintiffs ask to ban the City from lawful conduct not just outside their residences, but anywhere in the Tenderloin without explaining how activities occurring *anywhere* in the neighborhood injury their use and enjoyment of their own property. Federal courts do not have the "power to prohibit enforcement of a law or policy against *anyone*," only parties. *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2548 (2025) (emphasis in original). "[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Plaintiffs offer no evidence that the distribution of smoking supplies even one block (let alone more than one mile) from their home causes the harm alleged. Each Plaintiff can obtain an injunction no broader than what would enjoin the City's conduct as to their particular home or business, and Plaintiffs fail to explain how a wide-ranging prohibition of lawful conduct anywhere within their neighborhood is required.

**CONCLUSION**

Cities like San Francisco devote thousands of hours and millions of dollars each year in an attempt to address street conditions while balancing the needs of all San Franciscans. Stripping San Francisco of the ability to do that here is factually and legally unwarranted. Plaintiffs have not shown they are likely to demonstrate San Francisco's approach to these constitutes a nuisance. Instead, the evidence shows San Francisco's policies are consistent with California law, as well as the scientific literature and best practices. San Francisco's recent actions also demonstrate its heightened commitment to tackling the City's behavioral health and substance use crisis, while improving street conditions for all residents. For the foregoing reasons, the City respectfully requests the Court deny Plaintiffs' Motion for a Preliminary Injunction.

Dated:  September 22, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
TARA M. STEELEY
JOHN H. GEORGE
KAITLYN M. MURPHY
ABIGAIL H. WALD
Deputy City Attorneys


By:____/s/*Abigail H. Wald*_____
ABIGAIL H. WALD

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO