# EXHIBIT 43
# to

**DECLARATION OF ABIGAIL WALD IN SUPPORT OF DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

2018 Cal. Legis. Serv. Ch. 34 (A.B. 1810) (WEST)

CALIFORNIA 2018 LEGISLATIVE SERVICE

2018 Portion of 2017-2018 Regular Session

Additions are indicated by Text; deletions by

* * *

Vetoes are indicated by ~~Text~~;
stricken material by ~~Text~~.

CHAPTER 34

A.B. No. 1810

HEALTH AND SANITATION—MEDI-CAL PROGRAM

AN ACT to amend Section 16531.1 of, and to add Section 100503.3 to, the Government Code, to amend Sections 1225, 1266, 1275.3, 11364.7, 104161, 104161.1, 104162.1, and 120972 of, to amend and repeal Sections 121349, 121349.1, 121349.2, and 121349.3 of, to add Sections 105250.1, 123259, and 123260 to, to add Chapter 8.5 (commencing with Section 127671) to Part 2 of Division 107 of, and to add and repeal Part 4 (commencing with Section 1000) of Division 1 of, the Health and Safety Code, to amend Sections 1370, 1370.01, and 1372 of, and to add Chapter 2.8A (commencing with Section 1001.35) to Title 6 of Part 2 of, the Penal Code, and to amend Sections 4094 and 14149.9 of, to add Section 14197.5 to, to add Chapter 6.5 (commencing with Section 4361) to Part 3 of Division 4 of, and to repeal Section 14105.965 of, the Welfare and Institutions Code, relating to public health, and making an appropriation therefor, to take effect immediately, bill related to the budget.

[Filed with Secretary of State June 27, 2018.]

**LEGISLATIVE COUNSEL'S DIGEST**

AB 1810, Committee on Budget. Health.

(1) Existing law provides for the Medi–Cal program, which is administered by the State Department of Health Care Services, under which qualified low-income individuals receive health care services. The Medi–Cal program is, in part, governed and funded by federal Medicaid program provisions. Existing law creates the continuously appropriated Medical Providers Interim Payment Fund for the purposes of paying Medi–Cal providers, providers of drug treatment services for persons infected with HIV, and providers of services for the developmentally disabled, during a fiscal year for which a budget has not yet been enacted or there is a deficiency in the Medi–Cal budget. During a fiscal year in which these payments are necessary, existing law requires the Controller to transfer up to $1,000,000,000 from the General Fund in the form of loans to the continuously appropriated Medical Providers Interim Payment Fund, and appropriates $1,000,000,000 from the Federal Trust Fund to that fund. Existing law requires those loans to be repaid by debiting the appropriate Budget Act item following a procedure prescribed by the Department of Finance. Upon the enactment of the annual Budget Act or a deficiency bill, existing law requires the Controller to transfer expenditures and unexpended funds in the Medical Providers Interim Payment Fund to the appropriate Budget Act item.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 3 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

This bill would require the Controller to make those loan transfers upon order of the Department of Finance. The bill would increase the maximum amount of loan transfers annually from the General Fund to the continuously appropriated Medical Providers Interim Payment Fund to $2,000,000,000, would require the Department of Finance to notify the Legislature within 10 days of authorizing a transfer, and would increase the appropriation from the Federal Trust Fund to the Medical Providers Interim Payment Fund to $2,000,000,000 during a fiscal year for which a budget has not yet been enacted or when there is a deficiency in the Medi-Cal budget. By increasing the amounts paid into a continuously appropriated fund, the bill would make an appropriation. The bill would require a loan to be repaid either in the same fiscal year in which it was made or in the subsequent fiscal year, as specified, by debiting the appropriate Budget Act item or using the proceeds of a supplemental appropriations bill, as determined by the State Department of Health Care Services, in consultation with the Department of Finance, and inform the Controller within 30 days of enactment of the Budget Act or a supplemental appropriations bill.

(2) Existing federal law, the federal Patient Protection and Affordable Care Act (PPACA), enacts various health care coverage market reforms that took effect January 1, 2014. Among other things, PPACA requires each state, by January 1, 2014, to establish an American Health Benefit Exchange that facilitates the purchase of qualified health plans by qualified individuals and qualified small employers. Existing state law establishes the California Health Benefit Exchange, also known as Covered California, within state government for the purpose of facilitating the enrollment of qualified individuals and qualified small employers in qualified health plans.

This bill would require the Exchange, in consultation with stakeholders and the Legislature, to develop options for providing financial assistance to help low- and middle-income Californians access health care coverage, as specified, and would require the Exchange to report those developed options to the Legislature, Governor, and Council on Health Care Delivery Systems on or before February 1, 2019.

This bill would also establish the Council on Health Care Delivery Systems as an independent body to develop a plan that includes options for advancing progress toward achieving a health care delivery system in California that provides coverage and access through a unified financing system for all Californians. The bill would, on or before October 1, 2021, require the council to submit to the Legislature and Governor a plan with options that include a timeline of the benchmarks and steps necessary to implement health care delivery system changes, and would require the plan to be posted on the California Health and Human Services Agency's Internet Web site. The bill would require the plan to consider, at a minimum, among other things, key design options, including covered benefits, eligibility, service delivery, provider payments, and quality improvement, and opportunities for controlling health care costs. The bill would require the council to provide an update detailing its progress in developing the plan to the Governor and the health committees of the Senate and Assembly on or before January 1, 2020, and every 6 months thereafter. The bill would authorize the California Health and Human Services Agency to provide staff support to implement these provisions, and would repeal these provisions on January 1, 2022.

(3) Existing law establishes the State Department of Public Health and sets forth its powers and duties, including, but not limited to, the licensing and regulation of various health facilities. Existing law sets forth the per-bed or per-facility licensing and certification fee for the various regulated facilities. Existing law establishes the State Department of Public Health Licensing and Certification Program Fund and requires deposit of the fees into the fund to be used, upon appropriation by the Legislature, for the support of the department's licensing and certification program.

This bill would, commencing in the 2018–19 fiscal year, authorize the department to assess a supplemental license fee on facilities located in the County of Los Angeles for all of these facility types. The bill would require the department to calculate the supplemental license fee based upon the difference between the estimated costs of regulating facility types

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 4 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

licensed in the County of Los Angeles, including, but not limited to, the costs associated with the department's contract for licensing and certification activities with the County of Los Angeles.

(4) Existing law requires the State Department of Public Health to license and regulate primary care clinics and specialty clinics. Existing law requires these clinics to comply with specific statutory provisions for standards of care and regulations promulgated by the department, and a violation of these provisions or regulations is a crime.

This bill would require a chronic dialysis clinic, surgical clinic, or rehabilitation clinic licensed or seeking a license to comply with prescribed federal certification standards in effect immediately preceding January 1, 2018. By expanding the standards by which licensed clinics are required to comply, this bill would expand the scope of a crime, thereby imposing a state-mandated local program.

(5) Existing law requires the State Department of Public Health and the State Department of Developmental Services to jointly develop and implement licensing regulations appropriate for an intermediate care facility/developmentally disabled-nursing and an intermediate care facility/developmentally disabled-continuous nursing. Existing law requires these facilities to comply with specific statutory provisions for standards of care and regulations promulgated by these departments, and a violation of these provisions or regulations is a crime.

This bill would require an intermediate care facility/developmentally disabled-nursing to comply with prescribed federal certification standards in effect immediately preceding January 1, 2018. By expanding the standards by which this type of facility is required to comply, this bill would expand the scope of a crime, thereby imposing a state-mandated local program.

(6) Existing law authorizes the Director of Public Health to establish and administer a program within the department's Office of AIDS to subsidize certain costs of medications for the prevention of HIV infection and other related medical services to residents of California who are at least 18 years of age, who are HIV negative, and who meet specified other requirements. Existing law authorizes the program to subsidize the costs of HIV pre-exposure prophylaxis (PrEP)–related medical services for uninsured individuals who are enrolled in a drug manufacturer's PrEP medication assistance program. These provisions apply only to the extent that funding is available, as specified.

This bill would revise the criteria for participation in the program by making it available to minors who are 12 years of age or older and who may consent to medical care, under specified circumstances. The bill would authorize the program to subsidize the cost of medication for the prevention of HIV infection for uninsured individuals who are ineligible for a drug manufacturer's medication assistance program. The bill would authorize the program to subsidize the cost of post-exposure prophylaxis (PEP)–related medical services for both insured and uninsured individuals, as specified. The bill would also authorize the program to subsidize, without regard to eligibility and for the prevention of HIV infection, up to 14 days of PrEP and PEP medication and up to 28 days of PEP medication for victims of sexual assault. The bill would also authorize the director to subsidize premiums for individuals using PrEP if the director determines that it would result in cost savings to the state.

(7) Existing law, until January 1, 2019, authorizes the State Department of Public Health to authorize certain entities to apply to the department to provide hypodermic needle and syringe exchange services in any location where the department determines that the conditions exist for the rapid spread of HIV, viral hepatitis, or any other potentially deadly or disabling infections that are spread through the sharing of used hypodermic needles and syringes, and requires the department to provide for a period of public comment, as specified, at least 90 days before approval of the application. Existing law, until

January 1, 2019, requires the department to establish and maintain on its Internet Web site the address and contact information of these programs. Existing law, until January 1, 2019, exempts staff and volunteers participating in an authorized exchange project from criminal prosecution for violation of any law related to the possession, furnishing, or transfer of hypodermic needles or syringes during participation in an exchange project and exempts program participants from criminal prosecution for possession of needles and syringes acquired from an authorized exchange project entity. Existing law, until January 1, 2019, makes the comment and reporting process for the projects biennial.

This bill would extend the operation of these provisions indefinitely. The bill would shorten the period of public comment before department approval of an application to 45 days. The bill would exempt staff, volunteers, and program participants from criminal prosecution for possession, furnishing, or transferring materials deemed by a local or state health department to be necessary to prevent the spread of communicable diseases, or to prevent drug overdose, injury, or disability to program participants, as specified. The bill would make other conforming changes.

Existing law, commencing January 1, 2019, would authorize a clean needle and syringe exchange program in cities and counties upon action by the local government, and in consultation with the State Department of Public Health. Existing law, commencing January 1, 2019, exempts providers participating in the exchange projects authorized by local government from criminal prosecution for possession of needles and syringes during participation in an exchange project. Existing law, commencing January 1, 2019, makes the comment and reporting process for these projects annual.

This bill would repeal those provisions.

(8) Existing law requires the State Department of Public Health to maintain a program of maternal and child health, which may include, among other things, facilitating services directed toward reducing infant mortality and improving the health of mothers and children. Existing law also states the intent of the Legislature to improve and coordinate existing programs for pregnant women and infants and to remove barriers to care, with a focus on specific high-risk target populations, including black women who are pregnant or of childbearing age.

This bill would, subject to an appropriation in the annual Budget Act, require the department to establish the California Perinatal Equity Initiative to expand the scope of interventions provided under the Black Infant Health Program by fostering Community Centers of Excellence and promoting the use of interventions designed to fill gaps in current programming offered through the Black Infant Health Program. The bill would include, as part of the initiative, a process to allocate funds to up to 15 county health departments, to work collaboratively with state and local Black Infant Health programs, for the purpose of improving black infant birth outcomes and reducing infant mortality. The bill would require counties receiving grants to, among other things, create a local grant program to develop Community Centers of Excellence in perinatal health and carry out local public awareness efforts. The bill would require the department to consult with stakeholders as part of implementing the initiative. The bill would also include a related statement of legislative findings and declarations.

(9) Existing law provides for the licensing of community treatment facilities by the State Department of Social Services and requires the State Department of Health Care Services to adopt regulations relating to program standards for those facilities. Under existing law, only seriously emotionally disturbed children, as defined, under specified criteria are placed in a community treatment facility.

Existing law appropriates $45,000 annually from the General Fund to the State Department of Health Care Services for one personnel year to carry out the requirement on the department to adopt regulations.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 6 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

This bill would repeal the above continuous appropriation.

(10) Existing law requires the State Department of Health Care Services to perform various health functions, including providing breast and cervical cancer screening and treatment for low-income individuals. Existing law defines "period of coverage" for the purpose of these provisions as beginning when an individual is made eligible for a covered condition and not to exceed 18 or 24 months, respectively, for a diagnosis of breast cancer or a diagnosis of cervical cancer.

This bill would delete that definition and, instead, provide that the treatment services be provided for the duration of the period of treatment for an individual made eligible for treatment due to a diagnosis of breast cancer or cervical cancer, as long as the individual continues to meet all other eligibility requirements. The bill would make conforming changes to a provision relating to an individual who is diagnosed with a reoccurrence of breast cancer or cervical cancer. The bill would also make technical, nonsubstantive changes to related provisions.

(11) Existing law requires the State Department of Public Health to implement and administer a residential lead-based paint hazard reduction program, as specified, including adopting regulations regarding accreditation of providers of health and safety training to employees who engage in or supervise lead-related construction work, as defined, and certification of employees who have successfully completed that training. Existing law requires specified persons engaged in lead construction work to have a certificate issued by the department. Existing law authorizes the department to establish fees for accreditation, certification, and licensing in connection with the program for deposit in the Lead–Related Construction Fund. Moneys in the fund are available upon appropriation.

This bill would establish, beginning July 1, 2018, the Lead–Related Construction Program fee of $87 for an application submitted for lead certification, as specified, not to exceed the reasonable administrative costs in connection with the application. The bill would also require the department to prepare a report, as specified, by February 1 of any year in which the department raises or establishes new or additional fees, including the fees described above, to make that report and the list of fees available to the Budget Committees of the Legislature, and to post the report and the list of fees on the department's Internet Web site. The bill would make these proposed fees effective on July 1 of the year for which they are proposed.

(12) Existing law establishes health care coverage programs to provide health care to segments of the population meeting specified criteria who are otherwise unable to afford health care coverage and provides for the licensure and regulation of health insurers and health care service plans.

This bill would state the intent of the Legislature to establish a Health Care Cost Transparency Database to collect information regarding the cost of health care. The bill would require the Office of Statewide Health Planning and Development to convene a review committee for purposes of advising the office on the establishment and implementation of the database. The bill would require, subject to appropriation, the office to establish, implement, and administer the database. The bill would exempt contracts entered into by the office from provisions of the Public Contract Code. The bill would require certain health care entities, including health care service plans, to provide specified information to the office for collection in the database. The bill would provide that a violation of these provisions is not a crime.

(13) Existing law prohibits a person from being tried or adjudged to punishment while that person is mentally incompetent. Existing law establishes a process by which a defendant's mental competency is evaluated and by which the defendant

receives treatment with the goal of returning the defendant to competency. Existing law allows a mentally incompetent defendant to be committed to the State Department of State Hospitals or other public or private treatment facility.

This bill would authorize a court to appoint a psychiatrist or a licensed psychologist to opine as to whether the defendant has regained competence if counsel for the defendant, or a jail or medical or mental health staff provider provides the court with substantial evidence that the defendant's psychiatric symptoms have changed to such a degree as to create a doubt in the mind of the judge as to the defendant's current mental competence. The bill would require the court to proceed as if a certificate of restoration of competence had been returned if the opinion of the expert was that the defendant had regained competency, except that a hearing would be required for a final determination of competency.

(14) Existing law authorizes the medical director of a state hospital or other facility to which a defendant is committed, or the community program director, county mental health director, or regional center director providing outpatient services, to make a determination of whether the defendant has regained mental competence. Under existing law, if the director makes that determination, he or she is required to immediately certify that fact to the court by filing a certificate of restoration to competence with the court by certified mail, return receipt requested.

This bill would expand the ability to make that determination of mental competence to a person designated by the department at an entity that contracts with the department to provide services to a defendant prior to placement in a treatment program. The bill would authorize the filing of a certificate of restoration to competence by confidential electronic transmission.

(15) Existing law authorizes a county to establish a pretrial diversion program for defendants who have been charged with a misdemeanor offense, with certain exceptions. Existing law also authorizes other diversion programs, including for defendants with cognitive developmental disabilities, defendants in nonviolent drug cases, defendants suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of their military service, and persons issued notices to appear for traffic violations, among others.

This bill would establish a procedure of diversion for defendants with mental disorders through which the court would be authorized to grant pretrial diversion, for a period no longer than 2 years, to a defendant suffering from a mental disorder, on an accusatory pleading alleging the commission of a misdemeanor or felony offense, in order to allow the defendant to undergo mental health treatment. The bill would condition eligibility on, among other criteria, a court finding that the defendant's mental disorder played a significant role in the commission of the charged offense. The bill would authorize a referral for mental health treatment to be made to a county mental health agency, existing collaborative courts, or assisted outpatient treatment only if that entity has agreed to accept responsibility for the treatment of the defendant, as specified.

The bill would, among other things, require the court, after notice to the defendant, defense counsel, and the prosecution, to hold a hearing to determine whether the criminal proceedings should be reinstated, whether the treatment program should be modified, or whether the defendant should be conserved and referred to the conservatorship investigator, if the defendant is charged with, or is engaged in, certain criminal offenses, if the defendant is performing unsatisfactorily in diversion, or if the defendant is gravely disabled, as defined.

If the defendant has performed satisfactorily in diversion, the bill would require the court to dismiss the defendant's criminal charges, with a record filed with the Department of Justice indicating the disposition of the case diverted, and the arrest deemed never to have occurred, and would require the court to order access to the record of the arrest restricted, except as specified.

By increasing the duties of local officials relating to diversion and the sealing of arrest records, this bill would impose a state-mandated local program.

The bill would also authorize the State Department of State Hospitals, subject to appropriation by the Legislature, to solicit proposals from, and to contract with, a county to help fund the development or expansion of the above-described pretrial diversion for individuals with serious mental disorders who may otherwise be found incompetent to stand trial and committed to the department for restoration of competency. The bill would require participants to meet specified criteria, including, among others, that they suffer from certain mental disorders and have felony charges, and that there is a significant relationship between the serious mental disorders and the charged offense or between the individual's conditions of homelessness and the charged offense.

The bill would set forth various requirements for a county submitting a proposal for funding, including, among others, demonstrating a specified match of county funds and reporting certain program data and outcomes to the department. The bill would require the department, when evaluating a proposal, to take certain factors into consideration, and in consultation with the Council on Criminal Justice and Behavioral Health, as specified. The bill would require that patient information and certain personal identifying information reported to the department be confidential and not open to public inspection.

(16) Existing law requires the State Department of Health Care Services to establish the Diabetes Prevention Program (DPP), an evidence-based, lifestyle change program designed to prevent or delay the onset of type 2 diabetes among individuals with prediabetes, within the Medi–Cal fee-for-service and managed care delivery systems. Existing law authorizes a Medi–Cal provider to identify and recommend participation in the DPP to a beneficiary who meets specified requirements. Existing law requires the department, in implementing the DPP, to require Medi–Cal providers offering DPP services to use a specified curriculum.

This bill would change the eligibility requirements for a beneficiary to participate in the DPP to match the eligibility requirements of the federal Centers for Disease Control and Prevention Diabetes Prevention Recognition Program.

(17) Existing law authorizes a publicly owned or operated clinic that is enrolled as a Medi–Cal provider and that provides services to Medi–Cal beneficiaries to receive supplemental Medi–Cal reimbursement, as specified, in addition to the rate of payment that the facility would otherwise receive for Medi–Cal outpatient services. Existing law requires an eligible facility, as a condition of receiving supplemental reimbursement, to enter into, and maintain, an agreement with the State Department of Health Care Services for the purposes of implementing those provisions and reimbursing the department for the costs of administering them.

This bill would repeal the above-described provisions relating to the supplemental Medi–Cal reimbursement.

Under existing law, the department contracts with Medi–Cal providers, such as federally qualified health centers, fee-for-service providers, and managed care plans to provide medically necessary services, and providers receive reimbursement for services through various payment systems and rate methodologies as prescribed in statute, including, but not limited to, prospective payment system rates, fee-for-service rates, and capitated rates.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 9 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

This bill, to the extent federal financial participation is available, any necessary federal approvals are obtained, and funds are appropriated by the Legislature for its purposes, would require the department to establish and operate, no sooner than July 1, 2019, a Cost–Based Reimbursement Clinic (CBRC) Directed Payment Program. The bill would require CBRCs, defined as clinics and hospital outpatient departments, except for emergency rooms, that are owned and operated by the County of Los Angeles and participated in a specified Medicaid demonstration project for the County of Los Angeles that contract with Medi–Cal managed care plans, as defined, to be reimbursed by the plans according to a Medi–Cal cost-based, fee-for-service methodology, as described. The bill would authorize the department to fund the nonfederal share of the program through voluntary intergovernmental transfers from affected counties or other entities, as specified. The bill would require the department to consult with affected counties to assess the program, as described. The bill would authorize the department to take specified action following the consultation with affected counties, such as reducing payments offered under this program. The bill would authorize the department to implement the program by means of all-county letters, plan letters, plan or provider bulletins, or similar instructions.

The bill would authorize the State Department of Health Care Services, when the department seeks to recoup or recover funds from Medi–Cal fee-for-service providers due to circumstances including, but not limited to, federally approved rate or payment reductions, overpayments, or other audit-related payment recoveries to allow for modification in the amounts withheld from an applicable provider payment or the timing of repayments upon request of an individual provider and demonstration of hardship. The bill would require the provider to request that relief in the form and manner specified by the department before the department takes action to recoup or recover the funds.

(18) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

(19) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that with regard to certain mandates no reimbursement is required by this act for a specified reason.

With regard to any other mandates, this bill would provide that, if the Commission on State Mandates determines that the bill contains costs so mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

(20) This bill would declare that it is to take effect immediately as a bill providing for appropriations related to the Budget Bill.

Appropriation: yes.

The people of the State of California do enact as follows:

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 10 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

SECTION 1. Section 16531.1 of the Government Code is amended to read:

<< CA GOVT § 16531.1 >>

16531.1. (a) Notwithstanding any other * * * law and without regard to fiscal year, if the annual State Budget is not enacted by June 30 of **the** fiscal year preceding the fiscal year to which the budget would apply or there is a deficiency in the Medi–Cal budget during **a** fiscal year, **all** of the following shall occur:

(1) The Controller shall annually transfer from the General Fund, **upon order of the Department of Finance,** in the form of one or more loans, an amount not to exceed a cumulative total of **two** billion dollars **($2,000,000,000)** in **a** fiscal year, to the Medical Providers Interim Payment Fund, which is hereby created in the State Treasury. Notwithstanding Section 13340 * * *, the Medical Providers Interim Payment Fund is hereby continuously appropriated for the purpose of making payments to Medi–Cal providers, providers of services under Chapter 6 (commencing with Section 120950) of Part 4 of Division 105 of the Health and Safety Code, and providers of services under Division 4.5 (commencing with Section 4500) of the Welfare and Institutions Code, on or after July 1 of the fiscal year for which no budget has been enacted and before September 1 of that year or for the purpose of making payments to Medi–Cal providers, providers of services under Chapter 6 (commencing with Section 120950) of Part 4 of Division 105 of the Health and Safety Code, and providers of services under Division 4.5 (commencing with Section 4500) of the Welfare and Institutions Code, during the period in which the Medi–Cal program has a deficiency. Payments shall be made pursuant to this subdivision if both of the following conditions have been met:

(A) An invoice has been submitted for the services.

(B) Payment for the services is due and payable and the State Department of Health **Care** Services determines that payment would be valid.

(2) For any fiscal year to which this subdivision applies, there is hereby appropriated the sum of **two** billion dollars **($2,000,000,000)** from the Federal Trust Fund to the Medical Providers Interim Payment Fund.

* * *

**(3) The Department of Finance shall notify the Legislature within 10 days of authorizing a transfer. The 10–day notification to the Legislature shall include the amount of the transfer, the reasons for the transfer, and the fiscal assumptions used to calculate the transfer amount.**

* * * **(b) Notwithstanding any other law, including Section 14159 of the Welfare and Institutions Code, the** amount of **a** loan made pursuant to subdivision (a) and for which moneys were expended from the Medical Providers Interim Payment Fund shall be repaid **either in the same fiscal year in which it was made or in the subsequent fiscal year, as determined by the State Department of Health Care Services in consultation with the Department of Finance. The loan shall be repaid** by debiting the appropriate Budget Act item * * * **or by using the proceeds of a supplemental appropriations bill, as determined** by the **State** Department of **Health Care Services in consultation with the Department of** Finance.

**(c) Within 30 days of the enactment of the annual Budget Act or a supplemental appropriations bill in a fiscal year to which subdivision (a) applies, the State Department of Health Care Services, in consultation with the Department of Finance, shall inform the Controller of its determination pursuant to subdivision (b) and shall designate the fiscal year and item of the Budget Act to which any expenditures and unexpended funds in the Medical Providers Interim Payment Fund shall be transferred.**

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 11 of 59

SEC. 2. Section 100503.3 is added to the Government Code, to read:

<< CA GOVT § 100503.3 >>

100503.3. (a) The Exchange, in consultation with stakeholders and the Legislature, shall develop options for providing financial assistance to help low- and middle-income Californians access health care coverage. On or before February 1, 2019, the Exchange shall report those developed options to the Legislature, Governor, and Council on Health Care Delivery Systems, established pursuant to Section 1001 of the Health and Safety Code, for consideration in the 2019–20 budget process.

(b) In developing the options, the Exchange shall do both of the following:

(1) Include options to assist low-income individuals who are paying a significant percentage of their income on premiums, even with federal financial assistance, and individuals with an annual income of up to 600 percent of the federal poverty level.

(2) Consider maximizing all available federal funding and, in consultation with the State Department of Health Care Services, determine whether federal financial participation for the Medi–Cal program would otherwise be jeopardized. The report shall include options that do not require a federal waiver authorized under Section 1332 of the federal act, as defined in subdivision (e) of Section 100501, from the United States Department of Health and Human Services.

(c) The Exchange shall make the report publicly available on its Internet Web site.

SEC. 3. Part 4 (commencing with Section 1000) is added to Division 1 of the Health and Safety Code, to read:

d. 1 pt. 4 pr. § 1000

PART 4. COUNCIL ON HEALTH CARE DELIVERY SYSTEMS

<< CA HLTH & S § 1000 >>

1000. (a) The Legislature finds and declares all of the following:

(1) Health care is a human right and it is in the public interest that all Californians have access to health care that improves health outcomes, manages and lowers health care costs for the state and its residents, and reduces health disparities.

(2) With the implementation of the federal Patient Protection and Affordable Care Act (Public Law 111–148)[i] and other state efforts, California has reduced the uninsured share of its population to less than 10 percent.

(3) As of 2016, nearly three million Californians remained uninsured, 21 percent of Californians remained underinsured, and 11 percent of California adults went without health care because of cost.

(4) The United States spends more per capita than any other industrialized nation on health care, but has low rankings based on many metrics, including access to care, equity, efficiency, and healthy lives.

(5) California has a primary care physician shortage, and the geographic distribution of physicians across California is uneven.

(6) According to the federal Centers for Medicare and Medicaid Services, national health spending is projected to grow 5.5 percent annually, on average, through 2026, representing 19.7 percent of the economy in 2026.

(b) It is the intent of the Legislature to establish a health care delivery system that provides coverage and access through a unified financing system for all Californians.

(c) It is the intent of the Legislature to control health care costs so that California is able to achieve a sustainable health care system with more equitable access to quality health care.

(d) It is the intent of the Legislature that rising health care costs be mitigated and administrative costs be limited so that more money is spent on direct care to patients and less on profits and overhead.

(e) It is the intent of the Legislature that all Californians receive high-quality health care, with positive health care outcomes, regardless of age, income, race, ethnicity, immigration status, gender or gender nonconforming status, sexual orientation, geographic location, health status, or ability.

(f) It is the intent of the Legislature that all Californians have access to affordable health coverage, including health coverage with reasonable out-of-pocket costs relative to household income, or being eligible for appropriate cost-sharing assistance.

(g) It is the intent of the Legislature that California train and employ an adequate number of primary care physicians, specialty care physicians, mental and behavioral health professionals, and allied health care professionals to meet the health care needs of the state.

(h) It is the intent of the Legislature that the health care system ensure that all Californians have timely access to necessary health care, including access that addresses language and geographic barriers.

<< CA HLTH & S § 1001 >>

1001. (a) Effective January 1, 2019, there is hereby established the Council on Health Care Delivery Systems as an independent body to develop a plan that includes options for advancing progress toward achieving a health care delivery system in California that provides coverage and access through a unified financing system for all Californians.

(b) The council shall meet for the first time on or before July 1, 2019, and shall convene meetings at least quarterly at locations that are easily accessible to the public in accordance with the Bagley–Keene Open Meeting Act (Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of the Government Code).

(c)(1) The council shall be comprised of five members as follows:

(A) Three members who shall be appointed by the Governor.

(B) One member who shall be appointed by the Senate Committee on Rules.

(C) One member who shall be appointed by the Speaker of the Assembly.

(2) The appointees shall have appropriate knowledge and experience regarding health care coverage or financing, or other relevant expertise.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 13 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(3) The council shall elect a chairperson on an annual basis.

(4) The members of the council shall serve without compensation, but shall be reimbursed for necessary traveling and other expenses incurred in performing their duties and responsibilities.

(d) The council may establish advisory committees that include members of the public with knowledge and experience in health care that support stakeholder engagement and an analytical process by which key design options are developed. A member of an advisory committee need not be a member of the council.

(e) The council and each advisory committee shall keep official records of all of their proceedings.

<< CA HLTH & S § 1002 >>

1002. (a) On or before October 1, 2021, the council shall submit to the Legislature and Governor a plan with options that include a timeline of the benchmarks and steps necessary to implement health care delivery system changes, including steps necessary to achieve a unified financing system. The plan shall be submitted in compliance with Section 9795 of the Government Code. The plan shall also be posted on the California Health and Human Services Agency's Internet Web site. The plan shall, at a minimum, consider all of the following:

(1) Key design options, including covered benefits, eligibility, service delivery, provider payments, and quality improvement.

(2) Requirements potentially necessary for the state, in consultation with the State Department of Health Care Services, to seek federal waivers and federal statutory changes, by which funds currently managed by the federal government, but used on behalf of Californians, may be consolidated with other funding sources.

(3) A summary of relevant requirements under current law and potential state constitutional and statutory amendments that may be evaluated to improve the health care system.

(4) Options for financing and an analysis of the need for voter approval of any financing.

(5) Potential considerations for building or restructuring information technology systems and financial management systems necessary for health care system changes.

(6) Opportunities for controlling health care costs, including mitigating rising health care costs and limiting administrative costs so that more money is spent on direct care to patients and less on profits and overhead, in order to achieve a sustainable health care system with more equitable access to quality health care.

(b) The council shall provide an update detailing its progress in developing the plan required by subdivision (a) to the Governor and the health committees of the Senate and the Assembly on or before January 1, 2020, and shall update those committees every six months thereafter.

<< CA HLTH & S § 1003 >>

1003. This part shall not be construed to authorize the council to implement any provision of the plan developed pursuant to Section 1002 until there is further action by the Legislature and the Governor.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 14 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

<< CA HLTH & S § 1004 >>

1004. (a) The California Health and Human Services Agency is authorized to provide staff support to implement this part.

(b) For purposes of implementing this part, including, but not limited to, hiring staff and consultants, facilitating and conducting meetings, conducting research and analysis, and developing the required plan and updates, the California Health and Human Services Agency may enter into exclusive or nonexclusive contracts on a bid or negotiated basis. Contracts entered into or amended pursuant to this section shall be exempt from Chapter 6 (commencing with Section 14825) of Part 5.5 of Division 3 of Title 2 of the Government Code, Section 19130 of the Government Code, and Part 2 (commencing with Section 10100) of Division 2 of the Public Contract Code and shall be exempt from the review or approval of any division of the Department of General Services.

<< CA HLTH & S § 1005 >>

1005. This part shall remain in effect only until January 1, 2022, and as of that date is repealed.

SEC. 4. Section 1225 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 1225 >>

1225. (a) The department shall adopt, and may from time to time amend or repeal, in accordance with Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, such reasonable rules and regulations as may be necessary or proper to carry out the purposes and intent of this chapter and to enable the department to exercise the powers and perform the duties conferred upon it by this chapter, not inconsistent with any of the provisions of any statute of this state. The rules and regulations for primary care clinics shall be separate and distinct from the rules and regulations for specialty clinics.

(b) All regulations relating to licensed clinics in effect on December 31, 1977, which were adopted by the department, shall remain in full force and effect until altered, amended, or repealed by the director.

* * *

**(c) A chronic dialysis clinic, a surgical clinic, or a rehabilitation clinic licensed or seeking licensure shall comply with the following federal certification standards in effect immediately preceding January 1, 2018:**

**(1) A chronic dialysis clinic shall comply with federal certification standards for an end-stage renal disease clinic, as specified in Sections 494.1 to 494.180, inclusive, of Title 42 of the Code of Federal Regulations.**

**(2) A surgical clinic, as defined in subdivision (b) of Section 1204, shall comply with federal certification standards for an ambulatory surgical clinic, as specified in Sections 416.1 to 416.54, inclusive, of Title 42 of the Code of Federal Regulations.**

**(3) A rehabilitation clinic shall comply with federal certification standards for a comprehensive outpatient rehabilitation facility, as specified in Sections 485.50 to 485.74, inclusive, of Title 42 of the Code of Federal Regulations.**

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 15 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

SEC. 5. Section 1266 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 1266 >>

1266. (a) The Licensing and Certification Division shall be supported entirely by federal funds and special funds by no earlier than the beginning of the 2009–10 fiscal year unless otherwise specified in statute, or unless funds are specifically appropriated from the General Fund in the annual Budget Act or other enacted legislation. For the 2007–08 fiscal year, General Fund support shall be provided to offset licensing and certification fees in an amount of not less than two million seven hundred eighty-two thousand dollars ($2,782,000).

(b)(1) The Licensing and Certification Program fees for the 2006–07 fiscal year shall be as follows:

| Type of Facility | Fee | |
|---|---|---|
| General Acute Care Hospitals | $ 134.10 | per bed |
| Acute Psychiatric Hospitals | $ 134.10 | per bed |
| Special Hospitals | $ 134.10 | per bed |
| Chemical Dependency Recovery Hospitals | $ 123.52 | per bed |
| Skilled Nursing Facilities | $ 202.96 | per bed |
| Intermediate Care Facilities | $ 202.96 | per bed |
| Intermediate Care Facilities- Developmentally Disabled | $ 592.29 | per bed |
| Intermediate Care Facilities- Developmentally Disabled–Habilitative | $1,000.00 | per facility |
| Intermediate Care Facilities- Developmentally Disabled–Nursing | $1,000.00 | per facility |
| Home Health Agencies | $2,700.00 | per facility |
| Referral Agencies | $5,537.71 | per facility |
| Adult Day Health Centers | $4,650.02 | per facility |
| Congregate Living Health Facilities | $ 202.96 | per bed |
| Psychology Clinics | $ 600.00 | per facility |
| Primary Clinics- Community and Free | $ 600.00 | per facility |
| Specialty Clinics- Rehab Clinics | | |
| (For profit) | $2,974.43 | per facility |
| (Nonprofit) | $ 500.00 | per facility |
| Specialty Clinics- Surgical and Chronic | $1,500.00 | per facility |

| | | |
|---|---|---|
| Dialysis Clinics | $1,500.00 | per facility |
| Pediatric Day Health/Respite Care | $ 142.43 | per bed |
| Alternative Birthing Centers | $2,437.86 | per facility |
| Hospice | $1,000.00 | per provider |
| Correctional Treatment Centers | $ 590.39 | per bed |

(2)(A) In the first year of licensure for intermediate care facility/developmentally disabled-continuous nursing (ICF/DD–CN) facilities, the licensure fee for those facilities shall be equivalent to the licensure fee for intermediate care facility/developmentally disabled-nursing facilities during the same year. Thereafter, the licensure fee for ICF/DD–CN facilities shall be established pursuant to the same procedures described in this section.

(B) In the first year of licensure for hospice facilities, the licensure fee shall be equivalent to the licensure fee for congregate living health facilities during the same year. Thereafter, the licensure fee for hospice facilities shall be established pursuant to the same procedures described in this section.

(c) Commencing in the 2015–16 fiscal year, the fees for skilled nursing facilities shall be increased so as to generate four hundred thousand dollars ($400,000) for the California Department of Aging's Long–Term Care Ombudsman Program for its work related to investigating complaints made against skilled nursing facilities and increasing visits to those facilities.

(d) Commencing February 1, 2007, and every February 1 thereafter, the department shall publish a list of estimated fees pursuant to this section. The calculation of estimated fees and the publication of the report and list of estimated fees shall not be subject to the rulemaking requirements of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code.

(e) Notwithstanding Section 10231.5 of the Government Code, by February 1 of each year, the department shall prepare the following reports and shall make those reports, and the list of estimated fees required to be published pursuant to subdivision (d), available to the public by submitting them to the Legislature and posting them on the department's Internet Web site:

(1) A report of all costs for activities of the Licensing and Certification Program. At a minimum, this report shall include a narrative of all baseline adjustments and their calculations, a description of how each category of facility was calculated, descriptions of assumptions used in any calculations, and shall recommend Licensing and Certification Program fees in accordance with the following:

(A) Projected workload and costs shall be grouped for each fee category, including workload costs for facility categories that have been established by statute and for which licensing regulations and procedures are under development.

(B) Cost estimates, and the estimated fees, shall be based on the appropriation amounts in the Governor's proposed budget for the next fiscal year, with and without policy adjustments to the fee methodology.

(C) The allocation of program, operational, and administrative overhead, and indirect costs to fee categories shall be based on generally accepted cost allocation methods. Significant items of costs shall be directly charged to fee categories if the expenses can be reasonably identified to the fee category that caused them. Indirect and overhead costs shall be allocated to all fee categories using a generally accepted cost allocation method.

(D) The amount of federal funds and General Fund moneys to be received in the budget year shall be estimated and allocated to each fee category based upon an appropriate metric.

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 17 of 59

(E) The fee for each category shall be determined by dividing the aggregate state share of all costs for the Licensing and Certification Program by the appropriate metric for the category of licensure. Amounts actually received for new licensure applications, including change of ownership applications, and late payment penalties, pursuant to Section 1266.5, during each fiscal year shall be calculated and 95 percent shall be applied to the appropriate fee categories in determining Licensing and Certification Program fees for the second fiscal year following receipt of those funds. The remaining 5 percent shall be retained in the fund as a reserve until appropriated.

(2)(A) A staffing and systems analysis to ensure efficient and effective utilization of fees collected, proper allocation of departmental resources to licensing and certification activities, survey schedules, complaint investigations, enforcement and appeal activities, data collection and dissemination, surveyor training, and policy development.

(B) The analysis under this paragraph shall be made available to interested persons and shall include all of the following:

(i) The number of surveyors and administrative support personnel devoted to the licensing and certification of health care facilities.

(ii) The percentage of time devoted to licensing and certification activities for the various types of health facilities.

(iii) The number of facilities receiving full surveys and the frequency and number of followup visits.

(iv) The number and timeliness of complaint investigations, including data on the department's compliance with the requirements of paragraphs (3), (4), and (5) of subdivision (a) of Section 1420.

(v) Data on deficiencies and citations issued, and numbers of citation review conferences and arbitration hearings.

(vi) Other applicable activities of the licensing and certification division.

(3) The annual program fee report described in subdivision (d) of Section 1416.36.

(f) The reports required pursuant to subdivision (e) shall be submitted in compliance with Section 9795 of the Government Code.

**(g) Commencing in the 2018–19 fiscal year, the department may assess a supplemental license fee on facilities located in the County of Los Angeles for all facility types set forth in this section. This supplemental license fee shall be in addition to the license fees set forth in subdivision (d). The department shall calculate the supplemental license fee based upon the difference between the estimated costs of regulating facility types licensed in the County of Los Angeles, including, but not limited to, the costs associated with the department's contract for licensing and certification activities with the County of Los Angeles and the costs of the department conducting the licensing and certification activities for facilities located in the County of Los Angeles. The supplemental license fees shall be used to cover the costs to administer and enforce state licensure standards and other federal compliance activities for facilities located in the County of Los Angeles, as described in the annual report. The supplemental license fee shall be based upon the fee methodology published in the annual report described in subdivision (d).**

**(h)**(1) The department shall adjust the list of estimated fees published pursuant to subdivision (d) if the annual Budget Act or other enacted legislation includes an appropriation that differs from those proposed in the Governor's proposed budget for that fiscal year.

(2) The department shall publish a final fee list, with an explanation of any adjustment, by the issuance of an all facilities letter, by posting the list on the department's Internet Web site, and by including the final fee list as part of the licensing application package, within 14 days of the enactment of the annual Budget Act. The adjustment of fees and the publication of the final fee list shall not be subject to the rulemaking requirements of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code.

**(i)**(1) Fees shall not be assessed or collected pursuant to this section from any state department, authority, bureau, commission, or officer, unless federal financial participation would become available by doing so and an appropriation is included in the annual Budget Act for that state department, authority, bureau, commission, or officer for this purpose. Fees shall not be assessed or collected pursuant to this section from any clinic that is certified only by the federal government and is exempt from licensure under Section 1206, unless federal financial participation would become available by doing so.

(2) For the 2006–07 state fiscal year, a fee shall not be assessed or collected pursuant to this section from any general acute care hospital owned by a health care district with 100 beds or less.

**(j)** The Licensing and Certification Program may change annual license expiration renewal dates to provide for efficiencies in operational processes or to provide for sufficient cashflow to pay for expenditures. If an annual license expiration date is changed, the renewal fee shall be prorated accordingly. Facilities shall be provided with a 60–day notice of any change in their annual license renewal date.

**(k)** Commencing with the 2018–19 November Program estimate, the Licensing and Certification Program shall evaluate the feasibility of reducing investigation timelines based on experience with implementing paragraphs (3), (4), and (5) of subdivision (a) of Section 1420.

SEC. 6. Section 1275.3 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 1275.3 >>

1275.3. (a) The State Department of Public Health and the State Department of Developmental Services shall jointly develop and implement licensing regulations appropriate for an intermediate care facility/developmentally disabled-nursing and an intermediate care facility/developmentally disabled-continuous nursing.

(b) The regulations adopted pursuant to subdivision (a) shall ensure that residents of an intermediate care facility/developmentally disabled-nursing and an intermediate care facility/developmentally disabled-continuous nursing receive appropriate medical and nursing services, and developmental program services in a normalized, least restrictive physical and programmatic environment appropriate to individual resident need.

In addition, the regulations shall do all of the following:

(1) Include provisions for the completion of a clinical and developmental assessment of placement needs, including medical and other needs, and the degree to which they are being met, of clients placed in an intermediate care facility/developmentally disabled-nursing and an intermediate care facility/developmentally disabled-continuous nursing and for the monitoring of these needs at regular intervals.

(2) Provide for maximum utilization of generic community resources by clients residing in a facility.

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST     Document 105-43     Filed 09/22/25     Page 19 of 59

(3) Require the State Department of Developmental Services to review and approve an applicant's **facility** program plan as **\* \* \*a prerequisite to** the licensing and certification process.

(4) Require that the physician providing the certification that placement in the intermediate care facility/developmentally disabled-nursing or intermediate care facility/developmentally disabled-continuous nursing is needed, consult with the physician who is the physician of record at the time the person's proposed placement is being considered by the interdisciplinary team.

(c) Regulations developed pursuant to this section shall include licensing fee schedules appropriate to facilities which will encourage their development.

**(d) Until the departments adopt regulations pursuant to this section relating to services by an intermediate care facility/developmentally disabled-nursing, the licensed intermediate care facility/developmentally disabled-nursing shall comply with federal certification standards for intermediate care facilities for individuals with intellectual disabilities, as specified in Sections 483.400 to 483.480, inclusive, of Title 42 of the Code of Federal Regulations, in effect immediately preceding January 1, 2018.**

**(e)** This section shall not supersede the authority of the State Fire Marshal pursuant to Sections 13113, 13113.5, 13143, and 13143.6 to the extent that these sections are applicable to community care facilities.

**\* \* \***

SEC. 7. Section 11364.7 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 11364.7 >>

11364.7. (a)**(1)** Except as authorized by law, any person who delivers, furnishes, or transfers, possesses with intent to deliver, furnish, or transfer, or manufactures with the intent to deliver, furnish, or transfer, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance, except as provided in subdivision (b), in violation of this division, is guilty of a misdemeanor.

**\* \* \*(2) A** public entity, its agents, or employees shall **not** be subject to criminal prosecution for distribution of hypodermic needles or syringes **or any materials deemed by a local or state health department to be necessary to prevent the spread of communicable diseases, or to prevent drug overdose, injury, or disability** to participants in clean needle and syringe exchange projects authorized by the public entity pursuant to Chapter 18 (commencing with Section 121349) of Part 4 of Division 105.

(b) Except as authorized by law, any person who manufactures with intent to deliver, furnish, or transfer drug paraphernalia knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body cocaine, cocaine base, heroin, phencyclidine, or methamphetamine in violation of this division shall be punished by imprisonment in a county jail for not more than one year, or in the state prison.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 20 of 59

HEALTH AND SANITATION—MEDI–CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(c) Except as authorized by law, any person, 18 years of age or over, who violates subdivision (a) by delivering, furnishing, or transferring drug paraphernalia to a person under 18 years of age who is at least three years his or her junior, or who, upon the grounds of a public or private elementary, vocational, junior high, or high school, possesses a hypodermic needle, as defined in paragraph (7) of subdivision (a) of Section 11014.5, with the intent to deliver, furnish, or transfer the hypodermic needle, knowing, or under circumstances where one reasonably should know, that it will be used by a person under 18 years of age to inject into the human body a controlled substance, is guilty of a misdemeanor and shall be punished by imprisonment in a county jail for not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine.

(d) The violation, or the causing or the permitting of a violation, of subdivision (a), (b), or (c) by a holder of a business or liquor license issued by a city, county, or city and county, or by the State of California, and in the course of the licensee's business shall be grounds for the revocation of that license.

(e) All drug paraphernalia defined in Section 11014.5 is subject to forfeiture and may be seized by any peace officer pursuant to Section 11471 **unless its distribution has been authorized pursuant to subdivision (a)**.

(f) If any provision of this section or the application thereof to any person or circumstance is held invalid, it is the intent of the Legislature that the invalidity shall not affect other provisions or applications of this section which can be given effect without the invalid provision or application and to this end the provisions of this section are severable.

SEC. 8. Section 104161 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 104161 >>

104161. For the purposes of this article, the following definitions shall apply:

(a) "Covered conditions" means breast or cervical cancer.

(b) "Breast cancer" includes primary, recurrent, and metastatic cancers of the breast, including, but not limited to, infiltrating or in situ.

(c) "Cervical cancer" includes all primary, recurrent, and metastatic cancers of the cervix, including, but not limited to, infiltrating or in situ, as well as cervical dysplasia.

**\* \* \***

**(d)** "Treatment services" means those health care services, goods, supplies, or merchandise medically necessary to treat the covered condition or conditions with which the individual made eligible under this article has been diagnosed.

**(e)** "Uninsured" means not covered for breast or cervical cancer treatment services by any of the following:

(1) **\* \* \* No–cost full-scope** Medi–Cal.

(2) Medicare.

(3) A health care service plan contract or policy of disability insurance.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 21 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(4) Any other form of health care coverage.

**(f)** "Underinsured" means either of the following:

(1) Covered for breast or cervical cancer treatment services by any health care insurance listed in paragraph (2), (3), or (4) of subdivision **(e)**, but the sum of the individual's insurance deductible, premiums, and expected copayments in the initial 12–month period that breast or cervical cancer treatment services are needed exceeds seven hundred fifty dollars ($750).

(2) Covered by share-of-cost or **limited-scope** Medi–Cal, if the individual is not otherwise eligible for treatment services under the Medi–Cal program pursuant to Section 14007.71 of the Welfare and Institutions Code.


SEC. 9. Section 104161.1 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 104161.1 >>

104161.1. (a) **If** an individual is made eligible for treatment services under this article due to a diagnosis of breast cancer, **the treatment services shall be provided for the duration of** the period of \* \* \* treatment, **as long as the individual continues to meet all other eligibility requirements**.

(b) **If** an individual is made eligible for treatment services under this article due to a diagnosis of cervical cancer, **the treatment services shall be provided for the duration of** the period of \* \* \* treatment, **as long as the individual continues to meet all other eligibility requirements**.

(c) If an individual is diagnosed with a reoccurrence of breast cancer or cervical cancer, whether at the original cancer site or a different cancer site, \* \* \* the individual shall be eligible for \* \* \* **coverage for the duration of the** period of treatment \* \* \*, as \* \* \* **long as the individual continues to meet all other eligibility requirements**.


SEC. 10. Section 104162.1 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 104162.1 >>

104162.1. **If** an individual is underinsured, as defined in subdivision **(f)** of Section 104161, the State Department of Health Care Services shall be the payer of second resort for treatment services. To the extent necessary for the individual to obtain treatment services under any health care insurance listed in paragraph (2), (3), or (4) of subdivision **(e)** of Section 104161, the State Department of Health Care Services may do the following:

(a) Pay for the individual's breast or cervical cancer copayments, premiums, and deductible.

(b) Provide only treatment services not otherwise covered by any health care insurance listed in paragraph (2), (3), or (4) of subdivision **(e)** of Section 104161.


SEC. 11. Section 105250.1 is added to the Health and Safety Code, to read:

<< CA HLTH & S § 105250.1 >>

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 22 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

105250.1. (a) Notwithstanding Section 105250, and beginning on July 1, 2018, the Lead–Related Construction Program fee for an application submitted for lead certification shall be eighty-seven dollars ($87), but shall not exceed the department's reasonable administrative costs in connection with the application. The application fees provided in this section, and any application fee increase pursuant to subdivision (b) or Section 105250, shall be sufficient to ensure that processing times for completed applications do not exceed an average of 60 days.

(b) Notwithstanding subdivision (a) and Section 105250, in any year the department raises or establishes new or additional fees, the department shall, by February 1 of the year the increase or establishment takes effect, prepare a report that describes the need for a fee increase or establishment of a fee, and shall make the report and the list of fees available to the budget committees of the Legislature, and shall post the report and list of fees on the department's Internet Web site. The proposed increased fee shall take effect on July 1 of the year for which it is proposed.

SEC. 12. Section 120972 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 120972 >>

120972. (a) To the extent that funds are available for these purposes, the director may establish and administer a program within the department's Office of AIDS to subsidize certain costs of medications for the prevention of HIV infection and other related medical services, as authorized by this section, to persons who meet all of the following requirements:

(1) Are residents of California who are at least 18 years of age**, or who may consent to medical care related to the prevention of a sexually transmitted disease consistent with Section 6926 of the Family Code**.

(2) Are HIV negative.

(3) Meet the financial eligibility requirements identified in Section 120960. **Unemancipated minors between 12 and 17 years of age shall be considered a family size of one for purposes of determining financial eligibility for this program.**

(4) Have been prescribed medication listed on the AIDS Drug Assistance Program (ADAP) formulary as provided in paragraph (2) of subdivision (a) of Section 120955.

(b) To the extent allowable under federal law, and upon available funds, the director may expend funding for this program from the AIDS Drug Assistance Program Rebate Fund as implemented pursuant to Section 120956.

(c) To the extent that funding is made available for this purpose, the program may subsidize all of the following costs of medication for the prevention of HIV infection and related medical services for eligible individuals:

**(1) For uninsured individuals, the costs for both of the following:**

\* \* \***(A)** HIV pre-exposure prophylaxis (PrEP)–related **and post-exposure prophylaxis (PEP)–related** medical services for \* \* \*individuals who are enrolled, **if eligible,** in a drug manufacturer's \* \* \*medication assistance program.

**(B) Medication for the prevention of HIV infection for individuals who are ineligible for a drug manufacturer's medication assistance program.**

(2) For insured individuals, \* \* \***the costs for all** of the following:

(A) * * * Medication copays, coinsurance, and deductibles for the prevention of HIV infection after the individual's insurance is applied and, if eligible, after the drug manufacturer's medication assistance program's contributions are applied. Use of the drug manufacturer's medication assistance program is not required if it is not accepted by the health plan or pharmacy contracted with the health plan.

(B) Medical copays, coinsurance, and deductibles for PrEP-related and PEP-related medical services.

(C) Subsidizing premiums to purchase or maintain health insurance coverage for individuals using PrEP if the director makes a determination that it is feasible and would result in cost savings to the state.

(d) For the purposes of this program, an insured individual on a parent's or partner's health plan shall be considered uninsured if he or she is unable to use his or her health insurance coverage for confidentiality or safety reasons.

(e) Notwithstanding the eligibility requirements in subdivision (a), the program may subsidize all of the following costs of medication for the prevention of HIV infection:

(1) Up to 14 days of PrEP and PEP medications.

(2) Up to 28 days of PEP medications for a victim of sexual assault.

(f) If the director makes a formal determination that, in any fiscal year, funds appropriated for the program will be insufficient to provide medications for the prevention of HIV infection or related medical costs to existing eligible persons for the fiscal year and that a suspension of the implementation of the program is necessary, the director may suspend either of the following:

(1) The program.

(2) The eligibility determinations and enrollment in the program for the period of time necessary to meet the needs of existing eligible persons in the program.

(g) Reimbursement under the program shall not be made for any drugs or related services that are available to the recipient under any other private, state, or federal programs, or under any other contractual or legal entitlements, except * * * as specified in this section. The director may authorize an exemption from this subdivision if it would result in cost savings to the state.

(h) If the department utilizes a contractor or subcontractor to administer any aspect of the program, the provisions of Section 120970, except subdivision (i) of that section, shall apply.

(i) All types of information, whether written or oral, concerning a client, made or maintained in connection with the administration of this program, shall be confidential, and shall not be used or disclosed except for any of the following:

(1) For purposes directly connected with the administration of the program.

(2) If disclosure is otherwise authorized by law.

(3) Pursuant to a written authorization by the person who is the subject of the record or, if the person is 18 years of age or older, by his or her guardian or conservator.

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 24 of 59

**(j)** For purposes of verifying financial eligibility for the program, the department shall verify the accuracy of the modified adjusted gross income reported by an applicant or recipient of the program, with data, if available, from the Franchise Tax Board. The Franchise Tax Board and the department are authorized to disclose personally identifiable data to one another, solely for this purpose, and in accordance with the data exchange process identified in Section 120962.

**(k) Regulations adopted pursuant to subdivision (c), (d), or (e), are exempt from rulemaking provisions of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).**

SEC. 13. Section 121349 of the Health and Safety Code, as amended by Section 1 of Chapter 744 of the Statutes of 2011, is amended to read:

<< CA HLTH & S § 121349 >>

121349. (a) The Legislature finds and declares that scientific data from needle exchange programs in the United States and in Europe have shown that the exchange of used hypodermic needles and syringes for clean hypodermic needles and syringes does not increase drug use in the population, can serve as an important bridge to treatment and recovery from drug abuse, and can curtail the spread of human immunodeficiency virus (HIV) infection among the intravenous drug user population.

(b) In order to reduce the spread of HIV infection and bloodborne hepatitis among the intravenous drug user population within California, the Legislature hereby authorizes a clean needle and syringe exchange project pursuant to this chapter in any city, county, or city and county upon the action of a county board of supervisors and the local health officer or health commission of that county, or upon the action of the city council, the mayor, and the local health officer of a city with a health department, or upon the action of the city council and the mayor of a city without a health department.

(c) In order to reduce the spread of HIV infection, viral hepatitis, and other potentially deadly bloodborne infections, the State Department of Public Health may, notwithstanding any other law, authorize entities that provide services set forth in paragraph (1) of subdivision (d), and that have sufficient staff and capacity to provide the services described in Section 121349.1, as determined by the department, to apply for authorization under this chapter to provide hypodermic needle and syringe exchange services consistent with state standards in any location where the department determines that the conditions exist for the rapid spread of HIV, viral hepatitis, or any other potentially deadly or disabling infections that are spread through the sharing of used hypodermic needles and syringes. Authorization shall be made after consultation with the local health officer and local law enforcement leadership, and after a period of public comment, as described in subdivision (e). In making the determination, the department shall balance the concerns of law enforcement with the public health benefits. The authorization shall not be for more than two years. Before the end of the two-year period, the department may reauthorize the program in consultation with the local health officer and local law enforcement leadership.

(d) In order for an entity to be authorized to conduct a project pursuant to this chapter, its application to the department shall demonstrate that the entity complies with all of the following minimum standards:

(1) The entity provides, directly or through referral, all of the following services:

(A) Drug abuse treatment services.

(B) HIV or hepatitis screening.

(C) Hepatitis A and hepatitis B vaccination.

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 25 of 59

(D) Screening for sexually transmitted infections.

(E) Housing services for the homeless, for victims of domestic violence, or other similar housing services.

(F) Services related to provision of education and materials for the reduction of sexual risk behaviors, including, but not limited to, the distribution of condoms.

(2) The entity has the capacity to commence needle and syringe exchange services within three months of authorization.

(3) The entity has adequate funding to do all of the following at reasonably projected program participation levels:

(A) Provide needles and syringe exchange services for all of its participants.

(B) Provide HIV and viral hepatitis prevention education services for all of its participants.

(C) Provide for the safe recovery and disposal of used syringes and sharps waste from all of its participants.

(4) The entity has the capacity, and an established plan, to collect evaluative data in order to assess program impact, including, but not limited to, all of the following:

(A) The total number of persons served.

(B) The total number of syringes and needles distributed, recovered, and disposed of.

(C) The total numbers and types of referrals to drug treatment and other services.

(e) If the application is provisionally deemed appropriate by the department, the department shall, at least 45 days prior to approval of the application, provide for a period of public comment as follows:

(1) Post on the department's Internet Web site the name of the applicant, the nature of the services, and the location where the applying entity will provide the services.

(2) Send a written and an e-mail notice to the local health officer of the affected jurisdiction.

(3) Send a written and an e-mail notice to the chief of police, the sheriff, or both, as appropriate, of the jurisdictions in which the program will operate.

(f) The department shall establish and maintain on its Internet Web site the address and contact information of programs providing hypodermic needle and syringe exchange services pursuant to this chapter.

(g) The authorization provided under this section shall only be for a clean needle and syringe exchange project as described in Section 121349.1.

* * *

**(h) If the department, in its discretion, determines that a state authorized syringe exchange program continues to meet all standards set forth in subdivision (d) and that a public health need exists, it may administratively approve amendments to a program's operations including, but not limited to, modifications to the time, location, and type of**

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 26 of 59

**services provided, including the designation as a fixed site or a mobile site. The amendment approval shall not be subject to the noticing requirements of subdivision (e).**

**(i) The department shall have 30 business days to review and respond to the applicant's request for amendment of the authorization. If the department does not respond in writing within 30 business days the request shall be deemed denied.**

<< Repealed: CA HLTH & S § 121349 >>

SEC. 14. Section 121349 of the Health and Safety Code, as added by Section 1.5 of Chapter 744 of the Statutes of 2011, is repealed.

SEC. 15. Section 121349.1 of the Health and Safety Code, as amended by Section 2 of Chapter 744 of the Statutes of 2011, is amended to read:

<< CA HLTH & S § 121349.1 >>

121349.1. * * * The State Department of Public Health or a city, county, or a city and county with or without a health department, that acts to authorize a clean needle and syringe exchange project pursuant to this chapter shall, in consultation with the State Department of Public Health, authorize the exchange of clean hypodermic needles and syringes, as recommended by the United States Secretary of Health and Human Services, subject to the availability of funding, as part of a network of comprehensive services, including treatment services, to combat the spread of HIV and bloodborne hepatitis infection among injection drug users. Staff and volunteers participating in an exchange project authorized by the state, county, city, or city and county pursuant to this chapter shall not be subject to criminal prosecution for violation of any law related to the possession, furnishing, or transfer of hypodermic needles or syringes **or any materials deemed by a local or state health department to be necessary to prevent the spread of communicable diseases, or to prevent drug overdose, injury, or disability** during participation in an exchange project. Program participants shall not be subject to criminal prosecution for possession of needles or syringes **or any materials deemed by a local or state health department to be necessary to prevent the spread of communicable diseases, or to prevent drug overdose, injury, or disability** acquired from an authorized needle and syringe exchange project entity.

* * *

<< Repealed: CA HLTH & S § 121349.1 >>

SEC. 16. Section 121349.1 of the Health and Safety Code, as added by Section 2.5 of Chapter 744 of the Statutes of 2011, is repealed.

SEC. 17. Section 121349.2 of the Health and Safety Code, as amended by Section 3 of Chapter 744 of the Statutes of 2011, is amended to read:

<< CA HLTH & S § 121349.2 >>

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 27 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

121349.2. * * * Local government, local health officials, and law enforcement shall be given the opportunity to comment on clean needle and syringe exchange programs on a biennial basis. The public shall be given the opportunity to provide input to local leaders to ensure that any potential adverse impacts on the public welfare of clean needle and syringe exchange programs are addressed and mitigated.

* * *

<< Repealed: CA HLTH & S § 121349.2 >>

SEC. 18. Section 121349.2 of the Health and Safety Code, as added by Section 3.5 of Chapter 744 of the Statutes of 2011, is repealed.

SEC. 19. Section 121349.3 of the Health and Safety Code, as amended by Section 4 of Chapter 744 of the Statutes of 2011, is amended to read:

<< CA HLTH & S § 121349.3 >>

121349.3. * * * The health officer of the participating jurisdiction shall present biennially at an open meeting of the board of supervisors or city council a report detailing the status of clean needle and syringe exchange programs, including, but not limited to, relevant statistics on bloodborne infections associated with needle sharing activity and the use of public funds for these programs. Law enforcement, administrators of alcohol and drug treatment programs, other stakeholders, and the public shall be afforded ample opportunity to comment at this biennial meeting. The notice to the public shall be sufficient to ensure adequate participation in the meeting by the public. This meeting shall be noticed in accordance with all state and local open meeting laws and ordinances, and as local officials deem appropriate. For hypodermic needle and syringe exchange services authorized by the State Department of Public Health, a biennial report shall be provided by the department to the local health officer based on the reports to the department from service providers within the jurisdiction of that local health officer.

* * *

<< Repealed: CA HLTH & S § 121349.3 >>

SEC. 20. Section 121349.3 of the Health and Safety Code, as added by Section 5 of Chapter 744 of the Statutes of 2011, is repealed.

SEC. 21. Section 123259 is added to the Health and Safety Code, to read:

<< CA HLTH & S § 123259 >>

123259. (a) The Legislature finds and declares that there continues to be a statewide gap between mortality rates for black infants and those for other population groups. While there have been modest but statistically significant declines in infant mortality generally, including a decline in black infant mortality, the rate of mortality among black infants continues to be two to four times higher than the rates for other groups statewide. Furthermore, preterm birth, which is the leading cause for

infant death, has increased for the third straight year in California. The social support, stress management, and empowerment model of the Black Infant Health Program is an evidence-informed intervention program designed to reduce black infant mortality. Other interventions that show promise but do not currently receive state support would enhance the impact of current funding for black infant health.

(b) It is the intent of the Legislature to promote the establishment of Community Centers of Excellence in perinatal health based on public health science concerning the causes of persistent inequality and current best practices to narrow the gap. It is the further intent of the Legislature to direct funding to county health departments to ensure the leadership and coordination required for widespread and lasting change in public awareness and in public health and clinical practice.


SEC. 22. Section 123260 is added to the Health and Safety Code, to read:

<< CA HLTH & S § 123260 >>

123260. (a) Subject to an appropriation in the annual Budget Act for this purpose, the State Department of Public Health shall establish the California Perinatal Equity Initiative to expand the scope of interventions provided under the Black Infant Health Program. The initiative shall foster Community Centers of Excellence in perinatal health and promote the use of interventions designed to fill gaps in current programming offered through the Black Infant Health Program.

(b)(1) As part of the initiative described in subdivision (a), the department shall develop a process to allocate funds to up to 15 county health departments, to work collaboratively with state and local Black Infant Health programs, for the purpose of improving black infant birth outcomes and reducing infant mortality.

(2) Participation in the initiative described in subdivision (a) is optional and counties that participate in the program shall agree to the terms of this article.

(3) Allocations made pursuant to paragraph (1) shall be used by county health departments for any of the following purposes:

(A) Creating a local grant program to develop local Community Centers of Excellence in perinatal health. Recipients of local grants shall be hospitals, federally qualified health centers, health centers that are closely related to federally qualified health centers, women's health clinics, county clinics, clinics operated by a private, nonprofit organization that qualifies under Section 501(c)(3) of the United States Internal Revenue Code,[2] or community-based organizations that have demonstrated capacity to work with public health and health care systems as well as within the black community. Recipients of local grants shall implement or expand at least two of the following:

(i) An evidence-based or evidence-informed group prenatal care program that has shown promise in reducing the incidence of adverse birth outcomes and that includes, but is not limited to, improvement in health provider pre-term birth screening and ongoing, risk-appropriate care for black women to better identify and prevent preterm births.

(ii) Pregnancy intentionality, preconception, and interconception care programs.

(iii) Fatherhood or partnership initiatives that support engagement of partners in pregnancy and childbearing.

(iv) Evidence–based or evidence-informed home visitation programs inclusive of case management to increase advocacy and empowerment for black women and to ensure linkages to prenatal care, monitoring, life planning, birth spacing, infant development, and well-being.

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 29 of 59

(v) A strategy that is not described in clauses (i) to (iv), inclusive, that is justified based on local needs and resources, if a county determines that the strategy combines social interventions with medical interventions, including integration of mental health services in perinatal health care and other wrap-around services, including, but not limited to, assessment, personalized case management, doulas, patient navigator services that increase patient empowerment, and access to and utilization of evidence-based interventions that reduce preterm birth and infant mortality, and that the strategy is evidence-based or evidence-informed in relation to reducing adverse birth outcomes.

(B) Providing technical assistance to recipients of local grants, and coordinating with local partners, such as hospitals, federally qualified health centers, health centers that are closely related to federally qualified health centers, county clinics, and other community-based organizations.

(C) Carrying out local public awareness efforts around birth outcome inequities and the importance of preconception health, group prenatal care, evidence-based interventions to prevent preterm births, and social support during pregnancy, and to promote the role of fathers and partners as supports for women during and after pregnancy.

(D) Participating in collaborative statewide learning efforts and sharing best practices.

(E) Collecting and reporting data and information on process and outcome measures regarding the programs and activities carried out with allocated funds.

(c) The department shall, as part of implementing the initiative, consult with stakeholders, including, but not limited to, representatives of county health departments, current or former participants in the strategies described in subparagraph (A) of paragraph (3) of subdivision (b), health providers, or organizations representing health providers that provide services to improve black infant health outcomes, advocates, and any appropriate state department or agency.

(d) Funds provided to an eligible entity pursuant to this section shall supplement, and not supplant, funds from other sources for infant health equity programs or initiatives.

SEC. 23. Chapter 8.5 (commencing with Section 127671) is added to Part 2 of Division 107 of the Health and Safety Code, to read:

d. 107 pt. 2 ch. 8.5 pr. § 127671

Chapter 8.5. Health Care Cost Transparency Database

<< CA HLTH & S § 127671 >>

127671. (a) It is the intent of the Legislature in enacting this chapter to establish a system to collect information regarding the cost of health care. Health care data is reported and collected through many disparate systems. Creating a process to aggregate this data will provide greater transparency regarding health care costs, and the information may be used to inform policy decisions regarding the provision of quality health care, reduce disparities, and reduce health care costs.

(b) It is the intent of the Legislature to improve data transparency to achieve a sustainable health care system with more equitable access to affordable and quality health care for all.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 30 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(c) It is the intent of the Legislature in enacting this chapter to encourage health care service plans, health insurers, and providers to use such data to develop innovative approaches, services, and programs that may have the potential to deliver health care that is both cost effective and responsive to the needs of enrollees, including recognizing the diversity of California and the impact of social determinants of health.

(d) It is the intent of the Legislature that the development of a Health Care Cost Transparency Database be substantially completed no later than July 1, 2023, pursuant to this chapter.

<< CA HLTH & S § 127671.5 >>

127671.5. The provisions of this chapter shall only be implemented subject to budget appropriation.

<< CA HLTH & S § 127672 >>

127672. (a)(1) The Office of Statewide Health Planning and Development shall convene a review committee, composed of health care stakeholders and experts, including, but not limited to, all of the following:

(A) Health care service plans, including specialized health care service plans.

(B) Insurers that have a certificate of authority from the Insurance Commissioner to provide health insurance, as defined in Section 106 of the Insurance Code.

(C) Suppliers, as defined in paragraph (3) of subdivision (b) of Section 1367.50.

(D) Providers, as defined in paragraph (2) of subdivision (b) of Section 1367.50.

(E) Self–insured employers.

(F) Multiemployer self-insured plans that are responsible for paying for health care services provided to beneficiaries or the trust administrator for a multiemployer self-insured plan.

(G) Businesses that purchase health care coverage for their employees.

(H) Organized labor.

(I) Organizations representing consumers.

(2) The review committee shall consist of no fewer than nine and no more than 11 persons.

(3) The review committee shall advise the office on the establishment, implementation, and ongoing administration of the database, including a business plan for sustainability without using moneys from the General Fund.

(4) The review committee shall not have decisionmaking authority related to the administration of the database and shall not have a financial interest, individually or through a family member, in the recommendations made to the office. The review committee shall hold public meetings with stakeholders, solicit input, and set its own meeting agendas. Meetings of the review committee are subject to the Bagley–Keene Open Meeting Act (Article 9 (commencing with Section 11120) of Chapter 1 of Part 1 of Division 3 of Title 2 of the Government Code).

(5) The members of the review committee shall serve without compensation, but shall be reimbursed for any actual and necessary expenses incurred in connection with their duties as members of the committee.

(b) The office may consider recommendations contained within the Health Care Cost, Quality, and Equity Data Atlas Technical Feasibility Analysis dated March 1, 2017, prepared pursuant to Section 127670. In addition, the office shall review information collected by the state in various health care data systems to identify gaps between available data and recommended data. The office may utilize third-party vendors to assist with the implementation of these provisions. The vendor shall prepare a plan, for submission to the office, for completing a Health Care Cost Transparency Database and identify which elements of the system can be addressed using the appropriation included in the 2018–19 Budget Act. To the extent available funding is insufficient to address all elements identified, the plan shall prioritize the key components needed to best support health care cost transparency.

(c) The office shall develop a guidance to require data submission from the entities specified in paragraph (1) of subdivision (a). That guidance shall include a methodology for the collection, validation, refinement, analysis, comparison, review and improvement of health care data, including, but not limited to, data from fee-for-service, capitated, integrated delivery system, and other alternative, value-based, payment sources, submitted by entities specified in paragraph (1) of subdivision (a). The guidance shall also consider data elements proposed by the All–Payer Claims Database Council, the University of New Hampshire, the National Association of Health Data Organizations, Medi–Cal, and Medicare, among others.

(d)(1) No later than July 1, 2020, the office shall submit a report to the Legislature in compliance with Section 9795 of the Government Code, based on recommendations of the review committee and any third-party vendor, that does all of the following:

(A) Includes information on the types of data, including those specified in subdivision (b) of Section 127673, purpose of use, and use case definitions to assist in prioritizing areas of development.

(B) Specifies entities and individuals required to report data, including those specified in Section 127673.

(C) Defines and prioritizes data elements to collect, including the requirements for data linkages to meet specified purposes and use cases.

(D) Analyzes data aggregation and the protection of individual confidentiality to advise on privacy and security.

(E) Analyzes and provides advice regarding existing technology, existing systems, and available data that can be leveraged to ensure a streamlined system.

(2) The report shall also include recommendations including the following:

(A) Additional legislation needed to ensure the database receives appropriate data from identified data submitters including, those specified in subdivision (b) of Section 127673 and legislation regarding enforcement mechanisms necessary for these entities to comply with the requirements of the chapter.

(B) Legislation needed to protect individual privacy rights and confidentiality of the data.

(C) A plan for long-term, non-General Fund financing to support the ongoing costs of maintaining the database.

(D) The type of technology solutions required pursuant to Section 127670, including whether to build a new database or leveraging databases, or developing a network of networks to facilitate a hybrid version of the two options.

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST     Document 105-43     Filed 09/22/25     Page 32 of 59

(E) Identification of governance structure, including identification of the appropriate entity to operate the database.

(F) How the database can map to other datasets, including public health data sets on morbidity and mortality, and data regarding the social determinants of health.

(e) For purposes of implementing this chapter, including, but not limited to, hiring staff and consultants, facilitating and conducting meetings, conducting research and analysis, and developing the required reports, the office may enter into exclusive or nonexclusive contracts on a bid or negotiated basis. Contracts entered into or amended pursuant to this section shall be exempt from Chapter 6 (commencing with Section 14825) of Part 5.5 of Division 3 of Title 2 of the Government Code, Section 19130 of the Government Code, and Part 2 (commencing with Section 10100) of Division 2 of the Public Contract Code, and shall be exempt from the review or approval of any division of the Department of General Services.

<< CA HLTH & S § 127673 >>

127673. (a) Subject to appropriation, after the requirements of Section 127672 are fulfilled and a long term non-General Fund financing mechanism has been implemented, the office or its designee shall establish, implement, and administer the Health Care Cost Transparency Database in accordance with this chapter.

(b) After the requirements of Section 127672 are fulfilled, for the purpose of developing information for inclusion in the database, a health care service plan, including a specialized health care service plan, an insurer licensed to provide health insurance, as defined in Section 106 of the Insurance Code, a self-insured employer subject to Section 1349.2, health entities contracted pursuant to Section 14087.3 of the Welfare and Institutions Code, a supplier, as defined in paragraph (3) of subdivision (b) of Section 1367.50, or a provider, as defined in paragraph (2) of subdivision (b) of Section 1367.50, shall, and a self-insured employer not subject to Section 1349.2 and a multiemployer self-insured plan that is responsible for paying for health care services provided to beneficiaries and the trust administrator for a multiemployer self-insured plan may, provide all of the following to the office:

(1) Utilization data from the health care service plans' and insurers' medical payments or, in the case of entities that do not use payments data, including, but not limited to, integrated delivery systems, encounter data consistent with the core set of data elements for data submission proposed by the All–Payer Claims Database Council, the University of New Hampshire, and the National Association of Health Data Organizations.

(2) Pricing information for health care items, services, and medical and surgical episodes of care gathered from payments for covered health care items and services.

(c) The office or its designee shall receive the information, as described in this section, and report that information in a form that allows valid comparisons across care delivery systems. Policies and procedures shall be developed to outline the format and type of data to be submitted pursuant to subdivision (b).

(d) In the development of the database, the office or its designee shall consult with state entities as necessary to implement the Health Care Cost Transparency Database. State entities shall assist and provide to the office access to such datasets to effectuate the intent of this chapter.

(e) All policies and procedures developed in the performance of this chapter shall ensure that the privacy, security, and confidentiality of individually identifiable health information is protected.

(f) The office shall develop policy regarding data aggregation and the protection of individual confidentiality, privacy, and security. Individual patient-level data shall be exempt from the disclosure requirements of the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code), and shall not be made

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 33 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

available except pursuant to this chapter or the Information Practices Act of 1977 (Chapter 1 (commencing with Section 1798) of Title 1.8 of Part 4 of Division 3 of the Civil Code) until the office has developed a policy regarding the release of that data.

(g)(1) Upon operation of the database and receipt of sufficient data, the office or its designee shall receive, process, maintain, and analyze information from data sources, including, but not limited to, data received pursuant to subdivision (b) and payments from private and public payers.

(2) The office or its designee shall include in an analysis performed pursuant to paragraph (1), but shall not limit the content of that analysis to, any of the following:

(A) Population and regional level data on prevention, screening, and wellness utilization.

(B) Population and regional level data on chronic conditions, management, and outcomes.

(C) Population and regional level data on trends in utilization of procedures for treatment of similar conditions to evaluate medical appropriateness.

(D) Regional variation in payment level for the treatment of identified chronic conditions.

(E) Data regarding hospital and nonhospital payments, including inpatient, outpatient, and emergency department payments and nonhospital ambulatory service data.

<< CA HLTH & S § 127674 >>

127674. The office or its designee shall not implement, or operate, the database if there is a determination, after consultation with the review committee, that the office is unable to obtain necessary, reliable, and relevant data.

SEC. 24. Chapter 2.8A (commencing with Section 1001.35) is added to Title 6 of Part 2 of the Penal Code, immediately following Chapter 2.8 (commencing with Section 1001.20), to read:

pt. 2 t. 6 ch. 2.8A pr. § 1001.35

Chapter 2.8A. Diversion of Individuals with Mental Disorders

<< CA PENAL § 1001.35 >>

1001.35. The purpose of this chapter is to promote all of the following:

(a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.

(b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings.

(c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 34 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

<< CA PENAL § 1001.36 >>

1001.36. (a) On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant pursuant to this section if the defendant meets all of the requirements specified in subdivision (b).

(b) Pretrial diversion may be granted pursuant to this section if all of the following criteria are met:

(1) The court is satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia. Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert. In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence.

(2) The court is satisfied that the defendant's mental disorder played a significant role in the commission of the charged offense. A court may conclude that a defendant's mental disorder played a significant role in the commission of the charged offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense, the court concludes that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense.

(3) In the opinion of a qualified mental health expert, the defendant's symptoms motivating the criminal behavior would respond to mental health treatment.

(4) The defendant consents to diversion and waives his or her right to a speedy trial, unless a defendant has been found to be an appropriate candidate for diversion in lieu of commitment pursuant to clause (iv) of subparagraph (B) paragraph (1) of subdivision (a) of Section 1370 and, as a result of his or her mental incompetence, cannot consent to diversion or give a knowing and intelligent waiver of his or her right to a speedy trial.

(5) The defendant agrees to comply with treatment as a condition of diversion.

(6) The court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community. The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate.

(c) As used in this chapter, "pretrial diversion" means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment, subject to all of the following:

(1)(A) The court is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant.

(B) The defendant may be referred to a program of mental health treatment utilizing existing inpatient or outpatient mental health resources. Before approving a proposed treatment program, the court shall consider the request of the defense, the

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 35 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

request of the prosecution, the needs of the defendant, and the interests of the community. The treatment may be procured using private or public funds, and a referral may be made to a county mental health agency, existing collaborative courts, or assisted outpatient treatment only if that entity has agreed to accept responsibility for the treatment of the defendant, and mental health services are provided only to the extent that resources are available and the defendant is eligible for those services.

(2) The provider of the mental health treatment program in which the defendant has been placed shall provide regular reports to the court, the defense, and the prosecutor on the defendant's progress in treatment.

(3) The period during which criminal proceedings against the defendant may be diverted shall be no longer than two years.

(d) If any of the following circumstances exists, the court shall, after notice to the defendant, defense counsel, and the prosecution, hold a hearing to determine whether the criminal proceedings should be reinstated, whether the treatment should be modified, or whether the defendant should be conserved and referred to the conservatorship investigator of the county of commitment to initiate conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code:

(1) The defendant is charged with an additional misdemeanor allegedly committed during the pretrial diversion and that reflects the defendant's propensity for violence.

(2) The defendant is charged with an additional felony allegedly committed during the pretrial diversion.

(3) The defendant is engaged in criminal conduct rendering him or her unsuitable for diversion.

(4) Based on the opinion of a qualified mental health expert whom the court may deem appropriate, either of the following circumstances exists:

(A) The defendant is performing unsatisfactorily in the assigned program.

(B) The defendant is gravely disabled, as defined in subparagraph (B) of paragraph (1) of subdivision (h) of Section 5008 of the Welfare and Institutions Code. A defendant shall only be conserved and referred to the conservatorship investigator pursuant to this finding.

(e) If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion. A court may conclude that the defendant has performed satisfactorily if the defendant has substantially complied with the requirements of diversion, has avoided significant new violations of law unrelated to the defendant's mental health condition, and has a plan in place for long-term mental health care. If the court dismisses the charges, the clerk of the court shall file a record with the Department of Justice indicating the disposition of the case diverted pursuant to this section. Upon successful completion of diversion, if the court dismisses the charges, the arrest upon which the diversion was based shall be deemed never to have occurred, and the court shall order access to the record of the arrest restricted in accordance with Section 1001.9, except as specified in subdivisions (g) and (h). The defendant who successfully completes diversion may indicate in response to any question concerning his or her prior criminal record that he or she was not arrested or diverted for the offense, except as specified in subdivision (g).

(f) A record pertaining to an arrest resulting in successful completion of diversion, or any record generated as a result of the defendant's application for or participation in diversion, shall not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 36 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(g) The defendant shall be advised that, regardless of his or her completion of diversion, both of the following apply:

(1) The arrest upon which the diversion was based may be disclosed by the Department of Justice to any peace officer application request and that, notwithstanding subdivision (f), this section does not relieve the defendant of the obligation to disclose the arrest in response to any direct question contained in any questionnaire or application for a position as a peace officer, as defined in Section 830.

(2) An order to seal records pertaining to an arrest made pursuant to this section has no effect on a criminal justice agency's ability to access and use those sealed records and information regarding sealed arrests, as described in Section 851.92.

(h) A finding that the defendant suffers from a mental disorder, any progress reports concerning the defendant's treatment, or any other records related to a mental disorder that were created as a result of participation in, or completion of, diversion pursuant to this section or for use at a hearing on the defendant's eligibility for diversion under this section may not be used in any other proceeding without the defendant's consent, unless that information is relevant evidence that is admissible under the standards described in paragraph (2) of subdivision (f) of Section 28 of Article I of the California Constitution. However, when determining whether to exercise its discretion to grant diversion under this section, a court may consider previous records of participation in diversion under this section.

(i) The county agency administering the diversion, the defendant's mental health treatment providers, the public guardian or conservator, and the court shall, to the extent not prohibited by federal law, have access to the defendant's medical and psychological records, including progress reports, during the defendant's time in diversion, as needed, for the purpose of providing care and treatment and monitoring treatment for diversion or conservatorship.

SEC. 25. Section 1370 of the Penal Code is amended to read:

<< CA PENAL § 1370 >>

1370. (a)(1)(A) If the defendant is found mentally competent, the criminal process shall resume, the trial on the offense charged or hearing on the alleged violation shall proceed, and judgment may be pronounced.

(B) If the defendant is found mentally incompetent, the trial, the hearing on the alleged violation, or the judgment shall be suspended until the person becomes mentally competent.

(i) * * * The court shall order that the mentally incompetent defendant be delivered by the sheriff to a State Department of State Hospitals facility, as defined in Section 4100 of the Welfare and Institutions Code, for the care and treatment of the mentally disordered, as directed by the State Department of State Hospitals, or to any other available public or private treatment facility, including a community-based residential treatment system established pursuant to Article 1 (commencing with Section 5670) of Chapter 2.5 of Part 2 of Division 5 of the Welfare and Institutions Code if the facility has a secured perimeter or a locked and controlled treatment facility, approved by the community program director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status as specified in Section 1600.

(ii) However, if the action against the defendant who has been found mentally incompetent is on a complaint charging a felony offense specified in Section 290, the prosecutor shall determine whether the defendant previously has been found mentally incompetent to stand trial pursuant to this chapter on a charge of a Section 290 offense, or whether the defendant is currently the subject of a pending Section 1368 proceeding arising out of a charge of a Section 290 offense. If either determination is made, the prosecutor shall so notify the court and defendant in writing. After this notification, and opportunity for hearing, the court shall order that the defendant be delivered by the sheriff to a State Department of State

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 37 of 59

Hospitals facility, as directed by the State Department of State Hospitals, or other secure treatment facility for the care and treatment of the mentally disordered unless the court makes specific findings on the record that an alternative placement would provide more appropriate treatment for the defendant and would not pose a danger to the health and safety of others.

(iii) If the action against the defendant who has been found mentally incompetent is on a complaint charging a felony offense specified in Section 290 and the defendant has been denied bail pursuant to subdivision (b) of Section 12 of Article I of the California Constitution because the court has found, based upon clear and convincing evidence, a substantial likelihood that the person's release would result in great bodily harm to others, the court shall order that the defendant be delivered by the sheriff to a State Department of State Hospitals facility, for the care and treatment of the mentally disordered, as directed by the State Department of State Hospitals, unless the court makes specific findings on the record that an alternative placement would provide more appropriate treatment for the defendant and would not pose a danger to the health and safety of others.

**(iv) If, at any time after the court finds that the defendant is mentally incompetent and before the defendant is transported to a facility pursuant to this section, the court is provided with any information that the defendant may benefit from diversion pursuant to Chapter 2.8A (commencing with Section 1001.35) of Title 6, the court may make a finding that the defendant is an appropriate candidate for diversion.**

**(v) If a defendant is found by the court to be an appropriate candidate for diversion pursuant to clause (iv), the defendant's eligibility shall be determined pursuant to Section 1001.36. A defendant granted diversion may participate for the lesser of the period specified in paragraph (1) of subdivision (c) or two years. If, during that period, the court determines that criminal proceedings should be reinstated pursuant to subdivision (d) of Section 1001.36, the court shall, pursuant to Section 1369, appoint a psychiatrist, licensed psychologist, or any other expert the court may deem appropriate, to determine the defendant's competence to stand trial.**

**(vi) Upon the dismissal of charges at the conclusion of the period of diversion, pursuant to subdivision (e) of Section 1001.36, a defendant shall no longer be deemed incompetent to stand trial pursuant to this section.**

**(vii)** The clerk of the court shall notify the Department of Justice in writing of a finding of mental incompetence with respect to a defendant who is subject to clause (ii) or (iii) for inclusion in his or her state summary criminal history information.

(C) Upon the filing of a certificate of restoration to competence, the court shall order that the defendant be returned to court in accordance with Section 1372. The court shall transmit a copy of its order to the community program director or a designee.

(D) A defendant charged with a violent felony may not be delivered to a State Department of State Hospitals facility or treatment facility pursuant to this subdivision unless the State Department of State Hospitals facility or treatment facility has a secured perimeter or a locked and controlled treatment facility, and the judge determines that the public safety will be protected.

(E) For purposes of this paragraph, "violent felony" means an offense specified in subdivision (c) of Section 667.5.

(F) A defendant charged with a violent felony may be placed on outpatient status, as specified in Section 1600, only if the court finds that the placement will not pose a danger to the health or safety of others. If the court places a defendant charged with a violent felony on outpatient status, as specified in Section 1600, the court shall serve copies of the placement order on defense counsel, the sheriff in the county where the defendant will be placed, and the district attorney for the county in which the violent felony charges are pending against the defendant.

**(G) If, at any time after the court has declared a defendant incompetent to stand trial pursuant to this section, counsel for the defendant or a jail medical or mental health staff provider provides the court with substantial evidence that**

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 38 of 59

the defendant's psychiatric symptoms have changed to such a degree as to create a doubt in the mind of the judge as to the defendant's current mental incompetence, the court may appoint a psychiatrist or a licensed psychologist to opine as to whether the defendant has regained competence. If, in the opinion of that expert, the defendant has regained competence, the court shall proceed as if a certificate of restoration of competence has been returned pursuant to paragraph (1) of subdivision (a) of Section 1372, except that a presumption of competency shall not apply and a hearing shall be held to determine whether competency has been restored.

(2) Prior to making the order directing that the defendant be committed to the State Department of State Hospitals or other treatment facility or placed on outpatient status, the court shall proceed as follows:

(A) The court shall order the community program director or a designee to evaluate the defendant and to submit to the court within 15 judicial days of the order a written recommendation as to whether the defendant should be required to undergo outpatient treatment, or be committed to the State Department of State Hospitals or to any other treatment facility. A person shall not be admitted to a State Department of State Hospitals facility or other treatment facility or placed on outpatient status under this section without having been evaluated by the community program director or a designee. The community program director or designee shall evaluate the appropriate placement for the defendant between a State Department of State Hospitals facility or the community-based residential treatment system based upon guidelines provided by the State Department of State Hospitals.

(B) The court shall hear and determine whether the defendant lacks capacity to make decisions regarding the administration of antipsychotic medication. The court shall consider opinions in the reports prepared pursuant to subdivision (a) of Section 1369, as applicable to the issue of whether the defendant lacks capacity to make decisions regarding the administration of antipsychotic medication, and shall proceed as follows:

(i) The court shall hear and determine whether any of the following is true:

(I) The defendant lacks capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the patient will result. Probability of serious harm to the physical or mental health of the defendant requires evidence that the defendant is presently suffering adverse effects to his or her physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and his or her condition is substantially deteriorating. The fact that a defendant has a diagnosis of a mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant.

(II) The defendant is a danger to others, in that the defendant has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another while in custody, or the defendant had inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another that resulted in his or her being taken into custody, and the defendant presents, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm on others. Demonstrated danger may be based on an assessment of the defendant's present mental condition, including a consideration of past behavior of the defendant within six years prior to the time the defendant last attempted to inflict, inflicted, or threatened to inflict substantial physical harm on another, and other relevant evidence.

(III) The people have charged the defendant with a serious crime against the person or property, involuntary administration of antipsychotic medication is substantially likely to render the defendant competent to stand trial, the medication is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner, less intrusive treatments are unlikely to have substantially the same results, and antipsychotic medication is in the patient's best medical interest in light of his or her medical condition.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 39 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(ii) If the court finds any of the conditions described in clause (i) to be true, the court shall issue an order authorizing involuntary administration of antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist at any facility housing the defendant for purposes of this chapter. The order shall be valid for no more than one year, pursuant to subparagraph (A) of paragraph (7). The court shall not order involuntary administration of psychotropic medication under subclause (III) of clause (i) unless the court has first found that the defendant does not meet the criteria for involuntary administration of psychotropic medication under subclause (I) of clause (i) and does not meet the criteria under subclause (II) of clause (i).

(iii) In all cases, the treating hospital, facility, or program may administer medically appropriate antipsychotic medication prescribed by a psychiatrist in an emergency as described in subdivision (m) of Section 5008 of the Welfare and Institutions Code.

(iv) If the court has determined that the defendant has the capacity to make decisions regarding antipsychotic medication, and if the defendant, with advice of his or her counsel, consents, the court order of commitment shall include confirmation that antipsychotic medication may be given to the defendant as prescribed by a treating psychiatrist pursuant to the defendant's consent. The commitment order shall also indicate that, if the defendant withdraws consent for antipsychotic medication, after the treating psychiatrist complies with the provisions of subparagraph (C), the defendant shall be returned to court for a hearing in accordance with subparagraphs (C) and (D) regarding whether antipsychotic medication shall be administered involuntarily.

(v) If the court has determined that the defendant has the capacity to make decisions regarding antipsychotic medication and if the defendant, with advice from his or her counsel, does not consent, the court order for commitment shall indicate that, after the treating psychiatrist complies with the provisions of subparagraph (C), the defendant shall be returned to court for a hearing in accordance with subparagraphs (C) and (D) regarding whether antipsychotic medication shall be administered involuntarily.

(vi) A report made pursuant to paragraph (1) of subdivision (b) shall include a description of antipsychotic medication administered to the defendant and its effects and side effects, including effects on the defendant's appearance or behavior that would affect the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner. During the time the defendant is confined in a State Department of State Hospitals facility or other treatment facility or placed on outpatient status, either the defendant or the people may request that the court review any order made pursuant to this subdivision. The defendant, to the same extent enjoyed by other patients in the State Department of State Hospitals facility or other treatment facility, shall have the right to contact the patients' rights advocate regarding his or her rights under this section.

(C) If the defendant consented to antipsychotic medication as described in clause (iv) of subparagraph (B), but subsequently withdraws his or her consent, or, if involuntary antipsychotic medication was not ordered pursuant to clause (v) of subparagraph (B), and the treating psychiatrist determines that antipsychotic medication has become medically necessary and appropriate, the treating psychiatrist shall make efforts to obtain informed consent from the defendant for antipsychotic medication. If informed consent is not obtained from the defendant, and the treating psychiatrist is of the opinion that the defendant lacks capacity to make decisions regarding antipsychotic medication based on the conditions described in subclause (I) or (II) of clause (i) of subparagraph (B), the treating psychiatrist shall certify whether the lack of capacity and any applicable conditions described above exist. That certification shall contain an assessment of the current mental status of the defendant and the opinion of the treating psychiatrist that involuntary antipsychotic medication has become medically necessary and appropriate.

(D)(i) If the treating psychiatrist certifies that antipsychotic medication has become medically necessary and appropriate pursuant to subparagraph (C), antipsychotic medication may be administered to the defendant for not more than 21 days, provided, however, that, within 72 hours of the certification, the defendant is provided a medication review hearing before an

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 40 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

administrative law judge to be conducted at the facility where the defendant is receiving treatment. The treating psychiatrist shall present the case for the certification for involuntary treatment and the defendant shall be represented by an attorney or a patients' rights advocate. The attorney or patients' rights advocate shall be appointed to meet with the defendant no later than one day prior to the medication review hearing to review the defendant's rights at the medication review hearing, discuss the process, answer questions or concerns regarding involuntary medication or the hearing, assist the defendant in preparing for the hearing and advocating for his or her interests at the hearing, review the panel's final determination following the hearing, advise the defendant of his or her right to judicial review of the panel's decision, and provide the defendant with referral information for legal advice on the subject. The defendant shall also have the following rights with respect to the medication review hearing:

(I) To be given timely access to the defendant's records.

(II) To be present at the hearing, unless the defendant waives that right.

(III) To present evidence at the hearing.

(IV) To question persons presenting evidence supporting involuntary medication.

(V) To make reasonable requests for attendance of witnesses on the defendant's behalf.

(VI) To a hearing conducted in an impartial and informal manner.

(ii) If the administrative law judge determines that the defendant either meets the criteria specified in subclause (I) of clause (i) of subparagraph (B), or meets the criteria specified in subclause (II) of clause (i) of subparagraph (B), * * * antipsychotic medication may continue to be administered to the defendant for the 21–day certification period. Concurrently with the treating psychiatrist's certification, the treating psychiatrist shall file a copy of the certification and a petition with the court for issuance of an order to administer antipsychotic medication beyond the 21–day certification period. For purposes of this subparagraph, the treating psychiatrist shall not be required to pay or deposit any fee for the filing of the petition or other document or paper related to the petition.

(iii) If the administrative law judge disagrees with the certification, medication may not be administered involuntarily until the court determines that antipsychotic medication should be administered pursuant to this section.

(iv) The court shall provide notice to the prosecuting attorney and to the attorney representing the defendant, and shall hold a hearing, no later than 18 days from the date of the certification, to determine whether antipsychotic medication should be ordered beyond the certification period.

(v) If, as a result of the hearing, the court determines that antipsychotic medication should be administered beyond the certification period, the court shall issue an order authorizing the administration of that medication.

(vi) The court shall render its decision on the petition and issue its order no later than three calendar days after the hearing and, in any event, no later than the expiration of the 21–day certification period.

(vii) If the administrative law judge upholds the certification pursuant to clause (ii), the court may, for a period not to exceed 14 days, extend the certification and continue the hearing pursuant to stipulation between the parties or upon a finding of good cause. In determining good cause, the court may review the petition filed with the court, the administrative law judge's order, and any additional testimony needed by the court to determine if it is appropriate to continue medication beyond the 21–day certification and for a period of up to 14 days.

Case 4:24-cv-01562-JST   Document 105-43   Filed 09/22/25   Page 41 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(viii) The district attorney, county counsel, or representative of a facility where a defendant found incompetent to stand trial is committed may petition the court for an order to administer involuntary medication pursuant to the criteria set forth in subclauses (II) and (III) of clause (i) of subparagraph (B). The order is reviewable as provided in paragraph (7).

(3) When the court orders that the defendant be committed to a State Department of State Hospitals facility or other public or private treatment facility, the court shall provide copies of the following documents prior to the admission of the defendant to the State Department of State Hospitals or other treatment facility where the defendant is to be committed:

(A) The commitment order, including a specification of the charges.

(B) A computation or statement setting forth the maximum term of commitment in accordance with subdivision (c).

(C) A computation or statement setting forth the amount of credit for time served, if any, to be deducted from the maximum term of commitment.

(D) State summary criminal history information.

(E) Arrest reports prepared by the police department or other law enforcement agency.

(F) Court–ordered psychiatric examination or evaluation reports.

(G) The community program director's placement recommendation report.

(H) Records of a finding of mental incompetence pursuant to this chapter arising out of a complaint charging a felony offense specified in Section 290 or a pending Section 1368 proceeding arising out of a charge of a Section 290 offense.

(I) Medical records.

(4) When the defendant is committed to a treatment facility pursuant to clause (i) of subparagraph (B) of paragraph (1) or the court makes the findings specified in clause (ii) or (iii) of subparagraph (B) of paragraph (1) to assign the defendant to a treatment facility other than a State Department of State Hospitals facility or other secure treatment facility, the court shall order that notice be given to the appropriate law enforcement agency or agencies having local jurisdiction at the site of the placement facility of any finding of mental incompetence pursuant to this chapter arising out of a charge of a Section 290 offense.

(5) When directing that the defendant be confined in a State Department of State Hospitals facility pursuant to this subdivision, the court shall commit the patient to the State Department of State Hospitals.

(6)(A) If the defendant is committed or transferred to the State Department of State Hospitals pursuant to this section, the court may, upon receiving the written recommendation of the medical director of the State Department of State Hospitals facility and the community program director that the defendant be transferred to a public or private treatment facility approved by the community program director, order the defendant transferred to that facility. If the defendant is committed or transferred to a public or private treatment facility approved by the community program director, the court may, upon receiving the written recommendation of the community program director, transfer the defendant to the State Department of State Hospitals or to another public or private treatment facility approved by the community program director. In the event of dismissal of the criminal charges before the defendant recovers competence, the person shall be subject to the applicable provisions of the Lanterman–Petris–Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code). If either the defendant or the prosecutor chooses to contest either kind of order of transfer, a petition may be filed in the court for a hearing, which shall be held if the court determines that sufficient grounds exist. At the hearing, the

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 42 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

prosecuting attorney or the defendant may present evidence bearing on the order of transfer. The court shall use the same standards as are used in conducting probation revocation hearings pursuant to Section 1203.2.

Prior to making an order for transfer under this section, the court shall notify the defendant, the attorney of record for the defendant, the prosecuting attorney, and the community program director or a designee.

(B) If the defendant is initially committed to a State Department of State Hospitals facility or secure treatment facility pursuant to clause (ii) or (iii) of subparagraph (B) of paragraph (1) and is subsequently transferred to any other facility, copies of the documents specified in paragraph (3) shall be taken with the defendant to each subsequent facility to which the defendant is transferred. The transferring facility shall also notify the appropriate law enforcement agency or agencies having local jurisdiction at the site of the new facility that the defendant is a person subject to clause (ii) or (iii) of subparagraph (B) of paragraph (1).

(7)(A) An order by the court authorizing involuntary medication of the defendant shall be valid for no more than one year. The court shall review the order at the time of the review of the initial report and the six-month progress reports pursuant to paragraph (1) of subdivision (b) to determine if the grounds for the authorization remain. In the review, the court shall consider the reports of the treating psychiatrist or psychiatrists and the defendant's patients' rights advocate or attorney. The court may require testimony from the treating psychiatrist and the patients' rights advocate or attorney, if necessary. The court may continue the order authorizing involuntary medication for up to another six months, or vacate the order, or make any other appropriate order.

(B) Within 60 days before the expiration of the one-year involuntary medication order, the district attorney, county counsel, or representative of any facility where a defendant found incompetent to stand trial is committed may petition the committing court for a renewal, subject to the same conditions and requirements as in subparagraph (A). The petition shall include the basis for involuntary medication set forth in clause (i) of subparagraph (B) of paragraph (2). Notice of the petition shall be provided to the defendant, the defendant's attorney, and the district attorney. The court shall hear and determine whether the defendant continues to meet the criteria set forth in clause (i) of subparagraph (B) of paragraph (2). The hearing on any petition to renew an order for involuntary medication shall be conducted prior to the expiration of the current order.

(8) For purposes of subparagraph (D) of paragraph (2) and paragraph (7), if the treating psychiatrist determines that there is a need, based on preserving his or her rapport with the patient or preventing harm, the treating psychiatrist may request that the facility medical director designate another psychiatrist to act in the place of the treating psychiatrist. If the medical director of the facility designates another psychiatrist to act pursuant to this paragraph, the treating psychiatrist shall brief the acting psychiatrist of the relevant facts of the case and the acting psychiatrist shall examine the patient prior to the hearing.

(b)(1) Within 90 days of a commitment made pursuant to subdivision (a), the medical director of the State Department of State Hospitals facility or other treatment facility to which the defendant is confined shall make a written report to the court and the community program director for the county or region of commitment, or a designee, concerning the defendant's progress toward recovery of mental competence and whether the administration of antipsychotic medication remains necessary. If the defendant is on outpatient status, the outpatient treatment staff shall make a written report to the community program director concerning the defendant's progress toward recovery of mental competence. Within 90 days of placement on outpatient status, the community program director shall report to the court on this matter. If the defendant has not recovered mental competence, but the report discloses a substantial likelihood that the defendant will regain mental competence in the foreseeable future, the defendant shall remain in the State Department of State Hospitals facility or other treatment facility or on outpatient status. Thereafter, at six-month intervals or until the defendant becomes mentally competent, if the defendant is confined in a treatment facility, the medical director of the State Department of State Hospitals facility or person in charge of the facility shall report in writing to the court and the community program director or a designee regarding the defendant's progress toward recovery of mental competence and whether the administration of antipsychotic medication remains necessary. If the defendant is on outpatient status, after the initial 90–day report, the

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 43 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

outpatient treatment staff shall report to the community program director on the defendant's progress toward recovery, and the community program director shall report to the court on this matter at six-month intervals. A copy of these reports shall be provided to the prosecutor and defense counsel by the court.

(A) If the report indicates that there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future, the committing court shall order the defendant to be returned to the court for proceedings pursuant to paragraph (2) of subdivision (c) no later than 10 days following receipt of the report. The court shall transmit a copy of its order to the community program director or a designee.

(B) If the report indicates that there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future, the medical director of the State Department of State Hospitals facility or other treatment facility to which the defendant is confined shall do both of the following:

(i) Promptly notify and provide a copy of the report to the defense counsel and the district attorney.

(ii) Provide a separate notification, in compliance with applicable privacy laws, to the committing county's sheriff that transportation will be needed for the patient.

(2) If the court has issued an order authorizing the treating facility to involuntarily administer antipsychotic medication to the defendant, the reports made pursuant to paragraph (1) concerning the defendant's progress toward regaining competency shall also consider the issue of involuntary medication. Each report shall include, but is not limited to, all of the following:

(A) Whether or not the defendant has the capacity to make decisions concerning antipsychotic medication.

(B) If the defendant lacks capacity to make decisions concerning antipsychotic medication, whether the defendant risks serious harm to his or her physical or mental health if not treated with antipsychotic medication.

(C) Whether or not the defendant presents a danger to others if he or she is not treated with antipsychotic medication.

(D) Whether the defendant has a mental **disorder** for which medications are the only effective treatment.

(E) Whether there are any side effects from the medication currently being experienced by the defendant that would interfere with the defendant's ability to collaborate with counsel.

(F) Whether there are any effective alternatives to medication.

(G) How quickly the medication is likely to bring the defendant to competency.

(H) Whether the treatment plan includes methods other than medication to restore the defendant to competency.

(I) A statement, if applicable, that no medication is likely to restore the defendant to competency.

(3) After reviewing the reports, the court shall determine whether or not grounds for the order authorizing involuntary administration of antipsychotic medication still exist and shall do one of the following:

(A) If the original grounds for involuntary medication still exist, the order authorizing the treating facility to involuntarily administer antipsychotic medication to the defendant shall remain in effect.

(B) If the original grounds for involuntary medication no longer exist, and there is no other basis for involuntary administration of antipsychotic medication, the order for the involuntary administration of antipsychotic medication shall be vacated.

(C) If the original grounds for involuntary medication no longer exist, and the report states that there is another basis for involuntary administration of antipsychotic medication, the court shall set a hearing within 21 days to determine whether the order for the involuntary administration of antipsychotic medication shall be vacated or whether a new order for the involuntary administration of antipsychotic medication shall be issued. The hearing shall proceed as set forth in subparagraph (B) of paragraph (2) of subdivision (a).

(4) Any defendant who has been committed or has been on outpatient status for 18 months and is still hospitalized or on outpatient status shall be returned to the committing court where a hearing shall be held pursuant to the procedures set forth in Section 1369. The court shall transmit a copy of its order to the community program director or a designee.

(5) If it is determined by the court that no treatment for the defendant's mental impairment is being conducted, the defendant shall be returned to the committing court. The court shall transmit a copy of its order to the community program director or a designee.

(6) At each review by the court specified in this subdivision, the court shall determine if the security level of housing and treatment is appropriate and may make an order in accordance with its determination. If the court determines that the defendant shall continue to be treated in the State Department of State Hospitals facility or on an outpatient basis, the court shall determine issues concerning administration of antipsychotic medication, as set forth in subparagraph (B) of paragraph (2) of subdivision (a).

(c)(1) At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, or the maximum term of imprisonment provided by law for a violation of probation or mandatory supervision, whichever is shorter, but no later than 90 days prior to the expiration of the defendant's term of commitment, a defendant who has not recovered mental competence shall be returned to the committing court. The court shall notify the community program director or a designee of the return and of any resulting court orders.

(2) Whenever a defendant is returned to the court pursuant to paragraph (1) or (4) of subdivision (b) or paragraph (1) of this subdivision and it appears to the court that the defendant is gravely disabled, as defined in subparagraph (A) or (B) of paragraph (1) of subdivision (h) of Section 5008 of the Welfare and Institutions Code, the court shall order the conservatorship investigator of the county of commitment of the defendant to initiate conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code. Hearings required in the conservatorship proceedings shall be held in the superior court in the county that ordered the commitment. The court shall transmit a copy of the order directing initiation of conservatorship proceedings to the community program director or a designee, the sheriff and the district attorney of the county in which criminal charges are pending, and the defendant's counsel of record. The court shall notify the community program director or a designee, the sheriff and district attorney of the county in which criminal charges are pending, and the defendant's counsel of record of the outcome of the conservatorship proceedings.

(3) If a change in placement is proposed for a defendant who is committed pursuant to subparagraph (A) or (B) of paragraph (1) of subdivision (h) of Section 5008 of the Welfare and Institutions Code, the court shall provide notice and an opportunity to be heard with respect to the proposed placement of the defendant to the sheriff and the district attorney of the county in which the criminal charges or revocation proceedings are pending.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 45 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(4) If the defendant is confined in a treatment facility, a copy of any report to the committing court regarding the defendant's progress toward recovery of mental competence shall be provided by the committing court to the prosecutor and to the defense counsel.

(d) With the exception of proceedings alleging a violation of mandatory supervision, the criminal action remains subject to dismissal pursuant to Section 1385. If the criminal action is dismissed, the court shall transmit a copy of the order of dismissal to the community program director or a designee. In a proceeding alleging a violation of mandatory supervision, if the person is not placed under a conservatorship as described in paragraph (2) of subdivision (c), or if a conservatorship is terminated, the court shall reinstate mandatory supervision and may modify the terms and conditions of supervision to include appropriate mental health treatment or refer the matter to a local mental health court, reentry court, or other collaborative justice court available for improving the mental health of the defendant.

(e) If the criminal action against the defendant is dismissed, the defendant shall be released from commitment ordered under this section, but without prejudice to the initiation of any proceedings that may be appropriate under the Lanterman–Petris–Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code).

(f) As used in this chapter, "community program director" means the person, agency, or entity designated by the State Department of State Hospitals pursuant to Section 1605 of this code and Section 4360 of the Welfare and Institutions Code.

(g) For the purpose of this section, "secure treatment facility" shall not include, except for State Department of State Hospitals facilities, state developmental centers, and correctional treatment facilities, any facility licensed pursuant to Chapter 2 (commencing with Section 1250) of, Chapter 3 (commencing with Section 1500) of, or Chapter 3.2 (commencing with Section 1569) of, Division 2 of the Health and Safety Code, or any community board and care facility.

(h) This section does not preclude a defendant from filing a petition for habeas corpus to challenge the continuing validity of an order authorizing a treatment facility or outpatient program to involuntarily administer antipsychotic medication to a person being treated as incompetent to stand trial.

SEC. 26. Section 1370.01 of the Penal Code is amended to read:

<< CA PENAL § 1370.01 >>

1370.01. (a)(1) If the defendant is found mentally competent, the criminal process shall resume, the trial on the offense charged shall proceed, and judgment may be pronounced. If the defendant is found mentally incompetent, the trial, judgment, or hearing on the alleged violation shall be suspended until the person becomes mentally competent, and the court shall order that (A) in the meantime, the defendant be delivered by the sheriff to an available public or private treatment facility approved by the county mental health director that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status as specified in this section, and (B) upon the filing of a certificate of restoration to competence, the defendant be returned to court in accordance with Section 1372. The court shall transmit a copy of its order to the county mental health director or his or her designee.

(2) If the defendant is found mentally incompetent, the court may make a finding that the defendant is an appropriate candidate for diversion pursuant to Chapter 2.8A (commencing with Section 1001.35) of Title 6, and may, if the defendant is eligible pursuant to Section 1001.36, grant diversion for a period not to exceed that set forth in paragraph (1) of subdivision (c). Upon the dismissal of charges at the conclusion of the period of diversion, pursuant to subdivision (e) of Section 1001.36, a defendant shall no longer be deemed incompetent to stand trial pursuant to this section.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 46 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

**(3)** Prior to making the order directing that the defendant be confined in a treatment facility or placed on outpatient status, the court shall proceed as follows:

(A) The court shall order the county mental health director or his or her designee to evaluate the defendant and to submit to the court within 15 judicial days of the order a written recommendation as to whether the defendant should be required to undergo outpatient treatment, or committed to a treatment facility. No person shall be admitted to a treatment facility or placed on outpatient status under this section without having been evaluated by the county mental health director or his or her designee. No person shall be admitted to a state hospital under this section unless the county mental health director finds that there is no less restrictive appropriate placement available and the county mental health director has a contract with the State Department of State Hospitals for these placements.

(B) The court shall hear and determine whether the defendant, with advice of his or her counsel, consents to the administration of antipsychotic medication, and shall proceed as follows:

(i) If the defendant, with advice of his or her counsel, consents, the court order of commitment shall include confirmation that antipsychotic medication may be given to the defendant as prescribed by a treating psychiatrist pursuant to the defendant's consent. The commitment order shall also indicate that, if the defendant withdraws consent for antipsychotic medication, after the treating psychiatrist complies with the provisions of subparagraph (C), the defendant shall be returned to court for a hearing in accordance with this subdivision regarding whether antipsychotic medication shall be administered involuntarily.

(ii) If the defendant does not consent to the administration of medication, the court shall hear and determine whether any of the following is true:

(I) The defendant lacks capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the patient will result. Probability of serious harm to the physical or mental health of the defendant requires evidence that the defendant is presently suffering adverse effects to his or her physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and his or her condition is substantially deteriorating. The fact that a defendant has a diagnosis of a mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant.

(II) The defendant is a danger to others, in that the defendant has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another while in custody, or the defendant had inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another that resulted in his or her being taken into custody, and the defendant presents, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm on others. Demonstrated danger may be based on an assessment of the defendant's present mental condition, including a consideration of past behavior of the defendant within six years prior to the time the defendant last attempted to inflict, inflicted, or threatened to inflict substantial physical harm on another, and other relevant evidence.

(III) The people have charged the defendant with a serious crime against the person or property; involuntary administration of antipsychotic medication is substantially likely to render the defendant competent to stand trial; the medication is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner; less intrusive treatments are unlikely to have substantially the same results; and antipsychotic medication is in the patient's best medical interest in light of his or her medical condition.

(iii) If the court finds any of the conditions described in clause (ii) to be true, the court shall issue an order authorizing the treatment facility to involuntarily administer antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist. The court shall not order involuntary administration of psychotropic medication under

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 47 of 59

subclause (III) of clause (ii) unless the court has first found that the defendant does not meet the criteria for involuntary administration of psychotropic medication under subclause (I) of clause (ii) and does not meet the criteria under subclause (II) of clause (ii).

(iv) In all cases, the treating hospital, facility, or program may administer medically appropriate antipsychotic medication prescribed by a psychiatrist in an emergency as described in subdivision (m) of Section 5008 of the Welfare and Institutions Code.

(v) Any report made pursuant to subdivision (b) shall include a description of any antipsychotic medication administered to the defendant and its effects and side effects, including effects on the defendant's appearance or behavior that would affect the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner. During the time the defendant is confined in a state hospital or other treatment facility or placed on outpatient status, either the defendant or the people may request that the court review any order made pursuant to this subdivision. The defendant, to the same extent enjoyed by other patients in the state hospital or other treatment facility, shall have the right to contact the patients' rights advocate regarding his or her rights under this section.

(C) If the defendant consented to antipsychotic medication as described in clause (i) of subparagraph (B), but subsequently withdraws his or her consent, or, if involuntary antipsychotic medication was not ordered pursuant to clause (ii) of subparagraph (B), and the treating psychiatrist determines that antipsychotic medication has become medically necessary and appropriate, the treating psychiatrist shall make efforts to obtain informed consent from the defendant for antipsychotic medication. If informed consent is not obtained from the defendant, and the treating psychiatrist is of the opinion that the defendant lacks capacity to make decisions regarding antipsychotic medication as specified in subclause (I) of clause (ii) of subparagraph (B), or that the defendant is a danger to others as specified in subclause (II) of clause (ii) of subparagraph (B), the committing court shall be notified of this, including an assessment of the current mental status of the defendant and the opinion of the treating psychiatrist that involuntary antipsychotic medication has become medically necessary and appropriate. The court shall provide copies of the report to the prosecuting attorney and to the attorney representing the defendant and shall set a hearing to determine whether involuntary antipsychotic medication should be ordered in the manner described in subparagraph (B).

(4) When the court, after considering the placement recommendation of the county mental health director required in paragraph (3), orders that the defendant be confined in a public or private treatment facility, the court shall provide copies of the following documents which shall be taken with the defendant to the treatment facility where the defendant is to be confined:

(A) The commitment order, including a specification of the charges.

(B) A computation or statement setting forth the maximum term of commitment in accordance with subdivision (c).

(C) A computation or statement setting forth the amount of credit for time served, if any, to be deducted from the maximum term of commitment.

(D) State summary criminal history information.

(E) Any arrest reports prepared by the police department or other law enforcement agency.

(F) Any court-ordered psychiatric examination or evaluation reports.

(G) The county mental health director's placement recommendation report.

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 48 of 59

**(5)** A person subject to commitment under this section may be placed on outpatient status under the supervision of the county mental health director or his or her designee by order of the court in accordance with the procedures contained in Title 15 (commencing with Section 1600) except that where the term "community program director" appears the term "county mental health director" shall be substituted.

**(6)** If the defendant is committed or transferred to a public or private treatment facility approved by the county mental health director, the court may, upon receiving the written recommendation of the county mental health director, transfer the defendant to another public or private treatment facility approved by the county mental health director. In the event of dismissal of the criminal charges before the defendant recovers competence, the person shall be subject to the applicable provisions of Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code. Where either the defendant or the prosecutor chooses to contest the order of transfer, a petition may be filed in the court for a hearing, which shall be held if the court determines that sufficient grounds exist. At the hearing, the prosecuting attorney or the defendant may present evidence bearing on the order of transfer. The court shall use the same standards as are used in conducting probation revocation hearings pursuant to Section 1203.2.

Prior to making an order for transfer under this section, the court shall notify the defendant, the attorney of record for the defendant, the prosecuting attorney, and the county mental health director or his or her designee.

(b) Within 90 days of a commitment made pursuant to subdivision (a), the medical director of the treatment facility to which the defendant is confined shall make a written report to the court and the county mental health director or his or her designee, concerning the defendant's progress toward recovery of mental competence. Where the defendant is on outpatient status, the outpatient treatment staff shall make a written report to the county mental health director concerning the defendant's progress toward recovery of mental competence. Within 90 days of placement on outpatient status, the county mental health director shall report to the court on this matter. If the defendant has not recovered mental competence, but the report discloses a substantial likelihood that the defendant will regain mental competence in the foreseeable future, the defendant shall remain in the treatment facility or on outpatient status. Thereafter, at six-month intervals or until the defendant becomes mentally competent, where the defendant is confined in a treatment facility, the medical director of the hospital or person in charge of the facility shall report in writing to the court and the county mental health director or a designee regarding the defendant's progress toward recovery of mental competence. Where the defendant is on outpatient status, after the initial 90–day report, the outpatient treatment staff shall report to the county mental health director on the defendant's progress toward recovery, and the county mental health director shall report to the court on this matter at six-month intervals. A copy of these reports shall be provided to the prosecutor and defense counsel by the court. If the report indicates that there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future, the committing court shall order the defendant to be returned to the court for proceedings pursuant to paragraph (2) of subdivision (c). The court shall transmit a copy of its order to the county mental health director or his or her designee.

(c)(1) If, at the end of one year from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the misdemeanor complaint, whichever is shorter, the defendant has not recovered mental competence, the defendant shall be returned to the committing court. The court shall notify the county mental health director or his or her designee of the return and of any resulting court orders.

(2) Whenever any defendant is returned to the court pursuant to subdivision (b) or paragraph (1) of this subdivision and it appears to the court that the defendant is gravely disabled, as defined in subparagraph (A) of paragraph (1) of subdivision (h) of Section 5008 of the Welfare and Institutions Code, the court shall order the conservatorship investigator of the county of commitment of the defendant to initiate conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code. Any hearings required in the conservatorship proceedings shall be held in the superior court in the county that ordered the commitment. The court shall transmit a copy of the order directing initiation of conservatorship proceedings to the county mental health director or his or her designee and shall notify the county mental health director or his or her designee of the outcome of the proceedings.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 49 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(d) The criminal action remains subject to dismissal pursuant to Section 1385. If the criminal action is dismissed, the court shall transmit a copy of the order of dismissal to the county mental health director or his or her designee.

(e) If the criminal charge against the defendant is dismissed, the defendant shall be released from any commitment ordered under this section, but without prejudice to the initiation of any proceedings which may be appropriate under Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code.


SEC. 27. Section 1372 of the Penal Code is amended to read:


<< CA PENAL § 1372 >>

1372. (a)(1) If the medical director of a state hospital, a person designated by the State Department of State Hospitals at an entity contracted by the department to provide services to a defendant prior to placement in a treatment program or other facility to which the defendant is committed, or the community program director, county mental health director, or regional center director providing outpatient services, determines that the defendant has regained mental competence, the director or designee shall immediately certify that fact to the court by filing a certificate of restoration with the court by certified mail, return receipt requested, or by confidential electronic transmission. For purposes of this section, the date of filing shall be the date on the return receipt.

(2) The court's order committing an individual to a State Department of State Hospitals facility or other treatment facility pursuant to Section 1370 shall include direction that the sheriff shall redeliver the patient to the court without any further order from the court upon receiving from the state hospital or treatment facility a copy of the certificate of restoration.

(3) The defendant shall be returned to the committing court in the following manner:

(A) A patient who remains confined in a state hospital or other treatment facility shall be redelivered to the sheriff of the county from which the patient was committed. The sheriff shall immediately return the person from the state hospital or other treatment facility to the court for further proceedings.

(B) The patient who is on outpatient status shall be returned by the sheriff to court through arrangements made by the outpatient treatment supervisor.

(C) In all cases, the patient shall be returned to the committing court no later than 10 days following the filing of a certificate of restoration. The state shall only pay for 10 hospital days for patients following the filing of a certificate of restoration of competency. The State Department of State Hospitals shall report to the fiscal and appropriate policy committees of the Legislature on an annual basis in February, on the number of days that exceed the 10–day limit prescribed in this subparagraph. This report shall include, but not be limited to, a data sheet that itemizes by county the number of days that exceed this 10–day limit during the preceding year.

(b) If the defendant becomes mentally competent after a conservatorship has been established pursuant to the applicable provisions of the Lanterman–Petris–Short Act, Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code, and Section 1370, the conservator shall certify that fact to the sheriff and district attorney of the county in which the defendant's case is pending, defendant's attorney of record, and the committing court.

(c) When a defendant is returned to court with a certification that competence has been regained, the court shall notify either the community program director, the county mental health director, or the regional center director and the Director of

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 50 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Developmental Services, as appropriate, of the date of any hearing on the defendant's competence and whether or not the defendant was found by the court to have recovered competence.

(d) If the committing court approves the certificate of restoration to competence as to a person in custody, the court shall hold a hearing to determine whether the person is entitled to be admitted to bail or released on own recognizance status pending conclusion of the proceedings. If the superior court approves the certificate of restoration to competence regarding a person on outpatient status, unless it appears that the person has refused to come to court, that person shall remain released either on own recognizance status, or, in the case of a developmentally disabled person, either on the defendant's promise or on the promise of a responsible adult to secure the person's appearance in court for further proceedings. If the person has refused to come to court, the court shall set bail and may place the person in custody until bail is posted.

(e) A defendant subject to either subdivision (a) or (b) who is not admitted to bail or released under subdivision (d) may, at the discretion of the court, upon recommendation of the director of the facility where the defendant is receiving treatment, be returned to the hospital or facility of his or her original commitment or other appropriate secure facility approved by the community program director, the county mental health director, or the regional center director. The recommendation submitted to the court shall be based on the opinion that the person will need continued treatment in a hospital or treatment facility in order to maintain competence to stand trial or that placing the person in a jail environment would create a substantial risk that the person would again become incompetent to stand trial before criminal proceedings could be resumed.

(f) Notwithstanding subdivision (e), if a defendant is returned by the court to a hospital or other facility for the purpose of maintaining competency to stand trial and that defendant is already under civil commitment to that hospital or facility from another county pursuant to the Lanterman–Petris–Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code) or as a developmentally disabled person committed pursuant to Article 2 (commencing with Section 6500) of Chapter 2 of Part 2 of Division 6 of the Welfare and Institutions Code, the costs of housing and treating the defendant in that facility following return pursuant to subdivision (e) shall be the responsibility of the original county of civil commitment.


SEC. 28. Section 4094 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 4094 >>

4094. (a) The State Department of Mental Health shall establish, by regulations adopted at the earliest possible date, but no later than December 31, 1994, program standards for any facility licensed as a community treatment facility. This section shall apply only to community treatment facilities described in this subdivision.

(b) Commencing July 1, 2012, the State Department of Health Care Services may adopt or amend regulations pertaining to the program standards for any facility licensed as a community treatment facility.

(c) A certification of compliance issued by the State Department of Health Care Services shall be a condition of licensure for the community treatment facility by the State Department of Social Services. The department may, upon the request of a county, delegate the certification and supervision of a community treatment facility to the county department of mental health.

(d) The State Department of Health Care Services shall adopt regulations to include, but not be limited to, the following:

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 51 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(1) Procedures by which the Director of Health Care Services shall certify that a facility requesting licensure as a community treatment facility pursuant to Chapter 3 (commencing with Section 1500) of Division 2 of the Health and Safety Code is in compliance with program standards established pursuant to this section.

(2) Procedures by which the Director of Health Care Services shall deny a certification to a facility or decertify a facility that is licensed as a community treatment facility pursuant to Chapter 3 (commencing with Section 1500) of Division 2 of the Health and Safety Code, but no longer complying with program standards established pursuant to this section, in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code.

(3) Provisions for site visits by the State Department of Health Care Services for the purpose of reviewing a facility's compliance with program standards established pursuant to this section.

(4) Provisions for the community care licensing staff of the State Department of Social Services to report to the State Department of Health Care Services when there is reasonable cause to believe that a community treatment facility is not in compliance with program standards established pursuant to this section.

(5) Provisions for the State Department of Health Care Services to provide consultation and documentation to the State Department of Social Services in any administrative proceeding regarding denial, suspension, or revocation of a community treatment facility license.

(e) The standards adopted by regulations pursuant to subdivisions (a) and (b) shall include, but not be limited to, standards for treatment, staffing, and for the use of psychotropic medication, discipline, and restraints in the facilities. The standards shall also meet the requirements of Section 4094.5.

(f)(1) A community treatment facility shall not be required by the State Department of Health Care Services to have 24–hour onsite licensed nursing staff, but shall retain at least one full-time, or full-time-equivalent, registered nurse onsite if all of the following are applicable:

(A) The facility does not use mechanical restraint.

(B) The facility only admits children who have been assessed, at the point of admission, by a licensed primary care provider and a licensed psychiatrist, who have concluded, with respect to each child, that the child does not require medical services that require 24–hour nursing coverage. For purposes of this section, a "primary care provider" includes a person defined in Section 14254, or a nurse practitioner who has the responsibility for providing initial and primary care to patients, for maintaining the continuity of care, and for initiating referral for specialist care.

(C) Other medical or nursing staff shall be available on call to provide appropriate services, when necessary, within one hour.

(D) All direct care staff shall be trained in first aid and cardiopulmonary resuscitation, and in emergency intervention techniques and methods approved by the Community Care Licensing Division of the State Department of Social Services.

(2) The State Department of Health Care Services may adopt emergency regulations as necessary to implement this subdivision. The adoption of these regulations shall be deemed to be an emergency and necessary for the immediate preservation of the public peace, health and safety, and general welfare. The regulations shall be exempt from review by the Office of Administrative Law and shall become effective immediately upon filing with the Secretary of State. The regulations shall not remain in effect more than 180 days unless the adopting agency complies with all the provisions of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, as required by subdivision (e) of Section 11346.1 of the Government Code.

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 52 of 59

(g) During the initial public comment period for the adoption of the regulations required by this section, the community care facility licensing regulations proposed by the State Department of Social Services and the program standards proposed by the State Department of Health Care Services shall be presented simultaneously.

(h) A minor shall be admitted to a community treatment facility only if the requirements of Section 4094.5 and either of the following conditions are met:

(1) The minor is within the jurisdiction of the juvenile court, and has made voluntary application for mental health services pursuant to Section 6552.

(2) Informed consent is given by a parent, guardian, conservator, or other person having custody of the minor.

(i) Any minor admitted to a community treatment facility shall have the same due process rights afforded to a minor who may be admitted to a state hospital, pursuant to the holding in In re Roger S. (1977) 19 Cal.3d 921. Minors who are wards or dependents of the court and to whom this subdivision applies shall be afforded due process in accordance with Section 6552 and related case law, including In re Michael E. (1975) 15 Cal.3d 183. Regulations adopted pursuant to Section 4094 shall specify the procedures for ensuring these rights, including provisions for notification of rights and the time and place of hearings.

\* \* \*

SEC. 29. Chapter 6.5 (commencing with Section 4361) is added to Part 3 of Division 4 of the Welfare and Institutions Code, to read:

d. 4 pt. 3 ch. 6.5 pr. § 4361

Chapter 6.5. Diversion Funding for Individuals with Serious Mental Disorders

<< CA WEL & INST § 4361 >>

4361. (a) As used in this section, "department" means the State Department of State Hospitals.

(b) The purpose of this chapter is to, subject to appropriation by the Legislature, promote the diversion of individuals with serious mental disorders as prescribed in Chapter 2.8A (commencing with Section 1001.35) of Title 6 of Part 2 of the Penal Code, and to assist counties in providing diversion for individuals with serious mental illnesses who may otherwise be found incompetent to stand trial and committed to the State Department of State Hospitals for restoration of competency. In implementing this chapter, the department shall consider local discretion and flexibility in diversion activities that meet the community's needs and provide for the safe and effective treatment of individuals with serious mental disorders across a continuum of care.

(c)(1) Subject to appropriation by the Legislature, the department may solicit proposals from, and may contract with, a county to help fund the development or expansion of pretrial diversion described in Chapter 2.8A (commencing with Section 1001.35) of Title 6 of Part 2 of the Penal Code, for the population described in subdivision (b) and that meets all of the following criteria:

(A) Participants are individuals diagnosed with schizophrenia, schizoaffective disorder, or bipolar disorder, who have the potential to be found incompetent to stand trial for felony charges, pursuant to Section 1368 of the Penal Code, or who have been found incompetent to stand trial pursuant to clause (iv) of subparagraph (B) of paragraph (1) of subdivision (a) of Section 1370 of the Penal Code.

(B) There is a significant relationship between the individual's serious mental disorder and the charged offense, or between the individual's conditions of homelessness and the charged offense.

(C) The individual does not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18 of the Penal Code, if treated in the community.

(2) A county submitting a proposal for funding under this chapter shall designate a lead entity to apply for the funds. This lead entity shall show in its proposal that it has support from other county entities or other relevant entities, including courts, that are necessary to provide successful diversion of individuals under the contract.

(d) When evaluating proposals from the county, the department, in consultation with the Council on Criminal Justice and Behavioral Health within the Department of Corrections and Rehabilitation, shall prioritize proposals that demonstrate the potential to reduce referrals to the department of felony defendants who are likely to be found incompetent to stand trial, and that demonstrate all of the following:

(1) Provision of clinically appropriate or evidence-based mental health treatment and wraparound services across a continuum of care, as appropriate, to meet the individual needs of the diversion participant. For purposes of this section, "wraparound services" means services provided in addition to the mental health treatment necessary to meet the individual's needs for successfully managing his or her mental health symptoms and to successfully live in the community. Wraparound services provided by the diversion program may include, but are not limited to, forensic assertive community treatment teams, crisis residential services, intensive case management, criminal justice coordination, peer support, supportive housing, substance use disorder treatment, and vocational support.

(2) Collaboration between community stakeholders and other partner government agencies in the diversion of individuals with serious mental disorders.

(3) Connection of individuals to services in the community after they have completed diversion as provided in this chapter.

(e) The department may also provide funding in the contract with the county, subject to appropriation by the Legislature, to cover the cost of providing postbooking assessment of defendants who are likely to be found incompetent to stand trial on felony charges to determine whether the defendant would benefit from diversion as included in the contract.

(f) The department may also provide funding in the contract with the county, subject to appropriation by the Legislature, to cover the cost of in-jail treatment prior to the placement in the community for up to an average of 15 days for defendants who have been approved by the court for diversion as included in the contract.

(g) A county contracted pursuant to this chapter shall report data and outcomes to the department, within 90 days of the end of each quarter, regarding those individuals targeted by the contract and in the program. This subdivision shall not preclude the department from specifying reporting formats or from modifying, reducing, or adding data elements or outcome measures from a contracting county, as needed to provide for reporting of effective data and outcome measures. Notwithstanding any other law, but only to the extent not prohibited by federal law, the county shall provide specific patient information to the department for reporting purposes. The patient information shall be confidential and shall not be open to public inspection. A contracting county shall, at a minimum, report all of the following:

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 54 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(1) The number of individuals that the court ordered to postbooking diversion and the length of time for which the defendant has been ordered to diversion.

(2) The number of individuals originally declared incompetent to stand trial on felony charges that the court ultimately ordered to diversion.

(3) The number of individuals participating in diversion.

(4) The name, social security number, date of birth, and demographics of each individual participating in the program. This information shall be confidential and shall not be open to public inspection.

(5) The length of time in diversion for each participating individual. This information shall be confidential and shall not be open to public inspection.

(6) The types of services and supports provided to each individual participating in diversion. This information shall be confidential and shall not be open to public inspection.

(7) The number of days each individual was in jail prior to placement in diversion. This information shall be confidential and shall not be open to public inspection.

(8) The number of days that each individual spent in each level of care facility. This information shall be confidential and shall not be open to public inspection.

(9) The diagnoses of each individual participating in diversion. This information shall be confidential and shall not be open to public inspection.

(10) The nature of the charges for each individual participating in diversion. This information shall be confidential and shall not be open to public inspection.

(11) The number of individuals who completed diversion.

(12) The name, social security number, and birthdate of each individual who did not complete diversion and the reasons for not completing. This information shall be confidential and shall not be open to public inspection.

(h) Contracts awarded pursuant to this chapter shall be exempt from the requirements contained in the Public Contract Code and the State Administrative Manual and shall not be subject to approval by the Department of General Services.

(i)(1) In order to receive funds pursuant to this chapter, a county's proposal shall demonstrate a 20–percent match of county funds toward the total cost of diversion to be funded through the contract.

(2) Notwithstanding paragraph (1), a proposal from a small county shall demonstrate a 10–percent match of county funds toward the total cost of diversion to be funded through the contract. For purposes of this paragraph, "small county" means a county with a population of 200,000 or less based on the most recent available estimates of population data determined by the Demographic Research Unit of the Department of Finance.

(3) The funds shall not be used to supplant existing services or services reimbursable from an available source but rather to expand upon them or support new services for which existing reimbursement may be limited. Up to 5 percent of the required county match may be met through county administrative costs associated with development and evaluation activities for diversion.

(j) Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, the state hospitals and the department may implement, interpret, or make specific this section by means of a departmental letter or other similar instruction, as necessary.

(k) The department shall have access to the arrest records and state summary of criminal history of defendants who are participating or have participated in the diversion program. The information may be used solely for the purpose of looking at the recidivism rate for those patients.

<< Repealed: CA WEL & INST § 14105.965 >>

SEC. 30. Section 14105.965 of the Welfare and Institutions Code is repealed.

SEC. 31. Section 14149.9 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 14149.9 >>

14149.9. (a) It is the intent of the Legislature that the department pursue policies and programs to assist Medi–Cal beneficiaries in preventing or delaying the onset of type 2 diabetes.

(b)(1) The department shall establish the Diabetes Prevention Program (DPP) within the Medi–Cal fee-for-service and managed care delivery systems.

(2) A Medi–Cal managed care plan shall make the DPP available to enrolled beneficiaries in accordance with this article.

(c) In implementing the DPP, the department shall require that Medi–Cal providers offering DPP services comply with guidelines issued by the federal Centers for Disease Control and Prevention (CDC) and obtain CDC recognition in connection with the National Diabetes Prevention Program.

(d) The DPP shall be an evidence-based, lifestyle change program designed to prevent or delay the onset of type 2 diabetes among individuals with prediabetes.

(e) The DPP shall be made available to Medi–Cal beneficiaries no sooner than July 1, 2018.

(f) A Medi–Cal provider may identify and recommend participation in the DPP to a beneficiary who meets * * * **the eligibility requirements of the federal Centers for Disease Control and Prevention Diabetes Prevention Recognition Program.**

* * *

(g) In implementing the DPP, the department shall require Medi–Cal providers offering DPP services to use a CDC-approved lifestyle change curriculum that does all of the following:

(1) Emphasizes self-monitoring, self-efficacy, and problem solving.

(2) Provides for coach feedback.

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 56 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(3) Includes participant materials to support program goals.

(4) Requires participant weigh-ins to track and achieve program goals.

(h) DPP services shall be provided by peer coaches, who promote realistic lifestyle changes, emphasize weight loss through healthy eating and physical activity, and implement the DPP curriculum. A trained peer coach may be a physician, a nonphysician practitioner, or an unlicensed person who has been trained to deliver the required curriculum content and possesses the skills, knowledge, and qualities specified in the National Diabetes Prevention Program guidelines.

(i) A beneficiary who participates in the DPP shall be allowed to participate in 22 peer coaching sessions over a period of at least one year. Thereafter, the department shall provide a participating beneficiary who achieves and maintains a required minimum weight loss of 5 percent from the first core session, in accordance with CDC standards, with less intensive, ongoing maintenance sessions to help the beneficiary continue healthy behaviors.

(j)(1) The department shall develop payment methodologies, or adjust existing methodologies, for reimbursing DPP services and activities in the Medi–Cal fee-for-service delivery system, not to exceed 80 percent of the federal Medicare Program reimbursement for comparable service, billing, and diagnosis codes under the federal Medicare Program.

(2) For purposes of reimbursement under the Medi–Cal fee-for-service delivery system, an unlicensed peer coach shall have an arrangement with an enrolled Medi–Cal provider for purposes of reimbursement for rendered DPP services.

(k) This article shall be implemented only to the extent that the department obtains federal financial participation to the extent permitted by federal law, and obtains any necessary federal approvals.

(*l*) For the purposes of implementing this article, the department may enter into exclusive or nonexclusive contracts on a bid or negotiated basis, including contracts for the purpose of obtaining subject matter expertise or other technical assistance. A contract may be statewide or on a more limited geographic basis. A contract entered into or amended pursuant to this subdivision shall be exempt from all of the following:

(1) Part 2 (commencing with Section 10100) of Division 2 of the Public Contract Code.

(2) Chapter 6 (commencing with Section 14825) of Part 5.5 of Division 3 of the Government Code.

(3) Article 4 (commencing with Section 19130) of Chapter 5 of Part 2 of Division 5 of Title 2 of the Government Code.

(4) Review or approval of any division of the Department of General Services.

(m) Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, the department, without taking any further regulatory action, shall implement, interpret, or make specific this article, policies and procedures pertaining to the DPP, and applicable waivers and state plan amendments, by means of all-county letters, plan letters, plan or provider bulletins, or similar instructions until the time regulations are adopted. Thereafter, the department, by July 1, 2020, shall adopt regulations in accordance with the requirements of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code. Beginning six months after the effective date of this article, and notwithstanding Section 10231.5 of the Government Code, the department shall provide a status report to the Legislature on a semiannual basis until regulations have been adopted.

SEC. 32. Section 14197.5 is added to the Welfare and Institutions Code, to read:

Case 4:24-cv-01562-JST     Document 105-43     Filed 09/22/25     Page 57 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

<< CA WEL & INST § 14197.5 >>

14197.5. (a) Notwithstanding any other law, but no sooner than July 1, 2019, the Cost–Based Reimbursement Clinic Directed Payment Program shall be in operation.

(b) For purposes of this section, the following definitions apply:

(1) "Cost–based reimbursement clinics" or "CBRCs" have the same meaning as the providers described in subdivision (a) of Section 14105.24.

(2) "Cost–Based Reimbursement Clinic Directed Payment Program" or "CBRC DPP" or "program," means a directed payment initiative implemented pursuant to subsection (c) of Section 438.6 of Title 42 of the Code of Federal Regulations or other applicable federal authority that requires affected Medi–Cal managed care plans to compensate CBRCs that are network providers for all network contract services provided to enrollees of the applicable Medi–Cal managed care plan as those clinics would be reimbursed according to the Medi–Cal cost-based, fee-for-service methodology as described in Section 14105.24. Services provided to enrollees who are dually eligible for both the Medicare and Medi–Cal programs are excluded for purposes of this program.

(3) "Medi–Cal managed care plan" or "plan" has the same meaning as described in paragraph (4) of subdivision (m) of Section 14197.4.

(4) "Network provider" has the same meaning as that term is defined in paragraph (5) of subdivision (m) of Section 14197.4.

(c)(1) The department shall increase the capitation amounts paid to affected plans in each fiscal year by the amount the department deems necessary for the plan to comply with the requirements of this section, subject to the availability of nonfederal share funding described in subdivision (d).

(2) The directed payment amounts paid under this section shall not supplant amounts that would otherwise be payable by a plan to a CBRC for an applicable fiscal year, and the plan shall not impose a fee or retention amount that would result in a direct or indirect reduction to the amounts required under this section.

(d) The nonfederal share of the increases described in subdivision (c) may be funded through voluntary, intergovernmental transfers from affected counties or other public entities pursuant to Section 14164. Subject to an appropriation in the annual Budget Act, the first thirty million dollars ($30,000,000) of nonfederal share in each fiscal year, or any lesser amount as determined by the department pursuant to paragraph (2) of subdivision (e), shall be financed by other state funds appropriated to the department for this purpose. Upon providing any intergovernmental transfer of funds, each transferring entity shall certify, in the form and manner specified by the department, that the transferred funds qualify for federal financial participation pursuant to applicable Medicaid laws. Any intergovernmental transfer of funds made pursuant to this section shall be considered voluntary for purposes of all federal laws. Notwithstanding any other law, the department shall not assess the fee described in subdivision (d) of Section 14301.4 nor any other similar fee.

(e)(1) The department shall consult with the affected counties on a periodic basis, as determined appropriate by the department, to assess the extent to which implementation of the directed payments under this section in a particular fiscal year is likely to be federally approved and remains financially and programmatically supportive of the Medi–Cal program.

(2) After consulting with the affected counties pursuant to paragraph (1), the department may do either of the following:

Case 4:24-cv-01562-JST    Document 105-43    Filed 09/22/25    Page 58 of 59

HEALTH AND SANITATION—MEDI-CAL PROGRAM, 2018 Cal. Legis. Serv. Ch. 34...

(A) Reduce the total size of CBRC DPP payments to be made in that applicable fiscal year. If the department elects to reduce the total size of payments, the amount of state funding required to be provided first as nonfederal share for an applicable fiscal year pursuant to subdivision (d) shall be reduced as calculated and determined by the department.

(B) Elect to not implement CBRC DPP payments for an applicable fiscal year or years.

(f) Notwithstanding any other law, for any fiscal year in which the department implements the CBRC DPP payments, the amount of state funding provided as described in subdivision (d) shall not be included in the total revenues as defined in paragraph (7) of subdivision (b) of Section 17612.5.

(g) Notwithstanding Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, the department may implement, interpret, or make specific this section, in whole or in part, by means of plan letters, provider bulletins, or other similar instructions, without taking regulatory action.

(h) This section shall be implemented only to the extent that any necessary federal approvals are obtained and federal financial participation is available and is not otherwise jeopardized.

SEC. 33. The State Department of Health Care Services, when seeking to recoup or recover funds from Medi–Cal fee-for-service providers due to circumstances including, but not limited to, federally approved rate or payment reductions, overpayments, or other audit-related payment recoveries, may, in its sole discretion, allow for modification in the amounts withheld from an applicable provider payment or the timing of repayments upon request of an individual provider and demonstration of hardship. The provider shall request that relief in the form and manner specified by the department and before the department takes action to recover or recoup the payment. The department's determination to exercise discretion pursuant to this section is not subject to judicial review. The department shall post on its provider Internet Web site the mechanism by which providers may request a modification to the timing of the provider's required recoupment. This section does not limit, reduce, or otherwise alter the provider's obligation to repay any and all amounts the department has deemed to be subject to recoupment or repayment.

SEC. 34. The Legislature finds and declares that this act, which adds Section 4361 to the Welfare and Institutions Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

The Legislature finds and declares that in order to protect the privacy of individuals participating in pretrial diversion programs funded pursuant to this act, subject to appropriation, it is necessary that the patient information and the name, social security number, and demographics of those individuals, as reported to the State Department of State Hospitals by the contracting counties, be confidential.

SEC. 35. The Legislature finds and declares that this act, which adds Chapter 8.5 (commencing with Section 127671) to Part 2 of Division 107 of the Health and Safety Code, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

In order to protect confidential and proprietary information submitted to the California Health Care Cost Transparency Database, it necessary for that information to remain confidential.

SEC. 36. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution for certain costs that may be incurred by a local agency or school district because, in that regard, this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

However, if the Commission on State Mandates determines that this act contains other costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

SEC. 37. This act is a bill providing for appropriations related to the Budget Bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution, has been identified as related to the budget in the Budget Bill, and shall take effect immediately.

## Footnotes

1    For public law sections classified to the U.S.C.A., see USCA–Tables.

2    Internal Revenue Code sections are in Title 26 of the U.S.C.A.

End of Document                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.