# EXHIBIT A
# to

**DECLARATION OF LISA RACHOWICZ IN SUPPORT OF DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

AMENDMENT IN COMMITTEE
6/16/2025

FILE NO. 250257                                    ORDINANCE NO. 98-25

1  [Planning, Building Codes - Interim Housing in Hotels and Motels]

2

3  Ordinance amending the Planning Code to allow <u>certain</u> tourist hotels and motels to be

4  used for Interim Housing without thereby abandoning or discontinuing the hotel use

5  classification under that Code<u>, and authorizing the reestablishment of hotel use for</u>

6  <u>certain Shelter-In-Place hotels</u>; amending the Building Code to allow Interim Housing

7  without thereby changing the underlying occupancy classification of the property,

8  <u>allowing reestablishment of hotel use for Shelter-In-Place hotels,</u> ~~and amending~~

9  ~~Appendix P to remove restriction that emergency housing be located on land owned or~~

10 ~~leased by the City;~~ affirming the Planning Department's determination under the

11 California Environmental Quality Act; and making findings of consistency with the

12 General Plan and the eight priority policies of Planning Code, Section 101.1, and

13 findings of public necessity, convenience, and welfare under Planning Code,

14 Section 302.

15

16       NOTE:   **Unchanged Code text and uncodified text** are in plain Arial font.
                **Additions to Codes** are in *single-underline italics Times New Roman font*.
17              **Deletions to Codes** are in ~~*strikethrough italics Times New Roman font*~~.
                **Board amendment additions** are in <u>double-underlined Arial font</u>.
18              **Board amendment deletions** are in ~~Arial font~~.
                **Asterisks** (*   *   *   *) indicate the omission of unchanged Code
19              subsections or parts of tables.

20

21       Be it ordained by the People of the City and County of San Francisco:

22       Section 1. Environmental, Land Use, and Related Findings.

23       (a) The Planning Department has determined that the actions contemplated in this

24 ordinance comply with the California Environmental Quality Act (California Public Resources

25 Code Sections 21000 et seq.). Said determination is on file with the Clerk of the Board of

Mayor Lurie
**BOARD OF SUPERVISORS**                                                         Page 1

Supervisors in File No. 250257 and is incorporated herein by reference. The Board affirms this determination.

(b) On May 8, 2025, the Planning Commission, in Resolution No. 21733, adopted findings that the actions contemplated in this ordinance are consistent, on balance, with the City's General Plan and eight priority policies of Planning Code Section 101.1. The Board adopts these findings as its own. A copy of said Resolution is on file with the Clerk of the Board of Supervisors in File No. 250257, and is incorporated herein by reference.

(c) Pursuant to Planning Code Section 302, this Board finds that these Planning Code amendments will serve the public necessity, convenience, and welfare for the reasons set forth in Planning Commission Resolution No. 21733 and the Board incorporates such reasons herein by reference. A copy of Planning Commission Resolution No. 21733 is on file with the Clerk of the Board of Supervisors in File No. 250257.

(d) On November 20, 2024, the Building Inspection Commission considered this ordinance at a duly noticed public hearing pursuant to Charter Section 4.121 and Building Code Section 104A.2.11.1.1. A copy of a letter from the Secretary of the Building Inspection Commission regarding the Commission's recommendation is on file with the Clerk of the Board of Supervisors in File No. 250257.

(e) No local findings are required under California Health and Safety Code Section 17958.7 because the amendments to the Building Code contained in this ordinance do not regulate materials or manner of construction or repair, and instead relate in their entirety to administrative procedures for implementing the code, which are expressly excluded from the definition of a "building standard" by California Health and Safety Code Section 18909(c).

(f) To the extent the amendments contained in this ordinance reference existing provisions of San Francisco Building Code Appendix P and could be considered "building standards," California Government Code Sections 8698 through 8698.4 authorize the Board

of Supervisors to declare the existence of a shelter crisis upon a finding that a significant number of persons within the jurisdiction are without the ability to obtain shelter, and that the situation has resulted in a threat to the health and safety of those persons. These Government Code provisions authorize the City to suspend strict compliance with state and local statutes, ordinances, and regulations setting housing, health, or safety standards for new public facilities opened to homeless persons in response to the shelter crisis, to the extent that strict compliance would prevent, hinder, or delay the mitigation of the shelter crisis, and allow the City to enact its own standards for the shelters that ensure basic public health and safety.

(g) In Ordinance No. 57-16, enacted on April 22, 2016, the Board of Supervisors found that a significant number of persons within the City lack the ability to obtain shelter, which has resulted in a threat to their health and safety. For that reason, and based on factual findings set forth in that ordinance, the Board of Supervisors declared the existence of a shelter crisis in the City pursuant to California Government Code Section 8698 through 8698.2.

(h) In Ordinance No. 60-19, enacted on April 4, 2019, the Board of Supervisors affirmed that the shelter crisis was still ongoing, and that requiring homeless shelters located on property owned or leased by the City to go through the standard building permitting process for construction, repair and siting prevents, hinders and delays efforts to mitigate the shelter crisis. Therefore, the Board adopted the optional, streamlined approval process codified in Ordinance No. 60-19 in accordance with California Government Code Section 8698.4.

Section 2. General Findings.

(a) The tourism and hospitality sector of the San Francisco economy plays a vital role in drawing visitors to the City in record numbers. But hotel occupancy declined precipitously during the COVID-19 crisis. Although hotel occupancy rates have continued to climb upward

since they hit bottom in 2020, current occupancy rates are still below peak occupancy levels in 2018 and 2019.

(b) At the same time, the City lacks sufficient sites to provide shelter for persons who are experiencing homelessness or are at risk of homelessness. The City continues to look for ways to increase opportunities for emergency housing locations, through both shelter options and permanent supportive housing.

(c) In Ordinance 92-22, enacted on June 24, 2022, the City created the Places for All Program, which states that it is the policy of the City to offer to every person experiencing homelessness in San Francisco a safe place to sleep. While the first priority is expanding opportunities for safe, affordable, and permanent housing for all residents, the Places for All Program commits the City to exploring opportunities for people experiencing homelessness to have temporary shelter through the following: Navigation Centers, adult emergency shelters, crisis stabilization units, family shelters, hotel placements, Safe Overnight Parking Lots, non-congregate cabins, Safe Sleep Sites, other non-congregate shelter, and shelters for transitional aged youth ("TAY").

(d) Interim Housing is a form of shelter where program participants have individual rooms, with shared amenities such as kitchens, pantries, and laundry facilities. Residents have access to on-site case managers, other supportive services, and additional resources needed to build self-sufficiency.

(e) California Civil Code Sections 1954.08 through 1954.093 provide that individuals occupying a shelter located in a hotel or motel are not tenants, and do not have a tenancy or hotel-customer relationship with the hotel operator. It also provides that a hotel or motel may not be designated a nontransient hotel or motel solely as a result of a shelter participant's stay.

(f) The Department of Homelessness and Supportive Housing ("HSH") has expertise working closely with building owners, non-profit providers, and clients to responsibly wind-down shelter programs in a client-centered manner. In advance of any Interim Housing ceasing its operations, HSH has stated that it intends to offer program participants a housing assessment through the City's Coordinated Entry system. HSH intends to offer housing to any such participants who are designated as housing referral status through that assessment and a comparable shelter placement while the participant awaits housing placement. Participants who are not eligible for City-funded housing will be offered a comparable shelter bed, if available. All program participants will at minimum be offered a congregate shelter placement prior to the closure of the Interim Housing. Prior to the closure of the Interim Housing, HSH intends to notify community stakeholders.

(g) While the hotel industry continues to recover and evolve, the public interest would be served if underutilized hotels and motels could provide much needed Interim Housing. It is reasonable for the City to partner with underutilized and vacant hotels and motels to provide safe housing and services for individuals in need of housing.

(h) It would be unreasonable and counter to the public interest to require that tourist hotels and motels used as Interim Housing lose their underlying tourist use designation and occupancy classification under the Planning and Building Codes. Accordingly, this ordinance provides just the opposite, that hotels and motels used as Interim Housing will retain their tourist use designation and occupancy classification under the respective codes.

(i) Many hotels and motels are currently staffed by union-represented workers. Nothing in this ordinance is intended to interfere with successorship principles under federal law.

(j) Historically and programmatically, HSH works with their contracted service providers to try and retain any existing staff. This practice encourages continuity and offers existing workers the opportunity to continue employment in their existing capacities.

(k) As part of its initial response to COVID-19, the City launched the Shelter-in-Place ("SIP") Hotel Program. The SIP Hotel Program made a historic commitment to serving the unhoused population by providing non-congregate shelter for over 3,700 people experiencing homelessness who were most vulnerable to COVID-19. Over the course of the program, HSH served 3,356 adult guests in these non-congregate hotel sites, and two-thirds of eligible guests exited to housing.

(l) One unintended consequence of the SIP Hotel Program is that some participating hotels may have abandoned or discontinued the previously approved hotel use under applicable provisions of City law. It is reasonable to permit the hotels that participated in the SIP Hotel Program to reactivate the hotel use, and to not require strict compliance with the Planning Code.

Section 3. Article 2 of the Planning Code is hereby amended by revising Sections 202.15 and 317, to read as follows:

**SEC. 202.15. INTERIM HOUSING IN HOTELS AND MOTELS.**

(a) **Purpose.** This Section 202.15 is intended to create additional opportunities to locate shelters for persons experiencing homelessness or at risk of homelessness where those persons can receive on-site supportive services. Interim Housing can help reduce the likelihood of negative outcomes for people experiencing homelessness or at risk of experiencing homelessness. Tourist Hotels and Motels are authorized under the Planning Code as separate uses, both of which are considered part of the Retail Sales and Service use category. Hotels and Motels are generally designed to offer privacy for individuals or small

groups of individuals in a non-congregate setting while also providing a common space for gathering and various services. This layout and structure is a natural fit for Interim Housing, where individuals or small groups of individuals may desire or need private accommodations while still needing certain supportive services. At the same time, Tourist Hotels and Motels may not desire to locate Interim Housing on their premises, if it would result in the loss of the underlying Hotel or Motel use. This Section allows Tourist Hotel and Motel operators to locate Interim Housing, as defined, on their properties without losing the underlying Hotel or Motel use.

(b) **Definitions.** For purposes of this Section 202.15, the following definitions shall apply.

"**Client**" means any person residing in or seeking to reside in Interim Housing, and includes any dependent children under the age of 18.

"**Interim Housing**" means a Residential use located on land owned or leased by the City, or provided through a contractual arrangement between the City and a third party, that provides shelter to Clients experiencing homelessness or at risk of homelessness, and provides on-site supportive services, including, without limitation, intake and assessment of Clients' needs, outreach to the Clients to assist them with health or social needs, management of the health or social needs of Clients, and referrals for services to the Clients.

(c) **Interim Housing Use Authorized.** Any Hotel or Motel identified in this subsection 202.15(c) use may operate all or any portion of its premises as Interim Housing without abandoning or discontinuing its land use authorization as a Hotel or Motel under the Planning Code, irrespective of whether such existing Hotel or Motel use is a principally permitted, conditionally permitted, or nonconforming use. This authorization shall not be interpreted to exempt the Hotel or Motel use from any provision of the Planning Code. Any Interim Housing

use authorized pursuant to this Section 202.15 shall be permitted for no more than 90 days after the shelter emergency pursuant to Government Code Section 8698.4 is terminated.

Interim Housing is authorized at only the following locations: Block 3519, Lot<u>s</u> 006<u>,</u> 010<s>101</s><u>, and 012; Block 0496, Lot 013; Block 3731, Lot 003; and Block 3703, Lot 081</u>.

(d) **Application.** The property owner or the property owner's authorized agent (in either case, "Applicant") shall submit an application for Interim Housing use to the Planning Department, on a form prepared by the Planning Department. The application shall include an affidavit signed by the Applicant, and the property owner, if the Applicant is not the property owner, detailing the proposed Interim Housing use of the property. A Hotel or Motel identified in subsection (c) and existing after April 1, 2025 may apply to establish Interim Housing pursuant to this Section 202.15 without losing its Hotel or Motel use.

(e) **No Conversion, Change, Discontinuance, or Abandonment of Use.** The approval or commencement of the Interim Housing authorized under this Section 202.15 shall not be considered a conversion, discontinuance, abandonment, or change of use for purposes of this Code, notwithstanding Sections 178 and 183 of this Code, or any other related provisions. Any Hotel or Motel use established as of the time the Interim Housing use shall continue to be authorized under the Planning Code for as long as such property is used for Interim Housing pursuant to this Section 202.15.

(f) **Application of Other Development Controls and Requirements.** The Interim Housing use that is authorized pursuant to this Section 202.15 shall not be required to comply with development standards applicable to new residential uses, including but not limited to density, rear yard, open space, exposure, and other requirements set forth in Articles 1.2, 1.5, or 2 of the Planning Code. The Interim Housing use shall not be subject to any development impact fees or development requirements set forth in Article 4 of the Planning Code as a prerequisite to obtaining authorization pursuant to this Section 202.15.

(g) **Termination of Interim Housing Use.** Prior to the termination of the Interim Housing use authorized under this Section 202.15, the Department of Homelessness and Supportive Housing ~~("HSH")~~, or other City funding agency, if applicable, shall work with the Interim Housing service provider, if any, to relocate existing program participants prior to the time the Interim Housing use terminates.  No less than one year prior to expiration of any agreement to provide Interim Housing, the property owner or landlord shall provide notice to ~~HSH~~ the City agency that funded the Interim Housing, of its intent to not renew any agreement with the City or Interim Housing provider, in order to allow ~~HSH~~ the City agency that funded the Interim Housing, and the service provider time to assist in relocating existing program participant of the Interim Housing.

(h) **Reactivation of Hotel or Motel Use for Certain Shelter-In-Place Hotels.** Notwithstanding Section 178, a Hotel or Motel located at Block 0304, Lot 005, Block 0715, Lot 011, Block 0335, Lot 027 that otherwise abandoned or discontinued the Tourist Hotel use due to participation in the City's Shelter-In-Place Hotel Program may reestablish such use, if the Zoning Administrator determines that: (1) the Hotel or Motel entered into an agreement with the City to provide non-congregant shelter as part of the City's Shelter-In-Place Hotel Program; and (2) the Hotel or Motel continued to provide shelter services under an agreement with the City on or after January 1, 2025.  Any such reestablished use shall comply with the applicable requirements of the Planning Code, provided that the Hotel or Motel use shall not be required to comply with Article 4 of the Planning Code concerning development impact fees and project requirements to reestablish the use, and the abandonment of the shelter use and reactivation of the Hotel or Motel use shall not be considered removal of residential units pursuant to Section 317.  The authorization in this subsection 202.15(h) shall not apply to any units that were Residential Units in a Residential Hotel, as those terms are defined in Chapter

41 of the Administrative Code, at the time the Hotel or Motel began to participate in the Shelter-in-Place Hotel Program.

**SEC. 317. LOSS OF RESIDENTIAL AND UNAUTHORIZED UNITS THROUGH DEMOLITION, MERGER, AND CONVERSION.**

\* \* \* \*

**(c) Applicability; Exemptions.**

\* \* \* \*

(11) If a Hotel or Motel is lawfully authorized for Interim Housing use in accordance with Section 202.15, and such use ceases, the abandonment, cessation, or termination of Interim Housing use shall not be considered a Residential Conversion. The reactivation of any Hotel or Motel use pursuant to Section 202.15(h) shall not be considered a Residential Conversion.

\* \* \* \*

Section 4. Chapter 1A of the Building Code is hereby amended by revising Section 106A (specifically Section 106A.2), to read as follows:

**106A.2 Work exempt from permit.** [Section 105.2 of the California Building Code.] Exemptions from the permit requirements of this code shall not be deemed to grant authorization for any work to be done in any manner in violation of the provisions of this code or any other laws or ordinances of this jurisdiction. A building permit shall not be required for the following:

\* \* \* \*

25. Use of a hotel or motel for Interim Housing use, as defined and authorized in Planning Code Section 202.15, as may be amended from time to time, where the Department confirms the hotel or motel meets the minimum fire and safety requirements set forth in Section P111 of Appendix P to this Code. The use of a hotel or motel or any units within a hotel or motel for Interim Housing shall not change the underlying occupancy classification of the property.

26. The reestablishment of a Hotel or Motel use pursuant to Planning Code Section 202.15(h) for any such use that participated in the City's Shelter-In-Place Hotel Program and was operated as a shelter. Such reestablishment of the Hotel or Motel Use shall not be considered a change in the underlying occupancy classification of the property.

Section 5. Effective Date. This ordinance shall become effective 30 days after enactment. Enactment occurs when the Mayor signs the ordinance, the Mayor returns the ordinance unsigned or does not sign the ordinance within ten days of receiving it, or the Board of Supervisors overrides the Mayor's veto of the ordinance.

Section 6. Scope of Ordinance. In enacting this ordinance, the Board of Supervisors intends to amend only those words, phrases, paragraphs, subsections, sections, articles, numbers, punctuation marks, charts, diagrams, or any other constituent parts of the Municipal Code that are explicitly shown in this ordinance as additions, deletions, Board amendment additions, and Board amendment deletions in accordance with the "Note" that appears under the official title of the ordinance.

Section 7. This ordinance is a duplicate of the ordinance in Board File No. 241067 (the Original Ordinance, Ordinance No. 039-25). The Original Ordinance, as amended, modified Planning Code Sections 202.15, and 317, and Building Code Sections 106A.2, and P101.

At the regular meeting of the Land Use and Transportation Committee on March 17, 2025, the Committee duplicated file No. 241067, made further amendments to the Original Ordinance, and continued this duplicated file (Board File No. 250257). Following the March 17, 2025 meeting, the duplicated file was referred to the Planning Commission.

The Committee also referred the Original Ordinance to the full Board of Supervisors without recommendation as a committee report. The Board of Supervisors passed the Original Ordinance, as amended, on first read on March 18, 2025, and on second read on March 25, 2025. The Mayor signed the Original Ordinance on April 3, 2025, and the Original Ordinance became effective on May 3, 2025.

In light of the Original Ordinance in Board file No. 241067 becoming effective, at the regular meeting of the Land Use and Transportation Committee on June 9, 2025, the Committee amended this ordinance to remove the proposed amendments other than the amendments to Planning Code Sections 202.15 and 317, and Building Code Section 160A.2, such that this ordinance no longer includes other amendments in the Original Ordinance.

To clearly understand the proposed amendments to existing law (Planning Code Sections 202.15 and 317 and Building Code Section 106A.2, as enacted by Ordinance No. 039-25) contained in this version of this ordinance (Board File 250257), this ordinance shows in "existing text" font (plain Arial) the law currently in effect (Planning Code Section 202.15, and Building Code Section 106A.2, as enacted by Ordinance No. 039-25). The ordinance shows in "Board amendment" font (double-underlined Arial for additions, and strikethrough Arial for deletions) any amendments to existing law.

<u>This version of this ordinance also includes a revised long title that describes the ordinance, showing changes between the Original Ordinance and this ordinance and minor changes for clarity in Board amendment font.</u>

APPROVED AS TO FORM:
DAVID CHIU, City Attorney

By: ____/s/_____
AUSTIN M. YANG
Deputy City Attorney

n:\legana\as2025\2500120\01848933.docx



**City and County of San Francisco**

**Tails**

**Ordinance**

City Hall
1 Dr. Carlton B. Goodlett Place
San Francisco, CA 94102-4689

---

**File Number:** 250257                **Date Passed:** June 24, 2025

Ordinance amending the Planning Code to allow certain tourist hotels and motels to be used for Interim Housing without thereby abandoning or discontinuing the hotel use classification under that Code, and authorizing the reestablishment of hotel use for certain Shelter-In-Place hotels; amending the Building Code to allow Interim Housing without thereby changing the underlying occupancy classification of the property, allowing reestablishment of hotel use for Shelter-In-Place hotels; affirming the Planning Department's determination under the California Environmental Quality Act; and making findings of consistency with the General Plan and the eight priority policies of Planning Code, Section 101.1, and findings of public necessity, convenience, and welfare under Planning Code, Section 302.

March 17, 2025 Land Use and Transportation Committee - AMENDED, AN AMENDMENT OF THE WHOLE BEARING NEW TITLE

March 17, 2025 Land Use and Transportation Committee - CONTINUED TO CALL OF THE CHAIR AS AMENDED

June 09, 2025 Land Use and Transportation Committee - AMENDED, AN AMENDMENT OF THE WHOLE BEARING NEW TITLE

June 09, 2025 Land Use and Transportation Committee - CONTINUED AS AMENDED

June 16, 2025 Land Use and Transportation Committee - AMENDED, AN AMENDMENT OF THE WHOLE BEARING SAME TITLE

June 16, 2025 Land Use and Transportation Committee - RECOMMENDED AS AMENDED AS A COMMITTEE REPORT

June 17, 2025 Board of Supervisors - PASSED, ON FIRST READING

Ayes: 11 - Chan, Chen, Dorsey, Engardio, Fielder, Mahmood, Mandelman, Melgar, Sauter, Sherrill and Walton

June 24, 2025 Board of Supervisors - FINALLY PASSED

Ayes: 11 - Chan, Chen, Dorsey, Engardio, Fielder, Mahmood, Mandelman, Melgar, Sauter, Sherrill and Walton

File No. 250257

I hereby certify that the foregoing Ordinance was FINALLY PASSED on 6/24/2025 by the Board of Supervisors of the City and County of San Francisco.

Angela Calvillo
Clerk of the Board

Daniel Lurie
Mayor

6/27/25

Date Approved