DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
TARA M. STEELEY, State Bar #231775
JOHN H. GEORGE, State Bar #292332
KAITLYN M. MURPHY, State Bar #293309
ABIGAIL H. WALD, State Bar #309110
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4655 (Steeley)
               (415) 554-4223 (George)
               (415) 554-6762 (Murphy)
               (415) 554-3901 (Wald)
Facsimile:     (415) 554-4699
E-Mail:        tara.steeley@sfcityatty.org
               john.george@sfcityatty.org
               kaitlyn.murphy@sfcityatty.org
               abigail.wald@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a California public entity,<br><br>Defendant. | Case No. 4:24-cv-01562-JST<br><br>**DECLARATION OF LT. WAYMAN YOUNG IN SUPPORT OF DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:  October 27, 2025<br>Time:          8:30 a.m.<br>Place:         Courtroom 6, 2nd Floor<br>               1301 Clay Street<br>               Oakland, CA 94612<br><br>Trial Date:    August 10, 2026<br><br>Attachments:   Exhibits A-C |

I, Lt. Wayman Young, declare:

1. I have personal knowledge of the matters stated herein, and if called and sworn as a witness could and would competently testify thereto.

2. I am a Lieutenant in the San Francisco Police Department ("SFPD"). I have worked at SFPD for 21 years. When San Francisco's Healthy Streets Operations Center ("HSOC") was created in January 2018, I joined HSOC as the field Supervisor Sergeant. Once HSOC reformed after being disbanded for 10 months, I rejoined in August 2022 as a Sergeant. In November 2022, I was promoted to Lieutenant and left HSOC. I returned to HSOC as the Lieutenant on February 27, 2023. Currently, I supervise four (4) Sergeants and twenty-five (25) SFPD officers providing support to HSOC and I also supervise the daily District Station Support ("DSS") which is known within the Department of Public Works as the Neighborhood Streets Team ("NST"), hereinafter referred to as DSS/NST.

**HSOC**

3. When calls come in relating to homeless encampments or similar complaints, they are typically coded by dispatchers as 915 or 919 calls. These calls typically come in from members of the public and dispatching posts them to the "311 workers app," which is an electronic system that enables officers to respond to calls for service from their work phone. Although any officer can respond to a 915 or 919 call for service, HSOC officers respond to many of these calls.

4. When responding to 915 or 919 calls for service, Officers adhere to all aspects of SFPD Bulletin 24-126. A true and correct copy of SFPD Bulletin 24-126 is attached to this declaration as **Exhibit A**.

5. SFPD Officers assigned to HSOC support HSOC outreach. Although SFPD does not seek to cite these individuals—indeed, issuing a citation to unhoused individuals is a last resort—if they refuse to cooperate they can be cited for ordinance and criminal violations.

6. Further, if SFPD Officers encounter minors experiencing homelessness, they are instructed to follow Department General Order No. 7.01 and Department Bulletin 22-043. A true and correct copy of these are attached as **Exhibits B** and **C**.

7. I am regularly present at HSOC resolutions and am in constant contact with the Officers under my command who attend HSOC resolutions. Members of the public are able to observe virtually all action we take during the resolutions.

8. The HSOC resolutions now generally involved larger encampments, requires several days notice to the individuals in the encampments, and requires more time to remove the encampments by DPW staff. The NST teams, coordinated and lead by the Department of Emergency Management (DEM), respond quickly to generally smaller unhoused sites that are complained of.

**DSS/NST**

9. In March 2025, a new program called the District Station Support within SFPD, but referred to within DPW as the Neighborhood Streets Team, was modified to include HSOC encampment response but also added a mechanism for a daily response to complaints of unhoused people in the streets. DSS/NST operates throughout the City and County of San Francisco, but there is a separate DSS/NST team dedicated primarily to the Mission and Tenderloin neighborhoods.

10. There are 25 SFPD officers dedicated to the DSS/NST team and they are not drawn from district police stations. The DSS/NST teams are dispatched seven (7) days per week. There are three (3) DSS/NST teams. One team is dedicated to the Tenderloin and Northern District neighborhood, one team is dedicated to the Mission, Southern and Ingleside neighborhoods, and one team is dedicated to the rest of the City.  Each team includes DPW employees and two (2) SFPD officers. Each morning the NST teams meet at 1145 Market Street at 8:30 a.m. Each morning the sites are identified by a combination of 311 complaints, command staff within SFPD with notice of complaints or problems, and community complaints. Sites affecting quality of life are prioritized, for example residential sites, schools, parks, and public facilities. Myself, my team, and DPW have become familiar with the areas where there are repeated issues and those areas are prioritized as part of the daily NST program.

11. SFPD officers accompany DPW as part of the DSS/NST to respond to each of the prioritized sites. The dedicated SFPD officers remain on site to ensure the safety and security of all persons and employees present. Similar to the conditions encountered during HSOC resolutions, the same conditions have been found to exist during NST work. As part of the DSS/NST response,

officers offer shelter, and assist with shelter if accepted. There are circumstances where individuals may be cited for various offenses. For example, if a person has set up tents or structures. We will also address individuals obstructing the sidewalk, blocking entrances to buildings, blocking ingress and egress from fire escapes, blocking garages, and occupying private property, if we observe these issues. We respond to non-emergency complaints only from 311 application calls. More urgent calls for service, such as blocked emergency exits or fire escapes, and occupying private property, are addressed to district officers to respond since they require a more urgent response.

12. I am regularly present at DSS/NST responses and am in constant contact with the Officers under my command who attend DSS/NST responses.

13. Approximately three to four sites are approached and cleared each day as part of the DSS/NST program in the Tenderloin.

14. The purpose of the DSS/NST teams are to be able to be more mobile and responsive to immediate concerns. HSOC resolutions typically involve larger encampments with multiple tents, but the DSS/NST respond to smaller tent encampments or structures.

15. The DSS/NST teams work seven (7) days per week from 8:30 a.m. to approximately 4:00 p.m.

16. The DSS/NST teams work pursuant to SFPD Department Notice 24-126 and 24-140.

17. It is my understanding that SFPD and DPW will continue to respond to complaints with the DSS/NST strategy.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on September 17, 2025, at San Francisco, California.

                                              Lt. Wayman Young #100

                                              Wayman Young