

Matthew D. Davis
mdavis@walkuplawoffice.com

October 23, 2025

**Via Electronic Mail Only**

The Honorable Robert M. Illman
Magistrate Judge
c/o  Judge Illman's Courtroom Deputy
Clerk, Ms. Knudson,
rmicrd@cand.uscourts.gov

      **Re:**   *Jane Roe, et al. v. CCSF, et al.*
              USDC-Northern California case #4:24-cv-01562-JST

Dear Magistrate Judge Illman:

      The parties present this discovery dispute pursuant to Paragraph Four of the Court's General Standing Order. Judge Tigar referred discovery disputes in this case. ECF No. 110.

      **Description of Every Issue In Dispute:**

      Plaintiffs sent deposition notices for the executive officers of two non-profits ("Non-Profit Deponents"): (1) Hospitality House Executive Director Joseph Wilson and (2) SF AIDS Foundation CEO Tyler TerMeer. San Francisco objected to the Non-Profit depositions as in excess of Rule 30's 10-deposition limit and the Court's Scheduling Orders. ECF No. 99, 110.

      Pursuant to your standing order on discovery the parties have met and conferred and could not resolve this matter. They therefore submit this joint letter to you.

**I. PLAINTIFFS' POSITION**

      Judge Tigar's October 2, 2025 order authorized Plaintiffs to "seek the depositions of Joe Wilson and Tyler TerMeer prior to filing their reply." (ECF No. 110.) The order further provided that "any objection to the deposition of Mr. Wilson or Mr. TerMeer by those third parties or by the City shall be presented to Magistrate Judge Illman for resolution." Plaintiffs have therefore proceeded exactly as the Court directed. The City's sole objection—that allowing these two depositions would exceed ten—rests on a mechanical counting rule that cannot override the proportionality factors under Rule 26(b)(1).

The Honorable Robert M. Illman
October 23, 2025
Page 2

Rule 30(a)(2)(A)(i) permits additional depositions when consistent with Rule 26(b)(1). Here, every proportionality factor supports leave. The issues in this case—whether the City's affirmative policies and contracts create or exacerbate public-health and public-safety nuisances in the Tenderloin—are serious matters of public concern. The testimony of these two witnesses is uniquely important because it goes to the heart of those allegations.

### A. 290 Turk Street (Hospitality House).

Plaintiffs submitted a declaration from one plaintiff describing the open distribution of glass pipes and other fentanyl-smoking supplies from the Hospitality House office at 290 Turk Street. (ECF No. 101-5 ¶¶ 5-6.) In opposition, the City asserted that "Plaintiffs offer no evidence the City funds any distribution there. Indeed, Hospitality House is not an approved SSP [Syringe Service Provider]." (ECF No. 105 at 22:7-8.) That statement is contradicted by documents the City itself produced in response to Public Records Act requests—multi-million-dollar contracts between the City's Department of Public Health and Hospitality House to provide "Harm Reduction" services at 290 Turk. The executive director and contract signatory, **Joe Wilson**, is the only person who can explain what "Harm Reduction" activities his organization performs under those contracts, whether smoking materials are distributed, and what oversight or direction the City provides. His testimony is therefore critical to testing the accuracy of the City's representation that it does not fund or support such distribution.

### B. 172 Turk Street (SF AIDS Foundation / SF Drug Users Union).

Plaintiffs also submitted a declaration from Omar Ward describing his receipt of fentanyl-smoking materials inside a storefront at 172 Turk Street, and his understanding that SF AIDS Foundation staff were responsible for the distribution. (ECF No. 101-2 ¶ 4.) The City's opposition responds that "the site is operated by San Francisco Drug Users Union, not SF AIDS," suggesting the City has no connection. (ECF No. 105 n. 2.) But the City's own "DPH Contracts Report," publicly posted on its website, lists a $2.3 million contract with the **SF AIDS Foundation**, which in turn subcontracts with the Drug Users Union "to coordinate all syringe access activities." The City itself admits that syringe access programs now distribute safer-smoking materials. (ECF No. 105 at 2:10-3:3.) Only **Dr. Tyler TerMeer**, CEO of SF AIDS Foundation, can clarify whether his organization or its subcontractors distribute fentanyl-smoking paraphernalia at 172 Turk and whether such activities are funded or condoned by the City.

### C. Efficiency and fairness.

Plaintiffs have taken just seven depositions of City employees, none exceeding three hours. Three witnesses invoked the Fifth Amendment rather than testify about the City's role in distributing smoking supplies, leaving Plaintiffs with limited substantive evidence. The Court has already authorized three additional City-employee depositions of declarants who supported the City's opposition. Adding two narrowly focused, third-

The Honorable Robert M. Illman
October 23, 2025
Page 3

party depositions of key executives is both proportional and necessary to complete the factual record contemplated by Judge Tigar's order. These short depositions will not burden the City or delay proceedings and will materially assist the Court in evaluating Plaintiffs' pending preliminary-injunction motion.

For all these reasons, Plaintiffs respectfully request that the Court **authorize the depositions of Joe Wilson and Dr. Tyler TerMeer**, notwithstanding the nominal ten-deposition limit, as expressly contemplated by Judge Tigar and fully consistent with Rule 26(b)(1)'s proportionality requirements.

## II.  THE CITY'S POSITION

The Non-Profit depositions would take Plaintiffs beyond the 10-deposition limit. The burden to "make a particularized showing of need" to deviate from the traditional rules falls squarely and exclusively on them. *Martensen v. Koch*, 2013 WL 11316743, at *1 (N.D. Cal. June 19, 2013). Plaintiffs fail to carry their burden. Their request should be denied.

Judge Tigar did not grant leave for these depositions. Plaintiffs initially requested the Court hold a hearing on their motion for preliminary injunction. The City proposed the Court hear testimony from any witness whose declaration was submitted with the briefing. Plaintiffs then argued a hearing was unnecessary, and instead wanted to depose three City employees (who submitted declarations) and the Non-Profits (who had not). ECF No. 109. Judge Tigar took the hearing off-calendar and permitted Plaintiffs to depose the City employees, but made no ruling requiring the Non-Profits to sit for depositions "because neither person provided a declaration in support of Defendant's opposition and neither person is identified in the City's opposition brief." ECF No. 110. There was no discussion of the 10-deposition limit at the time because Plaintiffs had not yet exhausted their depositions.

To evaluate requests for excess depositions, courts "consider whether: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Authentec, Inc. v. Atrua Techs., Inc.*, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008). Each factor disfavors Plaintiffs' request.

*First*, Plaintiffs had ample opportunity to seek the information they contend only the Non-Profits have within traditional discovery limits. Plaintiffs have not shown the Non-Profit depositions would cover topics Plaintiffs could not have addressed in their 10 depositions of City employees from four departments (Police, Public Health, Emergency Management, and Homelessness and Supportive Housing), which represent a significant cross-section of City policy. That a subset of deponents invoked their Fifth Amendment Rights in response to specific questions is irrelevant because none of those invocations were in response to questions about the City's relationship with either Non-Profit. There is no reason Plaintiffs could not have asked questions about the Non-Profit's relationship to the City through these 10 witnesses. This is especially true because Plaintiffs used the

The Honorable Robert M. Illman
October 23, 2025
Page 4

Public Records Act to obtain records related to this case and so should have been able to identify and depose the employees with the most information about the issues in the case. Tellingly, Plaintiffs have not used any of their discovery requests to the City to seek information about the City's relationship to the Non-Profits. To the extent Plaintiffs did not ask about contracts between the City and the Non-Profits during the depositions they took, that is due to Plaintiffs' strategic litigation decisions, not any procedural unfairness.

*Second*, Plaintiffs have not shown the information they seek is unavailable from less burdensome or less expensive means. For example, Plaintiffs claim they need testimony from Joe Wilson to explore whether Hospitality House provides smoking supplies on the City's behalf, but Mr. Wilson told them (and offered to sign a sworn declaration stating) that Hospitality House does not distribute smoking supplies and has no contract with the City to do so. Similarly, Plaintiffs have not explained why they cannot use written discovery or document requests to obtain the information they seek. They haven't even tried to use those means.

*Finally*, Plaintiffs cannot show the Non-Profit depositions are proportional to the needs of the case, even assuming some testimony could be relevant. Plaintiffs own conduct shows they are not relevant:

- Plaintiffs mention neither Non-Profit in the complaint. ECF No. 50.
- Plaintiffs did not name either Non-Profit in response to interrogatories asking them to identify the factual basis for their contention the City directly or indirectly distributes drug paraphernalia. (Interrogs. Nos. 7-8).
- Plaintiffs have not used any of their discovery requests to the City to seek information about the City's relationship to the Non-Profits.
- No party relied on documents from, or declarations signed by, either Non-Profit in their preliminary injunction briefing.
- Although the parties filed seven case management statements, Plaintiffs never requested the Court increase the deposition limit. ECF Nos. 58, 65, 69, 75, 91, 106, 109; s*ee also* General Order ¶ 8 (requiring CMC statements address proposed modifications of the discovery rules).

The 10-deposition exists to limit "to reduce litigation costs," because depositions are "one of the more expensive forms of discovery." *In re At Home Corp.*, 2005 WL 289976, at *3 (N.D. Cal. Feb. 4, 2005). Here, the costs extend not only to the parties, but to the Non-Profits. Plaintiffs compound the cost of the depositions because they refused to allow Joe Wilson to appear remotely even though his counsel is in Southern California, and so the deposition requires her to take a round-trip flight or let her client appear alone in-person at Plaintiffs' office. That Plaintiffs intend the depositions to be under seven hours does not change the amount of preparation time required for counsel to prepare their clients.

The cost of these depositions is not proportional where, as described above, Plaintiffs' own discovery responses do not indicate the Non-Profits are central to their case, they have rejected offers to obtain the same information through less burdensome means, and have failed to adequately seek this information in the 10 City employee depositions they will take. Accordingly, Plaintiffs have not met their burden to make a particularized showing of need for the surplus depositions sought.

Even in complex cases, "the parties are compelled to make strategic choices about which individuals they will depose ahead of trial" and have "the benefit of discovery to

The Honorable Robert M. Illman
October 23, 2025
Page 5

assist in identifying the individuals who it reasonably believes are material" to the case. *Koninklijke Philips N.V. v. Acer Inc.*, No. 18CV01885HSGEDL, 2019 WL 11499342, at *4 (N.D. Cal. Jan. 18, 2019) (denying leave of court to expand the deposition limit). The rules contemplate that not every potential witness can be deposed. *In re At Home Corp.*, No. C 04-0931 MMC(JL), 2005 WL 289976, at *3 (N.D. Cal. Feb. 4, 2005) (denying leave and holding "[t]he number of potential witnesses does not justify deposing every one," especially where witnesses "may duplicate each other's testimony"); *Dominguez v. Schwarzenegger*, 2010 WL 3341038, at *8 (N.D. Cal. Aug. 25, 2010) ("That a party may have to face trial witnesses or declarants without having first deposed them does not amount to a particularized showing" to justify leave of court). If Plaintiffs' meager showing met their burden to take excess depositions, the 10-deposition limit would cease to be any limit at all. The City respectfully asks the Court deny Plaintiffs' request for leave.

    Very truly yours,

    */S/ Matthew D. Davis*

    MATTHEW D. DAVIS
    Attorney for Plaintiffs

    */S/ Kaitlyn Murphy*

    KAITLYN MURPHY
    Attorney for Defendant City and County of San Francisco