DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
TARA M. STEELEY, State Bar #231775
JOHN H. GEORGE, State Bar #292332
KAITLYN M. MURPHY, State Bar #293309
SABRINA M. BERDUX, State Bar #248927
ABIGAIL H. WALD, State Bar #309110
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-4655 (Steeley)
(415) 554-5960 (George)
(415) 554-6762 (Murphy)
(415) 554-3929 (Berdux)
(415) 554-3901 (Wald)
Facsimile: (415) 554-4699
E-Mail: tara.steeley@sfcityatty.org
john.george@sfcityatty.org
kaitlyn.murphy@sfcityatty.org
sabrina.m.berdux@sfcityatty.org
abigail.wald@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE ROE, an individual; MARY ROE, an individual; SUSAN ROE, an individual; JOHN ROE, an individual; BARBARA ROE, an individual; PHOENIX HOTEL SF, LLC, a California limited liability company; FUNKY FUN, LLC, a California limited liability company; and 2930 EL CAMINO, LLC, a California limited liability company,

Plaintiffs,

vs.

CITY AND COUNTY OF SAN FRANCISCO, a California public entity,

Defendant.

Case No. 4:24-cv-01562-JST

**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION (ECF NO. 101)**

Trial Date: August 10, 2026

## TABLE OF CONTENTS


I. Plaintiffs Fail to Establish Any of the *Winter* Factors ........ 2

A. Plaintiffs Fail to Make a Strong Showing They Will Succeed on the Merits ........ 2

1. San Francisco Is Immune from Plaintiffs' Nuisance Claim ........ 2

2. Plaintiffs Failed to Submit a Government Claim ........ 3

3. Plaintiffs Still Fail to Show a Substantial Disturbance or Causation ........ 4

4. The Public Benefit of the Policies Outweighs Any Harms Alleged In Reply ........ 7

B. Plaintiffs Fail to Make a Strong Showing They Will Suffer Irreparable Harm ........ 9

C. The Reply Does Not Show the Balance of Equities Tips in Plaintiffs' Favor ........ 9

II. Plaintiffs Ignore And Therefore Admit Multiple Other Dispositive Arguments ........ 10

III. Plaintiffs' New Reply Arguments Do Not Provide a Legal Basis to Grant Their Motion ........ 10

A. Equitable Estoppel Based on Code Complaints Does Not Apply ........ 10

B. The City Is Not Required to Impose Additional Restrictions On Its Contractors ........ 13

C. Plaintiffs Base Their Objections To The City's Evidence On A Mistake Of Law ........ 14

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Hylands, Inc.*
773 F. App'x 870 (9th Cir. 2019)....................15

*Block v. City of Los Angeles*
253 F.3d 410 (9th Cir. 2001)....................14

*Brown v. Stroud*
No. C 08-2348 VRW, 2010 WL 1406394 (N.D. Cal. Apr. 6, 2010)....................3, 10

*Calence, LLC v. Dimension Data Holdings, PLC*
222 F. App'x 563 (9th Cir. 2007)....................4, 9, 10, 13

*Daubert v. Merrell Dow Pharms., Inc.*
509 U.S. 579 (1993)....................14

*Graves v. Arpaio*
623 F.3d 1043 (9th Cir. 2010)....................4, 9, 10, 13

*Hamilton v. State Farm Fire & Cas. Co.*
270 F.3d 778 (9th Cir. 2001)....................12

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*
736 F.3d 1239 (9th Cir. 2013)....................14

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999)....................14

*Lippold v. Godiva Chocolatier, Inc.*
No. C 10-00421 SI, 2010 WL 1526441 (N.D. Cal. Apr. 15, 2010)....................3, 10

*New Hampshire v. Maine*
532 U.S. 742 (2001)....................11, 13

*Newmark Realty Cap., Inc. v. BGC Partners, Inc.*
No. 16-CV-01702-BLF, 2018 WL 2573192 (N.D. Cal. Apr. 16, 2018)....................14

*Orr v. Bank of Am., NT & SA*
285 F.3d 764 (9th Cir. 2002)....................14

*Pegram v. Herdrich*
530 U.S. 211 (2000)....................11

*Rissetto v. Plumbers & Steamfitters Local 343*
94 F.3d 597 (9th Cir. 1996)....................12

*Tri-Valley CAREs v. U.S. Dep't of Energy*
671 F.3d 1113 (9th Cir. 2012)....................15

*United States v. Muna*
740 F. App'x 539 (9th Cir. 2018)....................13

*United States v. Rincon*
28 F.3d 921 (9th Cir. 1994)....................14

*Varjabedian v. City of Madera*
20 Cal.3d 285 (1977)....................3

*Winter v. Nat. Res. Def. Council, Inc.*
555 U.S. 7 (2008)....................2, 10

**Statutes**

Cal. Gov't. Code
§ 815.2(b)....................13
§ 820.2....................13

Cal. Health & Safety Code
§ 121349.1....................13

Code of Civil Procedure
§ 3482....................1

Government Code
§ 905....................3

**Rules**

N.D. Cal. Civ. L. R. 7-3(c)....................15

Lawful municipal decisions, particularly those supported by state law, are decisions that are more appropriately left to those with the multi-disciplinary tools and expertise to evaluate strategies, iterate and refine, and execute plans that are effective and practical. Plaintiffs' political and policy disagreements with the City that animate their Motion do not entitle them to the extraordinary remedy of preliminary injunctive relief, as explained in the City's Opposition. Plaintiffs' Reply does nothing to change that.

Plaintiffs cannot obtain a preliminary injunction because they have failed to make the requisite strong showing under the *Winter* factors. Significantly, Plaintiffs failed to show that they are likely to succeed on the merits, nor could they—their requested injunction is barred by Code of Civil Procedure Section 3482, and their nuisance claim is barred because they failed to file a government claim as required before commencing a lawsuit that seeks an injunction that results in costs to the City. Plaintiffs' Reply fails to include any evidence at all that responds to these arguments. Plaintiffs' Reply also fails to respond to the City's evidence that they have failed to show irreparable harm. Plaintiffs' Reply does not include any photographs or videos that post-date those in the City's Opposition. And, none of the evidence in their Reply shows the balance of equities tips in their favor.

Despite two more months of discovery, Plaintiffs have yet to identify *any* direct distribution of safer smoking supplies in the Tenderloin by the City in their Motion. The new evidence Plaintiffs cite does nothing to overcome the serious deficiencies raised in the City's Opposition. Such evidence only further confirms the accuracy of the arguments made in the City's Opposition—namely, that even if Plaintiffs' claims were not barred by Code of Civil Procedure Section 3482 or government claim requirements (which they are), Plaintiffs still cannot establish that the City's involvement in the lawful distribution of safer smoking supplies led to any alleged nuisance conditions impacting Plaintiffs.

Overall, most of the arguments and evidence that Plaintiffs submitted in their Reply have no bearing on their ability to get a preliminary injunction. Plaintiffs are not entitled to a preliminary injunction because they think they could write a better policy than what is currently in place, or because they think different public officials should have been involved in drafting the policy. Plaintiffs also are not entitled to a preliminary injunction because they purport to identify hypothetical problems with the policy. It is time for Plaintiffs' Motion to be denied.

## I. Plaintiffs Fail to Establish Any of the *Winter* Factors

Plaintiffs are not entitled to the extraordinary relief of a preliminary injunction. To preliminarily enjoin the City from lawfully distributing safer smoking supplies and/or contracting with non-profits who do so via the State's Syringe Services Program (SSP), Plaintiffs must make a strong showing that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent preliminary relief; (3) that the balance of equities tips in their favor and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs fail to acknowledge these elements, let alone explain how each is satisfied.

### A. Plaintiffs Fail to Make a Strong Showing They Will Succeed on the Merits

#### 1. San Francisco Is Immune from Plaintiffs' Nuisance Claim

Plaintiffs argue in their Reply that the California Health and Safety Code does not immunize the City from Plaintiffs' nuisance claims since pipes, straws, and foil are not "other supplies" intended to reduce the spread of bloodborne pathogens because the supplies are used to smoke, not inject drugs. (Reply at 14.) This argument fails because Plaintiffs ignore, and do not respond to, evidence that increasing the availability of smoking supplies decreases the risk of bloodborne illnesses because: (1) those who currently inject will switch to smoking, and (2) those who currently smoke will not switch to injection. All parties agree that injecting drugs increases the risk of spreading bloodborne pathogens. And, as explained in the City's Opposition, the 2018 amendments to the Code recognized the role that other methods of consumption play in combating the spread of bloodborne pathogens through injection.

This is consistent with the State's interpretation of its own law. The California Department of Public Health (CDPH) has put out consistent guidance that safer smoking supplies can lawfully be distributed by SSPs. ECF No. 105-46 (Philip Dec.), ECF Nos. 105-47-48, 105-49-51 (Exs. A-B, D-E). It has published documentation explaining the State interprets "other supplies" to include "pipes and foil suitable for smoking opioids or methamphetamine, [and] straws." ECF No. 105-48 (Philip Dec. Ex. B), 105-50 (Ex. D). And, contrary to Plaintiffs' claims, such documentation also makes clear that the State considers distribution of safer smoking supplies to support its mission of "combat[ing] the spread of HIV and bloodborne hepatitis infection among injection drug users" because distribution of

safer smoking supplies helps transition injection users to safer consumption methods (*i.e.*, smoking), and reduces infection by reducing the sharing of used supplies. *Id.*; ECF No. 105-51 (Philip Dec. Ex. E). This is consistent with Dr. Bluthenthal's declaration (ECF No. 105-44 (Bluthenthal Dec.) ¶ 10) and Plaintiffs' recent deposition of Dr. TerMeer, the CEO of San Francisco AIDS Foundation (who has a Ph.D in public policy) who testified that SF AIDS has "been able to deter folks from injecting drugs in our city by providing safer smoking supplies." Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 8:6-14; 55:21-56:15; 57:1-20.

The case here is also nothing like the case Plaintiffs quote (but do not cite), *Varjabedian v. City of Madera*, 20 Cal.3d 285 (1977), where the City of Madera argued that the authorization to build a sewage treatment plant included authorization to release a particular level of attendant odor. Here there is no step between what was authorized (the distribution of "other supplies" intended to reduce the spread of bloodborne pathogens) and what Plaintiffs' complain of (the distribution of pipes, foil, and straws intended to reduce the spread of bloodborne pathogens).

Plaintiffs' Reply puts forward no case law, documentation, or evidence to support their attorney argument that the language of the Health and Safety Code does not cover distribution of safer smoking supplies. Instead, Plaintiffs ask the Court to ignore the substantial documentation put forward by CDPH, based on a technical evidentiary challenge, which is also baseless, as explained below. The Court should not accept their invitation.

**2. Plaintiffs Failed to Submit a Government Claim**

Plaintiffs also have no response to the City's argument that the proposed injunction would cost money to implement and therefore Plaintiffs were required to first comply with the government claim presentation requirements pursuant to California Government Code Section 905 before suing the City. (Opp. at 18:5-17.) This alone merits denial of their Motion. *Brown v. Stroud*, No. C 08-2348 VRW, 2010 WL 1406394, at *2 (N.D. Cal. Apr. 6, 2010) (where plaintiffs "do[] not address" legal arguments made in opposition in their reply, the court has "no reason to disagree with [the Opposition's] submission"); *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *2 (N.D. Cal. Apr. 15, 2010) (denying motion where "reply does not challenge any of defendant's evidence" and "does not address [the argument] at all").

**3. Plaintiffs Still Fail to Show a Substantial Disturbance or Causation**

Plaintiffs also cannot show that the City's actions directly or in collaboration with any non-profit's action caused the generally-applicable conditions in San Francisco's Tenderloin neighborhood that Plaintiffs complain of—namely, illegal drug dealing, drug use, homelessness, loitering, fires, littering, or defecation on the streets—let alone the specific private nuisances required for their claims (obstructed access, ongoing foul smells). Indeed, Plaintiffs have put forward no response at all to the City's argument that Plaintiffs failed to show a causal connection—neither factual nor proximate—between any of the complained of conduct they seek to enjoin (namely, providing funding to nonprofits who happen to separately recieve funds and safer smoking supplies from the State to distribute) and any alleged nuisance. Because their opening brief failed to put forward adequate evidence showing how this element was satisfied, their silence in their Reply should be viewed as conceding the issue. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived" ); *Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007).

The evidence Plaintiff did obtain for their Reply further confirms that the distribution of safer smoking supplies in the Tenderloin that Plaintiffs challenge is not done by the City or even indirectly funded by the City, further demonstrating the highly tenuous nature of their claims. Despite two more months of discovery, Plaintiffs have not identified *any* direct distribution of safer smoking supplies in the Tenderloin by the City as part of their Motion, and rely exclusively on a theory of indirect distribution through non-profits. However, Plaintiffs' additional depositions undermined their earlier arguments, showing that in some instances the complained of distribution never occurred, and in others, that it occurred with money from the State.

Plaintiffs' Motion identified three locations in the Tenderloin that distribute safer smoking supplies: 172 Turk St., Hospitality House at 290 Turk St, and Glide Memorial Church. (ECF No. 101-2 (Ward Dec.) at ¶¶ 3-5; 101-5 (Mary Roe Dec.) at ¶¶ 5-6.) They identified no new sites in their Reply. None of these sites are operated by the City. There is no evidence that any distribution out of 172 Turk or Hospitality House is done by any City contractor or even a partner of a City contractor. There is also no evidence that any City funding indirectly funds the distribution of safer smoking supplies at

the one site operated by a nonprofit that has a relationship to the City.

***172 Turk Street.*** *Plaintiffs' own witness,* Omar Ward, confirmed that the distribution of safer smoking supplies at 172 Turk Street is, in fact, done by SF Drug Users Union. Wald Dec. Ex. 45 (Ward Dep. Tr.) at 123:20-22. The City does not fund SF Drug Users Union (ECF 105-46 (Philip Dec.) at ¶ 17), and SF AIDS has no relationship with the San Francisco Drug User's Union through which Plaintiffs could allege some kind of pass-through arrangement. Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 23:14-20. Plaintiffs cannot link the activity at this location to the City's affirmative conduct.

***Hospitality House (290 Turk St.).*** Plaintiffs' only support for their claim of smoking supply distribution at Hospitality House is Mary Roe's assumption based on seeing "something" handed out. ECF No. 101-5 ¶ 5. Their Reply offers nothing more than an inaccurate portrayal of Hospitality House's Executive Director Joe Wilson's testimony. Mr. Wilson was clear that the City has not authorized Hospitality House or any of its subtenants to distribute safer smoking supplies, and Hospitality House is not an SSP under California's program. Wald Dec. Ex. 46 (Wilson Dep. Tr.) at 39:6-40:12. Mr Wilson, who works full time at 290 Turk St., was unequivocal: there is no Hospitality House location that is a designated smoking supply distribution center; smoking supplies of any kind have never been handed out from Hospitality House, and doing so would be against the organization's policies. *Id*. at 9:23-10:2; 10:22-25; 25:25-26:4; 27:25-28:2; 29:5-15; 32:8-20; 36:2-9; 33:20-34:4. Hospitality House "absolutely prohibits the distribution of safe smoking supplies" from any of its locations. *Id*. Mr. Wilson has never heard of an instance where smoking supplies had been distributed from 290 Turk Street, whether by Hospitality House staff or anyone else. *Id*. at 29:24-30:12; 31:15-20. Further, even if distribution of safer smoking supplies were occurring at 290 Turk Street (which it is not), it would be irrelevant, because the City is not funding such distribution.

Plaintiffs' reference to "harm reduction" at Hospitality House's 290 Turk Street location in their Reply is misleading insofar as Plaintiffs intend the Court to equate harm reduction with distributing safer smoking supplies. The harm reduction services offered at Hospitality House are counseling services: "individual and group therapy," "support groups," "community engagement activities," "one-on-one case management, "drop-in space," "connection with services such as longer-

term housing . . . or referrals to behavioral health services." Wald Dec. Ex. 46 (Wilson Dep. Tr.) at 14:3-12. The same is true of the Harm Reduction Therapy Center that Plaintiffs also reference. It provides "licensed therapists for individuals and group therapy; facilitating support groups; offering assistance with people obtaining benefits; public assistance, including supplemental security income." *Id*. at 19:24-20:9; 21:17-24. They offer counseling to those with addiction, but do not offer any smoking supplies to people struggling with addiction. *Id*. at 20:10-19; 28:8-10. In short, their services do nothing to advance Plaintiffs' claims in this case.

***Glide Memorial Church.*** Distribution at Glide Memorial Church is done by Glide, a partner of SF AIDS, which is itself a City contractor. Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 21:7-14. There is no evidence that City funds support such distribution even indirectly. Glide only recieves funds from SF AIDS for other services, and does not recieve safer smoking supplies from SF AIDS. *Id*. at 21:7-22:20, 45:19-46:14. Plaintiffs therefore fail to connect the City to the distribution by Glide that they challenge, and do not even mention Glide in their Reply.

Discovery has also confirmed that SF AIDS does not currently distribute any smoking supplies in the Tenderloin, and as of at least April 2025, SF AIDS also no longer offers access to safer smoking supplies at the Duboce location Plaintiffs previously complained of (which is notably not in the Tenderloin). Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 26:17-27:13. SF AIDS also is not using City funding for safer smoking distribution in the Tenderloin; rather, it has a separate relationship with the State from which it can obtain smoking supplies. *Id*. at 28:14-29:21; 45:20-46:9.

Having failed to connect any of the challenged safer smoking supply distribution to the City, Plaintiffs, for the first time in their Reply, appear to now take issue with the level of discretion afforded to City contractors in implementing the City's policy on the distribution of safer smoking supplies, along with its lack of age restriction. In doing so they point to an "April 2" policy that they incorrectly attempt to frame as a material deviation from the "April 1" policy attached by the City in Opposition. Plaintiffs' Motion, however, challenges the distribution of smoking supplies generally, which both policies clearly allow. Accordingly, it is unclear how any purported differences between the two policies could be material. Nonetheless, for avoidance of doubt, Plaintiffs also have not shown that the lack of age restrictions or allowance of discretion in the implementation of the City's policy

has led to any harm whatsoever, much less a "substantial disturbance" caused by the failure to affirmatively restrict distribution of supplies to children. The evidence shows the opposite—Dr. Philip testified that in her 20 years of working in public health in San Francisco, she had never heard of one instance where a 14-year-old had obtained safer use supplies. Wald Dec. Ex. 44 (Philip Dep. Tr.) at 166:6-20. And, in the seven months since Plaintiffs learned from Dr. Kunins that no age restriction was in place, Plaintiffs claim to know of exactly one minor (a 17-year-old) who has obtained harm reduction supplies. ECF No. 124-4 (Minoiefar Dec.) ¶ 9, Ex. H, at 222:10-17.

Overall, further discovery has only confirmed that City funds are not used for the conduct Plaintiffs complain of, and for that reason Plaintiffs' requested injunction against the City would not have any impact on any of the challenged conduct. Discovery also has further confirmed that the nonprofits that do have a relationship with the City who Plaintiffs identify as distributing safer smoking supplies in the Tenderloin get their supplies from the State and through state funding. Wlad Dec. Ex. 47 (TerMeer Dep. Tr.) at 46:10-14.

Accordingly, even if the Court agrees with Plaintiffs that the distribution of safer smoking supplies should be banned, Plaintiffs fail to show how the injunction they seek would do anything to accomplish that. A preliminary injunction that enjoins the City from "directly or indirectly" supplying "fentanyl or methamphetamine-related drug paraphernalia" to persons or entities in the Tenderloin will not prevent the distribution of such items in the Tenderloin, because it would have no impact on the non-profits that purchase and distribute those supplies with State money as part of an SSP. Plaintiffs' Motion, now fully briefed, still identifies no direct distribution of safer smoking supplies by the City. It also only identifies two nonprofits who distribute such supplies in the Tenderloin. One of those nonprofits does not recieve any funds from the City at all. The other does not use or rely on City funding for its distribution of safer smoking supplies, and instead recieves funds and supplies to distribute from the State. Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 45:19-46:14.

**4. The Public Benefit of the Policies Outweighs Any Harms Alleged In Reply**

Plaintiffs provide no evidence legitimately disputing the City's evidence that the distribution of safer smoking supplies benefits communities and does not cause any attendant public safety harms. Plaintiffs' Reply, instead, ignores entirely the detailed review of the available studies on safer use

supplies put forward in the City's Opposition by Dr. Bluthenthal, a sociologist who has studied the impact of SSPs since 1991. ECF No. 105-44 (Bluthenthal Dec.) ¶ 2. Dr. Bluthenthal testified there are three clear benefits already born out by the data on the distribution of safer smoking supplies as a harm reduction practice: (1) programs that include safer use supplies lead to 5 times greater engagement in addiction treatment and 3 times greater likelihood of reducing or stopping the injection of drugs within the year, (2) programs that facilitate transitions from injection to smoking show particularly strong engagement outcomes, and (3) safer smoking supplies reduce injection drug use by transitioning users to smoking, which is associated with a 40% lower rate of non-fatal overdoses and 250% lower risk of skin and soft tissue infections compared to injection. *Id*. at ¶ 10.

Dr. TerMeer also agrees with Dr. Bluthenthal that there is a public health benefit to providing those with substance use issues access to supplies to reduce the spread of disease. Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 55:21-56:15. He testified that "we have been able to deter folks from injecting drugs in our city by providing safer smoking supplies" and worries that a policy that restricts or eliminates safer smoking supplies could create "significant concern that in the absence of safer smoking supplies, folks may return to injecting." *Id*. at 57:1-20. In fact, every public health professional who has testified in this litigation reports numerous benefits from the distribution of safer use supplies. Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 55:21-56:15; Ex. 44 (Philip Dep. Tr.) at 105:4-107:13, 109:3-17, 112:2-23; ECF No. 105-44 (Bluthenthal Dec.) ¶¶ 6-16. This is also supported by the documentation put out by CDPH. ECF No. 105-46 (Philip Dec.) ¶¶ 9, 12, Exs. A-B, D-E. Dr. Bluthenthal also testified that there is no data to support speculative safety concerns around distribution sites, which is reflective of Dr. TerMeer's experience that people who receive safer smoking supplies from SF AIDS do not typically use drugs immediately outside the facility. ECF No. 105-44 (Bluthenthal Dec.) ¶¶ 11-16; Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 59:19-60:4.

The only new evidence Plaintiffs put forward in their Reply as to the public benefit or harm of safer smoking is more anecdotal opinions of lay witnesses and attorney argument that a lack of available data specific to the City's policy seven months after it was implemented should be taken as evidence of failure. Plaintiffs provided no affirmative data or expert opinion that distribution of safer smoking supplies harms communities. Neither Plaintiffs nor any of the other individuals who question

such policies have any basis to offer expert opinion on the matter, and the fact that reasonable people can disagree on a policy is not sufficient to show the policy is not in the public interest.

**B. Plaintiffs Fail to Make a Strong Showing They Will Suffer Irreparable Harm**

Plaintiffs failed to show they are likely to suffer irreparable harm absent preliminary relief. Plaintiffs do not respond to the City's argument that Plaintiffs are challenging decades-old conditions in their neighborhood that predate any challenged distribution of safer smoking supplies. They also have no response to the fact that conditions in their neighborhood have improved in recent months and their speculative fears that conditions will get worse cannot form the basis for injunctive relief. The most recent photos of the Tenderloin remain those in the City's Opposition, which show the conditions Plaintiffs complain of are missing. Although Plaintiffs argue these photos only show a partial view of the neighborhood (Opp. at 12-13), Plaintiffs do not provide more recent photographs that present any different picture. The only Google Map photo that Plaintiffs address in any detail was from 2021—three years before Plaintiffs filed suit—and certainly not sufficient to support forward-looking injunctive relief. *Id*. Plaintiffs' own witnesses support the City here. Mr. Ward, whose declaration Plaintiffs attached to their Motion, testified that he has seen an improvement in conditions in the Tenderloin in the last six months. Wald Dec. Ex. 45 (Ward Dep. Tr.) at 175:25-176:6.

Plaintiffs also did not respond to the argument that their delay in seeking a preliminary injunction demonstrates a lack of irreparable harm. Not only did Plaintiffs wait years after they alleged the nuisance began to bring their lawsuit; they also requested the Court delay resolution of this motion after filing it. (ECF Nos. 109, 118.) Plaintiffs' silence in their Reply concedes they lack irreparable harm, as required. *See Graves*, 623 F.3d at 1048; *Calence*, 222 F. App'x at 566.

**C. The Reply Does Not Show the Balance of Equities Tips in Plaintiffs' Favor**

Finally, Plaintiffs fail to show that the balance of equities tips in their favor and the injunction is in the public interest. As noted above, every public health professional who has testified in this litigation reports numerous benefits from the distribution of safer use supplies, including its benefits in shifting those who use drugs away from needles. The fact that lay witnesses might subjectively question a policy is not evidence that the policy is against the public's interest, and such opinions are the only evidence Plaintiffs put forward to try to counter the legitimate research that has been done on

the benefits of harm reduction by the State and experts in the field, as documented in Dr. Bluthenthal's and Dr. Philip's declarations, as well as Dr. TerMeer's testimony. (ECF Nos. 105-44-105-54.)

## II. Plaintiffs Ignore And Therefore Admit Multiple Other Dispositive Arguments

The City made additional dispositive arguments in its Opposition (ECF No. 105) that Plaintiffs ignore apart from the *Winter* factors described above. Most strikingly, Plaintiffs had no answer to the City's argument that: (1) this Court lacks jurisdiction because Plaintiffs do not have standing (Opp. at 11-14); and (2) the injunction Plaintiffs seek exceeds the Court's authority because it is overbroad. *Id*. at 32. As to each of these arguments, Plaintiffs "do[] not address" the cases the City cites, and so the Court has "no reason to disagree with [the City's] submission" and should deny Plaintiffs' motion. *Brown v. Stroud*, No. C 08-2348 VRW, 2010 WL 1406394, at *2 (N.D. Cal. Apr. 6, 2010); *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *2 (N.D. Cal. Apr. 15, 2010) (denying motion where "reply does not challenge any of defendant's evidence" and "does not address [the argument] at all").

## III. Plaintiffs' New Reply Arguments Do Not Provide a Legal Basis to Grant Their Motion

Rather than explain how they have met their burden for a preliminary injunction, Plaintiffs' Reply argues that the City should be equitably estopped from defending its safer smoking supply policy because it files enforcement actions against persons who illegally distribute drug paraphernalia ("Code Complaints"), that the City's own safer smoking policy is problematic, and/or that the City's Opposition should be ignored based on evidentiary objections. None of these arguments has merit.

### A. Equitable Estoppel Based on Code Complaints Does Not Apply

At the outset, the Court should decline to consider the judicial estoppel argument because Plaintiffs raise it for the first time in their Reply, yet rely exclusively on Code Complaints filed four months before Plaintiffs moved for the injunction in August. "[A]rguments raised for the first time in a reply brief are waived," *Graves*, 623 F.3d at 1048, especially where they are "based on information available before [the] opening brief was due." *Calence*, 222 F. App'x at 566. Plaintiffs have no explanation for failing to address this issue in their moving papers.

Plaintiffs' argument that the City is estopped from contending they have failed to show causation is also baseless. Judicial estoppel "generally prevents a party from prevailing in one phase of

a case on an argument and then relying on a contradictory argument to prevail in another phase," *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211 (2000)), and while the standard is flexible, courts generally consider three factors in assessing whether to apply the doctrine, none of which are met here: (1) "a party's later position must be 'clearly inconsistent' with an earlier position," (2) whether "the party has succeeded in persuading a court to accept that earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,'" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 750.

The City routinely investigates complaints about violations of City codes, such as the building code and health code, and brings enforcement actions as appropriate. In April 2025, the City brought several lawsuits challenging the business practices of discount and corner stores, primarily because those businesses unlawfully permit and profit from illegal gambling as well as other attendant behaviors, including the sale of smoking paraphernalia. The City's position in the Code Complaints is not "clearly inconsistent" with its position in this lawsuit because the lawsuits involve significantly different circumstances, namely one legal activity (SSP's distribution of certain supplies) versus a constellation of illegal activities (gambling, drug possession, selling stolen goods, etc.) that combine to cause a public nuisance. Nowhere in any of the complaints Plaintiffs submit does the City allege that the mere distribution of smoking supplies by a State-approved entity causes a nuisance, let alone obstructs building entrances or causes foul smells several blocks away. The Code Complaints do not challenge lawful distribution of safer smoking supplies, and instead allege nuisance based on wide ranging *illegal* conduct, including the sale of drug paraphernalia. None of the Code Complaints allege the storefront committed a nuisance based solely on the lawful distribution of glass pipes, foil, or straws by state authorized SSPs. They instead involve complaints that the storefronts in question were illegally distributing drug paraphernalia while also engaging in "illegal gambling, fencing and drug sales" and that it was the unlawful combination of these activities that constituted a nuisance. ECF No. 124-4 Ex. A, ¶ 4; *see also* ECF No. 124-4 Ex. B. ¶ 2 ("illegal gambling and sale of drug paraphernalia); Ex. C ¶ 2 ("illegal gambling and the sale of drug paraphernalia and stolen

merchandise"). The storefronts in the Code Complaints are alleged to operate slot machines (Ex. A ¶¶ 24, 32, 44-45; Ex. B ¶¶ 18, 21-22; Ex. C ¶¶ 19-20, 22-23), knowingly purchase and sell stolen property (Ex. A ¶¶ 5, 31; Ex. B ¶ 25), and allow controlled substances to be "sold, served, kept, manufactured, or given away" onsite. (Ex. A ¶ 16). At one location police recovered 50.8 grams of methamphetamine and at another the police recovered "two pistol magazines, a digital scale, $17,269 of cash from the [slot] machines and the register, and a substantial amount of loose-leaf cannabis, pre-rolled cannabis joints and individual cape cartridges containing cannabis." (Ex. A ¶¶ 34, 47.)

Further, none of the Code Complaint defendants are alleged to be authorized SSPs under California's program. It is not "clearly inconsistent" for a municipality to take the position that whether certain conduct is lawful depends on the circumstances surrounding it. For example, it is not "clearly inconsistent" for the City to arrest drug dealers who sell OxyContin on the streets while allowing licensed doctors to continue to use or prescribe the drug. Many otherwise illegal activities become lawful when done by someone authorized to do so—*i.e.*, the sale or distribution of prescription drugs, practicing law or medicine, operating a motor vehicle, etc.

Here, CDPH "has determined that safer injection, safer smoking and sniffing materials, provided in a harm reduction context alongside health education and other care, may reduce the spread of communicable diseases such as HIV and hepatitis C, and reduce the risk of injury and fatal drug overdose." ECF No. 105-51 (Philip Dec. Ex. E). Accordingly, California law expressly authorizes SSPs to distribute certain harm reduction supplies, including safer smoking supplies that would be illegal to distribute in other contexts. (Opp. at 2-4.) A corner store selling drug paraphernalia as part of a pattern of illicit activities (illegal gambling, storing drugs, etc.) is not engaged in the same activity as a nonprofit lawfully providing harm reduction supplies as part of establishing a connection to care.

The cases Plaintiffs reference are inapposite because they all involve "clearly inconsistent" positions. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (bankruptcy proceeding decided on the basis that "in the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements"); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996) (judicial estoppel prevented employee plaintiff from obtaining financial benefit from a

workers' compensation settlement based on her assertion that she could no longer work and filing an age discrimination claim against her former employer on the basis that she could work); *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (preventing New Hampshire from entering settlement that port belonged to Maine and then decades later bringing a lawsuit premised on the port belonging to New Hampshire). It is not clearly inconsistent to allow nonprofits to lawfully distribute safer smoking supplies as authorized to do so by the State of California, while enforcing the State's laws that otherwise ban the sale of drug paraphernalia under certain conditions. Plaintiffs' equitable estoppel argument also fails because they have not shown the City "prevail[ed]" in the Code Complaints, which are ongoing. *United States v. Muna*, 740 F. App'x 539, 542 (9th Cir. 2018) (judicial estoppel did not apply where issue not addressed by prior court in final opinion in the prior proceeding where party was alleged to have asserted a contradictory argument).

**B. The City Is Not Required to Impose Additional Restrictions On Its Contractors**

The Court should also not consider Plaintiffs' arguments that the implementation of the City's policy vests too much discretion in contractors and is not sufficiently "narrowly tailored" because Plaintiffs raised it for the first time in their Reply, despite relying predominantly on a publicly available document, which was published on April 2, 2025, months before they filed their Motion. *See Graves*, 623 F.3d at 1048; *Calence*, 222 F. App'x at 566. Even if the Court were to consider this argument, it likewise has no relevance to Plaintiffs' ability to obtain a preliminary injunction. As explained above, any purported differences between the "April 1" policy and the "April 2" policy are immaterial, because Plaintiffs are challenging the distribution of smoking supplies generally. The "narrowly tailored" standard that Plaintiffs cite plays no role in nuisance law. Plaintiffs point to no legal basis for their insinuation that the City is required to implement a stricter policy on its contractors than what is authorized by California law. California law does not ban the distribution of safer smoking supplies by SSPs to minors or otherwise dictate an age restriction. *See* Cal. Health & Safety Code § 121349.1. And to the extent that Plaintiffs are now challenging the City's decision to enact the policy and the policy itself (as opposed to the alleged and unfounded direct and indirect distribution of supplies), that challenge is untimely and the City would be immune for its employees' discretionary policy decisions. Cal. Gov't. Code §§ 815.2(b), 820.2; ECF No. 105 at 18.

None of the purported discretion granted to contractors to deviate from the City's requirements are at odds with state law so as to create a new basis for their nuisance claim, and Plaintiffs have no evidence that they have been harmed by any of the hypothetical use cases they describe in their Reply.

**C. Plaintiffs Base Their Objections To The City's Evidence On A Mistake Of Law**

"[T]he Federal Rules of Evidence do not strictly apply to preliminary injunction proceedings," and the Court "may consider inadmissible evidence" because evidentiary issues "go to the weight rather than admissibility" of the evidence. *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, No. 16-CV-01702-BLF, 2018 WL 2573192, at *3 (N.D. Cal. Apr. 16, 2018) (overruling hearsay, speculation, lack of foundation, and improper opinion objections). Nearly each case Plaintiffs cite is in a different procedural posture. See *Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001) (summary judgment); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002) (same); *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) (same); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (same); *United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994) (criminal trial). The only preliminary injunction case Plaintiffs cite does not support their position. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013). The *Herb Reed* Court criticized the lower court's ruling as "cursory and conclusory, rather than being grounded in any evidence or showing offered by [the moving party]." *Id*. at 1250. It did not address what Plaintiffs seek here—an objection to evidence submitted by the parties—and so provides no basis to sustain Plaintiffs' evidentiary objections. Plaintiffs' objections are therefore based on the wrong legal standard.

The City's evidence suffices even under the standard Plaintiffs propose. Plaintiffs object to Dr. Philip's testimony about DPH's policies because she did not author or oversee those policies (ECF No. 124-2 at 2:23-3:28), yet admit Dr. Philip was involved in discussions of the policies and reviewed policy drafts. *Id*. They offer no explanation why this falls short of establishing foundation. Plaintiffs' objections to her testimony are also largely irrelevant because the testimony to which they object is supported by other evidence. For example, Plaintiffs object to Dr. Philip describing the State program that permits SSPs to purchase smoking supplies, but ignore the CEO of SF AIDS Foundation testified SF AIDS is an SSP and purchases glass pipes with state funds through the very same program. Wald Dec. Ex. 47 (TerMeer Dep. Tr.) at 8:1-3; 28:14-29:21; 45:20-46:9; 66:25-67:23.

Plaintiffs also object to Dr. Bluthenthal's opinion that the medical literature provides clear and consistent evidence the distribution of safe consumption supplies "deliver substantial community benefits without increase crime rates or public disorder," because it is based on a literature review. ECF No. 124-3 at 2:22-3:13. Plaintiffs cite no case holding opinions based on literature reviews do not satisfy FRE 702. The Ninth Circuit has held they do. See e.g., *Allen v. Hylands, Inc.*, 773 F. App'x 870, 873 (9th Cir. 2019) (unpublished) (finding FRE 702 met where expert's opinion was "derived from a literature review citing to peer-reviewed sources in his field"). Dr. TerMeer also agreed with Dr. Bluthenthal that there is a public health benefit to providing those with substance use issues access to supplies to reduce the spread of disease and safer smoking supplies "deter folks from injecting drugs in our city" such that a policy that eliminates smoking supplies could create "significant concern that in the absence of safer smoking supplies, folks may return to injecting." Wald Dec. Ex. 47 (TerMeer Tr.) at 55:21-56:15; 57:1-20. This is the same argument the City makes here. Plaintiffs' evidentiary objections to Dr. Bluthenthal's declaration are especially out of place where Plaintiffs neither sought to depose him nor filed an expert declaration of their own.

Plaintiffs' objections are also procedurally improper because Plaintiffs did not incorporate them into their Reply. N.D. Cal. Civ. L. R. 7-3(c). By doing so, Plaintiffs inappropriately doubled the length of their brief. This is grounds to deny the objections. *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as a result of a failure to comply with local rules is well within a district court's discretion."). To the extent the Court is inclined to sustain any objections, the City requests leave to provide further response in the same number of pages.

## IV. CONCLUSION

Drug addiction and street level crime are challenges all cities face. Plaintiffs have failed to show that they are likely to demonstrate that San Francisco's response to dealing with such challenges has created a nuisance in their neighborhood such that injunctive relief is appropriate. San Francisco's policies are consistent with California law, as well as the scientific literature and best practices. San Francisco continues to demonstrate its heightened commitment to tackling the City's behavioral health and substance use crisis, while improving street conditions for all residents. For the foregoing reasons, the City respectfully requests the Court deny Plaintiffs' Motion for a Preliminary Injunction.

Dated: December 12, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
TARA M. STEELEY
JOHN H. GEORGE
KAITLYN M. MURPHY
SABRINA M. BERDUX
ABIGAIL H. WALD
Deputy City Attorneys

By: /s/*Abigail H. Wald*
ABIGAIL H. WALD

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO